David R. Wright (Bar No. 5164)
 dwright@mabr.com
Kirk R. Harris (Bar No. 100221)
 kharris@mabr.com
Jared J. Braithwaite (Bar No. 12455)
 jbraithwaite@mabr.com
MASCHOFF BRENNAN
201 South Main Street, Suite 600
Salt Lake City, UT 84111
Telephone: (435) 252-1360
Facsimile: (435) 252-1361

Attorneys for Plaintiff LIFETIME PRODUCTS, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# NORTHERN DIVISION

| | |
|---|---|
| **LIFETIME PRODUCTS, INC.**, a Utah corporation, <br><br> Plaintiff, <br><br> v. <br><br> **RUSSELL BRANDS, LLC D/B/A SPALDING,** a Delaware limited liability company, <br><br> Defendant. | Civil No. 1:12-cv-00026-DN-EJF <br><br> **LIFETIME'S REPLY CLAIM CONSTRUCTION BRIEF** <br><br> Chief District Judge David Nuffer <br><br> Magistrate Judge Evelyn Furse <br><br> (Jury Demanded) |

Lifetime respectfully submits its reply to Russell's Responsive Claim Construction Brief ("Russell's CC Brief")[1] and in further support of Lifetime's Opening Claim Construction Brief ("Opening CC Brief").[2]

---

[1] Docket No. 214 (filed under seal).
[2] Docket No. 211 (filed under seal); Docket No. 214 (redacted Opening CC Brief).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

TABLE OF EXHIBITS ............................................................................................................ v

REPLY TO RUSSELL'S ARGUMENTS REGARDING CLAIM CONSTRUCTION ................ 1

    1.    The terms "adhesive" and "non-tape adhesive" do not include double-sided tape. ................................................................................................................... 1

    2.    "Sized and Configured for Playing the Game of Basketball"; "adhesive provides"; and "sufficient" claim terms have plain and ordinary meanings and are not indefinite. ................................................................................................ 2

        A.    Skilled artisans understand the scope of the claims with reasonably certainty. ................................................................................................ 3

        B.    Russell and its expert understand the scope of the claims. ................. 5

    3.    The asserted patents do not claim only brittle "basketball backboards." ...................... 7

    4.    All "Catalyzed [adhesives]" in the claims are not "two-part catalyzed adhesives." ................................................................................................... 8

    5.    Russell's constructions for "silicone adhesive" and "silicone-based adhesive" improperly exclude adhesives understood as silicone. ................................. 9

    6.    The "bong gap" terms do not require a bond gap of predetermined size nor do they exclude the use of double-sided tape squares as bond gap spacers. ................... 9

    7.    Russell sudden acquiescence to a rewording for "frame" likely invites mischief. ..... 10

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**

*Apple, Inc. v. Samsung Electronics Co.*,
 2014 WL 4467837 (N.D. Cal. Sept. 9, 2014) ................................................................6

*Bancorp Services, LLC v. Hartford Life Ins. Co.*,
 359 F.3d 1367 (Fed. Cir. 2004) ................................................................................3, 5

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
 388 F.3d 858 (Fed. Cir. 2004) ......................................................................................8

*Cybor Corp. v. FAS Techs., Inc.*,
 138 F.3d 1448 (Fed. Cir. 1998) ....................................................................................6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 __ F.3d __, 2014 WL 6845152 (Fed. Cir. Dec. 5, 2014) ..............................................5

*Diamond Coating Tech., LLC v. Hyundai Motor Am.*,
 2014 WL 5698445 (C.D. Cal. Aug. 25, 2014) ..............................................................5

*Enzo Biochem, Inc. v. Applera Corp.*,
 599 F.3d 1325 (Fed. Cir. 2010) ....................................................................................2

*Grynberg v. Bar S Services, Inc.*,
 527 Fed. Appx. 735 (10th Cir. 2013) ...........................................................................6

*IA Labs CA, LLC v. Nintendo Co.*,
 Case No. 8:10-cv-833-PJM (D. Md. Feb. 6, 2012) ....................................................10

*In re Maxim Integrated Prod., Inc.*,
 2014 WL 3696137 (W.D. Penn. Jul. 23, 2014) ............................................................3

*In re Packard*,
 751 F.3d 1307 (Fed. Cir. 2014) ....................................................................................2

*Interval Licensing LLC v. AOL, Inc.*,
 766 F.3d 1364 (Fed. Cir. 2014) ................................................................................2, 3

*Koch v. Koch Ind., Inc.*,
 996 F.Supp. 1273 (D. Kan. 1998) ................................................................................6

*Medicis Pharm. Corp. v. Acella Pharms. Inc.*,
 2011 WL 810044 (D. Ariz. Mar. 2, 2011) ....................................................................4

*Moore U.S.A., Inc. v. Std. Register Co.*,
 229 F.3d 1091 (Fed. Cir. 2000) ....................................................................................4

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
 806 F.2d 1565 (Fed. Cir. 1986) ....................................................................................4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)......................................................................................9

*PPG Indus. v. Guardian Indus. Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998).................................................................................2, 9

*ScriptPro LLC v. Innovation Assocs.*,
    2011 WL 1576624 (D. Kan. Apr. 26, 2011)................................................................10

*Smiths Ind. Medical Sys., Inc. v. Vital Signs, Inc.*,
    183 F.3d 1347 (Fed. Cir. 1999)....................................................................................6

*Takeda Pharm. Co. v. Mylan Inc.*,
    2014 WL 5862134 (N.D. Cal. Nov. 11, 2014) .............................................................4

*Tandon Corp v. U.S. ITC*,
    831 F.2d 1017, 1023–24 (Fed. Cir. 1987) ...................................................................1

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009) ...............................................................................3

Manual of Patent Examining Procedure 2137.02 (9th ed. 2014).......................................7

Manual of Patent Examining Procedure 2173.02 (7th ed. 1998).......................................7

**REGULATIONS**

37 C.F.R. 1.552...................................................................................................................7

37 C.F.R. 1.906...................................................................................................................7

## TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 33 | Office Action, dated September 23, 2001, from the prosecution history for Application No. 09/553,668. |
| Exhibit 34 | Reply and Amendment Under 37 C.F.R. § 1.111, dated December 21, 2001, from the prosecution history for Application No. 09/553,668. |
| Exhibit 35 | U.S. Patent No. 6,004,231 to Schickert. |
| Exhibit 36 | U.S. Patent No. 5,839,982 to Hying. |
| Exhibit 37 | Declaration of Dr. Maureen Reitman, dated September 14, 2012, from the reexamination histories for the asserted patents. |
| Exhibit 38 | Third Party Requester's Comments to Patent Owner's Comments of November 22, 2013 pursuant to 37 C.F.R. § 1.951, dated December 21, 2013, from the reexamination history for U.S. Patent 8,033,935. |
| Exhibit 39 | Manual of Patent Examining Procedure, section 2173.02 (7th ed. July 1998). |
| Exhibit 40 | Manual of Patent Examining Procedure, section 2173.02 (9th ed. March 2014). |
| Exhibit 41 | Ex Parte Reexamination Certificate for U.S. Patent 7,749,111. |
| Exhibit 42 | Amendment and Response to Action Closing Prosecution (ACP) Dated April 8, 2014 and Right of Appeal Notice, from the reexamination history for U.S. Patent 8,033,935. |
| Exhibit 43 | Amendment and Response to Action Closing Prosecution (ACP) Dated April 4, 2014 and Right of Appeal Notice, from the reexamination history for U.S. Patent 8,038,550. |
| Exhibit 44 | Record of Oral Hearing, held April 13, 2010, from the prosecution history for U.S. Patent 7,749,111. |
| Exhibit 45 | Excerpts from Petrie, Handbook of Adhesive and Sealants (2000). |
| Exhibit 46 | Hashimoto, Silyl-Terminated Polyethers for Sealant Use: Performance Updates, Adhesives Age, p. 18 (Aug. 1998). |
| Exhibit 47 | Appellant's Appeal Brief, dated November 14, 2001, from the prosecution history for U.S. Patent 7,749,111. |
| Exhibit 48 | *IA Labs CA, LLC v. Nintendo Co. Ltd.*, Case No. 8:10-cv-833-PJM, Order Identifying Court's Construction of Certain Disputed Terms and Phrases from U.S. Patent No. 7,121,982 (D. Md. February 3, 2012). |
| Exhibit 49 | Declaration of Jared J. Braithwaite in Support of Lifetime's Reply Claim Construction Brief, dated December 22, 2014. |

# REPLY TO RUSSELL'S ARGUMENTS REGARDING CLAIM CONSTRUCTION[3]

**1.   The terms "adhesive" and "non-tape adhesive" do not include double-sided tape.**

Russell argues that "adhesive" must include tape because otherwise "non-tape adhesive" would be redundant of "adhesive." But Russell's cited facts and legal citations do not support its argument. Careful review of Russell's evidentiary citations shows that Lifetime distinguished the "adhesive" of the asserted patents from the double-sided tape disclosed in prior art known as Hying. While the Hying reference describes double-sided tape as an "adhesive," Lifetime distinguished the asserted patents' use of the term "adhesive" from Hying's double-sided tape.[4]

Russell's also mischaracterizes the law in its legal citations. For example, in *Tandon Corp v. U.S. ITC*, the Federal Circuit held that claim terms *can* be redundant.[5] In that case, the claims to a fixed transducer were amended in prosecution to recite a "non-gimballed" transducer.[6] The Federal Circuit found the term "non-gimballed" redundant of the requirement for a "fixed" transducer.[7] Likewise, the "non-tape" is redundant of "adhesive" because the written description and prosecution history of the asserted patents show that "adhesive" does not include double-sided tape. The Court should reject Russell's arguments as unsupported by fact or law.

---

[3] Lifetime does not address every disputed claim term or claim construction issue herein. For matters not addressed, Lifetime reiterates its arguments presented in its Opening CC Brief.

[4] Notably, during the prosecution history of Russell's own patents, Russell itself argued that the description of double-sided tape in the Hying reference was not an adhesive. *See* Ex. 33, Office Action Rejection regarding App. No. 09/553,668, at p. 3; Ex. 34, Reply and Amendment regarding App. No. 09/553,668, at p. 7; *see also* Exs. 35 and 36. Both Pat. No. 6,004,231 (Schickert) and Pat. No. 5,839,982 (Hying) are owned by Russell and share a common written description with respect to the double-sided tape that Russell admitted was not an adhesive.

[5] 831 F.2d 1017, 1023–24 (Fed. Cir. 1987) ("[C]laims which read differently can cover the same subject matter.").

[6] *Id.* at 1021–22 (a gimbal is a device permitting movement of an attached body).

[7] *Id.* at 1024.

2. **"Sized and Configured for Playing the Game of Basketball"; "adhesive provides"; and "sufficient" claim terms have plain and ordinary meanings and are not indefinite.**

In its brief, Russell argues for almost 20 pages about every supposed point of uncertainty that it can find in the asserted patents. If patents were required to contain no ambiguities and patent claims were required to be stated with mathematical precision, then there could be no real patent infringement disputes. Questions of infringement would be impermissibly stripped from the jury, and cases would be dispositively decided at claim construction. This is not the purpose of claim construction[8] nor does it reflect a workable patent system.[9]

The relevant question for the Court here is whether one of skill in the art would understand what is being claimed by the patent claims—not whether certain devices fall within the scope of the claims.[10] While, Russell advocates that claims be construed with absolute, bright-line certainty or mathematical precision, this is a more exacting standard than is required.[11]

---

[8] *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("Claims are often drafted using terminology that is not as precise or specific as it might be. As long as the result complies with … 35 U.S.C. § 112, para. 2…. That does not mean, however, that a court, under the rubric of claim construction, may give a claim whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product.").
[9] *In re Packard*, 751 F.3d 1307, 1313 (Fed. Cir. 2014) ("At the same time, this [definiteness] requirement is not a demand for unreasonable precision. The requirement … does not contemplate in every case a verbal precision of the kind found in mathematics. Nor could it do so in a patent system that actually works….").
[10] *PPG Indus.*, 153 F.3d at 1355 ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.").
[11] See *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) ("As the Supreme Court recognized in *Nautilus*, 'absolute precision' in claim language is 'unattainable.'"); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) (holding that the claim phrase "not interfering substantially" was not indefinite even though the construction "define[d] the term without reference to a precise numerical measurement").

The claim terms that Russell accuses of indefiniteness were all added to make clear that Lifetime's invention for attaching backboards to frames with adhesive was not in reference to "basketball" toys. Although toy "backboards" might be constructed with weak adhesives such as Elmer's® Glue because not much strength is required to withstand impacts from miniature or foam balls, Lifetime's invention was directed toward real basketball backboards constructed using an adhesive that performs under the mechanical stresses and rigors associated with a real game of basketball. Thus, the subject matter of the asserted claims can be understood with reasonable certainty.[12] Evidence that persons of skill in the art understand the claim terms as well as evidence of Russell's own understanding of the claim terms shows that Russell has failed to meet its burden of proving the claims indefinite by clear and convincing evidence.[13]

### A.   Skilled artisans understand the scope of the claims with reasonably certainty.

Contrary to Russell's argument, the claims of the asserted patents have objective boundaries. Objectivity does not require absolute or mathematical precision.[14] Rather, it means something based on "externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions."[15] Thus, claim terms such as "aesthetically pleasing" and "unobtrusive manner" have been found indefinite because such terms are based on individual preference or

---

[12] On the other hand, Russell is unreasonable with its argument that basketball backboard manufacturers would not know what the game of basketball is, what appropriately sized and configured backboards are, or whether a backboard could be used for its intended purpose.
[13] "[C]lose questions of indefiniteness … are properly resolved in favor of the patentee." *Bancorp Services, LLC v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1371 (Fed. Cir. 2004); *see also In re Maxim Integrated Prod., Inc.*, 2014 WL 3696137, *9 (W.D. Penn. Jul. 23, 2014) ("[I]ndefiniteness must be proven by clear and convincing evidence, a standard that the Supreme Court left undisturbed in *Nautilus*.").
[14] *Interval Licensing,* 766 F.3d at 1370 ("The definiteness standard must allow for a modicum of uncertainty to provide incentives for innovation.").
[15] Black's Law Dictionary (9th ed. 2009) (entry for "objective").

perception. The limitations in the claims of the asserted patents, however, are externally verifiable and are not based on individual preference.

Whether a backboard is sufficiently sized and configured for a real game of basketball is externally verifiable.[16] A backboard can either be used to play basketball or it can't. Those familiar with basketball backboards will agree within a reasonable degree of certainty about that which is a basketball backboard and that which is not. Likewise, those familiar with the construction of basketball backboards are able tell whether backboards are sufficiently constructed for their intended purpose.[17] There simply is no great mystery about whether a basketball backboard works for its intended purpose. But, even if there were, the specification provides a reference point; the written description notes that backboards on the market that are constructed with double-sided tape are examples of backboards that are sufficiently constructed and that function for their intended purpose of use in the game of basketball.[18]

Russell's cited cases on this point are distinguishable because they deal with subjective terms that have no general meaning in the art or, in the case of *Halliburton*, used a vaguely-defined, coined term that had no prior meaning in the relevant art or in the patent disclosure. In

---

[16] *Cf. Moore U.S.A., Inc. v. Std. Register Co.*, 229 F.3d 1091, 111 (Fed. Cir. 2000) ("There is nothing wrong with defining the dimensions of a device in terms of the environment in which it is to be used.").

[17] *Cf. Takeda Pharm. Co. v. Mylan Inc.*, 2014 WL 5862134, at *6 (N.D. Cal. Nov. 11, 2014) (defining "effective amount" to mean "an amount sufficient to help ameliorate or cure reflux esophagitis"); *Medicis Pharm. Corp. v. Acella Pharms. Inc.*, 2011 WL 810044, at *7 (D. Ariz. Mar. 2, 2011); *see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986) (for an automobile-compatible wheel chair, "[t]he phrase 'so dimensioned' is as accurate as the subject matter permits, automobiles being of various sizes. …. The patent law does not require that all possible [dimensions] be listed in the patent, let alone that they be listed in the claims.").

[18] Opening CC Brief Ex. 1, at, e.g., 1:31–36.

contrast, the allegedly indefinite claim terms in the asserted patents are ordinary terms that are easily understood by those of skill in the art and are used by them to describe their inventions.[19]

Russell also misconstrues Lifetime's position and asserts that Lifetime is asking the Court to give identical constructions to these plain and ordinary claim terms. On the contrary, Lifetime asserts that the terms mean what they say, in whichever words they say it. And while the terms about the adhesive providing sufficient characteristics for use in the game of basketball are similar, it is "not unknown for different words to be used to express similar concepts."[20]

### B. Russell and its expert understand the scope of the claims.

While Russell now raises allegations of indefinite claim terms, Russell's allegations in the reexaminations of the asserted patents and admissions in this case are inconsistent with that view. The evidence shows that Russell and its expert understand the scope of the claims.

In order to subject Lifetime's patents to reexamination, Russell argued that it could construe the claims and submitted evidence to the USPTO alleging that the patent claims were obvious. Russell had no trouble understanding and explaining the very claim limitations that it now contends are indefinite in Russell's expert's submitted sworn testimony to the USPTO. While Lifetime disputes Russell's expert's ultimate conclusion, she testified that

> It would have been obvious to a person of ordinary skill in the art to select an adhesive that allows for proper adhesion and flexibility for use in the game of basketball. It is further my opinion that the adhesives taught by McGinnis are suitable

---

[19] See *DDR Holdings, LLC v. Hotels.com, L.P.*, __ F.3d __, 2014 WL 6845152 (Fed. Cir. Dec. 5, 2014) (finding "look and feel" not facially subjective and having meaning in the art as demonstrated by the defendant's own use and admissions).

[20] *Bancorp Serv.*, 359 F.3d at 1373–74; see also *Diamond Coating Tech., LLC v. Hyundai Motor Am.*, 2014 WL 5698445, *8 (C.D. Cal. Aug. 25, 2014) ("This claim term uses ordinary language, not terms of art, and this language is simple enough to convey a reasonably certain meaning. A person of ordinary skill would not be left bewildered by this phrase; indeed, this person would likely give the term its natural meaning and not dwell on it at all.").

for use in the game of basketball due to their strength and toughness, which provide the ability to support the frame and absorb mechanical energy imparted by impact.[21]

She also stated that "[a]lthough no single quantitative metric exists for adhesive … a qualitative appreciation is readily recognized by one of skill in the art."[22] Thus, Russell's own expert had no trouble understanding and explaining the allegedly indefinite claim terms in an effort to subject Lifetime's patents to reexamination.[23]

Also, Russell alleges in its pleading that it can construe the claims when it alleges that certain devices allegedly fall within the scope of the claims.[24] Russell's ability to construe the claims is a predicate to any of its allegations that certain devices fall within their scope.[25] The doctrine of judicial admissions should prevent Russell from now arguing that the claims cannot be construed, because through its counterclaims it alleges that the claims can be construed and that certain devices allegedly fall within the scope of the claims.[26]

Russell misstates the facts and law by stating that both it and the USPTO did not address indefiniteness during reexamination of the asserted patents. Despite Russell's expert's sworn testimony regarding the scope of the claims, Russell flagged its belief that certain claim terms

---

[21] Ex. 37, Declaration of Dr. Maureen Reitman, at ¶ 25; *see also id.* at ¶ 30.
[22] *Id.* at ¶ 18; *see also id.* at ¶ 12.
[23] *See, e.g., Apple, Inc. v. Samsung Electronics Co.*, 2014 WL 4467837 (N.D. Cal. Sept. 9, 2014) (finding that a claim term was not indefinite because "even [the defendant's] own expert … was able to explain [the term] when explaining the '721 patent and prior art to the jury.")
[24] *See, e.g.*, Docket No. 132, Russell's Counterclaims, at pp. 20–22, ¶¶ 98, 105, 110.
[25] Both anticipation and obviousness require a determination of the scope and meaning of the claims. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998); *Smiths Ind. Medical Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999).
[26] *Grynberg v. Bar S Services, Inc.*, 527 Fed. Appx. 735, 739 (10th Cir. 2013) (allegations in a party's pleading are binding on that party unless withdrawn or amended); *see also Koch v. Koch Ind., Inc.*, 996 F.Supp. 1273 (D. Kan. 1998) ("A statement or assertion of fact in a complaint or other pleading may serve as a judicial admission.").

were indefinite during the reexaminations.[27] And the USPTO examined Lifetime's new claims for indefiniteness, which include the terms that Russell now contends are indefinite.[28] Importantly, over the last 14 years the USPTO, multiple examiners, and administrative judges examined the asserted patents for definiteness with a standard similar to that of *Naultilus*.[29] After all this, the claims of the asserted patents have been found sufficiently definite and patentable.[30]

3.  **The asserted patents do not claim only brittle "basketball backboards."**

Russell is asking the Court to inject a limitation into the claims that is not there and that has not been described as a necessary part of the invention. Russell's cited cases are inapposite because they deal with claim terms that are specially defined in the specification or in which claim terms were specially described during prosecution to overcome prior art. Neither is the case here. The specification of the asserted patents does not describe all backboards as brittle; rather, it states that backboards "can be made of a variety of materials including various polymers and composites."[31] While Lifetime described the preferred embodiment as an acrylic backboard (which may be brittle), no claim limitation requires that the claimed backboards be brittle. Lifetime did not state that the claimed inventions only cover brittle backboards, and the Patent Office did not rely on any representation that the claimed backboards were only brittle.

---

[27] Ex. 38, at pp. 2–4, 8 (Russell raising indefiniteness during reexamination of the '935 patent).
[28] 37 C.F.R. 1.552 ("Claims in an *ex parte* reexamination proceeding will be examined … with respect to subject matter added or deleted in the reexamination proceeding, on the basis of the requirements of 35 U.S. 112."); 37 C.F.R. 1.906 (same).
[29] Ex. 39, Manual of Patent Examining Procedure ("MPEP") 2173.02 (7th ed. 1998) (examiner "should allow claim which define the patentable subject matter with a reasonable degree of particularity and distinctness"); *see also* Ex. 40, MPEP 2137.02, at p. 295 (9th ed. 2014) (same).
[30] Ex. 41, Reexamination Certificate for the '111 patent (showing claims added and found patentable with the allegedly indefinite claim terms); Ex. 42 (claim amendments showing new claims of the '935 patent with alleged indefinite terms and allowance notice showing USPTO's finding of patentability of new claims); Ex. 43 (same with respect to the '550 patent).
[31] Opening CC Brief Ex. 1, '111 Patent at 1:19–22.

**4.    All "Catalyzed [adhesives]" in the claims are not "two-part catalyzed adhesives."**

Russell's argument that all claimed catalyzed adhesives require two parts again fails based on Russell's distortion of the facts and the law. During prosecution of the '111 patent, Lifetime's attorney described in oral argument to the patent appeals board that "*part* of the invention," (i.e., one embodiment of the invention) was the use of a two-part adhesive that could be mixed together.[32] However, the invention also covers embodiments using one-part adhesives with or without a catalyst. Russell's citation to *C.R. Bard, Inc. v. U.S. Surgical Corp.* is not applicable because it addresses situations in which the entire invention or all embodiments were described as requiring certain features.[33] Here, only certain embodiments—claimed for example by claims 7 and 11 of the '111 patent—are described as using a two-part adhesive.

Russell's citation to the factual record does not show any limitation by Lifetime to claiming only catalysts that are added at the time of use.[34] Inspection of Russell's cited material reveals that Russell is citing Lifetime's recitation of statements made by the examiner in an office action regarding the alleged teachings of other prior art references and whether those prior art references disclosed a two-part adhesives.[35]

The asserted patents state that "*[t]ypical* commercially available catalyzed adhesives contain two parts."[36] This statement recognizes that all catalyzed adhesives may not include two parts. But Russell tries to explain away this phrase by arguing that the focus is on the two parts being sold separately rather than on a recognition that there are non-two-part adhesives. But the

---

[32] Ex. 44, '111 Prosecution History, Record of Oral Hearing (Apr. 13, 2010) (emphasis added).
[33] 388 F.3d 858, 864 (Fed. Cir. 2004).
[34] *See* Docket No. 217, Russell's CC Brief, at p. 12 n. 60.
[35] Russell's CC Brief Ex. 23.
[36] Opening CC Brief Ex. 1, '111 patent, 3:26–28 (emphasis added).

purpose of the written description is to teach others how to make and use the invention—not how to buy it—and Russell's argument here should be rejected.

Russell failed to show any evidence that Lifetime intended to limit its invention to only two-part catalyzed adhesives other than when the claims recite two-part catalyzed adhesives. Russell's claim constructions on these terms should be rejected, accordingly.

5. **Russell's constructions for "silicone adhesive" and "silicone-based adhesive" improperly exclude adhesives understood as silicone.**

Russell's proposed constructions for the silicone terms improperly exclude adhesives that those of skill in the art would have considered silicone at the time of the invention. At the time of the invention, a type of adhesive was on the market known as Modified Silicone or "MS" adhesives and sealants.[37] Although they are described as "silicone," they typically do not include a "base resin" of $(Si–O–Si–O)_n$ chemical bonds, which Russell argues all silicones must have. The Court should leave the claim language alone because the claims that use the silicone terms make clear that the claims are directed toward silicone adhesives—no further definition is necessary to understand what is being claimed. Whether particular adhesives fit the description of "silicone" at the time of the invention is a factual determination for the jury.[38]

6. **The "bong gap" terms do not require a bond gap of predetermined size nor do they exclude the use of double-sided tape squares as bond gap spacers.**

Russell's argument that the "specification requires" a predetermined bond gap for all embodiments fails on two fronts: Russell's cited portions of the specification make no such assertion and the law states that patents claims, not the specification, define the inventions.[39]

---

[37] Ex. 46, Silyl-Terminated Polyethers for Sealant Use (Aug. 1998).
[38] *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998).
[39] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

Russell then confuses the issues by its reference to "fillers." Fillers are additives to an adhesive that change its characteristics; for example, viscosity.[40] During prosecution of the '111 Patent, Lifetime explained that sub-millimeter glass beads were fillers and not bond gap spacers due to their excessively small size.[41] But Lifetime did not disclaim larger structures. While Lifetime repeatedly distinguished its adhesively-attached backboards from backboards attached using double-sided tape during patent prosecution, Lifetime did not disclaim small squares of double-sided tape used as bond gap spacers. And the evidence is that those of skill in the art understood that double-sided tape squares could be used as bond gap spacers when using adhesive in order to form an adhesive bond approximating the thickness of double-sided tape.[42]

**7.   Russell sudden acquiescence to a rewording for "frame" likely invites mischief.**

Lifetime contends that "frame" and "frame structure" are ordinary terms that need no clarification. Other courts have found the term "frame" to be sufficiently clear on its own.[43] "Frame" is understood as a support structure (e.g., a house frame) and needs no rewording.

## CONCLUSION

For the foregoing reasons in addition to those found in Lifetime's opening brief, the Court should adopt Lifetime's proposed constructions, and reject Russell's proposed constructions.

---

[40] *See* Ex. 45, Petrie, Handbook of Adhesives and Sealants, p. 773 (2000).
[41] *See* Ex. 47, '111 Prosecution History, Appellant's Appeal Brief, pp. 10–11.
[42] Opening CC Brief Ex. 9, Grinwald Depo. at p. 81:7–21; Opening Brief Ex. 29, Huffy Memorandum, dated March 19, 1999 (same).
[43] *ScriptPro LLC v. Innovation Assocs.*, 2011 WL 1576624, *5 (D. Kan. Apr. 26, 2011) (finding it unnecessary to construe disputed claim term "frame"); *IA Labs CA, LLC v. Nintendo Co.,* Case No. 8:10-cv-833-PJM, Docket No. 323-1 (D. Md. Fed. 6, 2012) (attached as Ex. 47).

Dated: December 22, 2014.

Respectfully submitted,

MASCHOFF BRENNAN

By: /s/ *Kirk R. Harris*

David R. Wright
Kirk R. Harris
Jared J. Braithwaite

Attorneys for Plaintiff
LIFETIME PRODUCTS, INC.