David R. Wright (Bar No. 5164)
 dwright@mabr.com
Kirk R. Harris (Bar No. 10221)
 kharris@mabr.com
Jared J. Braithwaite (Bar No. 12455)
 jbraithwaite@mabr.com
Taylor J. Wright (Bar No. 14849)
 twright@mabr.com
MASCHOFF BRENNAN
201 South Main Street, Suite 600
Salt Lake City, UT 84111
Telephone: (435) 252-1360
Facsimile:  (435) 252-1361

Attorneys for Plaintiff LIFETIME PRODUCTS, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# NORTHERN DIVISION

| | |
|---|---|
| **LIFETIME PRODUCTS, INC.**, a Utah corporation, <br><br> Plaintiff, <br><br> v. <br><br> **RUSSELL BRANDS, LLC D/B/A SPALDING,** a Delaware limited liability company, <br><br> Defendant. | Civil No. 1:12-cv-00026-DN-EJF <br><br> **LIFETIME PRODUCTS, INC.'S RESPONSE AND OPPOSITION TO RUSSELL'S APPLICATION FOR ATTORNEYS' FEES** <br><br> Chief District Judge David Nuffer <br><br> Magistrate Judge Evelyn Furse |

Plaintiff Lifetime Products, Inc., ("Lifetime") hereby responds to and opposes "Russell's Application for Attorneys' Fees Pursuant to the Order Granting Motion to Compel (Dkt. 300)"[1] ("Application"), which was filed by Defendant Russell Brands, LLC's ("Russell")

---

[1] Docket No. 338.

1

### I.   INTRODUCTION

Russell's Application is pursuant to prevailing on its short-form, 500-word motion to compel further testimony from Lifetime regarding a few 30(b)(6) deposition topics ("Motion").[2] Instead of seeking fees commensurate with a short form motion, Russell seeks a payday by throwing in fees for meet-and-confer efforts, which are normally not awarded in discovery fee awards, and fees related to discovery and case management issues unrelated to Russell's Motion. After deducting Russell's improper fees, Lifetime does not content the reasonableness of Russell's fees in connection with bringing its short form discovery motion.

### II.   BACKGROUND ON RUSSELL'S APPLICATION FOR FEES

On August 21, 2014, Lifetime's general counsel, Timothy Schade ("Schade"), one of six deponents deposed under Russell's 30(b)(6) deposition notice, was deposed on about 70 various topics pursuant to Russell's notice. Several months after the deposition, Russell alleged that Schade was not prepared to testify regarding 8 of those topics. Lifetime disagreed with Russell's allegations but attempted to confer with Russell regarding resolution of Russell's allegations.

Importantly, the Schade deposition was not the only item on the parties' respective agendas during this time. Lifetime efforts at resolving the parties' discovery dispute regarding the Schade deposition occurred during various other exchanges regarding the parties' discovery disclosures.

Almost five months after Schade's deposition, Lifetime received Russell's first letter that, in addition to other discovery matters, alleged that Schade was not prepared on the topics that were the subject of Russell's Motion.[3] In lieu of re-opening Schade's deposition, Lifetime

---

[2] Docket No. 290; *see also* Short Form Discovery Motion Procedure, Docket No. 167.
[3] *See* Docket No. 338-1 at filing-page nos. 15–20.

proposed preparing interrogatory responses to address 3 of the topics. But instead of offering interrogatories that were commensurate in scope to the 3 topics, Russell asked that Lifetime respond to 16 different special interrogatories exceeding the scope of Russell's discovery sought by the 30(b)(6) deposition notice.[4] Nevertheless, Lifetime attempted good-faith resolution with Russell, pointing to the overbreadth of Russell's 16 special interrogatories, and instead proposing 3 special interrogatories that tracked the language of the 3 deposition topics to be replaced.[5] Yet Russell persisted with its position that Lifetime should be forced to respond to 16 special interrogatories in lieu of 3 deposition topics.[6]

In the midst of discussion between the parties on various other matters—which were not the subject of Russell's Motion—the parties ultimately could not reach a compromise regarding their discovery dispute over Schade's deposition topics, and Russell filed its Motion.

### III.  ARGUMENT

Federal Rule of Civil Procedure 37(a)(5) limits the fee awards to "the movant's reasonable expenses incurred in making the motion, including attorney's fees." Likewise the Court's order on Russell's Motion limits the award of fees to those "costs and fees in brining th[e] Motion."[7] However, a short-form, 500-word Motion does not reasonably result in over $30,500 of fess requested by Russell's Application. Once unawardable meet-and-confer fees are excluded—

---

[4] *See* Docket No. 338-1 at filing-page no. 28; *id.* at filing-page nos. 33–42.

[5] *Compare* Docket No. 338-1 at filing-page nos. 44–45 *with* topics 72, 74, and 76, Docket No. 290-1 at filing-page nos. 15–16.

[6] *See* Docket No. 338-1 at filing-page nos. 52–60. Russell also added two other special interrogatories to the list, which were the subject of other concurrent collaboration between the parties on other discovery matters that were not the subject of Russell's Motion.

[7] *See* Docket No. 300 at 3.

which would also exclude the fees in Russell's Application that are unrelated to the Motion—the appropriate amount of Russell's fees should not exceed $5,706.75.[8]

### A. Russell's Application is overbroad because it includes fees regarding the parties' good faith meet-and-confer efforts, which are not normally compensable in order to encourage cooperation among counsel.

Most of the fees requested by Russell relate to the meet-and-confer efforts between the parties in which Russell attempted to extract from Lifetime 16 separate responses to special interrogatories (exceeding the 3 more-limited deposition topics that were the subject of the 30(b)(6) notice). These fees are not awardable to Russell because courts do not normally award fees regarding good faith meet-and-confer efforts by the non-moving party.

Although parties are generally required to meet and confer in attempt to resolve their discovery disputes prior to filing a motion to compel discovery, district courts generally decline to award fees for these pre-filing meet-and-confer requirements.[9] For example, in *Digecor, Inc. v. E.Digital Corp.*, Judge Nuffer's award of discovery-motion fees did not include fees for the parties' meet-and-confer efforts predicate to the discovery motion.[10] The parties in *Digecor* engaged in several oral and written communications regarding inadequate written discovery

---

[8] Exhibit A summarize Russell's fees that Lifetime does not contest as awardable to Russell.

[9] *See Aevoe Corp. v. AE Tech Co.*, No. 2:12-CV-00053-GMN, 2013 WL 5324787, at *6 (D. Nev. Sept. 20, 2013) ("The Court similarly here finds that the time spent meeting and conferring should not be recoverable."); *Matlink, Inc. v. Home Depot U.S.A., Inc.*, No. 07CV1994-DMS (BLM), 2008 WL 8504767, at *5 (S.D. Cal. Oct. 27, 2008) ("The local rules for the Southern District of California require counsel to meet and confer in an effort to resolve disputes. [Citation.] As such, fees associated with the initial meet and confer process logically should not always be included in a fee award."); *See Uszak v. Yellow Transp., Inc.*, 2007 WL 2085403, at *8 (N.D. Ohio July 13, 2007) recommendation adopted, 2008 WL 2884133 (July 21, 2008) affirmed as to discovery fee award, 343 Fed.App'x 102 (6th Cir. 2009).

[10] *Digecor, Inc. v. E.Digital Corp.*, 2008 WL 803108, at *6 (D. Utah Mar. 22, 2008).

responses before the movant began preparing its motion to compel.[11] After granting the motion to compel, the Court found that the non-moving party must pay the fees incurred in making the motion, which were limited to those after the parties' meet-and-confer efforts.[12]

Declining to award fees for meet-and-confer efforts is consistent with the policy underlying the meet-and-confer requirements. Parties are required to meet and confer in good faith to try to resolve discovery disputes and avoid additional motion practice. An award of fees for good-faith attempts to reach agreement on difficult or contentious discovery issues could dis-incentivize those attempts for fear that time spent trying to agree may only result in an inflated fee award in the event of a discovery motion.[13] In other words, the non-moving party may be improperly incentivized to cease attempts at resolution on a difficult discovery issue to cut off potentially recoverable fees should the parties not reach agreement.[14]

Additionally, if a party had already resolved to bring a discovery motion before or during meet-and-confer efforts, then those efforts should not be considered good faith efforts by the moving party and fees should not be award for them. Thus, in *Digecor*, fees for the parties' meet-and-confer efforts were not awarded because the movant could not have been considered to have been making or bring the motion at that time.

---

[11] *Id.* at *1.

[12] *Id.* at *6, *6 n. 65 (awarding fees from the preparation date of the motion to compel, which was December 18, 2007); *see also id.* at *1 (dating meet-and-confer efforts prior to December 18, 2007).

[13] *Cf. Johnson & Allphin Properties, LLC v. First Am. Title Ins. Co.*, 2015 WL 1478749, at *2 (D. Utah Mar. 31, 2015) ("[T]he discovery process is not intended to be a means to play hardball or hide the ball, or for lawyers to fill billable hour quotas.").

[14] *See Williams v. Advert. Sex, LLC*, 2007 WL 1089218, at *2 (N.D.W. Va. Apr. 3, 2007) (applying reasoning and declining to award fees for meet and confer efforts).

Russell may respond that Lifetime was previously awarded limited fees with respect to Russell refusal to respond to Lifetime's attempts to resolve a discovery dispute before bringing a discovery motion.[15] Both parties have substituted counsel since the initial stages of that prior dispute, which involved Russell's prior counsel not responding to Lifetime's attempts at resolving the discovery issue without intervention by the Court.[16] And pre-motion meet-and-confer fees have been justified when one party refuses to engage meaningfully in the meet and confer process.[17] After Lifetime filed its motion to compel and Russell brought on new counsel, the parties did attempt efforts at resolution of the dispute and the parties engaged in many further communications.[18] Consistent with the law, the time spent in good faith attempts at resolution is not subject to a fee award, and Lifetime's fee application did not include fees for those meet and confer efforts between the parties.[19] (Lifetime's prior fee application for $25,704.50 was in light of a full-length discovery motion and in-person hearing, in contrast to Russell's present short-form, 500-word discovery Motion.)

Accordingly, Fees incurred by Russell during Lifetime's good faith attempts at resolving the underlying discovery dispute should not be awarded to Russell. Russell's Application shows

---

[15] *See* Docket No. 156 (awarding Lifetime fees on a discovery motion which included just over $2,000 in fees for a letter and phone conversation in an attempt to each resolution of the issue); *see also* Docket No. 119 at 3 (time entries for 1/1/2013 and 1/9/2013).

[16] *See* Docket No. 133 at pp. 4–5.

[17] *See Matlink*, 2008 WL 8504767, at *5 ("In this case, however, Plaintiffs stonewalled Lowe's efforts to meet and confer until the eleventh hour when Lowe's already had expended considerable time attempting to meet and confer and, ultimately, preparing a motion. The Court finds that these circumstances justify an award of sanctions.").

[18] *See* Docket No 119-2 (showing letters between the parties after Lifetime filed its motion to compel on January 28, 2013).

[19] *See* Docket No. 119 at 3–4.

that it did not begin brining its motion until after September 16, 2015—as Russell's counsel puts it, after "conclude[ing] the parties' attempts to resolve the dispute over the Schade deposition."[20] Accordingly, an award of fees to Russell should not include fees before that time.

**B.  Russell's Application is overbroad because it includes fees for work unrelated to Russell's Motion.**

Russell's Application also improperly includes fees for time and effort expended on other discovery and case issues, which were not the subject of Russell's Motion or the Court's award of fees. Almost all the correspondence and conferences between the parties that involved the dispute over Schade's 30(b)(6) deposition topics also involved concurrent discussions between the parties about other discovery disputes or case issues:

Russell's fees listed in paragraph 11(a) of the supporting declaration to Russell's Application improperly include fees for preparation of a letter, which addressed alleged issues with Lifetime's privilege log in addition to the parties' dispute regarding the Schade deposition topics, and the alleged privilege log issues were not part of Russell's Motion or the fee award.[21]

Russell's fees listed in paragraph 11(b) of the supporting declaration to Russell's Application improperly include fees for preparation of a letter, which addressed Russell's spurious allegations of waiving the attorney-client privilege through non-disclosure, these alleged waiver issues were not part of Russell Motion or the fee award.[22] Additionally, these fees are in connection with Russell's preparation of 16 special interrogatories that exceeded the scope

---

[20] Docket No. 338-1 at filing-page no. 9. The time entries for October 12, 2015 and November 5, 2015 also are not properly related to Russell's Motion.

[21] *See* Docket No. 338-1 at filing-page nos. 15–20.

[22] *See* Docket No. 338-1 at filing-page nos. 27–32.

of the 3 deposition topics that they were allegedly replacing.[23] Russell should not be able to capture fees for its attempts to propound discovery separate from the underlying discovery dispute.

Russell's fees listed in paragraph 11(c) of the supporting declaration to Russell's Application improperly include fees for correspondence and conference time in connection with an additional deposition topic and set of special interrogatories that were not the basis for Russell's Motion.[24] Also, much of the parties' correspondence and conferences at this time were also in regard to other discovery issues and a case management dispute between the parties regarding whether the Court intended the parties to be subject to the Local Patent Rules.[25]

Russell's fees listed in paragraph 11(d) of the supporting declaration to Russell's Application improperly includes fees unrelated to the Schade deposition-topic dispute. For example, Russell's two-paragraph email, which apparently took an entire hour to write, is at least half directed toward preparing for expert disclosures.[26] The parties' correspondence and conferences dealt with far more than the Schade deposition topics, instead focusing on disputes regarding application of the local patent rules, a 30(b)(6) deposition notice to Russell, and deficiencies in Russell's invalidity contentions.[27]

---

[23] *See* Docket No. 338-1 at filing-page nos. 33–42.

[24] *See* Docket No. 338-1 at filing-page nos. 48–59 (regarding deposition topic 122 and special interrogatories Q & R), *id.* at filing-page nos. 62–65 (same).

[25] *See* Docket No. 338-1 at filing-page nos. 62–65 (conference and correspondence substantially directed to Local Patent Rules and other open discovery issues).

[26] *See* Docket No. 338-1 at filing-page no. 67.

[27] *See* Docket No. 338-1 at filing-page nos. 70–98; *id.* at filing-page nos. 100–108; *id.* at filing-page nos. 110–111. Also, Defendant's [Russell's] Invalidity Contentions are referenced in Russell's time entries under the acronym "DIC." *See*, *e.g.*, *id.* at filing-page no. 9.

None of these fees should be awarded to Russell because they are not part of Russell brining its Motion.[28]

### C. Russell's Application also includes an unreasonable amount of fees actually related to its Motion and fee Application.

Because Russell's fee Application is overbroad with respect to meet-and-confer fees that should not be granted and fees unrelated to Russell's Motion, Russell's fees in connection with preparation of its fee application are inflated. In other words, Russell seems to have spent considerable amount of time preparing its Application on fees it ought not to be awarded. Accordingly, the fees listed in paragraph 11(f) of the declaration supporting Russell's Application should be reduced by 50%. This brings these fees-for-seeking-fees in line with Lifetime own application and prior award of fees.[29]

### D. Lifetime does not contest the reasonableness of Russell's fees for actually binging its Motion, after appropriately deducting the meet-and-confer and comingled fees, and after making a corresponding deduction in connection with Russell's fee Application.

Ordinarily, the determination of a reasonable fee in a fee award would be subject to the "loadstar" method of calculating fees, which would require a determination about the reasonable number of hours for preparation of Russell's short form 500-word Motion multiplies by a reasonable hourly rate for given the complexity of task, etc.[30] But while Lifetime could quibble

---

[28] See *Uszak v. Yellow Transp., Inc.*, 2007 WL 2085403, at *8 (N.D. Ohio July 13, 2007) ("The problem with such mixed entries is that this Court cannot discern, and cannot speculate as to, the portion of the fees incurred in making the motion to compel. For this reason, this Court will not award Yellow Transportation reimbursement for any fees listed in such mixed entries.").

[29] See Docket 119 at p. 4 (noting $1,350 in fees for preparing Lifetime's fee application).

[30] See *Kelatron v. Marlyn Nutraceuticals*, No. 1:12-cv-124-DB-DBP, 2013 WL 5806100, at *1 (D. Utah Oct. 29, 2013).

about the rates for Russell's associate or paralegal work, after proper deduction of Russell's meet-and-confer and comingled fees and corresponding deduction in the fees for preparation of the Application, Lifetime does not contest the reasonableness of the remaining fees. Indeed Lifetime will be submitting its own fee request pursuant to the Court's award of fees on Lifetime's recent motion for protective order, and Lifetime expects that its fee request will be similar to the appropriately adjusted amount of Russell's fees.[31]

## IV.  CONCLUSION

Russell's prevailed on a short-form, 500-word Motion, its fee request should have reflected expected fees for a short-form 500-word motion. Instead Russell's fee Application improperly included fees that should not be awarded for meet-and-confer efforts between the parties. Russell's fee application also improperly included fees for work unrelated to its Motion. As a result of the overbreadth of its fee Application, Russell's fees for preparing the overly broad fee application were also improperly inflated. After adjusting for fees incurred by Russell in bringing its Motion, Russell's fee award should not exceed $5,706.75.[32]

Dated: February 26, 2016.

Respectfully submitted,

MASCHOFF BRENNAN

By: /s/ *Jared J. Braithwaite*
David R. Wright
Kirk R. Harris
Jared J. Braithwaite
Taylor J. Wright

Attorneys for Plaintiff
LIFETIME PRODUCTS, INC.

---

[31] *See* Docket No. 328 (awarding Lifetime fees); Docket No. 337 (denying Russell's motion to vacate the Court's fee award).

[32] *See* Exhibit A.