IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| LIFETIME PRODUCTS, INC., a Utah Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>RUSSELL BRANDS, LLC D/B/A SPALDING, a Delaware limited liability company,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER REGARDING SUPPLEMENTAL CLAIM CONSTRUCTION**<br><br>Case No. 1:12-cv-00026-DN-EJF<br><br>District Judge David Nuffer<br>Magistrate Judge Evelyn J. Furse |

On September 2, 2015, a Memorandum Decision and Order Regarding Claim Construction ("Claim Construction Order")[1] was entered construing several disputed terms in three patents: U.S. Patent No. 7,749,111 ("the '111 Patent"); U.S. Patent No. 8,033,935 ("the '935 Patent"); and U.S. Patent No. 8,038,550 ("the '550 Patent").

After the Claim Construction Order was entered, a separate order was entered allowing Russell Brands, LLC dba Spalding ("Russell") to file a second amended answer that amended Russell's Eleventh Affirmative Defense and Russell's counterclaims.[2] One significant change Russell made was that it added two additional patents to the litigation: (1) U.S. Patent Nos. 8,845,463 ("the '463 Patent"), issued on September 30, 2014; and (2) 8,852,034 ("the '034 Patent"), issued on October 7, 2014 (collectively, "the 2014 Patents").[3] The parties stipulated to

---

[1] Memorandum Decision and Order Regarding Claim Construction and Denying Russell's Motion to Reopen ("First Claim Construction Order"), docket no. 261, filed under seal Sep. 2, 2015.

[2] Order Granting Russell Brands, LLC's Motion for Leave to Amend Affirmative Defenses and Counterclaims at 2, docket no. 264, entered Sep. 25, 2015.

[3] Second Amended Answer, Affirmative Defenses, and Second Amended Counterclaims in Response to First Amended Complaint for Patent Infringement at 8, ¶ 6, docket no. 265, filed Oct. 2, 2015.

allow Russell to file a Third Amended Answer, which included the 2014 Patents and counterclaims against Lifetime Products, Inc. ("Lifetime").[4] Lifetime's Answer to Russell's counterclaims asserted additional counterclaims against Russell and argues that Russell had infringed the 2014 Patents.[5]

On March 1, 2016, Russell moved for supplemental claim construction of the 2014 Patents.[6] The motion was granted in an order[7] which allowed the parties to exchange information regarding proposed claim constructions and file statements on disputed constructions. The order granting supplemental claim construction also set a hearing for May 6, 2016.[8] Due to conflicts with cases taking priority, the May 6 claim construction hearing was cancelled.

Due to the very thorough and clear briefing,[9] oral argument is not necessary. Neither *Markman*[10] nor the Local Patent Rules[11] require a claim construction hearing. It is presumed that the parties would not take different positions at a hearing than they took in their briefing. Further, a *Markman* hearing was previously held on similar terms in nearly identical patents. Thus, this Memorandum Decision and Order sets forth the construction of the terms newly at issue without a *Markman* hearing.

---

[4] Third Amended Answer, Affirmative Defenses, and Third Amended Counterclaims in Response to First Amended Complaint for Patent Infringement ("Third Amended Answer") at 8, ¶ 6, docket no. 274, filed Nov. 10, 2015.

[5] Lifetime Products, Inc.'s Answer and Counterclaims in Response to Russell Brands, LLC's Third Amended Counterclaims at 109-111, ¶¶ 8-21, docket no. 287, filed Dec. 10, 2015.

[6] Defendant Russell Brands, LLC's Motion for Scheduling Conference, docket no. 340, filed Mar. 1, 2016.

[7] Order on Motion for Scheduling Conference and Setting Supplemental Claim Construction Schedule, docket no. 345, filed Mar. 10, 2016.

[8] *Id.* at 2.

[9] Joint Supplemental Claim Construction and Prehearing Statement, docket no. 347, filed Mar. 18, 2016; Russell Brands, LLC's Opening Supplemental Claim Construction Brief ("Russell's Opening Brief"), docket no. 358, filed Apr. 22, 2016; Lifetime's Opening Supplemental Claim Construction Brief ("Lifetime's Opening Brief"), docket no. 359, filed Apr. 22, 2016; Russell Brands, LLC's Responsive Supplemental Claim Construction Brief ("Russell's Responsive Brief"), docket no. 363, filed Apr. 29, 2016; Lifetime's Responsive Supplemental Claim Construction Brief, docket no. 364, filed Apr. 29, 2016.

[10] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

[11] LPR 4.3.

# TABLE OF CONTENTS

FIGURE 1 ................................................................................................................ 3
TERMS .................................................................................................................... 5
INDEFINITENESS .................................................................................................. 10
    Burden of Proving Indefiniteness ...................................................................... 11
    "Adhesive Has/Having" ...................................................................................... 12
    "Elastic Bonding" .............................................................................................. 13
    "Securely Connect" ............................................................................................ 15
    Phrases Using "Sufficient Flexibility and Adhesion" ........................................ 18
CLAIM CONSTRUCTION ..................................................................................... 22
    1.    "adhesive has/having" ........................................................................... 23
    2.    "[backboard] bonding surface [of the backboard]" ............................... 25
    3.    "Direct[ly]" ............................................................................................ 27
    4.    "elastic bonding" .................................................................................... 29
    5.    "liquid" ................................................................................................... 30
    6.    "securely connect" ................................................................................. 33
    7.    "single layer of [] adhesive " and "single layer of adhesive of the same material"
    .................................................................................................................. 34
    8.    Phrases using "sufficient flexibility and adhesion" ............................... 36
    9.    Phrase using "sufficient flexibility to allow" ........................................ 37
    10.    Phrases using "sufficient flexibility . . . to dissipate" ......................... 40
ORDER ................................................................................................................... 40

# FIGURE 1[12]



The specification, which is nearly identical in all patents at issue, explains that the entire

figure above shows a "cross-sectional view of a cut-away portion of an acrylic basketball

---

[12] '550 Patent fig. 1; *see also* '111 Patent fig. 1; '935 Patent fig. 1; '463 Patent fig. 1; '034 Patent fig. 1.

backboard assembly **10**."[13] This includes "an acrylic backboard **12** bonded to a frame structure **14**."[14] "The backboard **12** includes a backboard bonding surface **16**, and the frame structure **14** includes a frame bonding surface **18**."[15] "An elastomeric adhesive **20** is sandwiched between the two bonding surfaces **16** and **18**. The elastomeric adhesive **20** replaces the VHB double-sided tape currently used with acrylic backboards."[16] "To provide the currently preferred adhesive bond gap [which is labeled "A" in Figure 1], bond gap spacers **22** are located between the frame bonding surface and the backboard bonding surface."[17] "Although the bond width [which is labeled "B" in Figure 1] is not critical to the present invention, it is presently preferred to apply the elastomeric adhesive with a bond width in the range from about 1 cm to 2 cm."[18]

---

[13] '111 Patent col. 2 ls. 37-38.

[14] *Id.* at col. 2 ls. 39-40.

[15] *Id.* at col. 2 ls. 40-42.

[16] *Id.* at col. 2 ls. 42-45.

[17] *Id.* at col. 3 ls. 9-11.

[18] *Id.* at col. 4 ls. 33-36.

**TERMS**

The parties submitted the following disputed terms for construction:[19]

| No. | Claim Term or Phrase | Lifetime's Proposed Construction | Russell's Proposed Construction |
|---|---|---|---|
| 1 | "adhesive has/having" | Plain and ordinary meaning | Indefinite<br><br>In the alternative, " 'the adhesive itself has,' but not 'the adhesive itself provides' " |
| 2 | "[backboard] bonding surface [of the backboard]" | Plain and ordinary meaning | The portion of the backboard material directly contacted by the adhesive or the ink. When ink is present on the backboard, the ink is not the bonding surface. |
| 3 | "Direct[ly]" | Plain and ordinary meaning | "Direct" and "directly" means "without intervening materials, structures, or layers" |
| 4 | "elastic bonding" | A bond where the adhesive exhibits elastomeric properties | Indefinite |
| 5 | "liquid" | Plain and ordinary meaning | A substance that flows under gravity or pressure |
| 6 | "securely connect" | Plain and ordinary meaning | Indefinite |

---

[19] Disputed Constructions, Ex. B to Joint Supplemental Claim Construction and Prehearing Statement, docket no. 347-2, filed Mar. 18, 2016. The parties originally included 13 items on their list of disputed terms, but limited the list to ten terms after being ordered to do so. *See* Docket Text Order, docket no. 348, entered Mar. 21, 2016 (ordering parties to limit disputed terms under LPR 4.1(b)).

| No. | Claim Term or Phrase | Lifetime's Proposed Construction | Russell's Proposed Construction |
|---|---|---|---|
| 7 | "single layer of [] adhesive " vs. "single layer of adhesive of the same material" | Plain and ordinary meaning | "Single Layer of [] adhesive" means "One, and only one, continuous mass or structure of adhesive without interruptions. Except in claims that expressly state to the contrary, the adhesive may be tape or a non-tape adhesive, and may be of more than one material." <br><br> "Single layer of adhesive of the same material" means "One, and only one, continuous mass or structure of adhesive without interruptions. Except in claims that expressly state to the contrary, the adhesive may be tape but must be one material" |

| No. | Claim Term or Phrase | Lifetime's Proposed Construction | Russell's Proposed Construction |
|-----|----------------------|--------------------------------|----------------------------------|
| 8 | Phrases using "sufficient flexibility and adhesion": | Plain and ordinary meaning | Indefinite |
| | 463/1: "sufficient flexibility and adhesion to allow the basketball backboard to be used for playing the game of basketball" | Through the Court's previous ruling on claim construction (Docket No. 261), the Court has given sufficient guidance to determine the plain and ordinary meaning. | |
| | 034/1, 18, 35, 39, 43: "sufficient flexibility and adhesion to allow the basketball backboard to be used for playing the game of basketball" | | |
| | 463/45: "sufficient flexibility and adhesion to allow the basketball backboard to be used for playing the game of basketball" | | |

| No. | Claim Term or Phrase | Lifetime's Proposed Construction | Russell's Proposed Construction |
|---|---|---|---|
| 9 | Phrases using "sufficient flexibility … to dissipate"<br><br>463/21: "sufficient flexibility in the bond to dissipate impact energy from the basketball backboard and to the basketball backboard frame when a basketball strikes the basketball backboard when playing the game of basketball"<br><br>463/26, 40, 43, 61: "sufficient flexibility in the bond to dissipate impact energy between the basketball backboard and the basketball backboard frame when a basketball strikes the basketball backboard to allow the basketball backboard to be used for playing the game of basketball"<br><br>463/27: "sufficient flexibility in the bond to dissipate impact energy between the basketball backboard and the basketball backboard frame when a basketball strikes the basketball backboard to allow the basketball backboard to be used for playing the game of basketball; and wherein the [] adhesive provides elastic bonding between the basketball backboard frame and a basketball backboard to allow the basketball backboard to be used for playing the game of basketball"<br><br>463/44: "sufficient flexibility in the bond to dissipate impact energy between the basketball backboard and the frame when a basketball strikes the basketball backboard to allow the basketball backboard to be used for playing the game of basketball; and wherein the adhesive is an elastomeric adhesive that provides elastic bonding between the basketball backboard and the frame to allow the basketball backboard to be used for playing the game of basketball."<br><br>034/1: "sufficient flexibility in the bond to dissipate impact energy from the backboard to the frame when a basketball strikes the backboard when playing the game of basketball"<br><br>034/12, 29: "sufficient flexibility in the bond to dissipate impact energy from the backboard to the frame when a basketball strikes the backboard when playing the game of basketball"<br><br>034/35, 39: "sufficient flexibility in the bond to dissipate impact energy from the backboard to the frame when a basketball strikes the backboard when playing the game of basketball"<br><br>034/37, 48, 41, 50: "sufficient flexibility to dissipate impact energy from the backboard to the frame when a basketball strikes the backboard when playing the game of basketball" | Plain and ordinary meaning<br><br>Through the Court's previous ruling on claim construction (Docket No. 261), the Court has given sufficient guidance to determine the plain and ordinary meaning. | Indefinite |

| No. | Claim Term or Phrase | Lifetime's Proposed Construction | Russell's Proposed Construction |
|---|---|---|---|
| 10 | "sufficient flexibility to allow" | Plain and ordinary meaning<br><br>Through the Court's previous ruling on claim construction (Docket No. 261), the Court has given sufficient guidance to determine the plain and ordinary meaning. | Indefinite |

## INDEFINITENESS

As noted in the preceding chart, Russell argues that several claim terms are indefinite, including: "adhesive has/having;" "elastic bonding;" "securely connect;" phrases using "sufficient flexibility and adhesion;" and phrases using "sufficient flexibility . . . to dissipate." Russell again asserts similar arguments as those made in the first round of claim construction.

As stated previously,[20] a patent's claims and specification must be clear. Section 112 of the Patent Act provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.[21]

The Patent Act further states that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."[22]

In *Nautilus, Inc. v. Biosig Instruments, Inc.*,[23] the U.S. Supreme Court said Section 112 means that:

> a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, *fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.*[24]

The Supreme Court noted that "patents are 'not addressed to lawyers, or even to the public generally,' but rather to those skilled in the relevant art."[25] The Court explained that "[o]n

---

[20] First Claim Construction Order at 8-10.

[21] 35 U.S.C. § 112(a).

[22] *Id.* § 112(b).

[23] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).

[24] *Id.* at 2124 (emphasis added).

[25] *Id.* at 2128 (quoting *Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403, 437 (1902)).

the one hand, the definiteness requirement must take into account the inherent limitations of language."[26] Because of this, "[s]ome modicum of uncertainty" is tolerable.[27] "At the same time," the Court continued, "a patent must be precise enough to afford clear notice of what is claimed, thereby 'apprising the public of what is still open to them.'"[28]

"The definiteness requirement, so understood, mandates clarity, *while recognizing that absolute precision is unattainable*."[29] "[T]he certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter."[30]

### Burden of Proving Indefiniteness

Patents are presumed to be valid.[31] "[C]laims are not indefinite merely because they present a difficult task of claim construction."[32] "Proof of indefiniteness requires . . . an exacting standard because claim construction often poses a difficult task over which expert witnesses, trial courts, and even the judges of [the Federal Circuit] may disagree."[33] Therefore, a party asserting indefiniteness must prove by "clear and convincing evidence" that one of ordinary skill in the art could not discern the boundaries of the claim based upon the claim language, the specification, the prosecution history, and the knowledge in the relevant art.[34] The terms Russell asserts are indefinite will be analyzed according to these principles.

---

[26] *Nautilus*, 134 S. Ct. at 2129 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002)).

[27] *Nautilus*, 134 S. Ct. at 2129 (quoting *Festo*, 535 U.S. at 741).

[28] *Nautilus*, 134 S. Ct. at 2129 (quoting *Markman*, 517 U.S. at 373) (internal quotation marks and alteration omitted).

[29] *Nautilus*, 134 S. Ct. at 2129 (emphasis added).

[30] *Id.* (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916)).

[31] *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344–45 (Fed. Cir. 2007).

[32] *Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1249 (Fed. Cir.2008).

[33] *Id.* (internal quotation marks and citation omitted).

[34] *Id.* at 1249-50; *see also Young*, 492 F.3d at 1344–45 ("Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.").

**"Adhesive Has/Having"**

Russell argues that the term "adhesive has/having" is indefinite. According to Russell, "Lifetime's prosecution statements and expert admit the phrases have more than one meaning, and the proper meaning is not reasonably certain."[35] Russell argues that Lifetime's expert Mr. Allen defined "adhesive has" as "either what the properties **are** in the adhesive that is the subject of the claim, or what properties the adhesive is '**imparting**' to something else in the assembly."[36] Russell argues that Mr. Allen's interpretation using the word "impart" is not appropriate because "adhesive imparts" simply means "adhesive provides," and the term "adhesive has" cannot mean "adhesive provides" because of claim differentiation.[37] Claim 1 and Claim 12 in the '034 Patent must have a different scope, Russell argues. "Adhesive has" cannot mean "adhesive provides."[38]

Lifetime, on the other hand, argues that the term "adhesive has" is not indefinite and should be given its plain and ordinary meaning.[39] Lifetime argues that the word "adhesive" has already been construed in the prior Claim Construction Order, along with the "sufficient" terms.[40] "Therefore," according to Lifetime, "there is no new issue here for the Court to decide . . . ."[41] Lifetime further argues that "Russell's expert witness confirmed during her deposition that her opinion that 'adhesive has' is indefinite ultimately stems from the 'sufficient' terms rather than trouble understanding the meaning of the terms 'adhesive has' in the context of

---

[35] Russell's Opening Brief at 10.

[36] *Id.* at 11 (emphasis by Russell).

[37] *Id.*

[38] *Id.* at 12.

[39] Lifetime's Opening Brief at 20.

[40] *Id.*

[41] *Id.*

the invention."[42] Thus, according to Lifetime, Russell fails to show that the term "adhesive has" is indefinite.

Lifetime is correct. Russell has failed to show that one of ordinary skill in the art could not discern the boundaries of the claim based upon the claim language, the specification, the prosecution history, and the knowledge in the relevant art.[43] While Russell is correct that the term "adhesive has" cannot mean the same thing as "adhesive provides," Russell has not shown that those terms must mean the same thing. In fact, Russell acknowledges that Mr. Allen, one of ordinary skill in the art, stated that "adhesive has" can be interpreted as defining "what the properties *are* in the adhesive that is the subject of the claim." Russell does not explain how that interpretation is not plausible and why the phrase "adhesive has" would be indefinite under that interpretation. Thus, Russell has failed to carry its burden to establish indefiniteness of the term "adhesive has/having."

The specific construction of "adhesive has/having" will be discussed below. For purposes of indefiniteness, the term "adhesive has/having" informs with reasonable certainty those skilled in the art about the scope of the invention.[44]

### "Elastic Bonding"

Russell argues that the term "elastic bonding" is indefinite because "[a]n artisan has no guidance from the intrinsic record for what 'elastic bonding' may mean—it is not discussed anywhere in either the specification or in the file histories across these patents."[45] Russell argues that "elastic bonding" cannot mean the same thing as "elastomeric adhesive" due to claim

---

[42] *Id.*

[43] *Halliburton*, 514 F.3d at 1249-50; *see also Young*, 492 F.3d at 1344–45 ("Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.").

[44] *See Nautilus*, 134 S.Ct. at 2124.

[45] Russell's Opening Brief at 12.

differentiation.[46] Russell also argues that "elastic bonding" cannot mean the same thing as "sufficient flexibility" or "sufficient flexibility to dissipate."[47] Russell believes that because some elastomeric adhesives are more elastic than others, and because there is no instruction about how much elasticity is needed to form an "elastic" bond, the term "elastic bonding" is indefinite.

Russell also argues that because there is no description about "environmental and configuration factors—hot or cold weather, for example, or elongation, stiffness, and compression—it is impossible to derive any objective boundaries about "what is, and what isn't elastomeric.[48] According to Russell, it follows that the scope of the term "elastic bonding" is not reasonably certain.[49] Russell recognizes that an artisan "would understand that the term 'elastic bonding' does not mean purely elastic," but argues that the artisan "would not know how much elasticity, as opposed to dissipation, needs to be provided."[50]

Lifetime disagrees, arguing that the term is reasonably certain and that Russell places too much emphasis on "hyper-technicality" regarding the word "elastic."[51] Lifetime argues that the term "elastic bonding" cannot mean that "*all* the energy absorbed by the adhesive bond is elastically returned."[52] If such an argument were adopted, Lifetime argues, it would result in "absurdity" because a completely "elastic" bond could not dissipate any impact energy; yet that is precisely what the bond is designed to do.[53] Thus, Lifetime argues, "[i]n the context of the

---

[46] *Id.* at 12-13.

[47] *Id.* at 13.

[48] *Id.* at 15-16.

[49] *Id.* at 16.

[50] *Id.* at 13-14.

[51] Lifetime's Opening Brief at 23.

[52] *Id.*

[53] *Id.* at 23-24.

patent claims, 'elastic bond' does not convey to one of skill in the art a hyper-technical meaning that a Ph.D. chemist might attribute to it."[54]

Lifetime overstates Russell's argument in that Russell does not claim that "elastic bonding" means complete energy return,[55] but Lifetime is correct that the term "elastic bonding" is reasonably certain to a person of ordinary skill in the art. In the context of these patent claims, the term "elastic bond" is understood and not indefinite. As Mr. Allen testified:

> Anyone that has been involved with any material that is flexible, rubberized, whether it be a tire or an inflatable basketball or in this particular case, adhesives, understands that materials have properties, and the ability to stretch and return back to its original shape is a feature that's referred to as elastomeric. It's not grossly technical, but it is a technical term.[56]

Thus, under this understanding from someone who has actual backboard design and construction experience, the term "elastic bonding" is not indefinite because it does not fail to provide reasonable certainty about the scope of the term.[57] The specific construction of "elastic bonding" will be discussed in the "Claim Construction" section below.

### "Securely Connect"

Russell also argues that the term "securely connect" is indefinite.[58] Russell believes that "securely connect" is indefinite because it must have a distinct meaning from other terms in the patents due to claim differentiation, yet has "no reasonably discernible bounds."[59] Russell highlights the difference between Claim 1 and Claim 12 in the '034 Patent, one of which states

---

[54] *Id.* at 24.

[55] Russell's Responsive Brief at 8.

[56] Lifetime's Opening Brief at 24 (quoting Allen Dep. (Apr. 6, 2016) at 75:3-14, Ex. 9 to Lifetime's Opening Brief, docket no. 359-9, filed Apr. 22, 2016).

[57] *See Nautilus*, 134 S.Ct. at 2124 (stating that indefiniteness is only found when the claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention").

[58] Russell's Opening Brief at 16.

[59] *Id.*

that the adhesive has "sufficient flexibility and adhesion" for playing the game of basketball, while the other states that the adhesive "provides sufficient adhesion to securely connect the backboards and the frame."[60] Russell argues that there are two distinct meanings represented in these claims—a secure bond and sufficient adhesion—but there are no objective limits defining the "degree of connection required."[61] Russell asserts that Lifetime has stated that the connection must be stronger than the connection provided by double-sided tape and that an artisan "would have to play basketball on an adhesive backboard to determine if the adhesive securely connects the backboard to the frame," but that Lifetime further stated that "how the artisan plays the game of basketball, who plays the game of basketball, and where the game of basketball is played on the backboard will all affect whether or not the artisan believes he has found an adhesive that will securely connect."[62] Russell cites Lifetime's expert, Mr. Allen, stating that "it would be pretty subjective" on the part of an artisan "as to what he wants to do to determine that he's got something viable."[63] Russell believes that Lifetime purposefully left the term "securely connect" ambiguous and Lifetime should therefore be left with a finding of indefiniteness with respect to this term.[64]

Lifetime disagrees with Russell and takes the position that "securely connect" is "an ordinary phrase that reinforces that the claims cover backboards for the actual game of basketball and not toy or novelty items."[65] Lifetime argues that "[t]hose familiar with basketball backboards understand and will agree within a reasonable degree of certainty whether a backboard and its

---

[60] *Id.*

[61] *Id.* at 16-17.

[62] *Id.* at 18.

[63] *Id.*

[64] *Id.*

[65] Lifetime's Opening Brief at 22.

frame are securely connected such that it can be used for its intended purpose."[66] Lifetime also argues that "[t]hose of skill in the art understand, and the patent teaches, how to securely connect the backboard and its frame using an adhesive."[67]

Lifetime is correct. Russell's argument suggests that unless there are specific, objective, indisputable boundaries that an artisan can apply, or if an artisan states that the meaning of a term is subjective, the term is indefinite.[68] This is not the case. As Russell recognized in the first claim construction hearing, mathematical precision is not required.[69] Perfect specificity is not required.[70] Instead, the test is whether a person having ordinary skill in the art would be able to understand with reasonable certainty what "securely connect" means. Russell has shown that certain artisans may find different parameters satisfy the term "securely connect," but has not carried its burden to show, by clear and convincing evidence, that an artisan would fail to understand with reasonable certainty what "securely connect" means in the context of a basketball backboard.

It is important to emphasize that "[s]ome modicum of uncertainty" is tolerable.[71] On one hand, "a patent must be precise enough to afford clear notice of what is claimed, thereby 'apprising the public of what is still open to them.'"[72] But at the same time, "absolute precision

---

[66] *Id.*

[67] *Id.*

[68] *See* First Claim Construction Order at 16-19.

[69] Feb. 5, 2015 Claim Construction Hearing Tr. 148:6-10, docket no. 251, filed Apr. 16, 2015.

[70] First Claim Construction Order at 19 (stating that a "listing of all possible sizes and configurations" was not needed to show that the phrase "sized and configured" was sufficiently definite) (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014)).

[71] *Nautilus*, 134 S. Ct. at 2129 (quoting *Festo*, 535 U.S. at 741).

[72] *Nautilus*, 134 S. Ct. at 2129 (quoting *Markman*, 517 U.S. at 373) (internal quotation marks and alteration omitted).

is unattainable."[73] "[T]he certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter."[74] Thus, even though there may be some uncertainty—or "subjectivity," as Mr. Allen stated—as to the meaning of "securely connect," this uncertainty is tolerable. Absolute precision is not attainable. In the context of basketball backboards, those skilled in the art have reasonable certainty about when something is "securely connect[ed]" for use in the game of basketball, and when it is not. Thus, "securely connect" is not indefinite.

### Phrases Using "Sufficient Flexibility and Adhesion"

Although Russell recognizes that "[t]his Court previously addressed certain terms involving the concept of 'sufficiency' of the adhesive . . . for the game of basketball,"[75] Russell argues that the "sufficiency" terms in the 2014 Patents must have unique and distinct meaning that is different than the meaning of the "sufficiency" terms in the First Claim Construction Order.[76] Russell argues that whereas there were three "sufficiency" terms at issue in the First Claim Construction Order, now there are "twelve different sufficiency terms," each of which is different enough to merit its own unique definition.[77] Russell argues that these terms cannot have "plain and ordinary meaning" as Lifetime suggests because each of the terms uses different wording.[78] Russell "specifically incorporates" arguments that it made previously with respect to the "sufficiency" terms,[79] which were rejected.[80]

---

[73] *Nautilus*, 134 S. Ct. at 2129 (emphasis added).

[74] *Id.* (quoting *Minerals Separation*, 242 U.S. at 270).

[75] Russell's Opening Brief at 18.

[76] *Id.* at 24.

[77] *Id.* at 18.

[78] *Id.* at 18-19.

[79] *Id.* at 19.

[80] First Claim Construction Order at 20-24.

In making this argument, Russell misreads the First Claim Construction Order. In the First Claim Construction Order, there were three "sufficient" terms at issue: (1) "sufficient adhesion and flexibility . . . to be used in the game of basketball;" (2) "sufficient strength and flexibility . . . to be used in the game of basketball;" and (3) "sufficient flexibility in the bond to dissipate impact energy from the acrylic basketball backboard to the basketball backboard frame when a basketball strikes the backboard when playing the game of basketball." While all three terms did not have the same definition, two of the three did.[81] With respect to those two terms, it was determined that:

> While the terms each use slightly different language, each term conveys a similar concept. For example, when the claim language states "sufficient *adhesion* and flexibility," this conveys the same concept as "sufficient *strength* and flexibility" because the adhesive creates the bond between the backboard and the frame, and the bond provides the adhesive *strength* to hold the backboard and frame together.[82] Any difference between the word "adhesion" and the word "strength" is so slight in the context of this patent that it does not render the claims containing those words indefinite. Further, it does not matter that the phrase "sufficient *strength* and flexibility" is preceded by the words "a bond of" because the specification teaches[83] that the bond—which is formed by the adhesive— provides the qualities of adhesion, strength, and flexibility.[84]

Furthermore, it was determined that the third term, "sufficient flexibility in the bond to dissipate . . . ," conveyed a "similar . . . but separate" idea as the other two "sufficient" terms, which was that "the adhesive bond must be flexible enough to withstand a *particular kind of stress* encountered while playing the game of basketball—the ball striking the backboard."[85]

---

[81] *Id.* at 58.

[82] *See, e.g.*, '111 Patent col. 1 ls. 26-27, col. 2 ls. 48 (explaining that the bond, which is formed by the adhesive, must have "sufficient strength" and there must be "flexibility in the bond").

[83] *See, e.g., id.* col. 2 ls. 46-50.

[84] First Claim Construction Order at 19-20.

[85] *Id.* at 59.

Thus, there was no strict interpretation of the "sufficient" terms that required each to have a distinct meaning. Rather, even though they used slightly different language, each term conveyed a similar concept. Where the language of a term was clearly different, such as when the claim stated "to dissipate impact energy . . . when a basketball strikes the basketball backboard," that term was given a distinct meaning. But where words conveyed the same idea, such as "adhesion" and "strength," they were construed to have the same meaning.

The same logic applies here. Even though there are several combinations of the "sufficient" terms in the 2014 Patents, it does not follow that the varying language automatically results in indefiniteness or that every term must mean something unique.

The "sufficient" terms that Russell now identifies in the as indefinite in the 2014 Patents convey a similar concept, which is that the adhesive bond provides the qualities of adhesion, strength, and flexibility sufficient to withstand the rigors of the actual game of basketball. Russell fails to point to any clear and convincing evidence that anyone besides its lawyers and its own retained expert have any trouble determining what these terms mean. "[P]atents are 'not addressed to lawyers, or even to the public generally,' but rather to those skilled in the relevant art."[86] Forced or strained constructions should not guide the indefiniteness analysis. Rather, the analysis is guided by what an artisan would understand from a plain reading of the terms. A plain reading of these terms shows that these terms are not indefinite.

Because Russell "specifically incorporates" its arguments that were previously rejected in the First Claim Construction Order, the reasons identified in the First Claim Construction Order for denying Russell's indefiniteness arguments apply equally here. "Specifically, . . . (1) Russell's indefiniteness position is not supported by the intrinsic evidence, (2) Russell's

---

[86] *Nautilus*, 134 S.Ct. at 2128 (quoting *Carnegie Steel*, 185 U.S. at 437).

indefiniteness position is not supported by the context of the art of basketball backboard

engineering and construction, and (3) Russell's indefiniteness position is not supported when

viewed from the perspective of one of actual skill in the art."[87]

Much of Russell's argument with regard to the "sufficient" terms is merely repeated

argument from the first round of claim construction. Russell argues that the 2014 Patents are

subjective, use functional claiming, and have too many confusing and contradictory claims.

These arguments fail, as was described in the First Claim Construction Order.[88] The following

passage from the First Claim Construction Order applies to this current round of claim

construction, and explains why the "sufficient" terms are not indefinite:

> "[A]lthough Russell asserts that "[t]he degree of strength and flexibility are
> ambiguous and an Artisan cannot know how to balance them," this is not
> supported by the intrinsic evidence. The specification teaches that the baseline for
> whether the adhesive performed as well as double-sided tape was "a 20°
> deflection at 125 inch-pounds torque." The specification also explained how to
> perform the test, and gave examples of the double-sided tape that was used in
> previous basketball backboard systems."[89]

It is unclear why Lifetime chose to use different wording[90] to convey the same basic

concept that the adhesive in the invention creates a bond between the backboard and the frame

that is strong enough and flexible enough to allow the backboard to stay affixed to the frame

when used for the actual game of basketball, not "toy" or "novelty" basketball. But Lifetime is

entitled to use different wording so long as the claims do not fail to inform, with reasonable

---

[87] Lifetime's Opening Brief at 17 (quoting First Claim Construction Order at 19, 21-22).

[88] *See* First Claim Construction Order at 22 ("To the extent objective bounds are needed, they are provided in the specification, which explains the type of adhesive used, the cure time, the bond gap, the use of bond gap spacers, and other features, and provides cognizable parameters for those features."); *see also id.* ("[O]ne having skill in the art of constructing basketball backboards could use these intelligible parameters as a baseline to determine whether "sufficient adhesion and flexibility" or "sufficient flexibility in the bond" is met.").

[89] *Id.*

[90] *See, e.g.*, '034 Patent, Claim 1 ("sufficient flexibility and adhesion to allow the basketball backboard to be used for playing the game of basketball") and '463 Patent, Claim 28 ("sufficient flexibility to allow the basketball backboard to be used for playing the game of basketball").

certainty, those skilled in the art about the scope of the invention.[91] Here, an artisan is able to

determine, with reasonable certainty, the meaning and concept of each term even if the words of

each term vary slightly. The minor variations between the "sufficient" phrases do not render the

claims unintelligible, nor do they lead to confusion as Russell suggests.[92] The precise definitions

of the terms will be listed in the "Claim Construction" section below.

## CLAIM CONSTRUCTION

Having found that none of the terms at issue are indefinite, it is necessary to determine

the actual construction of the terms submitted by the parties.

The claims of a patent "define the invention to which the patentee is entitled the right to

exclude."[93]  Claim terms "are generally given their ordinary and customary meaning,"[94] and a

court is to determine "the ordinary and customary meaning of undefined claim terms as

understood by a person of ordinary skill in the art at the time of the invention . . . ."[95] "Common

words, unless the context suggests otherwise, should be interpreted according to their ordinary

meaning."[96]

Claim construction is an issue of law for the court to decide.[97]  The starting point for

construing claim terms is the intrinsic evidence (the claims, the patent specification, and the

---

[91] *Nautilus*, 134 S.Ct. at 2124 (emphasis added).

[92] *See* Russell's Opening Brief at 35 ("Far from concisely claiming a novel invention, the overlapping claims of these patents lead inevitably, and impermissibly, to confusion.").

[93] *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)(citation and quotation omitted).

[94] *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

[95] *Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1177 (Fed. Cir. 2009).

[96] *Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325, 1336 (Fed. Cir.1998).

[97] *Markman*, 517 U.S. at 384.

prosecution history).[98]  "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term."[99]

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."[100] Although claims must be read in light of the specification, limitations from the specification may not be read into the claims.[101] It is well settled that the invention should not be limited to the specific examples or preferred embodiment found in the specification.[102]

Courts may also rely on extrinsic evidence in construing claims. Extrinsic evidence is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."[103] "Within the class of extrinsic evidence, . . . dictionaries and treatises can be useful in claim construction."[104]

### 1.  "adhesive has/having"

Defined as:  *"Adhesive itself has."*

As discussed above, the term "adhesive has/having" is not indefinite. The term "adhesive" was previously defined in the First Claim Construction Order as "material that binds other materials together by surface attachment, which does not include double-sided tape."[105] Thus, the only word left in the disputed phrase is "has" or "having."

---

[98] *Phillips,* 415 F.3d at 1313.

[99] *Vitronics,* 90 F.3d at 1583.

[100] *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998).

[101] *See Phillips*, 415 F.3d at 1323; *Comark Commc'ns. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir.1998).

[102] *See Phillips*, 415 F.3d at 1323.

[103] *Markman*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc).

[104] *Phillips*, 415 F.3d at 1318.

[105] First Claim Construction Order at 27.

Russell argues that "adhesive has" cannot mean the same thing as "adhesive provides."[106] Russell is partially correct. "Adhesive has" cannot be defined the same way as "adhesive provides" because "has" means something slightly different than "provides." But both phrases convey the same concept that the adhesive possesses and exhibits certain qualities in the basketball backboard assembly. Therefore, the precise wording of each phrase's definition will be different based on the different wording, but Lifetime is correct that the "inventive concept" of the two phrases is unchanged.[107] It is "not unknown for different words to be used to express similar concepts" and "claim language is not indefinite simply because there is minor variation among phrases."[108]

When the claims state that the "adhesive has" certain qualities, this is like saying that the adhesive "possesses" certain properties. This is slightly different than "adhesive provides," which means that the adhesive "gives" the basketball backboard assembly certain qualities and reflects integrated use. The adhesive must "have" those qualities in order to "provide" them, so the terms are related. But the term "adhesive provides" describes what qualities the adhesive gives to the assembly, while "adhesive has" describes the properties the adhesive possesses. In other words, the word "has" conveys possession.

As Russell pointed out, Mr. Allen testified that "adhesive has/having" can mean two things. It can mean "either what the properties are in the adhesive that is the subject of the claim, or what properties the adhesive is 'imparting' to something else in the assembly."[109] Thus, based on the testimony of Mr. Allen, the term "adhesive has" can signify what properties the adhesive

---

[106] Russell's Opening Brief at 11.

[107] *See* Lifetime's Opening Brief at 20.

[108] First Claim Construction Order at 12-13 (quoting *Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373-74 (Fed. Cir. 2004)).

[109] Russell's Opening Brief at 11 (emphasis omitted) (citing Allen Dep. (Apr. 6, 2016) at 29:19-33:11, Ex. 17 to Russell's Opening Brief, docket no. 358-20, filed Apr. 22, 2016).

possesses. It can also mean, according to Mr. Allen, that the adhesive imparts certain qualities. But those two meanings are related. When adhesive is present in use, it provides. Russell's suggestion to specifically state in the definition that "adhesive has" does not include "adhesive provides" is rejected.

As the reasoning in the First Claim Construction Order indicated when discussing "adhesive provides," the definition "adhesive itself has" does not mean that *only* the adhesive has. Other parts in an assembly may also possess flexibility or strength or other qualities. But when a claim states "adhesive has/having" certain qualities or characteristics it means the "adhesive itself has" or the adhesive itself possesses those qualities or characteristics. The adhesive may then also provide those qualities or characteristics as well, but the "adhesive itself has" those qualities. Therefore, "adhesive has/having" is defined as: "adhesive itself has."

## 2.   "[backboard] bonding surface [of the backboard]"

<u>Defined as:</u> *Plain and ordinary meaning*

The parties disagree about how to define "bonding surface." Russell argues that the proper definition is "the portion of the backboard material directly contacted by the adhesive or the ink. When ink is present on the backboard, the ink is not the bonding surface." Lifetime's proposed construction is "plain and ordinary meaning."

Russell argues that Lifetime has been inconsistent in proposing a definition, arguing to the PTO that "bonding surface" has a particular meaning but then stating during claim construction that it should be given its ordinary meaning.[110] Russell argues that since Lifetime has chosen to tell the PTO that "bonding surface" has a "particular meaning," "Lifetime should

---

[110] Russell's Opening Brief at 8-9.

not be permitted to keep that meaning from the jury by the empty mantra of 'ordinary meaning.'"[111]

Russell further argues that its construction "is supported by the specification and prosecution history" because the specification differentiates between a "bonding surface" and "ink."[112] Russell argues that the specification states that inks are printed "on" the bonding surface and are "bonded to" the bonding surface, and therefore, a "bonding surface" cannot include ink.[113] Russell's proposed construction is strained and not supported by the intrinsic record.

Contrary to Russell's argument that its construction is the "most logical reading of these claim terms in the context," Russell's proposed construction would mean that if ink is present on the backboard, the backboard can no longer be considered a "bonding surface." This is an illogical result in the context of the claims. The claims provide for preparation of the "bonding surface" of the frame and the backboard to receive adhesive, and then for the frame and the backboard to be adhered together.[114] The presence of ink or coating on a backboard does not remove the backboard's "bonding surface."

Even if ink is "bonded to" the backboard, the backboard may still be bonded to the frame with adhesive. That is, the application of ink does not eliminate the ability of the frame and backboard to be adhered together. Instead, the surface of the frame and the surface of the backboard, even when covered with ink or coating, can still be a "bonding surface" because it can still be prepared with adhesive and adhered together. This is the more logical reading of the

---

[111] *Id.* at 9.

[112] *Id.*

[113] *Id.*

[114] '463 Patent, Claims 19, 20, 45.

claims. Indeed, if the application of ink or coating were to "erase" the bonding surface, and the

frame or the backboard could no longer be considered to have a bonding surface for purposes of

these patents, the purpose of the claims would be defeated. Thus, a surface will still be

considered a "bonding surface" even if it is covered with ink, paint, or another substance. Russell

provides no support, other than argument from counsel, that its interpretation is correct.

Further, as noted by Lifetime, the intrinsic record shows that Mr. Allen testified that one

of ordinary skill in the art would understand "bonding surface" to mean:

> the area in which the adhesive would contact the powder-coated metal frame and
> the backboard in its—you know, in its final form, which would include graphics
> and labels, and everything that the backboard would have. So, in other words, it's
> the area in which the adhesive is applied to the backboard or to the frame, and
> then the area in which the adhesive makes contact with the backboard and the
> frame.[115]

Therefore, Russell's proposed construction is in direct conflict with the intrinsic record

and the understanding of one of ordinary skill in the art. Accordingly, the term "[backboard]

bonding surface [of the backboard]" is construed according to its plain and ordinary meaning,

which allows a surface to be considered a "bonding surface" even if it is covered by ink,

graphics, or another substance.

### 3.   "Direct[ly]"

Defined as: *Plain and ordinary meaning*

Russell argues that "directly" means "without intervening materials, structures, or

layers." Lifetime argues that Russell advances this proposed construction because Russell likely

---

[115] Lifetime's Opening Brief at 12 n. 36 (quoting Second Decl. of David A. Allen in Support of Lifetime's Opening
Supplemental Claim Construction Brief at ¶ 13, Ex. 14 to Lifetime's Opening Brief, docket no. 359-14, filed Apr.
22, 2016).

wishes to avoid infringement by arguing that ink on the backboard or paint on the frame is an "intervening layer or material."[116]

For the reasons stated in the "bonding surface" section, Russell's argument is rejected because it is contrary to the intrinsic record and the stated purpose of the patents, which clearly envision that the frame will be painted or coated with a substance and the backboard will likewise contain printed images. The application of a substance to the backboard or frame does not prohibit the backboard from being fixed "directly" to the frame. The existence of a thin layer or paint or ink does not separate the backboard and the frame in any significant manner. Indeed, absent the physical surface of the backboard or the frame, the paint, ink, or other substance has no way to provide a bonding surface to which the backboard or the frame could attach. Therefore, when, for example, Claim 49 of the '034 Patent states that the "adhesive is bonded to the image," this does not result in an "indirect" bond because the image is affixed to the backboard, and it is the frame or the backboard that provides the surface to which the other may be "directly" adhered.[117]

Russell may be correct that on the molecular level the backboard and the frame are separated by a thin, intervening layer or material. But that does not render the two parts "indirectly" connected. This is too narrow a view, and when the claims are read as a whole, is not the purpose of the language in the claims. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."[118] Because a frame and a backboard may be "directly" bonded

---

[116] Lifetime's Opening Brief at 10-11.

[117] *See* Russell's Responsive Brief at 2-3 (emphasizing Claim 49 of the '034 Patent).

[118] *Renishaw,* 158 F.3d at 1250.

together by adhesive on their respective bonding surfaces, the term directly is construed according to its plain and ordinary meaning.

### 4.   "elastic bonding"

Defined as: *"A bond where the adhesive exhibits elastomeric properties"*

As discussed above, the term "elastic bonding" is not indefinite. Russell advances no proposed construction, but Lifetime proposes "a bond where the adhesive exhibits elastomeric properties." This proposed construction appropriately conveys the meaning that "elastic bonding" does not have to be purely elastic in a technical sense (returning all absorbed energy) but, as the context of the claims shows, the bond is able to dissipate energy. That is, the bond is generally elastomeric in that it can return to shape after being impacted, but it does not return all of the energy back under a strict definition of "elastic." The context of the claims shows this to be the case.

The argument Russell advances about an artisan not knowing how much elasticity is required in an "elastic bond" is very similar to the argument Russell made during the first round of claim construction regarding the "sufficient" phrases.[119] As noted in the First Claim Construction Order,

> The specification teaches that the baseline for whether the adhesive performed as well as double-sided tape was "a 20° deflection at 125 inch-pounds torque." The specification also explained how to perform the test, and gave examples of the double- sided tape that was used in previous basketball backboard systems. Therefore, contrary to Russell's arguments, one having skill in the art of constructing basketball backboards could use these intelligible parameters as a baseline to determine whether "sufficient adhesion and flexibility" or "sufficient flexibility in the bond" is met.[120]

---

[119] *See* First Claim Construction Order at 22.

[120] *Id.* (footnotes omitted).

Thus, there are reasonable parameters listed in the specification for an artisan to determine what "elastic bonding" is. Lifetime's proposed construction captures this concept in harmony with the specification. Therefore, "elastic bonding" is construed according to Lifetime's proposed construction, which is "a bond where the adhesive exhibits elastomeric properties."

### 5. "liquid"

<u>Defined as:</u> *"A substance that flows under gravity or pressure"*

At the center of the dispute over the interpretation of this term is whether "liquid" includes paste. Lifetime argues that "liquid" is "an everyday term that does not need further construction,"[121] while Russell argues that "liquid" should be defined as "a substance that flows under gravity or pressure," which would include paste.[122] Russell argues that its construction "answers the concern [of whether "liquid" includes paste] by saying yes, liquid includes paste; [while] Lifetime's plain and ordinary meaning leaves the question open."[123] Lifetime argues that "[t]here is simply no need for further construction because when the claims say 'liquid adhesive' they mean 'liquid adhesive.'"[124]

The term "liquid" appears only in the '463 Patent in independent Claim 28 ("uncured liquid adhesive material) and dependent Claims 8 ("liquid elastomeric adhesive"), 26 ("liquid adhesive"), 42 ("liquid adhesive"), 43 ("liquid adhesive" and "uncured liquid adhesive"), 60 ("liquid adhesive"), and 61 ("liquid adhesive" and "uncured liquid adhesive"). Lifetime explains

---

[121] Lifetime's Opening Brief at 6.

[122] Russell's Opening Brief at 1-2.

[123] *Id.* at 1.

[124] Lifetime's Opening Brief at 6.

that the term "liquid" was added to the claims of the '463 Patent "to reinforce that the claims do not cover double-sided tape."[125]

"Liquid" does not appear in the specification. However, two "[s]uitable silicone adhesives" are mentioned in the specification: Dow Corning Q3-6093 and GE D1 SEA-210.[126] An information sheet for Dow Corning Q3-6093 explains that it is supplied as a "flowable liquid."[127] An information sheet for GE D1 SEA-210, however, explains that it is a "thixotropic paste," meaning it has a consistency that "makes it appropriate for application to vertical and overhead surfaces."[128]

"[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."[129] It is also true that the invention should not be limited to the specific examples or preferred embodiment found in the specification.[130] Therefore, the correct construction will not exclude the preferred embodiments identified above, but also will not limit the invention to those embodiments. "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms."[131]

---

[125] *Id.*

[126] '463 Patent col. 2:65.

[127] Information About Specialty Materials for High Technology Applications, Product Information Brochure, Dow Corning, Ex. 23 to Russell's Opening Brief, docket no. 358-26, filed Apr. 22, 2016.

[128] Preliminary Product Data Sheet D-1-DEA 210 Silicone Elastomeric Adhesive, Product Information Brochure, General Electric, Ex. 22 to Russell's Opening Brief, docket no. 358-25, filed Apr. 22, 2016.

[129] *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting *On–Line Techs., Inc. v. Bodenseewerk Perkin–Elmer GmbH*, 386 F.3d 1133, 1138 (Fed.Cir.2004)).

[130] *See Phillips*, 415 F.3d at 1323 (explaining that even if a specification "describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

[131] *Id.*

Russell's proposed construction—"a substance that flows under gravity or pressure"—comports with how a person of ordinary skill would understand the term "liquid." Lifetime's expert Dr. McCarthy testified that a "liquid" is "something that flows, that is different than a solid or a gas."[132] Dr. McCarthy also testified that a liquid is something that could be dispensed from a caulk gun in an uncured state.[133] Dr. McCarthy also testified that even if a substance has an extremely low or extremely high viscosity, it can still be considered a liquid as long as it is not a gas or a solid.[134] Mr. Allen, an artisan, testified that "liquid" is "anything that isn't a gas or a solid."[135] Mr. Allen also testified that there is a "gray area" with waxes and pastes, and did not know how other artisans in the basketball backboard industry would categorize paste adhesives. He noted that there is a difference between adhesives that are "applied or dispensed" and those that are "typically painted on or rolled on, or used with a putty knife."[136] But Mr. Allen did not state that adhesives in the latter category were not liquid adhesives; he simply stated they were different from adhesives that were applied or dispensed. Russell's proposed construction of "liquid" comports with the testimony of these witnesses.

Also, Russell's proposed construction comports with Lifetime's explanation of the term "liquid." Lifetime explains that "those of skill in the art have no problem understanding that a liquid adhesive is one that is not solid like double-sided tape and is an adhesive that is dispensed,

---

[132] McCarthy Dep. (Apr. 8, 2016) at 47:19-23, Ex. 19 to Russell's Opening Brief, docket no. 358-22, filed Apr. 22, 2016.

[133] *Id.* at 49:11-14.

[134] *Id.* at 49:15-50:1.

[135] Allen Dep. (Apr. 6, 2016) at 57:1-3, Ex. 17 to Russell's Opening Brief, docket no. 358-20, filed Apr. 22, 2016.

[136] *Id.* at 59:11-60:19.

for example, by a caulk gun or a manufacturing robot with a nozzle."[137] A "liquid" is therefore

construed as "a substance that flows under gravity or pressure."

### 6. "securely connect"

<u>Defined as:</u> *Plain and ordinary meaning*

The phrase "securely connect" is not indefinite, as discussed above. The concept of

secure connection is closely related to the "sufficient" terms that have been discussed at length in

this litigation. The phrase "provides sufficient adhesion to securely connect the backboards and

the frame" would be understood by a person of ordinary skill to mean that a backboard is

adhered to the frame well enough that it will not fall off or break when used for its intended

purpose. This informs an artisan with reasonable certainty about the scope of the claim. The

adhesive must be strong enough to hold the basketball backboard onto the frame when used in

the actual game of basketball, not "toy" or "novelty" basketball. Russell does not propose an

alternative definition to Lifetime's "plain and ordinary meaning." Instead, Russell's sole position

is that "securely connect" is indefinite. Having found that the term "securely connect" is not

indefinite, "securely connect" is construed according to its plain and ordinary meaning.

The phrase "securely connect" does not convey the exact same meaning as the

"sufficient" terms, however. As has been discussed previously, different words may convey

similar concepts without being indefinite. The words "securely connect" have an independent

meaning because they are independent words, but they also relate the similar idea that the

backboard and the frame must be connected together with a strong enough bond to withstand the

impacts created when playing the game of basketball. This is similar to the "sufficient" terms but

conveys additional meaning, and is reasonably certain to an artisan.

---

[137] Lifetime's Opening Brief at 6-7.

7. **"single layer of [] adhesive " and "single layer of adhesive of the same material"**

<u>Defined as:</u> *Plain and ordinary meaning*

Russell argues that "single layer of [] adhesive" and "single layer of adhesive of the same material" must have different meanings under the doctrine of claim differentiation.[138] Russell argues that two presumptions arise from the differing language of these phrases: (1) that when "of the same material" does *not* appear, "the claim broadly allows an adhesive of more than one material;"[139] and (2) that "neither of the two 'single layer of adhesive' phrases refer only to non-tape."[140] Russell is incorrect.

Russell's first presumption does not apply because it is foreclosed by the definition of "adhesive" as provided in the First Claim Construction Order—"material that binds other materials together by surface attachment, which does not include double-sided tape."[141] When applying this definition to "single layer of adhesive," Russell's presumption contradicts the plain reading of the phrase. That is, a "single layer of adhesive" is a "single layer of *material* that binds other materials . . . ." It is not a "single layer of *materials* that bind other materials . . . ." Therefore, the definition plainly refers to a single "material" that binds other materials together, not multiple materials. Russell's first suggested presumption contradicts the definition of "adhesive" from the First Claim Construction Order.

Russell's second presumption is also foreclosed by the definition of "adhesive." The definition of "adhesive" specifically states that adhesive "does not include double-sided tape." Yet that is precisely what Russell's second presumption attempts to include. The phrase "single layer of adhesive," when applying the definition of "adhesive" from the First Claim Construction

---

[138] Russell's Opening Brief at 5.

[139] *Id.* at 4.

[140] *Id.* at 5.

[141] First Claim Construction Order at 27.

Order, means: "single layer of material that binds other materials together by surface attachment, which does not include double-sided tape." It would be illogical to interpret "adhesive" as excluding double-sided tape, but to interpret "single layer of adhesive" as including double-sided tape, as Russell's second presumption attempts to do. Russell's suggested presumptions are both rejected by a plain reading of the terms.

Further, Russell is incorrect that construing the terms "single layer of [] adhesive " and "single layer of adhesive of the same material" as having "plain and ordinary" meaning violates *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*[142] In *O2 Micro*, the parties presented a dispute over the *scope* of the asserted claims that centered on the phrase "only if." One party contended that the "only if" limitation applied in certain contexts, while the other party contended that the "only if" limitation applied all the time. The district court found that the term "only if" *needed no construction*. The Federal Circuit responded to that by stating:

> In deciding that "'only if' needs no construction" because the term has a "well-understood definition," the district court failed to resolve the parties' dispute because the parties disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by this claim language.[143]

The scope of the terms "single layer of [] adhesive " and "single layer of adhesive of the same material" is not left unresolved by construing them according to their plain and ordinary meaning. Their scope is defined when the definition of "adhesive" from the First Claim Construction Order is considered. The terms convey the concept of a single layer of material that binds other materials together by surface attachment, which does not include double-sided tape. There is no suggestion of multiple materials, and double-sided tape is specifically excluded. Russell's attempts to argue to the contrary are unsuccessful.

---

[142] *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008).

[143] *Id.* at 1361 (emphasis in original).

Russell may be correct that Claims 17 and 34 of the '034 Patent are redundant in light of the construction of "adhesive,"[144] which states that adhesive does not include double-sided tape. Even that argument, however, is speculative. Those claims identify a "non-tape" adhesive, and the definition of "adhesive" further specifies that the "non-tape" adhesive does not include double-sided tape. But the necessity of Claims 17 and 34 is not currently at issue. The absence of "non-tape" in other claims does not mean those claims must automatically *include* tape under the doctrine of claim differentiation. That is especially true where "adhesive" has already been defined as not including double-sided tape.

"Claim differentiation is a guide, not a rigid rule."[145] Russell has not shown that the presumption of claim differentiation should apply to any of the examples identified in its briefing with respect to the terms "single layer of [] adhesive " and "single layer of adhesive of the same material." Therefore, these terms are construed according to their plain and ordinary meaning in accordance with the definition of "adhesive" in the First Claim Construction Order.

### 8.   Phrases using "sufficient flexibility and adhesion"

Defined as: *"Sufficient adhesive strength and flexibility . . . to be used in the actual game of basketball at a residence, not including 'toy' or 'novelty' basketball."*

As discussed above, phrases using "sufficient flexibility and adhesion" are not indefinite. Claim language is not indefinite simply because there is minor variation among phrases.[146] It is "not unknown for different words to be used to express similar concepts."[147]

---

[144] *See* Russell's Responsive Brief at 3 (arguing that "Claims 17 and 34 show [that Lifetime] knew how to say ["non-tape"] and therefore, the omission of "non-tape" in other claims mandates a construction that includes tape).

[145] *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed.Cir.1991)).

[146] First Claim Construction Order at 19-20 (citing *Bancorp Servs.*, 359 F.3d at 1373-74).

[147] First Claim Construction Order at 20 (citing *Bancorp Servs.*, 359 F.3d at 1373).

Further, as Lifetime correctly notes,[148] when compared to the phrases using "sufficient adhesion and flexibility" construed in the First Claim Construction Order, the phrases in the 2014 Patents using "sufficient flexibility and adhesion" are nearly identical:

| Phrases from the '463 and '034 Patents (the 2014 Patents) | Phrases Previously Analyzed in the First Claim Construction Order |
|---|---|
| "sufficient flexibility and adhesion to allow the basketball backboard to be used for playing the game of basketball" | "sufficient adhesion and flexibility…to be used in the game of basketball" |

Because the language in the 2014 Patents is nearly identical to the language previously construed in the First Claim Construction Order, the phrases using "sufficient flexibility and adhesion" in the 2014 Patents will be defined the same way as the "sufficient adhesion and flexibility" terms in the other patents, which includes the additional language of "actual game of basketball at a residence, not including 'toy' or 'novelty' basketball." Specifically, the phrases using "sufficient flexibility and adhesion" are defined as follows: "Sufficient adhesive strength and flexibility . . . to be used in the actual game of basketball at a residence, not including 'toy' or 'novelty' basketball." Russell has not shown there is any meaningful difference between the phrasing of the "sufficient adhesion and flexibility" construed in the First Claim Construction Order and the phrases in the 2014 Patents using "sufficient flexibility and adhesion." The phrases using "sufficient flexibility and adhesion" in the 2014 Patents are therefore defined accordingly.

### 9.  Phrase using "sufficient flexibility to allow"

Defined as: *"Sufficient flexibility . . . to be used in the actual game of basketball at a residence, not including 'toy' or 'novelty' basketball."*

The parties do not specifically address the phrase "sufficient flexibility to allow" at any length in their briefing. Russell simply argues that the "sufficient" terms are, in general, indefinite. Lifetime argues the phrase "sufficient flexibility to allow" should be interpreted the

---

[148] *See* Lifetime's Opening Brief at 16.

same way the term "sufficient strength and flexibility" was interpreted in the First Claim

Construction Order.[149] Neither party is correct.

The phrase "sufficient flexibility to allow" appears only in the '463 Patent, in Claim 28.

The full language of the claim provides:

> 28. A method of bonding a basketball backboard to a frame, the method comprising:
>
>> disposing a single layer of uncured liquid adhesive material between a basketball backboard and a frame; and
>>
>> sandwiching the single layer of uncured liquid adhesive material between the basketball backboard and the frame to directly bond the basketball backboard and the frame;
>>
>> wherein the cured adhesive has *sufficient flexibility to allow* the basketball backboard to be used for playing the game of basketball; and
>>
>> wherein the cured adhesive has sufficient adhesion to securely connect the backboard and the frame to allow the basketball backboard to be used for playing the game of basketball.[150]

Thus, the portion of Claim 28 that includes the phrase "sufficient flexibility to allow"

does not include any element of "strength." But that does not mean it is indefinite. Claim

language is not indefinite simply because there is minor variation among phrases.[151] It is "not

unknown for different words to be used to express similar concepts."[152] And it is possible to

determine the meaning of the phrase with reasonable certainty. Therefore, Russell is incorrect

that the "sufficient flexibility to allow" phrase is indefinite.

However, Lifetime's argument is also incorrect because the phrase "sufficient flexibility

to allow" cannot be interpreted the same way the term "sufficient strength and flexibility" was

---

[149] *Id.* at 16.

[150] '463 Patent, Claim 28 (col. 6:60 – 7:7) (emphasis added).

[151] First Claim Construction Order at 19-20 (citing *Bancorp Servs.*, 359 F.3d at 1373-74).

[152] First Claim Construction Order at 20 (citing *Bancorp Servs.*, 359 F.3d at 1373).

interpreted in the First Claim Construction Order. Nor can it be interpreted the same way as the phrase "sufficient flexibility and adhesion" discussed in the section immediately above. The phrase "sufficient flexibility to allow" must have a unique definition because it does not include the element of "strength" or "adhesion."

Arguably, the phrase suggests "strength" or "adhesion" by its inclusion of the word "adhesive" and the statement that the basketball backboard is "to be used for playing the game of basketball." But these are not clear statements of "strength" or "adhesion" that appear in the other "sufficient" terms. Other phrases specifically enumerate the words "strength" or "adhesion;" the phrase "sufficient flexibility to allow" does not. Therefore, it will have a unique definition and cannot share a definition with other "sufficient" terms.

By giving the phrase "sufficient flexibility to allow" its own definition, it is not placed into a separate category of phrases with a wholly separate meaning. The phrase, although unique to the '463 Patent, is very similar to other phrases in other patents that have been construed previously. Therefore, the definition of this phrase is very similar to the definitions that have been provided in the past, and must include the concepts of the "actual" game of basketball, not "toy" or "novelty" basketball.[153] The only difference is that this definition does not include the words "adhesive strength" because neither "adhesion" nor "strength" are part of the phrase "sufficient flexibility to allow."

Accordingly, the phrase "sufficient flexibility to allow the basketball backboard to be used for playing the game of basketball" is defined as follows: "Sufficient flexibility . . . to be used in the actual game of basketball at a residence, not including 'toy' or 'novelty' basketball."

---

[153] *See* First Claim Construction Order at 23-25.

**10. Phrases using "sufficient flexibility . . . to dissipate"**

<u>Defined as:</u> *"Sufficient flexibility in the bond to dissipate impact energy between the basketball backboard and the basketball backboard frame when a basketball strikes the backboard to allow the basketball backboard to be used for playing the actual game of basketball at a residence, not including 'toy' or 'novelty' basketball."*

As discussed above, the phrases in the 2014 Patents using "sufficient flexibility . . . to dissipate" are not indefinite. Furthermore, as Lifetime correctly notes,[154] when compared to the "dissipate" terms analyzed in the First Claim Construction Order, the "dissipate" phrases from the 2014 Patents and the phrases previously construed in the First Claim Construction Order are nearly identical:

| Phrases from the '463 and '034 Patents (the 2014 Patents) | Phrases Previously Analyzed in the First Claim Construction Order |
| --- | --- |
| "sufficient flexibility in the bond to dissipate impact energy from the basketball backboard to the basketball backboard frame when a basketball strikes the backboard when playing the game of basketball" | "sufficient flexibility in the bond to dissipate impact energy from the acrylic basketball backboard to the basketball backboard frame when a basketball strikes the backboard when playing the game of basketball" |

There is no meaningful difference between these terms. Therefore, the "dissipate" phrase found in the 2014 Patents is defined the same way as the "dissipate" phrase in the First Claim Construction Order, as follows: "Sufficient flexibility in the bond to dissipate impact energy between the basketball backboard and the basketball backboard frame when a basketball strikes the backboard to allow the basketball backboard to be used for playing the actual game of basketball at a residence, not including 'toy' or 'novelty' basketball."

## ORDER

IT IS HEREBY ORDERED that the claims of the patents shall be construed as stated herein.

---

[154] *See* Lifetime's Opening Brief at 16.

IT IS FURTHER ORDERED that the parties shall not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties must not mention any portion of this Memorandum Decision and Order, other than the actual definitions adopted in it, in the presence of the jury. Any reference to claim construction proceedings should be limited to informing the jury of the definitions adopted in this Memorandum Decision and Order.

Dated May 23, 2016.

BY THE COURT:

David Nuffer
United States District Judge

41