IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **LIFETIME PRODUCTS, INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>**RUSSELL BRANDS, LLC, D/B/A SPALDING**, a Delaware limited liability company,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING RUSSELL BRANDS, LLC'S SHORT FORM MOTION TO ALLOW TRIAL AUTHENTICATION DEPOSITIONS (ECF NO. 367)<br><br>Case No. 1:12-cv-00026-DN-EJF<br><br>Chief District Judge David Nuffer<br><br>Magistrate Judge Evelyn Furse |

On May 9, 2016, Defendant Russell Brands, LLC ("Russell") filed a Motion to Allow Trial Authentication Depositions requesting leave of the Court to depose representatives of Saudi Basic Industries, LLC ("SABIC") and Lucite International, Inc. ("Lucite") to preserve testimony for trial on documents central to Russell's prior art invalidity defense. (Russell's Short Form Mot. to Allow Trial Authentication Deps. ("Mot.") 2, ECF No. 367.)  Lifetime admits to the authenticity of the Lucite documents based on the declarations.  (ECF No. 367-6.)  Therefore, the depositions Russell seeks do not constitute "authentication depositions."

Lifetime opposes Russell's Motion on the grounds that Russell has not shown "excusable neglect" under Federal Rule of Civil Procedure 6(b)(1)(B) for seeking depositions of SABIC and Lucite after fact discovery closed and beyond the ten deposition limit.  (Pl.'s Opp'n to Russell's Mot. ("Opp'n") 2, ECF No. 371.)

Fact discovery closed on January 15, 2016.  (ECF No. 335.)  Russell contends these depositions would not constitute discovery but would merely ensure the admissibility at trial of the information contained in the SABIC and Lucite declarations.  (*See* Kukner Decl., ECF No.

1

367-1; Robinson Decls., ECF Nos. 367-2 & 367-3.)  The declarations state that the Lexan 9030 Data Sheet and two Lucite fabrications guides (hereinafter, "the Lucite documents") constitute publicly available printed publications as of certain indicated dates.  (Mot. 2–3, ECF No. 367.)  As part of its prior art invalidity defense, Russell must prove the Lucite documents constitute "printed publications" available by 1997 or 1998, depending on the document.  (*See* ECF No. 367-6 (citing *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)); Mot. 2, ECF No. 367 (citing *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1988) & *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986)); Opp'n 3, ECF No. 371 (citing *In re Cronyn*, 890 F.2d 1158, 1159–61 (Fed. Cir. 1989)).)

      Lifetime objects to the admissibility of these declarations to show that the Lucite documents qualify as publicly-available printed publications.  (Opp'n 2–3, ECF No. 371.)  Lifetime contends Russell should have taken these depositions during discovery.  (*Id.*)  Lifetime notes that to do so, Russell would have had to seek Court permission to exceed the ten deposition limit.  (*See id.* at 2.)  Russell never sought to expand the number of depositions.

      On May 13, 2016, the Court heard argument on Russell's Motion.  (*See* ECF No. 383.)  During the hearing, Russell denied seeking discovery in taking these depositions, stating it wishes "simply to preserve through deposition testimony the declaration testimony we have obtained from these two companies about the [Lucite] documents."  (*See* Hr'g recording 19:27–40, ECF No. 383.)  Russell affirmed that it would be willing to limit the deposition to the statements already included in the declarations.  (*Id.* at 30:40–50.)  Lifetime again objected that Russell would use this deposition to obtain more discovery to shore up its prior art invalidity defense and added that Lifetime would have no opportunity to cross-examine the witnesses.  (*Id.* at 32:00–33:18, 35:25–36:02.)  At the hearing Russell cited two non-binding cases to support its

position that the Court should differentiate between discovery depositions and trial depositions, *Estenfelder v. Gates Corp.*, 199 F.R.D. 351 (D. Colo. 2001), and allow trial depositions to go forward after the close of discovery, *Watson v. Norton*, 10 F. App'x 669 (10th Cir. 2001) (unpublished).  At the conclusion of argument, the Court took the Motion under advisement. (*See* ECF No. 383.)

After considering the briefing, arguments, and case law, the Court DENIES Russell's Motion.  As elaborated below, the Court finds no excusable neglect permitting depositions after the close of discovery and finds that the prejudice to Lifetime at this point in the case—months after the discovery deadline and on the cusp of the dispositive motion deadline—outweighs Russell's need for the additional depositions under these circumstances.

## Analysis

### A. Discovery Depositions v. Trial Depositions

Depositions serve as a discovery device governed by Rules 26 through 32 of the Federal Rules of Civil Procedure.  Rule 26(b)(1) authorizes discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering a variety of factors.  Additionally, a court "*must* limit the frequency or extent of discovery" if the party seeking discovery "has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added).

While Rule 26 outlines the scope of discovery, Rule 30 prescribes the basic procedures used in conducting depositions more specifically.  *See* Fed. R. Civ. P. 30; 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2101 (3d ed.).  In contrast, "Rule 32 attempts to speak comprehensively about the use of a deposition."  8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2141 (3d ed.); *see* Fed. R. Civ. P. 32; *Coletti v. Cudd Pressure*

*Control*, 165 F.3d 767, 773 (10th Cir. 1999) ("Rule 32 of the Federal Rules of Civil Procedure governs use of depositions in a court proceeding."). "Although, primarily a discovery tool, deposition[s] may also serve to preserve testimony when a witness may be unavailable for trial." *Crawford v. United States*, No. 11-CV-666-JED-PJC, 2013 WL 249360, at *2 (N.D. Okla. Jan. 23, 2013) (unpublished) (citing, e.g., Fed. R. Civ. P. 32(a)(4)).

The discovery rules do not distinguish depositions taken for discovery purposes from depositions taken to preserve evidence for trial. *See* Fed. R. Civ. P. 26–32; *e.g.*, *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 558 (S.D. Cal. 1999) (noting that while Rule 32(a) "provides circumstances under which depositions may be admissible as evidence at trial, that Rule does not distinguish between discovery and trial depositions or suggest when or under what circumstances a deposition to be used at trial should properly be taken"). Thus, a party must generally show excusable neglect to justify taking a deposition, for any purpose, after the discovery deadline has passed. Fed. R. Civ. P. 6(b)(1)(B); *see also Integra*, 190 F.R.D. at 559 ("[I]f a party wishes to introduce deposition testimony at trial, that testimony should [be] procured during the time set by the court to conduct discovery absent exceptional circumstances."); *Crawford*, 2013 WL 249360, at *4 ("Depositions are to be conducted during the discovery phase of litigation; there is no Rule, nor any published case by the Tenth Circuit Court of Appeals, that provides an exception and allows for 'video depositions' outside the discovery deadline.").

Rather than stating excusable neglect, at the hearing on this matter Russell argued it did not need to conduct the depositions during discovery because it had the declarations and thought it could take the depositions later. Russell knew the discovery deadline and the limit on depositions. It made no effort to take the depositions during discovery or enlarge the number of

4

depositions. Lifetime did agree to allow post-discovery depositions if it could not stipulate to authenticity. Lifetime has, however, stipulated to the authenticity of these documents. The Court concludes Russell made a tactical decision not to seek the depositions during discovery and has now changed its mind. The Court finds Russell has failed to show excusable neglect and thus DENIES its Motion.

Some courts have distinguished between discovery and trial or preservation depositions pursuant to the "custom or practice" in the district. *Spangler v. Sears, Roebuck & Co.*, 138 F.R.D. 122, 124 (S.D. Ind. 1991); *see Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2007 WL 2935818, at *1 (D. Colo. Oct. 5, 2007) (unpublished) (collecting cases where courts distinguish between discovery and preservation or "trial" depositions, as well as those that do not). In the hearing, Russell cited *Estenfelder*, 199 F.R.D. at 355, which held that "in determining whether a deposition is a discovery deposition or a trial deposition, judges may consider several factors, one factor being the purpose for which the deposition is being taken." The court allowed the defendant to take post-discovery depositions of four former employees who resided in Europe, known to all parties, noting that the depositions served the purpose of preserving testimony for admission at trial, any prejudice to the opposing party could be ameliorated, and the depositions would not affect the scheduling of the trial. *Id.* at 356. The *Estenfelder* court applied the four factors laid out in *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604 (10th Cir. 1997), informing when to allow depositions to preserve evidence relevant to trial that the scheduling order would otherwise prohibit as falling after the close of discovery. *Id.* As acknowledged in *Estenfelder*, 199 F.R.D. at 356, the *Summers* factors apply when a court considers an order that will exclude evidence. The four *Summers* factors are:

>(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

132 F.3d at 604 (quoting *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996)).

The Court finds these factors inapposite. Russell does not argue that absent these depositions it will not have evidence to support its invalidity defense. Certainly, Rule 32 provides that a party may use the deposition of a witness at trial if the witness resides more than 100 miles from the trial court. Fed. R. Civ. P. 32(a)(4)(B). While the declarants' locations outside of the district suggest unavailability, Russell does not claim the declarants are unwilling to testify in person or remotely at trial. *See, e.g.*, *Gen. Steel Domestic Sales, LLC. v. Chumley*, No. 13-cv-00769-MSK-KMT, 2016 WL 2983741, at *4 (D. Colo. May 24, 2016) (unpublished) (denying leave to take preservation depositions where witnesses have narrowly-focused testimony and parties have not explored the possibility of remote appearance). Nor has Russell shown that it cannot obtain this testimony from other sources, if not from the declarants themselves.

Furthermore, courts in this district have not commented on the issue of discovery versus trial depositions. As previously noted, the discovery rules do not distinguish between depositions for the purpose of discovery or for preservation of testimony. *See generally* Fed. R. Civ. P. 26, 30 & 32. One federal district court, after tracing the history and evolution of "trial" or "*de bene esse*" depositions in this country, concluded the modern Federal Rules of Civil Procedure provide the parties "no right to a 'trial deposition' separate and apart from the 'deposition' rules expressly found in Rules 30 through 32" and where contrary to a court's Rule

16 scheduling orders. *Smith v. Royal Caribbean Cruises*, Ltd., 302 F.R.D. 688, 690–93 (S.D. Fla. 2014). As the Eleventh Circuit aptly states:

> For a court to treat discovery deadlines as applying to all depositions is not an uncommon or inherently unreasonable kind of shorthand to say "be done with deposition taking by 'X' date." So, parties who delay in taking a needed deposition and who assume that a district court will draw (when the Rules do not and if the pretrial order does not) a distinction, for pretrial scheduling purposes, between different kinds of depositions assume a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date.

*Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1362 n.8 (11th Cir. 2002) (affirming the district court's decision to reject a request for deposition for use at trial after the discovery deadline). Where this district has no specific history of this practice, and the rules do not provide for it, this Court will not create an exception absent excusable neglect.

Additionally, the "just, speedy, and inexpensive determination of every action" requires both the setting and enforcement of deadlines. At some point, discovery must end. Courts have broad discretion over their pre-trial schedules, *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011), but "total inflexibility is undesirable," especially where a court's decision to disallow discovery results in the exclusion of evidence. *Summers*, 132 F.3d at 604 (quoting *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir. 1987)). Acknowledging this guidance, the Court observes that the Committee on Rules of Practice and Procedure to the Judicial Conference, with the approval of the United States Supreme Court and tacit approval of Congress, has amended the Federal Rules of Civil Procedure extensively since *Summers*, particularly as to pre-trial case management and the scope of discovery. *See Royal Caribbean*, 302 F.R.D. at 692 (noting "the modern Federal Rules of Civil Procedure *expressly* confer very broad and comprehensive discretion by district courts over the management of all pre-trial activities, especially discovery and scheduling").

Since *Royal Caribbean* the Supreme Court again amended the Rules. Specifically, Rule 1, as amended on December 1, 2015, contemplates the "just, speedy, and inexpensive determination of every action and proceeding," and clarifies that this duty falls not only on the courts but also on the parties. The language of Rule 1 does not impose a new duty but rather, as the comments state, emphasizes a duty that already exists:

> Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends. But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure.

Fed. R. Civ. P. 1, Committee Notes on Rules—2015 Amendment. Hence, the Rules explicitly require parties to use the Rules of Civil Procedure to reach a "just, speedy, and inexpensive determination." Parties can no longer use the Rules to win at any cost. Thus, the recent amendments further support parties doing needed depositions during discovery rather than delaying the case and waiting to do them just before trial, except when excusable neglect for doing so exists.

For all of these reasons, the Court draws no distinction between discovery and trial depositions.

### B. Considerations in Permitting Preservation Depositions

While this Court finds no basis for preservation depositions, if it did, the Tenth Circuit identified factors for consideration in an unpublished case. At the hearing, Russell cited *Watson*, 10 F. App'x at 675–77, in which the Tenth Circuit affirmed a district court's decision to refuse to reopen discovery for two preservation depositions. The Tenth Circuit recommends several factors to consider in deciding whether to reopen discovery, including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Id.* at 675 (quoting *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)).

Considering these factors, the Court finds the prejudice to Lifetime in permitting Russell's preservation depositions after the discovery deadline outweighs Russell's need for the depositions.

First, the trial in this case begins on November 14, 2016. (ECF No. 335.) Though November remains a few months away, discovery began in this case over three years ago with the parties' 26(a)(1) initial disclosures in October and December 2012. (ECF No. 30.) Fact discovery closed on January 15, 2016, and the parties are now focused on the close of expert discovery, which lapsed on May 20, 2016, and the filing of dispositive motions, which occurred on June 14, 2016. (ECF Nos. 335 & 392.) Thus, in the context of this lengthy and complex case, trial quickly approaches but is not imminent.

As to the second factor, Lifetime opposes the preservation depositions on grounds of untimeliness and argues Russell in fact seeks discovery to shore up one of its defenses.

Third, the Court finds Lifetime might have conducted its discovery differently in light of these further depositions had Russell taken them during the discovery period. Russell delayed taking these depositions and ensuring admissible evidence on an issue central to its prior art invalidity defense. Lifetime also argues it will not have the opportunity to cross-examine these witnesses at the preservation depositions. The court in *Estenfelder* attempted to cure this specific prejudice by allowing the opposing party an hour prior to each preservation deposition to "ask questions of the witness in the nature of a discovery deposition . . . to obtain the knowledge with

9

which to conduct a cross-examination of each witness for inclusion in the preservation deposition." 199 F.R.D. at 357. Thus, while a court can attempt to lessen the prejudice, the Court observes that one party's abuse of a Rule 16 scheduling order always prejudices the opposing party in that the opposing party's discovery, settlement, summary judgment, trial preparation, and trial strategy may have proceeded differently had the late discovery occurred during the permitted timeframe. For example, Lifetime may have sought additional depositions had Russell sought to increase its number of depositions during discovery. But, at this late stage in litigation, allowing that kind of compensatory discovery no longer remains a viable option. Moreover, the Court does not aid Rule 1's efficiency goals by permitting the post-discovery depositions in these circumstances.

Fourth and fifth, Russell did not diligently pursue this discovery despite its foreseeability. Russell has not adequately explained why it did not depose Lucite and SABIC before the close of discovery, especially when it knew of the relevant documents, their importance to Russell's invalidity defense, and the declarants' location outside the district at the latest by September 2014. (Opp'n 2, ECF No. 371 & Ex. A at 13–14, ECF No. 371-1.) The Court acknowledges that Russell consulted with Lifetime in attempting to convert the declarations to trial-admissible form a month before the discovery deadline and with an eye to working under the deposition limit. Even then, Russell knew Lifetime would not admit to the printed publication and availability information in January 2016 and yet did not bring this request until May 2016. Where parties willingly and unilaterally delay discovery until after the close of discovery courts routinely deny requests to reopen discovery. *See, e.g.*, *Chrysler*, 280 F.3d at 1361 (affirming district court's protective order preventing Chrysler from taking a post-discovery deposition, noting Chrysler delayed in seeking the testimony "in a form usable at trial" until after the discovery deadline,

when the trial date was set and Chrysler had known the witness resided on a different continent and had known of the importance of testimony for some time).)  Russell "has had ample opportunity to obtain the information by discovery" over the three years between initial disclosures and the close of discovery.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

Sixth, this discovery provides a key element in Russell's prior art invalidity defense.  Thus, the Court finds the relevance factor weighs in favor of Russell.   However, as discussed above, the Court has no information on Russell's attempts to secure the testimony of these declarants or additional evidence for trial apart from post-discovery depositions.

The Court finds these factors, on balance, weigh against allowing Russell to reopen discovery.  Therefore, the Court DENIES Russell's Motion, (ECF No. 367).

DATED this _20____ day of June, 2016.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge