FILED UNDER SEAL – CONTAINS SEALED MATERIAL

David R. Wright (Bar No. 5164)
 dwright@mabr.com
Kirk R. Harris (Bar No. 10221)
 kharris@mabr.com
Jared J. Braithwaite (Bar No. 12455)
 jbraithwaite@mabr.com
MASCHOFF BRENNAN
201 South Main Street, Suite 600
Salt Lake City, UT 84111
Telephone: (435) 252-1360
Facsimile:  (435) 252-1361

Attorneys for Plaintiff LIFETIME PRODUCTS, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| **LIFETIME PRODUCTS, INC.**, a Utah corporation, <br><br> Plaintiff, <br><br> v. <br><br> **RUSSELL BRANDS, LLC D/B/A SPALDING,** a Delaware limited liability company, <br><br> Defendant. | Civil No. 1:12-cv-00026-DN-EJF <br><br> **LIFETIME'S OPPOSITION TO RUSSELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT** <br><br> Chief District Judge David Nuffer <br><br> Magistrate Judge Evelyn Furse |

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. vii

II.   BACKGROUND (DUCivR 56-1(c)).................................................... ix

      A.   Prosecution, Litigation, and Reexamination of the Patents in Suit......................... ix

      B.   Russell's Test-Order-Concealment Claim ................................................x

      C.   Russell's Lying-Declaration Claims ........................................................x

III.  RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED
      MATERIAL FACTS (DUCivR 56-1(c)(2)) ..................................... xiv

      A.   Response to Legal Elements (DUCivR 56-1(c)(2)(A)) .......................................... xiv

           1.   Inequitable Conduct, Generally .................................................. xiv

           2.   Materiality ................................................................................xv

           3.   Intent ..................................................................................... xvii

      B.   Response to Russell's Statement of Alleged Facts (DUCivR 56-1(c)(2)(B)) ...... xviii

      C.   Objections to Russell's Evidence (DUCivR 7-1(b)(1)(B)).....................................cc

      D.   Additional Material Facts (DUCivR 56-1(c)(2)(C))................................................cci

           1.   Facts Negating Motive ..................................................................cci

           2.   Additional Facts Refuting Russell's Unpleaded Test-Order Concealment
                Claims against the '935 and '550 Patents .......................................ccii

           3.   Facts Negating Materiality of Allegedly Concealed Test Orders ................cciii

           4.   Facts Negating Materiality of Allegedly False Declarations .......................cciv

                a.   Facts Negating But-for Materiality ....................................................cciv

                b.   Facts Negating Per Se Materiality........................................................ccv

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

5.   Other Facts Negating Deceptive Intent..........................................ccx

a.   Facts Negating Deceptive Intent to Deceive by Concealing
Test Orders .........................................................................ccx

b.   Facts Negating Intent to Deceive by Mischaracterizing
Test Orders ........................................................................ccxi

IV.   ARGUMENT ............................................................................................. 1

A.   The Court Should Deny Russell's Motion (and Grant Lifetime's) because
Russell's Claims against Stevens Fail for Lack of Motive .........................1

B.   The Court Should Deny Summary Judgment to Russell (and Grant it to
Lifetime) on Russell's Test-Order-Concealment Claims ............................2

1.   Russell Cannot Show Materiality ......................................................3

a.   Russell's Nonenablement Theory Fails.................................. 5

b.   Russell's Unpleaded Argument about Stevens' Subjective
Understanding of the Scope of His Invention Fails .............. 7

2.   Russell Cannot Show Intent to Deceive...........................................8

a.   There Is No Contradiction between Allegedly Withheld
Information and the Patent Disclosure .................................. 9

b.   Stevens Did Not Engage in "Intentional Selective Disclosure"........... 12

C.   The Court Should Deny Summary Judgment to Russell (and Grant it to
Lifetime) on Russell's Lying-Declaration Claims.................................14

1.   Russell's Lying-Declaration Claims Fail for Lack of Materiality.................14

a.   Russell Has No Evidence of But-for Materiality ................. 14

b.   Russell Cannot Invoke the Egregious-Misconduct Exception
to the But-for Materiality Requirement because the Accused
Statements Are Not Unmistakably False.............................. 16

2.   Russell's Lying-Declaration Claims Fail for Lack of Deceptive Intent .........21

V.   CONCLUSION.................................................................... 25

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Angstadt*
  537 F.2d 498 (C.C.P.A. 1976) ..................................................................5

*Ball Corp. v. Xidex Corp.*
  967 F.2d 1440 (10th Cir. 1992) ..............................................................24

*Corning Glass Works v. Sumitomo Electric USA, Inc.*
  868 F.2d 1251 (Fed. Cir. 1989) ..............................................................12

*Corona Cord Tire Co. v. Dovan*
  276 U.S. 358, 48 S. Ct. 380, 72 L. Ed. 610 (1928) ...................... xv, xvi

*Exergen Corp. v. Wal-Mart Stores, Inc.*
  575 F.3d 1312 (Fed. Cir. 2009) ........................................... *passim*

*First Equity Corp. v. Standard & Poor's Corp.*
  690 F. Supp. 256 (S.D.N.Y 1988) ..........................................................xv

*Intellect Wireless, Inc. v. HTC Corp.*
  732 F.3d 1339 (Fed. Cir. 2013) ....................................2, 22, 23, 24

*Intellect Wireless, Inc. v. HTC Corp.*
  910 F. Supp. 2d 1056 (N.D. Ill. 2012) ...........................................2, 23

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*
  863 F.2d 867 (Fed. Cir. 1988) ........................................................ xviii

*Manville Sales Corp. v. Paramount System, Inc.*
  917 F.2d 544 (Fed. Cir. 1990) ......................................................... xiv

*Markman v. Westview Instruments, Inc.*
  52 F.3d 967 (Fed. Cir. 1995) .............................................................7, 8

*Ohio Willow Wood Co. v. Alps South, LLC*
  735 F.3d 1333 (Fed. Cir. 2013) ................................................ xvii, 15

*People v. Unger*
  749 N.W.2d 272 (Mich. Ct. App. 2008) ...............................................2

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

*In re Prater*
    415 F.2d 1393 (C.C.P.A. 1969) ....................................................................8

*Rohm & Haas Co. v. Crystal Chemical Co.*
    722 F.2d 1556 (Fed. Cir. 1983).........................................clxxiv, clxxv, clxxxix, 25

*Solomon v. Kimberly-Clark Corp.*
    216 F.3d 1372 (Fed. Cir. 2000).............................................................7, 8

*Sri International v. Matsushita Electric Corp. of America*
    775 F.2d 1107 (Fed. Cir. 1985)...............................................................12

*State v. Powell*
    893 P.2d 615 (Wash. 1995)....................................................................2

*Therasense, Inc. v. Becton, Dickinson & Co.*
    649 F.3d 1276 (Fed. Cir. 2011).......................................................... *passim*

*Williams v. Illinois*
    567 U.S. __, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012).........................................cci

*Woodmont, Inc. v. Daniels*
    274 F.2d 132 (10th Cir. 1959) ............................................................. xiv

*In re Wright*
    999 F.2d 1557 (Fed. Cir. 1993)................................................................5

*In re Zeitz*
    893 F.2d 319 (Fed. Cir. 1990)...............................................................8

**Statutes**

18 U.S.C. § 1001 ............................................................................ xxii

35 U.S.C. § 112 ...............................................................................5

35 U.S.C. § 103 ........................................................................ *passim*

**Rules and Regulations**

37 C.F.R. § 1.56 ........................................................... xvi, xxi, lxxvi, 15

37 C.F.R. § 1.132 ................................................................. xxiv, xxxiv

37 C.F.R. § 1.555 ............................................................................ xvii

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Federal Rule of Civil Procedure 9 ............................................................................. viii, 3

Federal Rule of Civil Procedure 37 ................................................................................ cc

Federal Rule of Civil Procedure 56 ....................................................................... *passim*

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Plaintiff Lifetime Products, Inc. ("Lifetime") submits the following in *opposition* to the

". . . Motion for Partial Summary Judgment of Unenforceability Due to Inequitable Conduct"[1]

("Motion") filed on behalf of defendant Russell Brands, LLC ("Russell").

## I.    INTRODUCTION

Lifetime alleges that Russell is infringing five patents—United States Patent Nos.

7,749,111 ("'111 patent"), 8,033,935 ("'935 patent"), 8,038,550 ("'550 patent"), 8,845,463

("'463 patent"), and 8,852,034 ("'034 patent"). By its present Motion, Russell seeks summary

judgment that all five are unenforceable due to inequitable conduct.

"The substantive elements of inequitable conduct are: (1) an individual associated with the

filing and prosecution of a patent application made an affirmative misrepresentation of a material

fact, failed to disclose material information, or submitted false material information; and (2) the

individual did so with a specific intent to deceive the PTO [i.e., the United States Patent and

Trademark Office]."[2] "The accused infringer must prove both elements—intent and

materiality—by clear and convincing evidence."[3]

Here, according to Russell's Motion:

- The three oldest patents ('111, '935, and '550) are unenforceable because 11 internal
  Lifetime test order documents and related information were not disclosed to the PTO
  during the original prosecution of those patents; and

---

[1] Docket No. 406.

[2] *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n. 3 (Fed. Cir. 2009).

[3] *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

- All five patents are unenforceable because Larry Stevens, the inventor, according to Russell lied in two declarations and a notice of corrections that were submitted during reexamination of the first three patents (i.e., the '111, '935, and '550 patents) and during the original prosecution of last two patents (i.e., the '463 and '034 patents).

Because inequitable conduct is a species of fraud, it must be pleaded with particularity;[4] but several of the claims on which Russell seeks summary judgment have not been pleaded *at all*—e.g., that Stevens concealed anything during the original prosecution of the '935 and '550 patents. Pleaded or not, *all* of Russell's claims fail because, as shown below, Russell has not shown and cannot establish either materiality or intent.

Many of the materiality and intent failings described below affect one or several but not all of Russell's claims. One that runs through and fatally undermines them all is Russell's failure even to articulate, let alone prove (by clear and convincing evidence), any credible answer to this basic question: given that Stevens never had any personal interest in the patents in suit, why would he lie? The absence of any evidence of improper motivation and the presence of reasonable inferences that Stevens did not intend to deceive the patent office, among other things, defeats Russell's claims of inequitable conduct.

Summary judgment should be denied to Russell (and granted to Lifetime[5]).

---

[4] *Exergen*, 575 F.3d at 1327 ("Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO").

[5] Lifetime has separately moved for summary judgment on *all* of Russell's inequitable conduct counterclaims, including those covered by Russell's more limited Motion. *See* Lifetime's Motion for Partial Summary Judgment of No Inequitable Conduct, Docket No. 393.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

## II.   BACKGROUND (DUCivR 56-1(c))

**A.   Prosecution, Litigation, and Reexamination of the Patents in Suit**

Larry Stevens, the inventor of the patents in suit, started working at Lifetime in 1996.[6] By August 1997, he had begun working on his invention.[7] By January 11, 1999, his work was far enough along for Lifetime to begin filing patent applications. The '111 patent issued in 2010, followed by the '935 and '550 patents in 2011 and the '463 and '034 patents in 2014.

In 2012, after the first three patents had issued, Lifetime commenced this action by suing Russell for infringement, which prompted Russell to petition the PTO to reexamine those three patents. This litigation was partially stayed until it became apparent that the patents would survive reexamination.[8] After the stay was lifted, the last two patents issued and were brought into this action through pleading amendments.

Meantime, Stevens had stopped working for Lifetime in February 2001, nearly a decade before the '111 patent issued.[9] He communicated with Lifetime's patent prosecution counsel before the '111 parent application was filed, but he did not thereafter reengage in the patent prosecution process until he was asked by Lifetime's patent prosecution counsel to prepare a

---

[6] *See* Appx. Ex. 17, 1st Stevens decl. ¶ 3.

[7] *See* Appx. Ex. 5, Stevens depo. at 138:22–139:18.

[8] Reexamination of the '111 patent ended when the PTO issued an Ex Parte Reexamination Certificate reaffirming most of its original claims and also allowing 30 new claims. The PTO has similarly reaffirmed the patentability of the subject matter claimed by the '935 and '550 patents, as amended during reexamination, but Russell has appealed those determinations to the PTO's Patent Trial and Appeal Board ("PTAB"). As of the writing of this Opposition, the PTAB has not yet issued a ruling on Russell's appeal.

[9] *See* Appx. Ex. 5, Stevens depo. at 9:24–10:1.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

declaration in connection with the reexamination proceedings on the '111, '935, and '550 patents, sometime in 2012 or early 2013.[10]

**B.  Russell's Test-Order-Concealment Claim**

According to Russell, Stevens did wrong by failing to disclose 11 test order documents "during original prosecution of '111, '935 and '550 Patents."[11] One, Test Order 2138, relates to Dow Corning Q3-6093, which is one of two adhesives specifically acknowledged by the specification of the patents in suit as "suitable"; six more relate to GE D1-SEA 210, the other such adhesive. The other four relate to various silicone adhesives.

Russell's Motion alleges concealment during prosecution of the '111, '935, and '550 patents. But the '935 and '550 patent claims are unpleaded, and there is no evidence that Stevens was even aware that the '935 and '550 patents had been applied for (in 2010) until well after they issued (in 2011).

**C.  Russell's Lying-Declaration Claims**

During reexamination of the '111, '935, and '550 patents, claims were rejected for obviousness. Lifetime tried to overcome those rejections, in part, by submitting two declarations from Stevens. Stevens also signed a notice of corrections, directed to errors inadvertently made in the first declaration. Russell accuses Stevens of lying in all three documents.

A list of alleged lies would have been helpful, but Russell never provides one. Russell further obscures its contentions by conflating what it advances as (1) predicate acts for

---

[10] *See* Appx. Ex. 5, Stevens depo. at 57:7–60:8.

[11] Motion (Docket No. 406) at 3. Russell tries to spin nondisclosure of those 11 documents into nondisclosure of five types of information, but they all come to the same thing: "Failure to Disclose Testing Failures." *See* Motion (Docket No. 406) at 3.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

inequitable conduct and (2) circumstantial evidence of deceptive intent. Handicapped, but guided by such cues as Russell has seen fit to provide, Lifetime believes Russell's Motion is premised on ten alleged misrepresentations—eight from the first declaration, one from the second, and one from the notice of corrections to the first declaration, given below in the order of their appearance in Stevens' declarations and notice rather than Russell's Motion:

Accused statement 1, from paragraph 8 of Stevens' first declaration, is: "I performed testing to determine if the backboards attached to the frame with the mechanical fasteners could withstand impact from a basketball." According to Russell, that was a lie because Stevens had not "conducted actual ball impact testing on full-sized board prototypes constructed using mechanical fasteners."[12]

Accused statement 2, from paragraph 9 of Stevens' first declaration, is: "I spoke with other engineers at Lifetime about fasteners and adhesives they had tried and learned that they had experimented with different methods and adhesives and had failed to obtain any favorable results." Russell never gives a succinct explanation of this representation's supposed falsity.[13]

Accused statement 3, from paragraph 10 of Stevens' first declaration, is:

I recall Lifetime's representative from 3M telling me that I would never be able to replace the VHB® tape. Because adhesives were the representative's area of expertise, I was discouraged by his doubt as to whether it was possible to bond the backboard to the frame using an adhesive.

According to Russell, this was a lie because "Stevens was not discouraged in his efforts by the biased statements made by Martin Cole, the 3M double-sided tape salesman."[14]

---

[12] Motion (Docket No. 406) at 21.

[13] *See* Motion (Docket No. 406) at 20.

[14] Motion (Docket No. 406) at 20.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Accused statement 4, from paragraph 11 of Stevens' first declaration, is:

The exemplary Test Orders range from October 24, 1995 to December 7, 1998, demonstrating the extensive research and testing performed at Lifetime in finding an alternative to the double-sided tape. In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967, 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to attach the acrylic backboard to the metal frame. ln each case, the adhesive failed. For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame . . .

According to Russell, that was a lie because Test Orders 1506, 1967, and 2053 reflect *successes*, not failures.[15]

Accused statement 5, also from paragraph 11 of Stevens' first declaration, is:

The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F.

According to Russell, that was a lie because Test Order 1967 does not show the thermal testing failures described.[16]

Accused statement 6, from paragraph 13 of Steven's first declaration, is:

As shown in Test Order nos. 1967, 2027 and 2053 of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.

According to Russell, that was a lie because, again, Test Order 1967 does not show the thermal testing failures described.[17]

---

[15] Motion (Docket No. 406) at 20.

[16] Motion (Docket No. 406) at lv.

[17] Motion (Docket No. 406) at lv.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Accused statement 7, from paragraph 18 of Stevens' first declaration, is: "I recall one of Lifetime's manufacturers in China having an issue with adhesion because the adhesive was not properly bonding to the powder-coated frame." According to Russell, that was a lie because the Chinese manufacturer issue "occurred at least two years after Stevens['] employment with Lifetime ended."[18]

Accused statement 8, from paragraph 19 of Stevens' first declaration, is:

I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. *See* APPENDIX A, Test Order nos. 2155, 2335 and 2365.

According to Russell, that was a lie because Test Orders 2336 and 2365 reflect "*failed* testing."[19]

Accused statement 9, from paragraph 13.A of Stevens' second declaration, is: "I worked with several adhesive vendors and was told that there were no adhesives that would bond to acrylic material and provide a suitable amount of flexibility." According to Russell, that was a lie because "it was an adhesives representative-expert who introduced Stevens to Dow Corning Q3 6093, one of the two '[s]uitable silicone adhesive(s)' Stevens identified in the patent specification."[20]

Accused statement 10, from paragraph 3 of the notice of corrections, is: "References to test order no. 1967 in paragraph nos. 11 and 13 of the Declaration should have been to test order no. 1966. References to test order no. 2027 in paragraph nos. 11 and 13 of the Declaration should have been to test order no. 2010." According to Russell, that was a lie because "the testing and

---

[18] Motion (Docket No. 406) at 21.

[19] Motion (Docket No. 406) at 21, italics added.

[20] Motion (Docket No. 406) at 21.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

results described in Test Order 1966 . . . didn't match the testing and results ascribed in the FSRD [i.e., the first declaration] to Test Order 1967," and because what the first declaration says of Test Order 2027 is not true of Test Order 2010, either.[21]

## III.   RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS (DUCivR 56-1(c)(2))

### A.   Response to Legal Elements (DUCivR 56-1(c)(2)(A))

#### 1.   Inequitable Conduct, Generally

"The substantive elements of inequitable conduct are: (1) *an individual* associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) *the individual* did so with a specific intent to deceive the PTO."[22] Russell errs by tying inequitable conduct to a generic "patent applicant."[23] Russell's formulation misses that the conduct and mens rea must be tied to a specific individual—here Stevens, because the premise of Russell's Motion is that "*Stevens* failed to disclose"[24] and *Stevens* made false declarations[25]—and may not be generally ascribed to a corporate "patent applicant," such as Lifetime.[26]

---

[21] Motion (Docket No. 406) at 24.

[22] *Exergen*, 575 F.3d at 1327 n. 3 (italics added). *See also Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 551 (Fed. Cir. 1990) ("Inequitable conduct requires proof by clear and convincing evidence.").

[23] *See* Motion (Docket No. 406) at xxvii.

[24] Motion (Docket No. 406) at 3 (italics added).

[25] *See* Motion (Docket No. 406) at 17.

[26] *See Exergen*, 575 F.3d at 1328–29 (inequitable conduct requires "that a *specific individual* (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO [italics added]"); *see also Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1959) ("in some cases, a corporation may be held constructively responsible for the composite knowledge

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

### 2.    Materiality

In its Statement of Elements and Undisputed Facts, Russell gives one materiality standard, which is nearly correct; but then in its Argument, Russell presents and relies on two other standards, which are both incorrect. Russell's nearly correct statement is:

> To prove the element of materiality, a party claiming inequitable conduct ordinarily must show that the patentee "withheld or misrepresented information that, in the absence of the withholding or misrepresentation, would have prevented a patent claim from issuing." However, "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."[27]

That statement is not quite correct because, although perhaps an unmistakably false affidavit *can be* egregious misconduct that is per se material, in certain circumstances, a per se inference of materiality from unmistakable falsity is contrary to Supreme Court precedent.[28]

One of Russell's incorrect statements of materiality is "no further showing of materiality is required outside of the uncured falsity of . . . statements filed with the PTO."[29] That is incorrect.

---

of all of its agents" but not "where, as here, intent is an essential ingredient"); *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y 1988) ("a corporation may be charged with the collective knowledge of its employees" but "the corporation may be deemed to have a culpable state of mind . . . . only when that state of mind is possessed by a single individual").

[27] Motion (Docket No. 406) at lxxii (citations omitted).

[28] *See Corona Cord Tire Co. v. Dovan*, 276 U.S. 358, 373–74, 48 S. Ct. 380, 72 L. Ed. 610 (1928); *see also Therasense*, 649 F.3d at 1291 ("In *Corona* . . . [t]he patentee had submitted two affidavits, falsely claiming that the invention had been used in the production of rubber goods when in fact only test slabs of rubber had been produced. *Id.* Because the misrepresentation was not the but-for cause of the patent's issuance, the Court held that it was immaterial and refused to extinguish the patent's presumption of validity."; "the severe remedy of unenforceability for inequitable conduct far exceeds the mere removal of a presumption of validity").

[29] Motion (Docket No. 406) at 19.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Even if "an *unmistakably* false *affidavit*" were always material,[30] no authority has been offered for the proposition *every* uncured misstatement, whether or not *unmistakably* false and regardless of the form in which it is presented (e.g., whether in a sworn affidavit or in an unsworn document) is material; and indeed such a rule would be contrary to Supreme Court authority.[31]

Russell's other incorrect statement is that information is material if "[i]t refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."[32] That statement is drawn from a regulation propounded by the PTO, which the Federal Circuit has expressly held does not govern the inequitable conduct inquiry.[33]

In presenting the regulatory definition of materiality that the courts have rejected, Russell makes one further error. The correct statement of law is: "information is not material if it is cumulative of other information already disclosed to the PTO,"[34] period. But according to

---

[30] *See Therasense*, 649 F.3d at 1292 (italics added).

[31] *See Corona*, 276 U.S. at 373–74.

[32] Motion (Docket No 406) at 2 (quoting 37 C.F.R. § 1.56(b)); *see also id.* at 4 ("Information is material . . . [if] it refutes (or is inconsistent with) a position taken in opposing an argument of unpatentability . . . or asserting an argument of patentability.") (citing 37 C.F.R. § 1.555(b)).

[33] *See Therasense*, 649 F.3d at 1294–95 ("This court declines to adopt the current version of Rule 56 in defining inequitable conduct because reliance on this standard has resulted in the very problems this court sought to address by taking this case en banc."; "Because Rule 56 sets such a low bar for materiality, adopting this standard would inevitably result in . . . patent litigators continuing to charge inequitable conduct in nearly every case as a litigation strategy.").

[34] *Star Scientific*, 537 F.3d at 1367; *see also* 37 C.F.R. § 1.56(b) ("Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, *and* (1) It establishes . . . a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes . . . [italics added]").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Russell, even cumulative information is material if it satisfies the regulatory definition that

Russell improperly invokes.[35]

### 3.   Intent

Finally, regarding intent, Russell correctly states:

> In order to prove inequitable conduct, Russell must show by clear and convincing evidence that Stevens misrepresented or omitted information material to patentability with specific intent to mislead or deceive the PTO. The "specific intent" requirement of proving inequitable conduct may be inferred from indirect and circumstantial evidence.[36]

But Russell then goes on to say that deceptive intent "must be the single most reasonable

inference that can be drawn."[37] There are cases that say deceptive intent "must . . . be the *single*

*most reasonable* inference able to be drawn from the evidence to meet the clear and convincing

standard."[38] But other cases hold, "when there are multiple reasonable inferences that may be

drawn, intent to deceive cannot be found"[39]—i.e., deceptive intent must be the *only* reasonable

inference. (Some cases say both, happily oblivious to the distinction between *most* reasonable

and *only* reasonable.[40]) Not disputed is that the conduct from which deceptive intent is to be

---

[35] *See* Motion (Docket No. 406) at 3 ("Information is material . . . when it is not cumulative to information of record *or* [i]f it refutes (or is inconsistent with) a position taken . . . [italics added]"); *cf.* 37 C.F.R. § 1.555(b) ("information is material . . . when it is not cumulative to information of record or being made of record in the reexamination proceeding, *and* . . . (2) It refutes, or is inconsistent with, a position the patent owner takes . . . [italics added]").

[36] Motion (Docket No. 406) at xxxiii (citations omitted).

[37] Motion (Docket No. 406) at xxxiii.

[38] *Star Scientific*, 537 F.3d at 1366 (italics added).

[39] *Therasense*, 649 F.3d at 1290–91.

[40] *See, e.g., Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1351 (Fed. Cir. 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

inferred "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances."[41] That favors the "*only* reasonable" over the "*most* reasonable" standard.

**B.    Response to Russell's Statement of Alleged Facts (DUCivR 56-1(c)(2)(B))**

Russell's Motion covers no more than eight of its 42 pleaded claims for inequitable conduct, but it includes a statement of allegedly undisputed facts with 361 numbered paragraphs (not counting plentiful subparts) spanning 70 pages. The corresponding statement in Lifetime's counterpart motion, which covers all 42 of Russell's inequitable conduct claims, has just 69 numbered paragraphs spread over 31 pages. That is because Lifetime, but not Russell, tried to heed the rule that "[o]nly those facts that entitle the moving party to judgment as a matter of law should be included.[42] Russell's expansion of its statement well beyond facts that, if proven, could entitle it to judgment as a matter of law gives Russell's statement an unmanageable scope that undermines the utility not only of Russell's statement but of Lifetime's responsive statement, as well, because Lifetime has to answer every assertion made by Russell in its egregiously overinclusive statement.

Many of Russell's assertions include vague elements such as pronouns without clear antecedent bases. Lifetime has done its best to understand and respond, and limited itself to a small handful of vagueness objections. But Lifetime reserves the right to modify its responses to the extent that the resolution of ambiguities on which those responses are premised proves to be incorrect.

---

[41] *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988) (italics added).

[42] *See* DUCivR 56-1(b)(2)(C).

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Lifetime disputes that its responses below can alter the content of a document. To the extent Russell misquotes a document or otherwise alters the meaning of quoted material by removing context, Lifetime disputes those misquotes or alterations, but not the language of the various documents as it appears therein.

By not disputing facts asserted by Russell, Lifetime is not admitting that any evidence cited by Russell in support is admissible or reliable, or that Russell's cited evidence is the reason for not disputing such facts.

Russell gives many of its contentions in an oblique form such as "Witness said X" or "Document says Y," rather than directly asserting X or Y. By not disputing that the witness or document made or includes a given statement, Lifetime is not conceding that the statement itself is true.

Russell departs from the element-by-element organization prescribed by DUCivR 56-1(b)(2)(C) by organizing its statement around headings that do not correspond to any true element. Although Lifetime believes Russell's headings are noncompliant and sometimes finds them confusing, it replicates them below (in Russell's chosen formats) to ensure compliance with DUCivR 56-1(c)(2)(B).

Subject to the foregoing, Lifetime responds to the numbered factual contentions in Russell's "Statement of Elements and Undisputed Material Facts" as follows:

**Russell's Element a): Failure to Disclose the Inventor's Adhesive Testing Failures**

Russell asserts inequitable conduct based on alleged failures to disclose certain testing failures. Lifetime disputes that Russell has met its element a), which requires a showing that such

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

testing is both but-for material and withheld with deceptive intent. More particularly, Lifetime responds to Russell's putative "facts" asserted in support of the element as follows:

Russell's Element a).A: Background Facts

Russell's Element a).A "Background Facts" is not a required element of inequitable conduct and is thus improper for Russell to include as part of its "Statement of Elements and Undisputed Material Facts" under DUCivR 56-1(b)(C). Nonetheless, Lifetime disputes that Russell has met any element of inequitable conduct in its element a).A, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 1:** The shared specification for the Lifetime patents states: "The present invention relates to an acrylic basketball backboard assembly and to a method of bonding an acrylic basketball backboard to a frame structure. The assembly includes a basketball backboard frame structure and an acrylic backboard which are bonded together with a suitable elastomeric adhesive. Silicone adhesive is currently preferred because of its excellent adhesion and flexibility and low cost." (Exhibit 1: '111 Patent at col. 1:51-57 (also Dkt. 4-1))

**Response to No. 1:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 2:** The specification also contains the following statement: "After testing a large number of different elastomeric adhesives from different suppliers, silicone adhesive was preferred because it provides a bond of sufficient strength and flexibility, comparable to that obtained with conventional foam filled, two-sided tape. It was also preferred because of its low cost and availability." (Exh.1 at col. 2:46-51)

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

**Response to No. 2:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 3:** The specification also contains the following statement: "Suitable silicone adhesive has been obtained from General Electric (D1-SEA 210) and from Dow Corning (Q3-6093)." (Exh. 1 at col. 2:59-60)

**Response to No. 3:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 4:** On January 5, 1999, Larry Stevens, the named inventor of the Patents in Suit ("Stevens"), executed a sworn declaration (the "Application Declaration") stating, in part, "I, Larry Stevens, declare ... that I verily believe I am the original, first, and sole inventor of the subject matter of the invention or discovery entitled SYSTEM AND METHOD FOR BONDING AN ACRYLIC SURFACE TO A FRAME, for which a patent is sought and which is described and claimed in the specification attached hereto; that I have reviewed and understand the contents of the above-identified specification, including the claims; and that I acknowledge the duty to disclose all information known to me to be material to patentability as defined in Section 1.56 of Title 37 of the Code of Federal regulations." (Exhibit 24: Application for U.S. Patent, Serial no. 09/228,325 at L. Stevens Declaration, Power of Attorney and Petition signed Jan. 5, 1999)

**Response to No. 4:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 5:** Stevens further swore in the Application Declaration that "I declare … further that these statements were made with the knowledge that willful, false statements and

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful, false statements may jeopardize the validity of the application or any patent issuing thereon." (Exhibit 24, at L. Stevens Declaration, Power of Attorney and Petition signed Jan. 5, 1999)

**Response to No. 5:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 6:** The Application Declaration was filed with the USPTO on January 11, 1999 in support of the application for the '111 Patent. (Exh. 24)

**Response to No. 6:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 7:** Stevens conceived of the idea of using dispensed adhesives in backboards when he was walking around the Boards area at Lifetime, and he saw the amount of time and the number of people required to make backboards boards manufactured using double-sided tape. He had previously read an article in either Engineering Weekly or Design News regarding automated adhesive dispensers, and he thought to use the same automation device with a workable adhesive in backboards. (Exhibit 2: Depo. of L. Stevens, Vol. I, at 101:3-108:7)

**Response to No. 7:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens (1) conceived of the inventions claimed by the patents in suit, (2) Stevens observed the amount of time and the number of people required to make backboards manufactured using double-sided tape, (3) had read something in either *Engineering Weekly* or *Design News* describing automated

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

adhesive dispensers, and (4) conceived using automated adhesive dispensers in the assembly of backboard assemblies. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[43]

**Russell's Fact No. 8:** Stevens was looking for "an adhesive that would be a – with the same personality as the VHB" double-sided tape then is use at Lifetime to manufacture backboards. (Exh. 2 at 105:24-25)

**Response to No. 8:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 9:** Stevens [sic.] next step in his inventive process was to obtain samples of glue to try (Exh. 2 at 118:6-9) and conducting testing of adhesive samples in his office. (Exh. 2 at 120:1-6)

**Response to No. 9:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 10:** In or about August 1997, Stevens designed a small coupon test fixture to allow him to determine the bond characteristics of several different adhesives on a

---

[43] Appx. Ex. 5, Stevens depo. at 101:3–108:7.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

small table top work bench. (Exhibit 3: Lifetime Sixth Supplemental Response to Russell

Interrogatory no. 8 at pg. 4) According to Stevens:

> I designed a small coupon test fixture to allow me to determine the bond characteristics of several different adhesives on a small table top work bench. I cut 3" X 6" pieces from acrylic basketball backboard material to make sample "acrylic coupons" and cut 6" long 1" X 1" powder-coated steel frame material as "steel coupons." I then obtained several over-the-counter tubes of as many adhesives as I could find to try to find something that would adhere to the backboard and the frame. In addition to adhesives I obtained over-the-counter, initial tests were performed using small samples of adhesives provided by the manufacturers. I would place a bead of adhesive in the center of the steel coupon and then lay the acrylic coupon centered over the steel coupon. I used string trimmer plastic bridged on both sides of the adhesive bead to control bond gap. I allowed the adhesive to cure as specified by the manufacturer. After the adhesive had cured, I would remove the string trimmer plastic. To test the bond strength of the adhesive, I built a tool that hooked on the back edge of the acrylic coupon and had a vertical piece of metal to attach a 1/2" drive dial type torque wrench. I would place the steel coupon in a vice and use the torque wrench to try to separate steel coupon and the acrylic coupon using an angled force. I performed this test using the VHB® tape to bond the acrylic coupon and the steel coupon to establish a baseline for the properties the adhesive needed to meet or exceed to be a viable option for use in the basketball backboard assemblies. I was looking for an adhesive that adhered strongly enough to the acrylic and the frame that the adhesive itself would fracture or tear before separating from the acrylic or the frame. In most of the samples tested, the adhesive would separate or debond from the acrylic without applying much force.
>
> Once I obtained an adhesive that had the required bonding strength and flexibility, I ordered a sufficient amount of material to bond to an entire backboard and frame and submitted that sample to the Lifetime testing lab for impact and temperature testing.

(Exhibit 4: L. Stevens Feb. 1, 2013 Declaration Under 37 C.F.R. § 1.132 Traversing Grounds for

Rejection, the "First Stevens Reexam Declaration" or "FSRD," at ¶ 12)

**Response to No. 10:** Lifetime disputes the relevance of this asserted "fact" to Russell's

pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate

quotation, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 11:** Stevens developed his "coupon test" to allow him to screen an adhesive to determine if it was a potential candidate for use in his invention. (Exh. 2 at 170:13-16)

**Response to No. 11:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 12:** Stevens first ran his "coupon test" against the VHB double-sided tape Lifetime was then using in its backboards to calculate an average baseline measurement for the torque force and angle of deflection for the VHB when the tape experienced either adhesive or cohesive failure. (Exh. 2 at 170:17-19; 200:10-201:1; 205:5-19)

**Response to No. 12:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 13:** Stevens would then conduct the same "coupon test" on adhesive samples he had obtained – if the torque force and deflection angle values for the adhesive were "somewhat close," meaning "20 percent, plus or minus," to the baseline values he obtained for the VHB tape, the adhesive was thereby identified as "a candidate to be able to be taken to the next level, which would be hand gluing a backboard and assembling it to go to take to testing for impact." (Exh. 2at 170:20-24; 202:3-23. See also Exh. 2 at 171:9-13 ("Q. After you moved on to the process of, 'Okay. I've got these candidates that passed the coupon test. I need to order a bunch more so I can do full assembly testing'; right? A. Correct."))

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 13:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 14:** Stevens' coupon test was not designed to test adhesive candidates against basketball impact forces. (Exh. 2 at 213:13-20)

**Response to No. 14:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to evidence Russell does not cite. The coupon test was used to assess strength and flexibility, which are important to suitability for use in basketball backboard assemblies.[44]

**Russell's Fact No. 15:** The coupon test was not how Stevens determined if an adhesive would work in his invention. (Exh. 2 at 165:22-166:22; 213:13-20)

**Response to No. 15:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Lifetime disputes this putative "fact" as unsupported by and indeed contrary to the evidence cited, which establishes that Stevens used the coupon test as a necessary but not sufficient condition to determine suitability for his invention.[45]

**Russell's Fact No. 16:** In addition to passing the coupon test, Stevens required adhesive candidates to pass a number of existing Lifetime production qualification tests before Stevens considered it a sufficient glue to use in his invention. (Exh. 2 at 146:1-148:10; 245:19-246:5; 278:6-281:17)

---

[44] Appx. Ex. 17, 1st Stevens decl. ¶ 12; Appx. Ex. 1, '111 patent at 2:46–50, 4:36–37.

[45] Appx. Ex. 5, Stevens depo. at 165:22–166:22, 213:13–20.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

**Response to No. 16:** Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[46] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[47]

**Russell's Fact No. 17:** Stevens used one of these tests, Lifetime's ball impact test, to test an adhesive candidate's responses to basketball impact forces. (Exh. 2 at 213:13-20)

**Response to No. 17:** Lifetime disputes this putative "fact" as unsupported by the evidence cited. For purposes of this Motion only, Lifetime does not dispute that Stevens used Lifetime's ball impact test to test an adhesive candidate's responses to basketball impact forces. Lifetime disputes that the ball impact test was the only test used to test an adhesive candidate's responses to basketball impact forces.

**Russell's Fact No. 18:** Stevens' testing of full backboard assembles [sic.] constructed using adhesive candidates identified through screening using the coupon test were conducted through Lifetime's testing department, which would have been documented on a Lifetime test order. (Exh. 2 at 119:14-120:20)

**Response to No. 18:** For purposes of this Motion only, Lifetime does not dispute that (1) Stevens tested backboard assemblies constructed using adhesives candidates identified through screening using the coupon test through Lifetime's testing department, (2) there was a policy of documenting such testing in a Lifetime test order, and (3) that policy was generally followed.

---

[46] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[47] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Lifetime disputes that every test Stevens conducted was reported in a test order produced during discovery in this action as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[48]

**Russell's Fact No. 19:** Stevens screened all of his adhesive candidates using his coupon test before submitting an adhesive candidate for further testing using Lifetime's testing lab. (Exh. 2 at 165:22-166:1)

**Response to No. 19:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 20:** The coupon test was a "pretest," or a "pre-qualifying test" to determine only if an adhesive was a candidate for further testing by Stevens. (Exh. 2 at 166:2-22, 218:24-219:9)

**Response to No. 20:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to evidence Russell does not cite. The coupon test was used to assess strength and flexibility, which are important to suitability for use in basketball backboard assemblies.[49]

**Russell's Fact No. 21:** An adhesives representative, Rick Bradford, gave Stevens a number of glue samples to try. (Exh. 2 at 158:22-160:11)

---

[48] Appx. Ex. 5, Stevens depo. at 119:14–120:20; 259:19–260:6.

[49] Appx. Ex. 17, 1st Stevens decl. ¶ 12; Appx. Ex. 1, '111 patent at 2:46–50, 4:36–37.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 21:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 22:** A number of these samples were of Dow Corning silicone adhesives. (Exh. 2 at 164:14-18)

**Response to No. 22:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 23:** Stevens conducted his coupon test on the adhesive samples that Bradford supplied to him. (Exh. 2 at 161:15-19)

**Response to No. 23:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 24:** None of these samples that Bradford supplied to Stevens, including the Dow Corning silicone adhesive samples, passed Stevens' coupon testing. (Exh. 2 at 161:20-22; 165:15-21)

**Response to No. 24:** For purposes of this Motion only, Lifetime does not dispute that samples provided by Bradford to Stevens prior to Stevens' identification of GE D1-SEA 210 adhesives as a candidate failed coupon testing. Lifetime disputes that Dow Corning Q3-6093 failed coupon testing as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[50]

**Russell's Fact No. 25:** If an adhesive failed Stevens' coupon test, he didn't consider that adhesive to be within the scope of his invention. (Exh. 2 at 218:24-219:2)

---

[50] Appx. Ex. 5, Stevens depo. at 216:24–217:4, 260:25–262:4.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 25:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 26:** Stevens never put an adhesive through Lifetime lab testing that had failed the coupon test. (Exh. 2 at 166:2-6)

**Response to No. 26:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 27:** Stevens never got to the point where he believed that all silicone adhesives would work in his invention. (Exh. 2 at 320:13-17)

**Response to No. 27:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that *during testing*, Stevens never got to the point where he believed that all silicone adhesives would work in his invention. Lifetime disputes that Stevens *never* got to the point where he believed that all silicone adhesives would work in his invention as unsupported by the evidence cited.[51]

**Russell's Fact No. 28:** Stevens conducted over 300 coupon tests, and identified less than ten adhesives as candidates to put through additional testing. (Exh. 2 at 186:25-187:16)

**Response to No. 28:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

---

[51] Appx. Ex. 5, Stevens depo. 320:13–17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 29:** Stevens' testing of adhesives with his coupon test fixture took place some 4–6 months before he first submitted full-size basketball backboards for testing. (Exh. 3 at pg. 6)

**Response to No. 29:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 30:** If an adhesive produced satisfactory results in Stevens' coupon test, he ordered a sufficient amount of material to bond to an entire backboard and frame and submitted that sample to the Lifetime testing lab for further testing. (Exh. 3 at pg. 7)

**Response to No. 30:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 31:** It was standard practice at Lifetime to record test parameters, data and results in Test Orders. (Exh. 4 at ¶ 11; Exhibit 5: Declaration of C. Holstein (LIFE14289-14297), at ¶ 17)

**Response to No. 31:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only,

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Lifetime does not dispute this asserted fact; but Lifetime does dispute that the "standard practice" was always followed..

**Russell's Fact No. 32:** Test orders related to Stevens's testing of full-size basketball backboards include those produced by Lifetime at LIFE00018392–LIFE00018401 (Test Order nos. 2079, 2083, 2084, 2096 and 2116); LIFE00018404–LIFE0018415 (Test Order nos. 2122, 2138, 2152, 2155, 2335 and 2337); and LIFE00018418–LIFE00018425 (Test Order nos. 2348, 2351, 2359 and 2365) which are dated between January 26, 1998 and November 16, 1998. (Exh. 3 at pg. 6)

**Response to No. 32:** For purposes of this Motion only, Lifetime does not dispute Lifetime produced Test Orders 2079, 2083, 2084, 2096, 2116, 2122, 2138, 2152, 2155, 2335, 2337, 2348, 2351, 2359 and 2365 are dated between January 26, 1998 and November 16, 1998, and relate to some of Stevens' testing of full-size basketball backboards. Lifetime disputes that these are the only test orders produced in the litigation by Lifetime that evidence Stevens' testing of full-size basketball backboards as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[52] For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 33:** Lifetime test 3020 is its "ball impact test," where a sample backboard is repeatedly hit with a basketball at a controlled speed. (Exh. 4 at ¶ 20; Exhibit 6: Declaration of J. Ward (LIFE14375-14376) at ¶¶ 4-7; Exhibit 7: Deposition of L. Bosgeiter at 39:2-16, 49:5-12; Exhibit 8: LIFE26292-26295 (also exh. 49 to L. Bosgeiter deposition))

---

[52] *See e.g.*, Appx. Ex. 72, Test Order 2489.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 33:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 34:** According to Stevens, the ball impact test was the test he used to evaluate the adhesive strength of the adhesives in his sample backboards. (Exh. 2 at 279:10-280:7)

**Response to No. 34:** For purposes of this Motion only, Lifetime does not dispute that Stevens used Lifetime's ball impact test to evaluate the adhesive strength of the adhesives in his sample backboards. Lifetime disputes that Stevens used only Lifetime's ball impact test to evaluate the adhesive strength of the adhesives in his sample backboards as unsupported by the evidence cited and contrary to additional evidence Russell does not cite.[53] Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[54] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[55]

**Russell's Fact No. 35:** According to Stevens, an adhesive fails when an adhesive-assembled backboard is tested using the ball impact test if it experiences either adhesive separation (separation of the adhesive from either the backboard or the frame) or fracturing of

---

[53] Appx. Ex. 17, 1st Stevens decl. ¶ 12; Appx. Ex. 1, '111 patent at 2:46–50, 4:36–37.

[54] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[55] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

the backboard substrate. (Exh. 4 at ¶ 11; Exhibit 9: L. Stevens July 26, 2013 Supplemental

Declaration Under 37 C.F.R. § 1.132 Traversing Grounds for Rejection, the "Second Stevens

Reexam Declaration" or "SSRD," at ¶ 13.B; Exh. 2 at 247:11-250:19)

**Response to No. 35:** For purposes of this Motion only, Lifetime does not dispute that

adhesive separation and fracturing of the backboard substrate are types of failure associated with

Lifetime's ball impact test. Lifetime disputes that there are no other types of failure as

unsupported by the evidence cited and contrary to additional evidence Russell does not cite.[56]

Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens

stated that there are too many variables involved to make a determination based on any one test

if an adhesive was suitable.[57] Additionally, Stevens noted that because there are too many

variables, one failed test does not indicate the adhesive is unsuitable.[58]

**Russell's Fact No. 36:** According to Stevens, the failure of a backboard in the ball impact

test indicates that an adhesive lacks sufficient strength for use in a basketball backboard

assembly that could be used to play the game of basketball. (Exh. 2 at 146:5-148:10, 249:12-

251:16, 279:18-280:7 & 334:24-335:5)

**Response to No. 36:** Lifetime disputes that Stevens required adhesive candidates to always

pass every test. Stevens stated that there are too many variables involved to make a

determination based on any one test if an adhesive was suitable.[59] Additionally, Stevens noted

---

[56] *See e.g.* Appx. Ex. 56, Test Order 2053, Appx. Ex. 5, Stevens depo. at 280:22–281:17.

[57] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[58] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[59] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[60]

Russell's Element a).A.1: Dow Corning Q3 6093 Adhesive and Test Order 2138

Russell's Element a).A.1 is a subsection of its "Background Facts," which is not a required element of inequitable conduct and is thus improper for Russell to include as part of its "Statement of Elements and Undisputed Material Facts" under DUCivR 56-1(b)(C). Nonetheless, Lifetime disputes that Russell has met any element of inequitable conduct in its element a).A.1, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 37:** Lifetime Test Order 2138, completed on April 16, 1998, is Stevens' testing of the Dow Corning Q3-6093 adhesive called out in the specification of the patents. (Exh. 2 at 259:3-14; Exhibit 10: Test Order 2138 (LIFE18406-18407 & exhibit 23 to L. Stevens depo. vol. I).

**Response to No. 37:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2138 documents testing Stevens conducted on assemblies made using Dow Corning Q3–6093. Lifetime disputes that Test Order 2138 documents the only testing Stevens conducted on Dow Corning Q3-6093 as unsupported by the evidence cited and contrary to additional evidence Russell does not cite.[61]

---

[60] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[61] Appx. Ex. 5, Stevens depo. 259:19–260:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 38:** Test Order 2138 reflects the results of Stevens' ball impact test on five backboards constructed using the Dow Corning Q3 6093 adhesive. (Exh. 2 at 260:16-19; Exh. 10)

**Response to No. 38:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2138 documents ball-impact testing Stevens conducted on assemblies made using Dow Corning Q3–6093. Lifetime disputes that Test Order 2138 documents the only ball-impact testing Stevens conducted on Dow Corning Q3-6093 as unsupported by the evidence cited and contrary to additional evidence Russell does not cite.[62] Lifetime disputes that the ball-impact test is Stevens'. (*See* Russell's Fact No. 17.)

**Russell's Fact No. 39:** The backboard assemblies being tested with the Dow Corning Q3-6093 adhesive in Test Order 2138 had a 44" acrylic basketball backboard, a powder-coated metal frame, and an adhesive bond gap controlled by the use of string trimmer as a bond gap spacer. (Exh. 2 at 263:1-266:10; Exh. 10)

**Response to No. 39:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 40:** Test Order 2138 shows failure of the tested Dow Corning Q3-6093 adhesive, with all five backboard samples assembled using Dow Corning Q3-6093 adhesive that were tested in Test Order 2138 failing the ball impact test. (Exh. 2 at 259:3-260:19; Exh. 10 at LIFE18407)

---

[62] Appx. Ex. 5, Stevens depo. 259:19–260:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 40:** For purposes of this Motion only, Lifetime does not dispute that

(1) Test Order 2138 documents testing of five backboard assemblies made using Dow Corning

Q3-6093 and (2) Test Order 2138 reports "Acrylic Failure" in the "Results" column for all five

samples. Lifetime disputes that Stevens required adhesive candidates to always pass every test.

Stevens stated that there are too many variables involved to make a determination based on any

one test if an adhesive was suitable.[63] Additionally, Stevens noted that because there are too

many variables, one failed test does not indicate the adhesive is unsuitable.[64]

**Russell's Fact No. 41:** Specifically, Test Order 2138 states that all five backboard samples

failed this testing because the acrylic board "separated" from the frame in each tested sample.

(Exh. 10 at LIFE18407)

**Response to No. 41:** For purposes of this Motion only, Lifetime does not dispute that the

"engineering notes" on Test Order 2138 state "all five samples separated." Lifetime disputes all

five backboard samples failed this testing because the acrylic board "separated" as unsupported

and contrary to the evidence cited, which states "acrylic failure" in the "results" column for all

five samples.[65]

**Russell's Fact No. 42:** The test order document indicates on its face that the testing in Test

Order 2138 was requested by "Larry S." and that copies were to be sent to "Larry S." (Exh. 10 at

LIFE18406), indicating both that Larry Stevens requested this test order and received a copy of it

---

[63] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[64] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[65] Appx. Ex. 64, Test Order 2138.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

when it was completed. (Exh. 2 at 120:21-125:5; Exhibit 44: Depo. of L. Stevens, Vol. II, at 32:15-18)

**Response to No. 42:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 43:** Test Order 2138 is the only documented testing Lifetime has of the testing of Dow Corning Q3-6093 adhesive in backboards. (Exhibit 12: Depo. of T. Schade, Vol. I, at 212:27-213:21)

**Response to No. 43:** Lifetime does not dispute that Test Order 2138 is a test order Lifetime has produced in discovery in this litigation that documents testing of basketball backboard assemblies made using the Dow Corning Q3-6093 adhesive. Test Order 2138 is dated April 16, 1998, almost 20 years ago. After conducting a reasonable search for documents to produce in this litigation, Test Order 2138 was the only test order prior to the '111 patent's filing date that was found that showed testing for Dow Corning Q3-6093. Lifetime disputes that Test Order 2138 documents the only documented testing of Dow Corning Q3-6093 as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which establishes that Stevens performed other testing of Dow Corning Q3-6093 that was documented in one or more other test orders.[66]

**Russell's Fact No. 44:** While Stevens testified that he believes he conducted tests of other backboards assembled using the Dow Corning Q3-6093 adhesive, he could not recall when those tests were conducted. (Exh. 2 at 259:19-260:12, 262:5-12).

---

[66] *See* Appx. Ex. 5, Stevens depo. at 260:5–6, 267:18–268:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 44:** For purposes of this Motion only, Lifetime does not dispute that

Stevens testified that he conducted tests other than those reflected in Test Order 2138 with

respect to backboards constructed with the Dow Corning Q3-6093 adhesive. Lifetime disputes

that Stevens could not recall when those test were conducted based on the cited testimony.

**Russell's Fact No. 45:** Stevens testified that he recalls getting the Dow Corning Q3-6093

adhesive to pass the ball impact test, but he doesn't know if the Dow Corning Q3-6093 adhesive

passed any of his other qualification tests. (Exh. 2 at 260:2-15)

**Response to No. 45:** For purposes of this Motion only, Lifetime disputes that Russell's

characterization fairly and accurately reflects Stevens cited testimony.

**Russell's Fact No. 46:** Lifetime is not aware of anyone at Lifetime other than Stevens ever

testing the Dow Corning Q3-6093 adhesive. (Exhibit 11: Depo. of E. van Nimwegen, vol. I, at

155:21-25)

**Response to No. 46:** For purposes of this Motion only, Lifetime disputes Russell's Fact

No. 66.[67]

**Russell's Fact No. 47:** Lifetime is not aware of any documentation of Stevens testing the

Dow Corning Q3-6093 adhesive at Lifetime other than the testing reflected in Test Order 2138.

(Exh. 7 at 177: 3-14)

**Response to No. 47:** For purposes of this Motion only, Lifetime does not dispute this

asserted fact.

---

[67] *See* Lifetime's Response to Fact No. 66 in its Opposition to Russell's Motio for Partial
Summary Judgment of Invalidity Under 35 U.S.C 112.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 48:** Lifetime is not aware of any gaps, or missing documents, in its test order records going back to 1995, and Lifetime is not aware that any of its testing records going back to that time having been destroyed. (Exh. 7 at 11:1-1210; Exh. 12 213:22-214:6)

**Response to No. 48:** Lifetime disputes that the test orders it has been able to locate and produce during discovery in this litigation is a complete record of all testing performed at Lifetime from 1995 to the present as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which establishes that at least some testing performed by Stevens of Dow Corning Q3-6093 is not documented in any of those orders.[68]

**Russell's Fact No. 49:** Lifetime produced an information data sheet for Dow Corning Q3-6093 Silicone Adhesive in this case, (LIFE1257-1258). This document is dated 1987, and the copy produced by Lifetime in this litigation reflects that it was faxed to Larry Stevens on October 10, 1998. (Exhibit 13: Dow Corning Q3-6093 Data Sheet (LIFE1257-1258 & exhibit 70 to Exh. 11); Exh. 11 at 131:23-134:16)

**Response to No. 49:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 50:** This information data sheet describes the Dow Corning Q3-6093 adhesive as "a two-component, elastomeric adhesive" and as a "Two-part silicone elastomer" with a "variable cure rate" and having a "curing agent" that is "reactive with atmospheric moisture." (Exh. 13 at LIFE1257)

---

[68] *See* Appx. Ex. 5, Stevens depo. at 260:5–6, 267:18–268:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 50:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 51:** It is undisputed that Stevens did not disclose Test Order 2138, or the fact that his testing of all five backboard assemblies using the Dow Corning Q3-6093 adhesive failed his testing, to the USPTO in original prosecution of the '111 Patent. (Dkt. 274 at ¶ 180; Dkt. 287 at 180; Exh. 24)

**Response to No. 51:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2138 was not disclosed to the PTO in connection with the '111, '935, and '550 patents until those patents went into reexamination.[69]

Russell's Element a).A.2: GE D1 SEA 210 Adhesive and Test Orders 2335, 2337, 2348, 2351, 2359 & 2365.

Russell's Element a).A.2 is a subsection of "Background Facts," which is not a required element of inequitable conduct and is thus improper for Russell to include as part of its "Statement of Elements and Undisputed Material Facts" under DUCivR 56-1(b)(C). Nonetheless, Lifetime disputes that Russell has met any element of inequitable conduct in its element a).A.2, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 52:** Lifetime Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 all involve Stevens' ball impact testing of full-size basketball backboard assemblies constructed using an adhesive. (Exh. 2 at 65:1-69:10; Exh. 3 at pg. 6; Exhibit 14: Test Order 2335

---

[69] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

(LIFE18412-13); Exhibit 15: Test Order 2337 (LIFE18414-15); Exhibit 16: Test Order 2348

(LIFE18418-19); Exhibit 17: Test Order 2351 (LIFE18420-21); Exhibit 18: Test Order 2359

(LIFE18422-23); Exhibit 19: Test Order 2365 (LIFE18424-25))

**Response to No. 52:** For purposes of this Motion only, Lifetime does not dispute that Test

Order nos. 2335, 2337, 2348, 2351, 2359, and 2365 reflect ball impact testing of backboards

constructed using adhesive in connection with Stevens' development of his invention. Lifetime

disputes that Stevens was involved in each of those tests because the cited materials do not

support that conclusion.

**Russell's Fact No. 53:** On their face, these documents appear to show testing conducted

between October and November 1998. (Exh. 3 at pg. 6; Exhs. 14-19)

**Response to No. 53:** For purposes of this Motion only, Lifetime does not dispute this

asserted fact.

**Russell's Fact No. 54:** None of Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365

identify on their face the adhesive that was used in the basketball backboard assemblies being

tested— the adhesive is described, variously, as: "adhesive," "adhesive dispensed by robot,"

"robot applied adhesive," and "silicon adhesive." (Exhs. 14-19)

**Response to No. 54:** For purposes of this Motion only, Lifetime does not dispute the

contents of the test orders. Lifetime disputes that Lifetime or its employees cannot discern the

adhesive used on the backboards reflect in the test orders based on the information therein.

**Russell's Fact No. 55:** The basketball backboard assemblies tested in Test Order nos.

2335, 2337, 2348, 2351, 2359 and 2365 were all constructed using General Electric D1-SEA 210

adhesive. (Exh. 2 at 65:1-69:10)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 55:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 56:** The GE D1-SEA 210 adhesive tested in Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 is a two-part catalyzed, silicone, elastomeric adhesive. (Exh. 2 at 282:20-283:3; 284:2-4; Exhibit 58: General Electric D1 SEA 210 Data Sheet (LIFE1272-74))

**Response to No. 56:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 57:** All of the basketball backboard assemblies tested in Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 had an acrylic backboard, a frame, and bond gap spacers used to control the size of the bond gap. (Exh. 2 at 241:14-242:14 & 288:19-290:23; Exh. 4 at ¶ 12 (LIFE14339); and Exhs. 14-19)

**Response to No. 57:** For purposes of this Motion only, Lifetime does not dispute that each the backboards tested pursuant to the test order had an acrylic backboard and frame. Lifetime disputes that each and every backboard contained bond gap spacers based on the test orders themselves.

**Russell's Fact No. 58:** Each of Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 show failure of the tested adhesive in somewhere between half and all of the backboards tested in each test order[.]

**Response to No. 58:** For purposes of this Motion only, Lifetime does not dispute that Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 show failure in somewhere between half and all of the backboards tested. Lifetime disputes that any of the cited test orders show failure of the

adhesive used. Each of the test orders show that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[70]

**Russell's Fact No. 58.a:** For Test Order 2335, all three tested backboards experienced adhesive failure due to adhesive separation from the acrylic (100% failure rate). (Exh. 14 at LIFE18413)

**Response to No. 58.a:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2335 reports that three tested basketball backboard assemblies experienced testing failure due to adhesive separation. Lifetime disputes that Test Order 2335 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[71]

**Russell's Fact No. 58.b:** For Test Order 2337, the adhesive failed due to separation from the acrylic in one of the two tested backboards (beginning with the first ball impact) (50% failure rate). (Exh. 15 at LIFE18415)

**Response to No. 58.b:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2337 reports that one of the two tested basketball backboard assemblies experienced testing failure due to separation from the acrylic. Lifetime disputes that Test Order 2337 shows failure of the adhesive used as unsupported and

---

[70] *See* Appx. Exs. 66–71, Test Orders 2335, 2337, 2348, 2351, 2359 and 2365; see also Appx. Ex. 29, '550 Third Party Comments at 17.

[71] *See* Appx. Ex. 66, Test Order 2335; *see also* Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[72]

**Russell's Fact No. 58.c:** For Test Order 2348, four of nine tested backboards had adhesive separation from either the acrylic and/or the frame, and the acrylic shattered in two of the other tested backboards (67% failure rate). (Exh. 16 at LIFE18419)

**Response to No. 58.c:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2348 reports that four of nine tested basketball backboard assemblies had adhesive separation from either the acrylic and/or the frame, and the acrylic shattered in two of the other tested backboards. Lifetime disputes that Test Order 2348 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[73]

**Russell's Fact No. 58.d:** For Test Order 2351, two of four tested backboards had adhesive failure from separation of the acrylic from the adhesive, and the adhesive failed in one of the two other tested backboards because the acrylic shattered (75% failure rate). (Exh. 17 at LIFE18421)

**Response to No. 58.d:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2351 reports that two of four tested basketball backboard assemblies experienced separation of the acrylic from the adhesive, and one of the two other tested basketball backboard assemblies had the acrylic shatter. Lifetime disputes that

---

[72] *See* Appx. Ex. 67, Test Order 2337; *see also* Appx. Ex. 29, '550 Third Party Comments at 17.

[73] *See* Appx. Ex. 68, Test Order 2348; *see also* Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Test Order 2351 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[74]

**Russell's Fact No. 58.e:** For Test Order 2359, all four tested backboards experienced adhesive failure due to separation of the acrylic from the adhesive (100% failure rate). (Exh. 18 at LIFE18423)

**Response to No. 58.e:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2359 reports that four of the tested basketball backboard assemblies experienced separation of the acrylic from the adhesive. Lifetime disputes that Test Order 2359 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[75]

**Russell's Fact No. 58.f:** For Test Order 2365, four of seven tested backboards had adhesive failure due to separation of the adhesive from the acrylic, and the adhesive failed because the acrylic shattered in one of the three other tested backboards (71% failure rate). (Exh. 19 at LIFE18425)

**Response to No. 58.f:** For purposes of this Motion only, Lifetime does not dispute that Test Order 2365 reports that four of seven tested basketball backboard assemblies experienced separation of the adhesive from the acrylic, and the acrylic shattered during Gardner Impact Testing in one of the three other tested backboards. Lifetime

---

[74] *See* Appx. Ex. 69, Test Order 2351; *see also* Appx. Ex. 29, '550 Third Party Comments at 17.

[75] *See* Appx. Ex. 70, Test Order 2359; *see also* Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

disputes that Test Order 2365 shows failure of the adhesive used as unsupported and

contrary to the evidence cited, which indicates that the objective of the testing was to

test a robotic process for applying the adhesive, not the adhesive itself.[76]

**Russell's Fact No. 59:** The test order documents for Test Order nos. 2335, 2337, 2359, and

2365 indicate on their face that the testing in each was requested by "Larry S." and that copies

were to be sent to "Larry S." (Exhs. 14-19), which indicates both that Larry Stevens requested

these test orders and received a copy of each when it was completed. (Exh. 2 at 120:21-125:5;

Exh. 44 at 32:15-18)

**Response to No. 59:** For purposes of this Motion only, Lifetime does not dispute this

asserted fact.

**Russell's Fact No. 60:** The test order documents for Test Order nos. 2335, 2337, 2348,

2351, 2359 and 2365 are the last six (6) documented tests of non-tape adhesive in backboards

conducted at Lifetime prior to the filing of the Stevens patent application on January 11, 1999.

(Exh. 3 at pg. 6)

**Response to No. 60:** Lifetime disputes the relevance of this asserted "fact" to Russell's

pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by the evidence cited.

**Russell's Fact No. 61:** Lifetime has not disclosed through discovery in this litigation any

other documented tests of non-tape adhesive in backboards conducted at Lifetime between the

---

[76] *See* Appx. Ex. 71, Test Order 2365; *see also* Appx. Ex. 29, '550 Third Party Comments at 17.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

time of Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 and prior to the filing of the

Stevens patent application on January 11, 1999.

**Response to No. 61:** Lifetime disputes the relevance of this asserted "fact" to Russell's

pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by any evidence.

**Russell's Fact No. 62:** Stevens was aware at time the application for the '111 Patent was

filed that the GE D1 SEA 210 adhesive had failed a number of his required qualification tests.

(Exh. 2 at 277:17-278:4)

**Response to No. 62:** For purposes of this Motion only, Lifetime does not dispute that

Stevens was aware at time the application for the '111 Patent was filed that a number of

basketball backboard assemblies made using robotically applied GE D1-SEA 210 adhesive had

failed certain tests. Lifetime disputes that the adhesive failed any tests as unsupported by the

evidence cited.[77]

**Russell's Fact No. 63:** Stevens didn't disclose to prosecution counsel any of his testing

with the GE D1-SEA 210 adhesive, or that the GE D1-SEA 210 had failed in any of Stevens'

adhesion strength testing of basketball backboard assemblies. (Exh. 2 at 277:7-16)

**Response to No. 63:** Lifetime disputes this putative "fact" as unsupported by the evidence

cited and contrary to other evidence Russell does not cite. At least Test Orders 2155, 2335, and

---

[77] Appx. Ex. 5, Stevens depo. at 277:17–278:4.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

2365 were cited in declarations submitted to the PTO by prosecution counsel.[78] There is no evidence that GE D1-SEA 210 failed any adhesion strength testing.[79]

**Russell's Fact No. 64:** It is undisputed that neither Stevens, nor anyone else affiliated with Lifetime, disclosed any of Test Orders 2335, 2337, 2348, 2351, 2359 and 2365, or the information they contained about testing failures, to the USPTO in the original prosecution of the '111 Patent. (Dkt. 274 at ¶ 183; Dkt. 287 at ¶ 183; Exh. 24)

**Response to No. 64:** For purposes of this Motion only, Lifetime does not dispute that Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 were not disclosed to the PTO in connection with the '111, '935, and '550 patents until those patents went into reexamination.[80]

Russell's Element a).A.3: Other Silicone Adhesive Testing-- Test Orders 2079, 2096, 2116 & 2122.

Russell's Element a).A.3 is a subsection of "Background Facts," which is not a required element of inequitable conduct and is thus improper for Russell to include as part of its "Statement of Elements and Undisputed Material Facts" under DUCivR 56-1(b)(C). Nonetheless, Lifetime disputes that Russell has met any element of inequitable conduct in its element a).A.3, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 65:** Lifetime Test Order nos. 2079, 2096, 2116 and 2122 show on their face testing conducted between January and March 1998. (Exh. 2 at 226:20-228:4, 229:21-

---

[78] Appx. Ex. 17, 1st Stevens decl. ¶ 19.

[79] *See* Appx. Ex. 29, '550 Third Party Comments at 17.

[80] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

231:15, 235:23-236:12; Exh. 3 at pg. 6; Exhibit 20: Test Order 2079 (LIFE18392-93 and exh. 14 to Exh. 2); Exhibit 21: Test Order 2096 (LIFE18398-99 and exh. 15 to Exh. 2) Exhibit 22: Test Order 2116 (LIFE18400-01 and exh. 17 to Exh. 2); Exhibit 23: Test Order 2122 (LIFE18404-05 and exh. 18 to Exh. 2)

**Response to No. 65:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 66:** Lifetime Test Order nos. Test Order nos. [sic.] 2079, 2096, 2116 and 2122 all involve Stevens' ball impact testing of full size basketball backboard assemblies constructed using an adhesive. (Exh. 3 at pg. 6; Exhs. 20-23)

**Response to No. 66:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 67:** Test Order 2079 states on its face that the testing was requested by "Larry Stevens" and that a copy was to be sent to "Larry Stevens" (Exh. 20 at LIFE18392), and this indicates both that Larry Stevens requested the test order and received a copy of it when it was completed. (Exh. 2 at 120:21-125:5)

**Response to No. 67:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 68:** Test Order nos. 2096, 2116 and 2122 state on their face that the testing in each was requested by "Larry S." and that copies were to be sent to "Larry S." (Exh. 21 at LIFE18398, Exh. 22 at LIFE18392, Exh. 23 at LIFE18398), and this indicates both that Larry Stevens requested these test orders and received a copy of each when it was completed. (Exh. 2 at 120:21-125:5; Exh. 44 at 32:15-18)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 68:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 69:** One of the two basketball backboard assemblies Stevens was testing in Test Order 2079 was constructed using a General Electric 5240 "normal set" adhesive. (Exh. 2 at 228:5-16; Exh. 20)

**Response to No. 69:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 70:** Five of the 10 basketball backboard assemblies Stevens was testing in Test Order 2096 were constructed using the same General Electric 5240 "normal set" adhesive. (Exh. 21 at LIFE18399)

**Response to No. 70:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 71:** This General Electric 5240 "normal set" adhesive is a silicone, elastomeric adhesive. (Exh. 2 at 226:20-228:16; 306:13-23)

**Response to No. 71:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 72:** The General Electric 5240 "normal set" adhesive failed Stevens' adhesion strength ball impact testing in both Test Order 2079 (Exh. 2 at 231:2-9) and Test Order 2096. (Exh. 2 at 231:10-15)

**Response to No. 72:** For purposes of this Motion only, Lifetime does not dispute that Test Orders 2079 and 2096 document testing failures of basketball backboards made using the General Electric 5240 "normal set" adhesive. Lifetime disputes that Stevens required adhesive

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[81] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[82] Lifetime disputes that the ball-impact test is Stevens'. (See Russell's Fact No. 17.) Further, Russell represented to the PTO that Test Order 2096 evidenced successful testing.[83]

**Russell's Fact No. 73:** In Test Order 2079, the acrylic separated from the frame in the one tested backboard assembly. (Exh. 20 at LIFE18393)

**Response to No. 73:** For the purposes of this Motion only, Lifetime disputes Russell's Fact No. 73 as unsupported by the content of Test Order 2079.

**Russell's Fact No. 74:** In Test Order 2096, the adhesive separated from the acrylic in all five backboards tested. (Exh. 2 at 234:19-235:3; Exh. 21 at LIFE18399)

**Response to No. 74:** For the purposes of this Motion only, Lifetime does not dispute that in Test Order 2096, the adhesive separated from the acrylic in five backboards tested. Lifetime disputes that the adhesive separated from the acrylic in all backboards tested as unsupported by and contrary to the evidence cited, which documents testing of ten basketball backboard assemblies.[84]

**Russell's Fact No. 75:** Stevens is not aware of any testing where the GE 5240 silicone elastomeric adhesive passed his adhesion strength ball impact testing. (Exh. 2 at 231:16-18)

---

[81] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[82] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[83] *See* Appx. Ex. 29, '550 Third Party Comments at 17.

[84] Appx. Ex. 61, Test Order 2096.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 75:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 76:** The basketball backboard assemblies Stevens was testing in Test Order nos. 2116 and 2122 were constructed using a General Electric 5220 "quick set" adhesive. (Exh. 2 at 228:5-16 & 235:25-236:17; Exhs. 22 & 23)

**Response to No. 76:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 77:** This General Electric 5220 "quick set" adhesive is a silicone adhesive. (Exh. 2 at 228:5-16)

**Response to No. 77:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 78:** The General Electric 5220 "quick set" adhesive failed Stevens' adhesion strength ball impact testing in both Test Order 2116 and Test Order 2122. (Exh. 2 at 236:18-21; Exh. 22 at LIFE18401; Exh. 23 at LIFE18405).

**Response to No. 78:** For purposes of this Motion only, Lifetime does not dispute that Test Orders 2079 and 2096 document testing failures of basketball backboards made using the General Electric 5240 "normal set" adhesive. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[85] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is

---

[85] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

unsuitable.[86] Lifetime disputes that the ball-impact test is Stevens'. (See Russell's Fact No. 17.)

Further, Russell represented to the PTO that Test Orders 2116 and 2122 evidenced successful

testing.[87]

**Russell's Fact No. 79:** In Test Order 2116, the GE 5220 silicone adhesive separated from

the frame in four of five basketball backboard assemblies tested, and the adhesive separated from

the acrylic in the fifth tested basketball backboard assembly. (Exh. 22 at LIFE18401)

**Response to No. 79:** For the purposes of this Motion only, Lifetime does not dispute this

asserted fact.

**Russell's Fact No. 80:** In Test Order 2122, the GE 5220 silicone adhesive separated from

the acrylic in all three tested backboards. (Exh. 23 at LIFE18405)

**Response to No. 80:** For the purposes of this Motion only, Lifetime does not dispute this

asserted fact.

**Russell's Fact No. 81:** At the time he filed his application for the '111 Patent, Stevens did

not consider GE 5220 silicone adhesive to be a sufficient adhesive for his invention. (Exh. 2 at

238:12-19)

**Response to No. 81:** For the purposes of this Motion only, Lifetime disputes Russell's Fact

No. 94 because the cited testimony and surrounding contextual testimony do not support

Russell's Fact No. 94. Lifetime disputes that Stevens' testimony relates to legal scope of his

invention.

---

[86] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[87] *See* Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 82:** All of the basketball backboard assemblies tested in Test Order nos. 2079, 2096, 2116 and 2122 had an acrylic backboard, a frame, and bond gap spacers used to control the size of the bond gap. (Exh. 2 at 241:14-242:14 & 288:19-290:23; Exh. 4 at ¶ 12; and Exhs. 20-23)

**Response to No. 82:** Russell's Fact No. 82 is exactly the same as Russell's Fact No. 57. For purposes of this Motion only, Lifetime does not dispute that each the backboards tested pursuant to the test orders included an acrylic backboard, frame, and bond gap spacers.

**Russell's Fact No. 83:** It is undisputed that neither Stevens, nor anyone else affiliated with Lifetime, disclosed any of Test Order nos. 2079, 2096, 2116 or, 2122 to the USPTO in the original prosecution of the '111 Patent. (Dkt. 274 at ¶ 187; Dkt. 287 at ¶ 187; Exh. 24)

**Response to No. 83:** For purposes of this Motion only, Lifetime does not dispute that Test Orders 2079, 2096, 2116, and 2122 were not disclosed to the PTO in connection with the '111, '935, and '550 patent until those patents went into reexamination.[88]

**Russell's Fact No. 84:** Stevens had elastomeric adhesives that passed his coupon test, but failed his other qualification testing. (Exh. 2 at 305:25-306:3)

**Response to No. 84:** For the purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 85:** At the time he filed his application, Stevens did not believe that all elastomeric adhesives would work in his invention. (Exh. 2 at 305:16-21)

---

[88] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 85:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 86:** Stevens did not believe that all elastomeric adhesives would work in his invention because of the results obtained in his coupon test. (Exh. 2 at 305:16-24)

**Response to No. 86:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

Russell's Element a).B: Elements of Inequitable Conduct

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Lifetime disputes that Russell has carried its burden to show the but-for materiality and deceptive intent required under its element a).B, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

Russell's Element a).B.1: Stevens Misrepresented and Withheld Information About Failed Testing for His Preferred Embodiments

Russell's Element a).B.1 asserts inequitable conduct based on alleged misrepresentations and withholding of certain testing data. Lifetime disputes that Russell has met its element a).B.1, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 87:** Stevens assisted the attorneys who prepared the original application that resulted in the '111 Patent. (Exh. 2 at 269:5-20)

**Response to No. 87:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 88:** Stevens and the attorney preparing the application exchanged drafts of the application that was to be filed with the USPTO. (Exh. 2 at 271:25-272:10)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 88:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 89:** Stevens was the source of the information in the specification that "Dow Corning (Q3-6093)" was a "[s]uitable silicone adhesive" that had "been obtained," and this information is in the specification because Stevens put it there. (Exh. 2 at 268:12-269:4, 269:13-25)

**Response to No. 89:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 90:** Stevens did not disclose any of his testing of adhesives to prosecution counsel who assisted in drafting the original application. (Exh. 2 at 330:6-19)

**Response to No. 90:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 91:** Stevens didn't disclose to prosecution counsel adhesives that failed in Stevens' testing. (Exh. 2 at 330:6-19)

**Response to No. 91:** Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to other evidence Russell does not cite. At least Test Orders 2079 and 2084 were cited in declarations submitted to the PTO by prosecution counsel.[89]

**Russell's Fact No. 92:** Stevens did not disclose either Test Order 2138 or the information it contained regarding the failed testing results for the Dow Corning Q3 6093 adhesive to the USPTO during original prosecution of the '111, '935, and '550 patents. (Exh.1; Dkt. 274 at ¶

---

[89] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

180; Dkt. 287 at 180; Exh. 24; Exhibit 25: Application for U.S. Patent, Serial no. 12/828,643 ('935); Exhibit 26: Application for U.S. Patent, Serial no. 12/828,660 ('550); Dkt. 4-2; Dkt. 4-3)

**Response to No. 92:** Russell's Fact No. 92 is substantively duplicative of Russell's Fact No. 51. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 51. For purposes of this Motion only, Lifetime does not dispute that Test Order 2138 was not disclosed to the PTO in connection with the '111, '935, and '550 patents until those patents went into reexamination.[90]

**Russell's Fact No. 93:** Stevens did not disclose any of Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 or the information they contained regarding the failed testing results for the GE D1 SEA 210 adhesive to the USPTO during original prosecution of the '111, '935, and '550 patents. (Dkt. 274 at ¶ 183; Dkt. 287 at ¶ 183; Exhs. 24-26; Dkt. 4-2; Dkt. 4-3)

**Response to No. 93:** Russell's Fact No. 93 is substantively duplicative of Russell's Fact No. 64. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 64 herein. For purposes of this Motion only, Lifetime does not dispute that Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 were not disclosed to the PTO in connection with the '111, '935, and '550 patents until those patents went into reexamination.[91]

**Russell's Fact No. 94:** Stevens did not disclose any of 2079, 2096, 2116 and 2122 or the information they contained regarding the failed testing results for the silicone adhesive to the

---

[90] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

[91] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

USPTO during original prosecution of the '111, '935, and '550 patents. (Dkt. 274 at ¶ 187; Dkt. 287 at ¶ 187; Exhs. 24-26; Dkt. 4-2; Dkt. 4-3)

**Response to No. 94:** For purposes of this Motion only, Lifetime does not dispute that Test Orders 2079, 2096, 2116, and 2122 were not disclosed to the PTO in connection with the '111, '935, and '550 patents until those patents went into reexamination.[92]

**Russell's Fact No. 95:** Stevens didn't disclose to the USPTO during original prosecution of the '111, '935, and '550 patents that silicone adhesives failed his coupon test, that he did not believe that all silicone adhesives would work in his invention, or that he did not believe that all elastomeric adhesives would work in his invention. (Exhs. 24-26)

**Response to No. 95:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited.[93]

Russell's Element a).B.2: The Materiality of Stevens' Omissions Failed Testing Results

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Russell's Element a).B.2 asserts that certain testing data was but-for material. Lifetime disputes that Russell has carried its burden to show but-for materiality as required by its element a).B.2, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

---

[92] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

[93] *See* Appx. Ex. 1, '111 patent at 2:59–60, 4:62–67.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 96:** Stevens identified "silicone adhesive" several times in the specification as the "preferred" adhesive for his invention. (Exh. 1 at cols. 1:53-57; 2:46-50; 2:55-58; 2:65-67)

**Response to No. 96:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 97:** Stevens stated in the specification that "[s]uitable silicone adhesive has been obtained from General Electric (D1-SEA 210) and from Dow Corning (Q3-6093)." (Exh. 1 at 2:59-60)

**Response to No. 97:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 98:** The original claims filed with the application for the '111 Patent had four (4) independent claims, which described the adhesives used in the invention as "an elastomeric adhesive" (Claims 1, 19 and 31) and as "a catalyzed silicone adhesive" (Claim 14). (Exh. 24 at submitted claims)

**Response to No. 98:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 99:** Dependent claims in the original application are directed to the use of a catalyzed elastomeric adhesive (Claim 3), a catalyzed silicone elastomeric adhesive (Claim 4), a two-part catalyzed elastomeric adhesive (Claims 5, 6), a silicone elastomeric adhesive (Claims 20, 32), and a urethane elastomeric adhesive (Claims 21, 33). (Exh. 24 at submitted claims)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 99:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that among the original claims filed with the application for the '111 Patent were dependent claims describing the adhesive used in the invention as a catalyzed elastomeric adhesive, a catalyzed silicone elastomeric adhesive, a two-part catalyzed elastomeric adhesive, a silicone elastomeric adhesive, and a urethane elastomeric adhesive. To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 100:** As issued, the independent Claims of the '111 Patent are directed to the use of a "catalyzed elastomeric adhesive," (Claims 1, 19, 21), a "catalyzed silicone adhesive," (Claim12), a "catalyzed silicone-based adhesive" (Claim 17), and a "silicone-based adhesive" (Claims 23 and 25). (Exh. 1, Dkt. 4-1)

**Response to No. 100:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that as originally issued, the independent claims of the '111 patent variously described the adhesive used in the invention as a "catalyzed elastomeric adhesive," a "catalyzed silicone adhesive," a "catalyzed silicone-based adhesive," and a "silicone-based adhesive." To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 101:** As issued, all independent claims of the '935 Patent are directed to the use of an "adhesive" (Claims 1, 17 and 24). (Dkt. 4-2)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 101:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that as originally issued, the independent claims of the '935 patent described the adhesive used in the invention as an "adhesive." However, these claims were amended during reexamination proceedings and the language of the currently pending claim has now changed.[94] To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 102:** As issued, the lone independent claim of the '550 Patent (Claim 1) is directed to an "adhesive." (Dkt. 4-3)

**Response to No. 102:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that as originally issued, the lone independent claim of the '550 Patent described the adhesive used in the invention as an "adhesive." However, this claim was amended during reexamination proceedings and the language of the currently pending claims has now changed.[95] To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 103:** During the reexamination proceedings for the '111, '935 and [']550 Patents, Lifetime pursued new amended claims:

---

[94] Appx. Ex. 26, '935 Amendment and Response to ACP.

[95] Appx. Ex. 32, '550 Amendment and Response to ACP.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 103:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

> **Russell's Fact No. 103.a:** In the '111 Patent, Lifetime added new claims directed at catalyzed elastomeric adhesives (Claim 27), two-part catalyzed elastomeric adhesives (29), a silicone-based catalyzed elastomeric adhesive (Claim 30), a silicone-based adhesive (Claim 41), a catalyzed silicone-based adhesive (Claim 43), a two-part catalyzed silicone-based adhesive (Claim 44), a silicone-based elastomeric adhesive (Claim 45), a catalyzed silicone based [sic.] elastomeric adhesive (Claim 46), and these claims have issued in the '111 Reexamination Certificate. (Exhibit 27: '111 Reexamination Certificate)

> **Response to No. 103.a:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that through reexamination of the '111 patent, it obtained additional claims that describe the adhesive used in the invention as a catalyzed elastomeric adhesives, a two-part catalyzed elastomeric adhesives, a silicone-based catalyzed elastomeric adhesive, a silicone-based adhesive, a catalyzed silicone-based adhesive, a two-part catalyzed silicone-based adhesive, a silicone-based elastomeric adhesive, as a catalyzed elastomeric adhesive. To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 103.b:** Lifetime added new claims via amendment in the '550 Patent directed to an "uncured adhesive" (Claim 19), and uncured elastomeric adhesive (Claim 20), an uncured silicone adhesive (Claim 29), an uncured catalyzed adhesive (Claim 30), an uncured catalyzed silicone adhesive (Claim 31), an uncured catalyzed elastomeric adhesive (Claim 32) for "connecting" the backboard and the frame. (Exhibit 28: '550 Lifetime Amendment and Response to ACP (filed May 5, 2014))

**Response to No. 103.b:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that through amendment during reexamination of the '550 patent, it has pursued additional claims that variously describe the adhesive used in the invention as an uncured adhesive, an uncured elastomeric adhesive, an uncured silicone adhesive, an uncured catalyzed adhesive, an uncured catalyzed silicone adhesive, and an uncured catalyzed elastomeric adhesive, for "connecting" the backboard and the frame. To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 103.c:** Lifetime added new claims via amendment in the '935 Patent directed to a "non-tape adhesive" (Claim 31), an elastomeric non-tape adhesive (Claim 33), a silicone non-tape adhesive (Claim 34), a catalyzed non-tape adhesive (Claim 35), a catalyzed silicone non-tape adhesive (Claim 36), and a catalyzed

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

elastomeric non-tape adhesive (Claim 37). (Exhibit 29: '935 Lifetime Amendment and Response to ACP (filed May 7, 2014))

**Response to No. 103.c:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that through amendment during reexamination of the '935 patent, it has pursued additional claims that variously describe the adhesive used in the invention as a non-tape adhesive, an elastomeric non-tape adhesive, a silicone non-tape adhesive, a catalyzed non-tape adhesive, a catalyzed silicone non-tape adhesive, and a catalyzed elastomeric non-tape adhesive. To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 104:** The applications for the '034 and '463 Patents were filed, respectively, on October 10, 2011 and October 17, 2011, and the patents issued, respectively, on October 7, 2014 and September 30, 2014. (Exhibit 30: '034 Patent; Exhibit 31: '463 Patent)

**Response to No. 104:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 105:** The shared specification for this family of patents was also filed in support of the applications that issued as the '034 and '463 Patents. (Exhs. 30 and 31)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 105:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 106:** As issued, claims of the '463 Patent are directed to the use of an adhesive (Claim 1), an elastomeric adhesive (Claims 6 and 45), a silicone elastomeric adhesive (Claim 7), and a catalyzed elastomeric adhesive (Claim 22). (Exh. 31)

**Response to No. 106:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that the claims of the '463 patent, as issued, variously describe the adhesive used in the invention as an adhesive, an elastomeric adhesive, a silicone elastomeric adhesive, and a catalyzed elastomeric adhesive. To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

**Russell's Fact No. 107:** As issued, claims of the '034 Patent are directed to the use of an "adhesive" (Claims 1 and 18), an elastomeric adhesive (Claims 7 and 24), a catalyzed adhesive (Claims 8 and 25), a silicone adhesive (Claims 9 and 26), a catalyzed silicone adhesive (Claims 10 and 27), a catalyzed elastomeric adhesive (Claims 11 and 28), a "non-tape elastomeric adhesive" (Claims 35, 39 and 43), and a catalyzed elastomeric non-tape adhesive (Claims 36, 40, 45), a silicone elastomeric non-tape adhesive (Claim 46), and a catalyzed silicone elastomeric non-tape adhesive (Claim 47). (Exh. 30)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 107:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that the claims of the '034 patent, as issued, variously describe the adhesive used in the invention an adhesive, an elastomeric adhesive, a catalyzed adhesive, a silicone adhesive, a catalyzed silicone adhesive, a catalyzed elastomeric adhesive, a non-tape elastomeric adhesive, and a catalyzed elastomeric non-tape adhesive, a silicone elastomeric non-tape adhesive, and a catalyzed silicone elastomeric non-tape adhesive. To the extent that Russell means more or other than that by using the term "directed," Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to the law of claim construction.

<u>Russell's Element a).B.3: Stevens' Intent to Mislead the USPTO</u>

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Russell's Element a).B.3 asserts Stevens acted with specific intent to mislead the PTO. Lifetime disputes that Russell has carried its burden to show such intent is the single most reasonable inference as required under its element a).B.3, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 108:** If an adhesive failed Stevens' coupon test, he didn't consider that adhesive to be within the scope of his invention. (Exh. 2 at 218:24-219:2)

**Response to No. 108:** Russell's Fact No. 108 is identical to Russell's Fact No. 25. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 25 herein. For purposes of this Motion only, Lifetime does not dispute this asserted fact that Russell correctly reports the contents of Stevens' deposition testimony.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 109:** Numerous silicone adhesive samples failed Stevens' coupon testing. (Exh. 2 at 161:20-22; 165:15-21)

**Response to No. 109:** Lifetime disputes this putative "fact" as unsupported by the evidence cited, which indicates the samples Rick Bradford provided Stevens failed the coupon testing.[96]

**Russell's Fact No. 110:** Stevens never got to the point where he believed that all silicone adhesives would work in his invention. (Exh. 2 at 320:13-17)

**Response to No. 110:** Russell's Fact No. 110 is identical to Russell's Fact No. 27. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 27 herein. Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that *during testing*, Stevens never got to the point where he believed that all silicone adhesives would work in his invention. Lifetime disputes that Stevens *never* got to the point where he believed that all silicone adhesives would work in his invention as unsupported by the evidence cited.[97]

**Russell's Fact No. 111:** Stevens had elastomeric adhesives that passed his coupon test, but failed his other qualification testing. (Exh. 2 at 305:25-306:3)

**Response to No. 111:** Russell's Fact No. 111 is identical to Russell's Fact No. 84. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 84. For the purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[96] Appx. Ex. 5, Stevens depo. at 161:20–22; 165:15–21.

[97] Appx. Ex. 5, Stevens depo. 320:13–17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 112:** At the time he filed his application, Stevens did not believe that all elastomeric adhesives would work in his invention. (Exh. 2 at 305:16-21)

**Response to No. 112:** Russell's Fact No. 112 is identical to Russell's Fact No. 85. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 85. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 113:** Stevens did not believe that all elastomeric adhesives would work in his invention because of the results obtained in his coupon test. (Exh. 2 at 305:16-24)

**Response to No. 113:** Russell's Fact No. 113 is identical to Russell's Fact No. 86. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 86. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 114:** According to Stevens, the failure of a backboard in the ball impact test indicates that an adhesive lacks sufficient strength for use in a basketball backboard assembly that could be used to play the game of basketball. (Exh. 2 at 146:5-148:10, 249:12-251:16, 279:18-280:4 & 334:24-335:5)

**Response to No. 114:** Russell's Fact No. 114 is identical to Russell's Fact No. 36. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 36. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

adhesive was suitable.[98]  Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[99]

**Russell's Fact No. 115:** Test Order 2138 shows that all five tested full-sized backboard assembles made using the two-part, catalyzed, silicone, elastomeric Dow Corning Q3-6093 adhesive failed the ball impact test because the acrylic board "separated" from the frame in each tested sample. (Paras. 37-51 above)

**Response to No. 115:** Russell's Fact No. 115 is substantively duplicative of Russell's Fact Nos. 40–41. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 40–41. For purposes of this Motion only, Lifetime does not dispute that (1) Test Order 2138 documents testing of five backboard assemblies made using Dow Corning Q3-6093 and (2) Test Order 2138 reports "Acrylic Failure" in the "Results" column for all five samples. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[100]  Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[101] For purposes of this Motion only, Lifetime does not dispute that the "engineering notes" on Test Order 2138 state "all five samples separated." Lifetime disputes all five backboard samples failed this testing because the acrylic

---

[98] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[99] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[100] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[101] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

board "separated" as unsupported and contrary to the evidence cited, which states "acrylic failure" in the "results" column for all five samples.[102]

**Russell's Fact No. 116:** Test Order 2138 is the only documented testing Lifetime has of the testing of Dow Corning Q3-6093 adhesive in backboards. (Exh. 12 at 212:27-213:21)

**Response to No. 116:** Russell's Fact No. 116 is identical to Russell's Fact No. 43. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 43. Lifetime does not dispute that Test Order 2138 is a test order Lifetime has produced in discovery in this litigation that documents testing of basketball backboard assemblies made using the Dow Corning Q3-6093 adhesive. Test Order 2138 is dated April 16, 1998, almost 20 years ago. After conducting a reasonable search for documents to produce in this litigation, Test Order 2138 was the only test order found prior to the '111 patent's filing date that showed testing for Dow Corning Q3-6093. Lifetime disputes that Test Order 2138 documents the only documented testing of Dow Corning Q3-6093 as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which establishes that Stevens performed other testing of Dow Corning Q3-6093 that was documented in one or more other test orders.[103]

**Russell's Fact No. 117:** Lifetime Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 show repeated failures of the ball impact test of full size backboard assemblies made with the two-part catalyzed, silicone, elastomeric General Electric D1-SEA 210 adhesive. (See Paras. 52-64 above)

---

[102] Appx. Ex. 64, Test Order 2138.

[103] *See* Appx. Ex. 5, Stevens depo. at 260:5–6, 267:18–268:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 117:** Russell's Fact No. 117 is substantively duplicative of Russell's Fact No. 58. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 58. For purposes of this Motion only, Lifetime does not dispute that Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 show failure in somewhere between half and all of the backboards tested. Lifetime disputes that any of the cited test orders show failure of the adhesive used. Each of the test orders show that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[104]

**Russell's Fact No. 118:** Test Order nos. 2335, 2337, 2348, 2351, 2359 and 2365 are the last six (6) documented tests of non-tape adhesive in backboards conducted at Lifetime prior to the filing of the Stevens patent application on January 11, 1999. (See Paras. 52-64 above)

**Response to No. 118:** Russell's Fact No. 118 is identical to Russell's Fact No. 60. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 60. Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by the evidence cited.

**Russell's Fact No. 119:** Stevens was aware at time the application for the '111 Patent was filed that the GE D1 SEA 210 adhesive had failed a number of his required qualification tests. (Exh. 2 at 277:17-278:4)

**Response to No. 119:** Russell's Fact No. 119 is identical to Russell's Fact No. 62. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 62. For purposes of

---

[104] *See* Appx. Exs. 66–71, Test Orders 2335, 2337, 2348, 2351, 2359 and 2365; see also Appx. Ex. 29, '550 Third Party Comments at 17.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

this Motion only, Lifetime does not dispute that Stevens was aware at time the application for the '111 Patent was filed that a number of basketball backboard assemblies made using robotically applied GE D1-SEA 210 adhesive had failed certain tests. Lifetime disputes that the adhesive failed any tests as unsupported by the evidence cited.[105]

**Russell's Fact No. 120:** Stevens didn't disclose to prosecution counsel any of his testing with the GE D1-SEA 210 adhesive, or that the GE D1-SEA 210 had failed in any of Stevens' adhesion strength testing of basketball backboard assemblies. (Exh. 2 at 277:7-16)

**Response to No. 120:** Russell's Fact No. 120 is identical to Russell's Fact No. 63. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 63. Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to other evidence Russell does not cite. At least Test Orders 2155, 2335, and 2365 were cited in declarations submitted to the PTO by prosecution counsel.[106]  There is no evidence that GE D1-SEA 210 failed any adhesion strength testing.[107]

**Russell's Fact No. 121:** Lifetime Test Order nos. Test Order nos. [sic.] 2079, 2096, 2116 and 2122 all involve Stevens' ball impact testing of full size basketball backboard assemblies constructed using an adhesive. (Paras. 65-83 above)

**Response to No. 121:** Russell's Fact No. 121 is identical to Russell's Fact No. 66. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 66. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[105] Appx. Ex. 5, Stevens depo. at 277:17–278:4.

[106] Appx. Ex. 17, 1st Stevens decl. ¶ 19.

[107] *See* Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 122:** Full sized backboard assemblies made with the silicone, elastomeric General Electric 5240 "normal set" adhesive failed Stevens' adhesion strength ball impact testing due to adhesive separation from either the acrylic or the frame in all samples in both Test Order 2079 and Test Order 2096. (Paras. 65-83 above)

**Response to No. 122:** Russell's Fact No. 122 is substantively duplicative Russell's Fact No. 72. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 72. For purposes of this Motion only, Lifetime does not dispute that Test Orders 2079 and 2096 document testing failures of basketball backboards made using the General Electric 5240 "normal set" adhesive. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[108] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[109] Lifetime disputes that the ball-impact test is Stevens'.[110] Further, Russell represented to the PTO that Test Order 2096 evidenced successful testing.[111]

**Russell's Fact No. 123:** Stevens is not aware of any testing where backboards made with the GE 5240 silicone elastomeric adhesive passed his adhesion strength ball impact testing. (Exh. 2 at 231:16-18)

---

[108] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[109] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[110] See Russell's Fact No. 17.

[111] *See* Appx. Ex. 29, '550 Third Party Comments at 17.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

**Response to No. 123:** Russell's Fact No. 123 is substantively identical to Russell's Fact No. 75. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 75. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 124:** Full sized backboard assemblies made with the silicone General Electric 5220 "quick set" adhesive failed Stevens' adhesion strength ball impact testing in both Test Order 2116 and Test Order 2122 due to adhesive separation from either the acrylic or the frame. (Paras. 65-83 above)

**Response to No. 124:** Russell's Fact No. 124 is substantively identical to Russell's Fact No. 78. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 78. For purposes of this Motion only, Lifetime does not dispute that Test Orders 2079 and 2096 document testing failures of basketball backboards made using the General Electric 5240 "normal set" adhesive. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[112] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[113] Lifetime disputes that the ball-impact test is Stevens'.[114] Further, Russell represented to the PTO that Test Orders 2116 and 2122 evidenced successful testing.[115]

---

[112] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[113] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[114] See Russell's Fact No. 17.

[115] *See* Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 125:** At the time he filed his application for the '111 Patent, Stevens did not consider GE 5220 silicone adhesive to be a sufficient adhesive for his invention. (Exh. 2 at 238:12-19)

**Response to No. 125:** Russell's Fact No. 123 is identical to Russell's Fact No. 81. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 81. For the purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 126:** In the Application Declaration, Stevens affirmatively represented to the USPTO that he was "the original, first, and sole inventor of the subject matter of the invention or discovery" of the application as "described and claimed in the specification;" that he had "reviewed and [understood] the contents of" the specification, "including the claims," and also acknowledges his "duty to disclose all information known to [Stevens] to be material to patentability as defined in" 37 CFR § 1.56. (Paras. 4-6 above)

**Response to No. 126:** Russell's Fact No. 126 is substantively identical to Russell's Fact No. 4. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 4. For the purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 127:** Stevens did not disclose any of his testing of adhesives to prosecution counsel who assisted in drafting the original application. (Exh. 2 at 330:6-19)

**Response to No. 127:** Russell's Fact No. 127 is identical to Russell's Fact No. 90. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 90. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 128:** Stevens didn't disclose to prosecution counsel adhesives that failed in Stevens' testing. (Exh. 2 at 330:6-19)

**Response to No. 128:** Russell's Fact No. 128 is identical to Russell's Fact No. 91. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 91. Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to other evidence Russell does not cite. At least Test Orders 2079 and 2084 were cited in declarations submitted to the PTO by prosecution counsel.[116]

**Russell's Fact No. 129:** Stevens assisted Lifetime in the reexaminations of the '111, '550 and '935 Patents by signing two declarations for submission to the USPTO. (Exh. 2 at 133, 247; Exh. 4; Exh. 9)

**Response to No. 129:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 130:**  The First Stevens Reexam Declaration was filed with the PTO in the reexamination proceedings for the '111, '935 and '550 Patents and in original prosecution for the '034 and '463 Patents. (Exhibit 60: Decl. of J. Love at ¶ VI.D.12 (pg. 56-57))

**Response to No. 130:** Lifetime disputes this putative "fact" under Federal Rule of Civil Procedure ("FRCP") 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[116] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 131:** The Second Stevens Reexam Declaration was filed with the PTO in the reexamination proceedings for the '111[,] '935 and '550 Patents and in original prosecution for the '034 and '463 Patents. (Exh. 60 at ¶ VI.D.35 (pg. 67))

**Response to No. 131:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 132:** In the First Stevens Reexam Declaration, Stevens provided copies of and disclosed numerous Lifetime test orders, but not Test Order nos. 2096, 2116, 2122, 2138, 2335, 2337, 2348, 2351, 2359 and 2365, in Appendix A to the declaration in support of arguments for patentability of the '111, '550 and '935 Patents. (Exh. 4 at ¶ 11 and App. A)

**Response to No. 132:** For purposes of this Motion only, Lifetime does not dispute that copies of Test Orders 2096, 2116, 2122, 2138, 2335, 2337, 2348, 2351, 2359 and 2365 were provided to the PTO through Exhibit B to the '550 Third Party Comments and not Appendix A of the first Stevens declaration.[117] Lifetime disputes that none of those test orders was disclosed to the PTO in the first Stevens declaration as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which establishes that at least Test Orders 2335 and 2365 were disclosed in the first Stevens declaration.[118]

---

[117] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

[118] Appx. Ex. 17, 1st Stevens decl. ¶ 19.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 133:** Stevens stated in this First Stevens Reexam Declaration that the disclosed tests "range from October 24, 1995 to December 7, 1998" and "[i]n each case the adhesive failed." (Exh. 4 at ¶ 11)

**Response to No. 133:** For purposes of this Motion only, Lifetime does not dispute that the quoted language, to the extent it is accurately quoted, appears in the first Stevens declaration. Lifetime disputes that the quoted language applies to *every* "disclosed test[]" as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[119]

**Russell's Fact No. 134:** Stevens disclosed by name, but did not provide a copy of, Test Order nos. 2335 and 2365 in the First Stevens Reexam Declaration. (Exh. 4 at ¶ 19 and App. A)

**Response to No. 134:** For purposes of this Motion only, Lifetime does not dispute that Stevens referenced Test Orders 2335 and 2365 in paragraph 19 of his first declaration, and that Test Orders 2335 and 2365 were provided to the PTO with Exhibit B to the '550 Third Party Comments and not the first Stevens declaration.[120]

**Russell's Fact No. 135:** In discussing Test order nos. 2335 and 2365 in the First Stevens reexam Declaration, Stevens said the following:

> During my extensive testing of adhesives, I learned that elastomeric adhesives provided other desirable properties. For example, I performed impact testing that showed the clastomcric [sic.] adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. See APPENDIX A, Test Order nos. 2155, 2335 and 2365.

---

[119] Appx. Ex. 17, 1st Stevens decl. ¶¶ 11, 19.

[120] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

(Exh. 4 at ¶ 19)

**Response to No. 135:** For the purposes of this Motion only, Lifetime does not dispute that

paragraph 19 of the first Stevens declaration reads:

> During my extensive testing of adhesives, I learned that elastomeric adhesives provided other desirable properties. For example, I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. See APPENDIX A, Test Order nos. 2155, 2335 and 2365.

**Russell's Fact No. 136:** In his Second Stevens Reexam Declaration, Stevens again

provides copies of and disclosed a number of Lifetime test orders, but not but not Test Order nos.

2116, 2122, 2138, 2335, 2337, 2348, 2351, 2359 and 2365, in support of arguments for

patentability of the '111, '550 and '935 Patents. (Exh. 9 at at ¶ 13.B, ¶ 14 and App. B)

**Response to No. 136:** For purposes of this Motion only, Lifetime does not dispute that

Test Orders 2116, 2122, 2138, 2335, 2337, 2348, 2351, 2359 and 2365 were disclosed to the

PTO through Exhibit B to the '550 Third Party Comments and not through the second Stevens

declaration.[121]

**Russell's Fact No. 137:** In Paragraph 13.B of his Second Stevens Reexam Declaration,

Stevens discusses "[y]ears of testing" of adhesives in backboard assemblies at Lifetime, and

states that the disclosed test orders "illustrate that various catalyzed and curable adhesives failed

to provide a bond of sufficient strength and flexibility to allow the basketball backboard to be

used in the game of basketball." (Exh. 9 at ¶ 13.B)

---

[121] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 137:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For the purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 138:** Stevens also states in the declaration: "I recall testing at least 40 and [sic.] 50 different adhesives that failed to bond to either the acrylic or the powder coating with sufficient strength and/or flexibility to allow the basketball backboard assembly to be used in the game of basketball." (Exh. 9 at ¶ 13.C)

**Response to No. 138:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 139:** While Appendix B to the Second Stevens Reexam Declaration did contain copies of test Order nos. 2079 and 2096, Stevens described the Test Orders contained in Appendix B as:

> APPENDIX B includes exemplary Test Orders describing adhesive testing I performed showing the unexpected results of connecting the acrylic basketball backboard to the basketball backboard frame by: sandwiching an uncured adhesive between the basketball backboard frame and the acrylic basketball backboard; and curing the adhesive to bond the basketball backboard frame and the acrylic basketball backboard once die [sic.] adhesive cures; wherein the adhesive provides a bond of sufficient strength and flexibility to allow the basketball backboard assembly to be used in the game of basketball.

(Exh. 9 at ¶ 14)

**Response to No. 139:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For the purposes of this Motion only, Lifetime does not dispute that

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Appendix B to the second Stevens declaration contains copies of Test Order 2079 and 2096, and that paragraph 14 of the second Stevens declaration reads:

> APPENDIX B includes exemplary Test Orders describing adhesive testing I performed showing the unexpected results of connecting the acrylic basketball backboard to the basketball backboard frame by: sandwiching an uncured adhesive between the basketball backboard frame and the acrylic basketball backboard; and curing the adhesive to bond the basketball backboard frame and the acrylic basketball backboard once the adhesive cures; wherein the adhesive provides a bond of sufficient strength and flexibility to allow the basketball backboard assembly to be used in the game of basketball.

**Russell's Element b): False Statements in the Stevens Declarations & the Notice of Correction**

Russell's Element b) alleges inequitable conduct based on various alleged false statements made in Stevens' various declaration. Lifetime disputes that Russell has carried its burden to show that such statements are (1) unmistakably false, (2) but-for material, and (3) made with deceptive intent as required under its element b), and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

Russell's Element b).A: Background Facts:

Russell's Element b).A "Background Facts" is not a required element of inequitable conduct and is thus improper for Russell to include as part of its "Statement of Elements and Undisputed Material Facts" under DUCivR 56-1(b)(C). Nonetheless, Lifetime disputes that Russell has met any element of inequitable conduct in its element b).A, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 140:** The file history for the '111 Rexam shows that:

**Response to No. 140:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 140.a:** Russell filed a Request for Ex Parte Reexamination of all original Claims 1-26 of the '111 Patent on September 14, 2012.

**Response to No. 140.a:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 140.b:** In that request, Russell requested reexamination of the '111 Patent and its claims due to the existence of "substantial new questions of patentability" ("SNQs") based upon a number of cited patents and printed publications submitted by Russell with the request for reexamination.

**Response to No. 140.b:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 140.c:** On November 7, 2012, the reexamination examiner entered her Order granting Russell's request for reexamination and her Decision on Request which stated that: "[t]he request has established a substantial new question of patentability for claims 1-26" of the '111 Patent. (Decision on Request at pg. 14)

**Response to No. 140.c:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 140.d:** In her Decision on Request, the reexamination examiner agreed that Russell had presented a SNQ as to whether: "Claims 1-26 of the ' 111 patent are rendered obvious by Hying in view of McGinniss and the knowledge of a person of ordinary skill in the art." (Decision on Request at ppg. 6, 11)

**Response to No. 140.d:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 140.e:** In her Decision on Request, the reexamination examiner agreed that Russell had presented a SNQ as to whether: "Claims 1-26 of the ' 111 patent are rendered obvious by Hying in view of Patent Owner's Admissions, Toyomura, Duchateau and the knowledge of a person of ordinary skill in the art." (Decision on Request at ppg. 6, 14) (Exh. 60 at ¶ VI.D.1 (pgs. 52-53))

**Response to No. 140.e:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141:** The file history of the '935 Reexam shows that:

**Response to No. 141:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 141.a:** Russell filed a Request for Inter Partes Reexamination of all original Claims 1-30 of the '935 Patent on September 14, 2012.

**Response to No. 141.a:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.b:** In that request, Russell requested reexamination of the '935 Patent and its claims in view of the reasonable likelihood of establishing that Russell would prevail with respect to at least one claim based upon a number of cited patents and printed publications submitted by Russell with the request for reexamination.

**Response to No. 141.b:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute that Russell requested reexamination of the '935 Patent and its claims based upon a number of cited patents and printed publications submitted by Russell with the

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

request for reexamination. Lifetime disputes that Russell had a reasonable likelihood of prevailing as ultimately the examiner rejected Russell's arguments and reaffirmed patentability.[122]

**Russell's Fact No. 141.c:** On November 9, 2012, the reexamination examiner entered her Order granting the request for reexamination, stating in the accompanying Decision on Request that:

**Response to No. 141.c:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

> **Russell's Fact No. 141.c.i:** "[T]he request has made a [reasonable likelihood of prevailing, or 'RLP'] showing that claims 1, 5-12, 17, 18, 24 and 25 are obvious over [Applicant's admitted prior art. or 'AAPA'] in view of the Knowledge of a Person of Ordinary Skill in the Art." (Decision on Request, pg. 4)
>
> **Response to No. 141.c.i:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the

---

[122] *See* Appx. Ex. 27, '935 RAN.

issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.c.ii:** "[T]he request has made a RLP showing that claims 1-30 are obvious over Hying in view of McGinniss and the Knowledge of a Person of Ordinary Skill in the Art." (Decision on Request, pg. 5)

**Response to No. 141.c.ii:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.c.iii:** "[T]he request has made a RLP showing that claims 1-30 are obvious over Hying in view of Patent Owner's Admissions, Toyomura, Duchateau et al. and the Knowledge of a Person of Ordinary Skill in the Art." (Decision on Request, pg. 7)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 141.c.iii:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.d:** On November 9, 2012, the reexamination examiner also entered an Office Action in which Claims 1-30 of the '935 Patent were rejected, stating in the accompanying Detailed Action:

**Response to No. 141.d:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.d.iv:** "Claims 1, 5-12, 17, 18, 24 and 25 are rejected under 35 U.S.C. 103(a) as being unpatentable over Applicant's Admitted Prior Art (AAPA) in view of the Knowledge of a Person of Ordinary Skill in the Art." (Detailed Action at pg. 4)

**Response to No. 141.d.iv:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.d.v:** "Claims 1-30 are rejected under 35 U.S. C. 103(a) as being unpatentable over Hying in view of McGinniss and the Knowledge of a Person of Ordinary Skill in the Art." (Detailed Action at pg. 7)

**Response to No. 141.d.v:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 141.d.vi:** "Claims 1-30 are rejected under 35 U.S. C. 103(a) as being unpatentable over Hying in view of Patent Owner's Admissions, Toyomura, Duchateau et al. and the Knowledge of a Person of Ordinary Skill in the Art." (Detailed Action at pg. 11) (Exh. 60 at ¶ VI.D.2 (pg. 52))

**Response to No. 141.d.vi:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

> evidentiary support required by FRCP 56(c)(1)(A). For purposes of this
> Motion only, and to the extent it is an accurate quotation, Lifetime does
> not dispute this asserted fact.

**Russell's Fact No. 142:** The file history of the '550 Reexam shows that:

**Response to No. 142:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

> **Russell's Fact No. 142.a:** Russell filed a Request for Inter Partes Reexamination of
> all original Claims 1-18 of the '550 Patent on September 14, 2012.
>
> **Response to No. 142.a:** Lifetime disputes the relevance of this asserted "fact" to
> Russell's pleaded inequitable conduct claims generally and to the issues presented for
> the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under
> FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based
> (*see* evidentiary objection below) will leave it without the evidentiary support
> required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not
> dispute this asserted fact.

**Russell's Fact No. 142.b:** In that request, Russell requested reexamination of the '550 Patent and its claims in view of the reasonable likelihood of establishing that Russell would prevail with respect to at least one claim based upon a number of cited

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

patents and printed publications submitted by Russell with the request for reexamination.

**Response to No. 142.b:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 142.c:** On November 9, 2012, the reexamination examiner entered her Order granting the request for reexamination, stating in the accompanying Decision on Request that:

**Response to No. 142.c:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

> **Russell's Fact No. 142.c.vii:** "[T]he request has made a RLP showing that claims 1, 5-10, 13 and 14 are obvious over AAPA in view of the

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Knowledge of a Person of Ordinary Skill in the Art." (Decision on Request, pg. 4)

**Response to No. 142.c.vii:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 142.c.viii:** "[T]he request has made a RLP showing that claims 1-18 are obvious over Hying in view of McGinniss and the Knowledge of a Person of Ordinary Skill in the Art." (Decision on Request, pg. 5)

**Response to No. 142.c.viii:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 142.c.ix:** "[T]he request has made a RLP showing that claims 1-18 are obvious over Hying in view of Patent Owner's Admissions, Toyomura, Duchateau et al. and the Knowledge of a Person of Ordinary Skill in the Art." (Decision on Request, pg. 7)

**Response to No. 142.c.ix:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 142.d:** On November 9, 2012, the reexamination examiner also entered her Office Action in which Claims 1-18 of the '550 Patent were rejected, stating in the accompanying Detailed Action:

**Response to No. 142.d:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 142.d.x:** "Claims 1, 5-10, 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Applicant's Admitted Prior

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Art (AAPA) in view of the Knowledge of a Person of Ordinary Skill in the Art." (Detailed Action at pg. 3)

**Response to No. 142.d.x:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 142.d.xi:** "Claims 1-18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hying in view of McGinniss and the Knowledge of a Person of Ordinary Skill in the Art." (Detailed Action at pg. 6)

**Response to No. 142.d.xi:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 142.d.xii:** "Claims 1-18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hying in view of Patent Owner's Admissions, Toyomura, Duchateau et al. and the Knowledge of a Person

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

of Ordinary Skill in the Art." (Detailed Action at pg. 10) (Exh. 60 at ¶

VI.D.3 (pgs. 53-54))

**Response to No. 142.d.xii:** Lifetime disputes this putative "fact" under

FRCP 56(c)(2) because the exclusion of the expert on whose declaration it

is based (*see* evidentiary objection below) will leave it without the

evidentiary support required by FRCP 56(c)(1)(A). For purposes of this

Motion only, and to the extent it is an accurate quotation, Lifetime does

not dispute this asserted fact.

**Russell's Fact No. 143:** The file history for the '463 Patent shows that on March 2, 2012,

in a Non-final Office Action, and again on September 25, 2012, in a Final Office Action, the

examiner entered obviousness rejections as to all claims in the application under Section 103(a).

(Exh. 60 at ¶VI.D.4 (pg. 54))

**Response to No. 143:** Lifetime disputes the relevance of this asserted "fact" to Russell's

pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

by Russell's Motion. Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the

exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will

leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this

Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 144:** The file history for the '034 Patent shows that on February 10,

2012, in a Nonfinal Office Action, and again on July 30, 2012, in a Final Office Action, the

examiner entered obviousness rejections as to all claims in the application under Section 103(a).

(Exh. 60 at ¶VI.D.5 (pg. 55))

**Response to No. 144:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 145:** Thus, by November 9, 2012, both the examiner in the reexaminations of the '111, '935 and '550 Patents and the examiner in the prosecutions of applications for the '034 and '463 Patents had found that a prima facie case for obviousness rejections existed under 35 U.S.C. § 103(a) as to all claims of all five of the Lifetime Patents. (Exh. 60 at ¶ VI.D.6 (pg. 55))

**Response to No. 145:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 146:** Further, by November 9, 2012, the two examiners entered obviousness rejections under Section 103 as to all claims in the '935 and '550 Patents and as to all claims in the pending applications for the '463 and '034 Patents. (Exh. 60 at ¶ VI.D.6 (pg. 55))

**Response to No. 146:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 147:** Lifetime prosecution counsel Richard Gilmore sought to overcome these obviousness findings and rejections, in part, by arguing in all five proceedings that secondary considerations of non-obviousness existed that would overcome the prima facie case of obviousness that examiners had set out in the various office actions. ((Exh. 60 at ¶ VI.D.7 (pg. 55))

**Response to No. 147:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 148:** Gilmore submitted a number of declarations as rebuttal evidence, including the First Stevens Reexam Declaration and the Second Stevens Reexam Declaration. ((Exh. 60 at ¶VI.D.10 (pg. 56))

**Response to No. 148:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 149:** Stevens left employment with Lifetime in February 2001. (Exh. 2 at 9:24-10:13)

**Response to No. 149:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 150:** Gilmore had been handling the prosecution work for this family of patents for Lifetime since May 2002. (Exh. 39 at 12:18-14:15)

**Response to No. 150:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 151:** Gilmore's first contact with Stevens was when Gilmore and Stevens talked and met in or about January 2013 in order to prepare a declaration for Stevens. (Exh. 39 at 31:1-32:13)

**Response to No. 151:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that Gilmore's first contact with Stevens was in or about January 2013. Lifetime disputes that Gilmore's first contact with Stevens was in order to prepare a declaration for Stevens as unsupported by the evidence cited.[123]

**Russell's Fact No. 152:** The purpose of Gilmore initiating these meetings and discussions with Stevens was to obtain declaration testimony from Stevens. (Exhibit 39: Depo. of R. Gilmore, Vol. I, at 31:1-32:13).

**Response to No. 152:** For the purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[123] Appx. Ex. 11, Gilmore depo. 31:8–13.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 153:** The result of these meetings and communications between Gilmore and Stevens at this time was the First Stevens Reexam Declaration. (Exh. 39 at 78:6-79:7)

**Response to No. 153:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 154:** The First Stevens Reexam Declaration was written by Gilmore, along with another attorney in his law firm, Tracy Harrick, and signed by Stevens on February 1, 2013. (Exh. 4; Exh. 39 at 110:6-10; Exhibit 40: Depo. of T. Schade, Vol. II, at 60:3-19;).

**Response to No. 154:** For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was written by Gilmore and Harrick, and signed by Stevens on February 1, 2013. Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[124]

**Russell's Fact No. 155:** Gilmore filed the First Stevens Reexam Declaration with the USPTO on numerous occasions:

**Response to No. 155:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[124] Appx. Ex. 11, Gilmore depo. at 109:10–18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 155.a:** In the '111 Reexam: on August 8, 2013 as Exhibit D to Lifetime's Supplemental Amendment and Response to Office Action and again on February 28, 2014 as Exhibit F to Lifetime' Appeal Brief.

**Response to No. 155.a:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 155.b:** In the '935 Reexam: on February 8, 2013 in support of Lifetime's Amendment and Response to Office Action and again on April 10, 2014 as Exhibit F to Lifetime's Appeal Brief.

**Response to No. 155.b:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 155.c:** In the '550 Reexam on February 8, 2013 in support of Lifetime's Amendment and Response to Office Action and again on March 10, 2014 as Exhibit F to Lifetime's Appeal Brief.

**Response to No. 155.c:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 155.d:** In the prosecution of the application for the '034 Patent on April 21, 2014 as Exhibit F in support of Lifetime's Amendment and Response to Final Office Action with Request for Continued Examination.

**Response to No. 155.d:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 155.e:** In the prosecution of the application for the '463 Patent on November 12, 2013 as Exhibit C in support of Lifetime's Amendment and Response to Office Action and again on May 5, 2014 as Exhibit F in support of Lifetime's Amendment and Response to Final Office Action with Request for Continued Examination. (Exh. 39 at 77:2-18; Exh. 60 at ¶ VI.D.12 (pgs. 56-70))

**Response to No. 155.e:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 156:** Gilmore cites to the First Stevens Reexam Declaration a number of times in the file histories of all five patents as support for his "secondary considerations of

non-obviousness" arguments made in an attempt to overcome the prima facie cases of Section

103(a) obviousness made by the examiners. (Exh. 60 at ¶ VI.D.12 (pg. 56))

**Response to No. 156:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because

the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below)

will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this

Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 157:** Gilmore and Lifetime general counsel Timothy Schade

participated in an interview with the reexamination examiner on June 25, 2013. (Exh. 39 at

152:12-22)

**Response to No. 157:** Lifetime disputes the relevance of this asserted "fact" to the issues

presented for the Court's decision by Russell's Motion. For purposes of this Motion only,

Lifetime does not dispute this asserted fact.

**Russell's Fact No. 158:** In the Examiner's Interview Summary Record dated June 27,

2013, the reexamination examiner stated that she asked Schade and Gilmore at the June 25

interview why a person of ordinary skill in the art would not consult with adhesive company

representatives. (Exhibit 41: Examiner's Interview Summary Record dated June 27, 2013, Exh.

39 at 151:21-152:8 and exhibit 149)

**Response to No. 158:** Lifetime disputes the relevance of this asserted "fact" to the issues

presented for the Court's decision by Russell's Motion. Lifetime disputes this asserted "fact" as

unsupported by and contrary to the evidence cited—which indicates "Examiner Engle asked why

one of ordinary skill in the art with a mechanical engineering degree would not recognize his/her

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

lack of knowledge of adhesives and consult the adhesive company representatives," without indicating to whom the question was directed.[125]

**Russell's Fact No. 159:** In that Interview Summary, the reexamination examiner stated that Gilmore responded that "the inventor did consult sales representatives from several different companies at the time of the invention, but they could not determine a suitable adhesive for the basketball system[.]" (Id.)

**Response to No. 159:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 160:** Gilmore also documented the June 25, 2013 interview with a Statement of Substance of Interview (submitted on July 29, 2013), in which Gilmore stated the following:

> In response to the question by Examiner Engle during the interview why one of ordinary skill in the art with a mechanical engineering degree would not recognize his/her lack of knowledge of adhesives and consult the adhesive company representatives, the Patent Owner stated the inventor did consult sales representatives from many different adhesive manufactures at the time of the invention, but they could not determine a suitable adhesive for the basketball system. The Patent Owner will submit with the response to the Office Action further evidence *including a declaration by the inventor setting forth additional facts such as the inventor contacted many different adhesive manufacturers and not one stated an adhesive with the required properties and characteristics to bond a basketball backboard to a frame was available*. In fact, the inventor was told by a leading adhesive manufacture that using an adhesive to attach the backboard to the frame would never work. Although discouraged, the inventor continued over a period of years to see if it was possible to directly bond the backboard to the frame.

---

[125] Appx. Ex. 22, '111 Examiner Interview Summary.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

(Exhibit 42: Statement of Substance of Interview (submitted on July 29, 2013), Exh. 39 at 150:18-151:20 and exhibit 148, at pg. 3, emphasis added)

**Response to No. 160:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 161:** Following the June 25, 2013 interview with the reexamination examiner, Gilmore had further discussions with Stevens that resulted in the Second Stevens Reexam Declaration. (Exh. 39 at 185:24-186:5)

**Response to No. 161:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 162:** Gilmore prepared the Second Stevens Reexam Declaration and then presented it to Stevens for his signature. (Exh. 39 at 187:12-188:9)

**Response to No. 162:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the second Stevens declaration was co-written by Gilmore and presented to Stevens. Lifetime disputes that the second Stevens declaration was written without Stevens' involvement.[126]

**Russell's Fact No. 163:** Gilmore testified in his deposition that he "spoke with [Stevens] again, you know, shortly before reviewing and signing the supplemental declaration." (Exh. 39 at 188:10-19)

---

[126] Appx. Ex. 11, Gilmore depo. at 109:10–18, 187:12–188:2.

**Response to No. 163:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that Gilmore testified as indicated.

**Russell's Fact No. 164:** Gilmore filed the Second Stevens Reexam Declaration with the USPTO on numerous occasions:

**Response to No. 164:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

> **Russell's Fact No. 164.a:** In the '111 Reexam on August 8, 2013 as Exhibit I in support of Lifetime's Supplemental Amendment and Response to Office Action and again on February 28, 2014 as Exhibit G in support of Lifetime's Appeal Brief.
>
> **Response to No. 164.a:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.
>
> **Russell's Fact No. 164.b:** In the '935 Reexam on April 10, 2014 as Exhibit G in support of Lifetime's Appeal Brief.
>
> **Response to No. 164.b:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 164.c:** In the '550 Reexam on July 30, 2013 as Exhibit D in support of Lifetime's Amendment and Response to Action Closing Prosecution (filed July 31, 2013), again on September 26, 2013 as Exhibit D in support of Lifetime's Amendment and Response to Action Closing Prosecution, an again on March 10, 2014 as Exhibit G in support of Lifetime's Appeal Brief.

**Response to No. 164.c:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 164.d:** In the prosecution of the application for the '034 Patent on April 21, 2014 as Exhibit G in support of Lifetime's Amendment and Response to Final Office Action with Request for Continued Examination.

**Response to No. 164.d:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 164.e:** In the prosecution of the application for the '463 Patent on May 5, 2014 as Exhibit G in support of Lifetime's Amendment and Response to Final Office Action with Request for Continued Examination. (Exh. 60 at ¶ VI.D.35 (pg. 67))

**Response to No. 164.e:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 165:** Gilmore cites to this Second Stevens Reexam Declaration a number of times in the file histories of all five patents as support for his "secondary considerations of nonobviousness" arguments made in an attempt to overcome the prima facie cases of 103(a) obviousness made by the examiners. (Exh. 60 at ¶ VI.D.35 (pg. 67))

**Response to No. 165:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 166:** On July 16, 2014, Gilmore filed in the '935 and '550 reexams and in the prosecutions of the applications for the '034 and '364 Patents a document entitled "Notice of Correction Regarding Declaration of Larry Stevens" that was signed by Stevens on July 14, 2014(the "Notice of Correction"). (Exhibit 43: Notice of Correction; Exh. 39 at 133:1-13 and exhibit 147; Exh. 60 at ¶ VI.E.2 (pg. 76); Dkt. 274 at ¶ 468; Dkt. 287 at ¶ 468)

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

**Response to No. 166:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (*see* evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 167:** In the Notice of Correction, Stevens acknowledged that he signed the First Stevens Reexam Declaration on February 1, 2013, stated that he understood the First Stevens Reexam Declaration was submitted to the USPTO in the '111, '935 and '550 Reexams, and advised that he "became aware of inadvertent clerical errors in the [First Stevens Reexam Declaration], which do not materially alter the substance of the declaration but which I wish to correct at this time." (Exh. 43 at ¶¶ 1-2)

**Response to No. 167:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that Stevens acknowledged, stated, and advised as indicated.

**Russell's Fact No. 168:** Stevens was not the person who discovered the errors in his First Stevens Reexam Declaration that are the subject of the Notice of Correction. (Exh. 44 at 26:13-18 & 48:19-22)

**Response to No. 168:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 169:** Lifetime litigation counsel Jared Braithwaite discovered the errors in the First Stevens Reexam Declaration that are the subject of the Notice of Correction. (Exh. 40 at 109:1-110:13; Exh. 39 at 133:14-134:5)

**Response to No. 169:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by the evidence cited.[127]

**Russell's Fact No. 170:** Braithwaite also drafted the Notice of Correction. (Exh. 40 at 109:18-110:7; Exh. 39 at 135:15-17; Exh. 44 at 17:21-24; Exhibit 45: Lifetime's Supplemental Response to Russell Interrogatory 16)

**Response to No. 170:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates that Stevens, Gilmore, and Braithwaite participated in or contributed to the drafting of the notice.[128]

**Russell's Fact No. 171:** Gilmore reviewed the Notice of Correction along with the test orders that were attached to it. (Exh. 39 at 137:7-10)

**Response to No. 171:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 172:** Gilmore also discussed the Notice of Correction with Lifetime's litigation team "just insuring that the information [in the Notice of Correction] was correct." (Exh. 39 at 137:18-137:25)

---

[127] Appx. Ex. 8, Schade depo. at 109:1–110:22; Appx. Ex. 11, Gilmore depo. at 133:14–134:5.

[128] Appx. Ex. 13, Lifetime's Supplemental Response to Russell Interrogatory 16.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 172:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 173:** Tim Schade has been Lifetime's General Counsel since he joined Lifetime in January 2007. (Exh. 12 at 8:19-9:10)

**Response to No. 173:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 174:** In that capacity, Schade has directed prosecution of this family of patents applications for Lifetime. (Exh. 12 at 207:19-24; Exh. 39 at 28:6-29:15)

**Response to No. 174:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that Schade has been involved with strategy and directed that the '935 and '550 patents be prosecuted. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[129]

**Russell's Fact No. 175:** In that capacity, Schade is involved in planning and directing strategy for the prosecution of this family of patents. (Exh. 39 at 28:6-29:15)

**Response to No. 175:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only,

---

[129] Appx. Ex. 14, Schade depo. vol. II. at 207:19–24.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Lifetime does not dispute that Schade has been involved with strategy. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[130]

**Russell's Fact No. 176:** Schade's involvement with the prosecution of these patents included attending the June 2013 interview with the reexamination examiner. (Exh. 39 at 152:12-22)

**Response to No. 176:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 177:**  In addition, Schade meets monthly with Gilmore, who has been prosecuting this family of patents since 2002. (Exh. 39 at 34:19-37:23)

**Response to No. 177:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes that Schade has ever met monthly with Gilmore solely to address the prosecution of the patent family to which the patents in suit belong as unsupported by the evidence cited. Lifetime disputes that Schade and Gilmore began meeting monthly in 2002 as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which establishes that Schade did not enter Lifetime's employment until 2007.[131] For purposes of this Motion only, Lifetime does not dispute that Gilmore and Schade currently and for some time past have met monthly, and that the agenda for at least some of those meetings has included the prosecution of some Lifetime patents.

---

[130] Appx. Ex. 11, Gilmore depo. at 28:6–29:15.

[131] Appx. Ex. 8, Schade depo. at 8:22–23.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 178:** Schade is the primary contact at Lifetime for Lifetime's prosecution counsel. (Exh. 40 at 85:3-7; see also Exh. 40 at 90, 93, 153, 155).

**Response to No. 178:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that from the time Schade became employed by Lifetime, he has been the primary contact at Lifetime for Lifetime's patent prosecution counsel.

**Russell's Fact No. 179:** Schade became aware of, and was made generally aware of the contents of, the Notice of Correction shortly before it was signed. (Exh. 40 at 82:14-83:25)

**Response to No. 179:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 180:** Schade was made generally aware of the contents of the Notice of Correction through conversations he had both with Lifetime's prosecution counsel and its litigation counsel. (Exh. 40 at 83:25-84:11)

**Response to No. 180:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 181:** Schade was made aware, and it was his understanding, that the Notice of Correction was to be filed in the Reexams. (Exh. 40 at 84:12-16)

**Response to No. 181:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Russell's Element b).B: Elements of Inequitable Conduct.

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Lifetime disputes that Russell has carried its burden to show that any conduct to be but-for material and made with deceptive intent as required under its element b).B, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

Russell's Element b).B.1: The Affirmative Misrepresentations Made to the USPTO

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Russell's Element b).B.1 alleges various statements in several declarations are affirmative misrepresentations. Lifetime disputes that Russell has carried its burden to show that any representation made in the various declarations are false as required by its element b).B.1, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Element b).B.1.a: The Declarations**

Russell's Element B.1.a alleges statements made in the first and second Stevens declarations are false. Lifetime disputes that Russell has carried its burden to show that any statements made in the first and second Stevens declarations are false as required by its element b).B.1.a, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 182:** The Application Declaration states, in part:

"I, Larry Stevens, declare ... that I verily believe I am the original, first, and sole inventor of the subject matter of the invention or discovery entitled SYSTEM AND METHOD FOR BONDING AN ACRYLIC SURFACE TO A FRAME, for which a patent is sought and which is described and claimed in the specification attached hereto; that I have reviewed and understand the contents of the above identified specification, including the claims; and that I acknowledge the duty to disclose all information known

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

to me to be material to patentability as defined in Section 1.56 of Title 37 of the Code of Federal regulations."

(Exh. 24 at L. Stevens Declaration, Power of Attorney and Petition signed Jan. 5, 1999)

**Response to No. 182:** Russell's Fact No. 182 is substantively identical to Russell's Fact Nos. 4 and 126. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 4 and 126. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 183:** At the time Stevens signed and filed the Application Declaration, he did not believe that all elastomeric adhesives would work in his invention. (Exh. 2 at 305:16-21)

**Response to No. 183:** Russell's Fact No. 183 is substantively identical to Russell's Fact Nos. 85 and 112. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 85 and 112. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 184:** The original claims that were filed with the Application included Claim 1, which was:

1. A basketball backboard assembly comprising:

A backboard frame structure having a bonding surface;

An acrylic backboard having a bonding surface; and

An elastomeric adhesive sandwiched between the frame bonding surface and the backboard bonding surface.

(Exh. 24 at claims)

**Response to No. 184:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 185:** In Paragraph 10 of the First Stevens Reexam Declaration, Stevens states:

> When I began testing adhesives, I spoke with a sales representative for one of the adhesives companies used by Lifetime to ask about potential adhesives. I recall Lifetime's representative from 3M telling me that I would never be able to replace the VHB® tape. Because adhesives were the representative's area of expertise, I was discouraged by his doubt as to whether it was possible to bond the backboard to the frame using an adhesive.

(Exh 4 at ¶ 10)

**Response to No. 185:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 186:** According to Stevens, he had a chance encounter with Martin Cole, who was 3M Company's double-sided tape representative for Lifetime at the time, when Stevens was carrying some glued backboards he had prepared for testing to the testing lab at Lifetime. (Exh. 2 at 156-157)

**Response to No. 186:** For purposes of this Motion only, Lifetime does not dispute that Stevens encountered Martin Cole, who was 3M Company's double-sided tape representative for Lifetime at the time, when Stevens was carrying some glued backboards he had prepared for testing to the testing lab. Lifetime disputes that this was a "chance encounter as unsupported by the evidence cited.[132]

**Russell's Fact No. 187:** According to Stevens, Cole had somehow learned that Stevens was pursuing a replacement for VHB tape in backboards at Lifetime, and Cole told Stevens

---

[132] Appx. Ex. 5, Stevens depo. at 156:9–157:7.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

during the encounter that Stevens would "never replace VHB tape" in backboards. (Exh. 2 at 157:1-13)

**Response to No. 187:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 188:** At the time of this encounter between Stevens and Cole, Lifetime predominantly used VHB double-sided tape from 3M in its backboards. (Exh. 2 at 157:1-21)

**Response to No. 188:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 189:** Stevens was aware of that fact, and it colored what Stevens thought about Cole and his statement that Stevens would "never replace VHB tape" in backboards, so much so that Stevens was not, in fact, discouraged by Cole's statement. (Exh. 2 at 157:22-158:5).

**Response to No. 189:** For purposes of this Motion only, Lifetime does not dispute that (1) Stevens was aware that Lifetime predominately used VHB double-sided tape from 3M and (2) it colored what Stevens thought of Cole, "a little." Lifetime disputes that Stevens was not, in fact, discouraged as contrary to other evidence Russell does not cite.[133]

**Russell's Fact No. 190:** At Paragraph 9 of the FSRD, Stevens stated:

9. Upon observation and finding the labor and material costs incurred in manufacturing the double-sided tape backboards, I challenged myself to find an alternative method to attach the backboard to the frame and to improve the manufacturability of the backboard assemblies at Lifetime. I spoke with other engineers at Lifetime about fasteners and adhesives they had tried and learned that they had experimented with different methods and adhesives and had failed to obtain any favorable results. The

---

[133] *See* Appx. Ex. 5, Stevens depo. at 156:9–12.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

challenge was fastening the backboard to the frame in a way that provided the necessary flexibility, cushioning and impact resistant characteristics.

(Exh. 4 at ¶ 9)

**Response to No. 190:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 191:** When questioned in his deposition, Stevens could not recall talking to any other engineers at Lifetime about adhesives they had tried for connecting the basketball backboards to the frame. (Exh. 2 at 128:21-25)

**Response to No. 191:** Lifetime disputes this putative "fact" as unsupported and contrary to the evidence cited. Stevens had discussions with at least Lifetime engineers Roy Zettle and Coplan Vaughan regarding backboard adhesives.[134]

**Russell's Fact No. 192:** Stevens was aware that two other people at Lifetime – Coplan Vaughan and Rich Nordgran -- had, prior to Stevens' 1999 application, tested the use of adhesives in place of tape on backboards at Lifetime. (Exh. 2 at 177:14-22)

**Response to No. 192:** For purposes of this Motion only, Lifetime does not dispute that Stevens was aware at the time of his deposition in 2014, that Vaughan and Rich Nordgran had conducted basketball impact tests on the use of adhesives in place of tape on backboards at Lifetime, prior to Stevens' 1999 application.

**Russell's Fact No. 193:** However, Stevens was not aware in, or prior to, 1999, when Stevens was doing his testing of adhesives in backboards, that Nordgran and Vaughan had done any testing of adhesives in backboards. (Exh. 2 at 177:14-22)

---

[134] Appx. Ex. 5, Stevens depo. at 129:1–130:18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 193:** Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which establishes that Stevens was aware, in or prior to 1999, at least that Vaughan had tested adhesives in basketball backboard assemblies.[135]

**Russell's Fact No. 194:** Vaughan was a manufacturing engineer at Lifetime who[m] Stevens knew and who worked in the tooling department at Lifetime. (Exhibit 46: Depo. of D. Winter at 51:18-52:10; Exh. 2 at 49:8-50:8)

**Response to No. 194:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes that Stevens knew Vaughan for the entire time that Vaughan (or Stevens) was employed by Lifetime as unsupported by the evidence cited. For purposes of this Motion only, Lifetime does not dispute that (1) at some point in time, Vaughan was a manufacturing engineer at Lifetime working in Lifetime's tooling department and (2) at some point in time, Stevens knew Vaughan.

**Russell's Fact No. 195:** Vaughan, at the instruction of Lifetime's vice president of manufacturing, David Winter, conducted testing into using adhesives in basketball backboards. (Exh. 46 at 67-68, 71)

**Response to No. 195:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes that Winter was vice president of manufacturing when Vaughan, at Winter's instruction, conducted testing into using adhesives in basketball backboards as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[136] For purposes of this Motion only, Lifetime does not dispute

---

[135] Appx. Ex. 5, Stevens depo. 129:1–130:18;177:14–22.

[136] Appx. Ex. 9, Winter depo. at 16:11–17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

that Vaughan, at the instruction of David Winter, conducted testing into using adhesives in basketball backboards.

**Russell's Fact No. 196:** Vaughan was involved in the testing of adhesives on backboards from April 1997 through January 1998. (Exhibit 47: LIFE18350-18357, 18360-18363, 18366-18371, 18374-18379, 18382-18385, and 18388-18391).

**Response to No. 196:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 197:** Stevens never discussed his own glue testing work with Vaughan. (Exh. 2 at 113:14-18)

**Response to No. 197:** Lifetime disputes this putative "fact" as contrary to other evidence Russell does not cite, which indicates that Stevens discussed his own glue testing work with Vaughan.[137]

**Russell's Fact No. 198:** Stevens doesn't recall ever having talked with Vaughan about Vaughan's testing of adhesives for use in backboard assemblies. (Exh. 2 at 140:13-16)

**Response to No. 198:** Lifetime disputes this putative "fact" as contrary to other evidence Russell does not cite, which shows Stevens does recall discussing with Vaughan Vaughan's testing of adhesives for use in backboard assemblies.[138]

---

[137] Appx. Ex. 5, Stevens depo. at 129:1–130:18.

[138] Appx. Ex. 5, Stevens depo. at 129:1–130:18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 199:** Nordgran was a research and development engineer at Lifetime, and 90% of his work at Lifetime was in research and development involving basketball backboard systems. (Exhibit 48: Depo. of R. Nordgran at 22-24)

**Response to No. 199:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 200:** Nordgran was involved in the testing of adhesives on backboards from October 1995 through August 1997, when Nordgran and Vaughan built the backboard assemblies that were tested in Lifetime Test Order no. 1967. (Exh. 4 at App. A; Exh. 48 at 94:14-97:7, 115:6-116:10, 119:22-123:3, 131:9-132:9 & 154:5-155:15; Exhibit 49: LIFE18338-18343 and 18346-18347; Exhibit 50: Test Order 1506 (LIFE18338-18339); Exhibit 51: Test Order 1967 (LIFE18374-75))

**Response to No. 200:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes that Nordgran and Vaughan built all three basketball backboard assemblies referenced in Test Order 1967 as unsupported by the evidence cited, which indicates only that Nordgran (not Vaughan) recalls putting together one of the three assemblies referenced in Test Order 1967.[139] For purposes of this Motion only, Lifetime does not dispute that Nordgran participated in testing adhesives in

---

[139] Appx. Ex. 12, Nordgran depo. at 116:9–10.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

basketball backboard assemblies between October 1995 and August 1997, and that Nordgran built one such assembly reference in Test Order 1967.

**Russell's Fact No. 201:** Stevens doesn't recall ever having talked with Nordgran about Nordgran testing adhesives for use in backboard assemblies. (Exh. 2 at 140:17-21, 251:23-25)

**Response to No. 201:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 202:** Test Order 1506, dated October 1995, is the first documented test of adhesives in basketball backboard assemblies at Lifetime. (Exh. 50; Exh. 11 at 40:24-44:10)

**Response to No. 202:** For purposes of this Motion only, Lifetime does not dispute that Test Order 1506, dated October 1995, is the first documented test of adhesives in basketball backboard assemblies at Lifetime that Lifetime, in its diligent and reasonable searches, has located and produced in discovery in this litigation. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.

**Russell's Fact No. 203:** Test Order 1506 documents Nordgran's ball impact testing on backboard prototypes built with two non-tape adhesives – GE RTV 6808 Translucent adhesive (sample A) and GE General Purpose Silicone Rubber adhesive (sample B). (Exh. 11 at 40:24-44:10; Exh. 48 at 99-100; Exh. 50)

**Response to No. 203:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 204:** The ball impact test conducted by Stevens to test the adhesive strength of adhesives in his backboards only required the backboard to survive 75 ball strikes at

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

ambient temperature and 75 ball strikes at cold temperature[.] (Exh. 6 at ¶¶ 4-7; Exh. 7 at 49:5-12)

**Response to No. 204:** For purposes of this Motion only, Lifetime does not dispute that (1) 75 ball strikes at ambient temperature and 75 ball strikes at cold temperature was the standard for a basketball backboard assembly to pass Lifetime's ball impact test and (2) Stevens used Lifetime's ball impact test to help determine the strength of an adhesive. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[140]  Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[141]

**Russell's Fact No. 205:** In Test Order 1506 Nordgran tested his sample B prototype backboard built with GE General Purpose Silicone Rubber adhesive to 400 ball impacts – first 100 impacts at ambient temperature, then 100 impacts at cold temperatures, then another 100 impacts at ambient temperature, then another 100 impacts at cold temperatures. (Exh. 48 at 101:2-103:25; Exh. 50 at LIFE18339).

**Response to No. 205:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 206:** The GE General Purpose Silicone Rubber adhesive Nordgran tested in sample B of Test Order 1506 adhered to the backboard and to the frame throughout the 400-impact test. (Exh. 48 at 101:2-103:25, 105:8-11)

---

[140] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[141] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 206:** For purposes of this Motion only, Lifetime does not dispute that the backboard assembly tested in Test Order 1506 adhered to the frame for 400 impacts in spite of experiencing acrylic failure during the testing.

**Russell's Fact No. 207:** The "Test Results" for Nordgran's sample B states "NO FAILURE OF ADHESIVE." (Exh. 50 at LIFE18339)

**Response to No. 207:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that the document reads as indicated.

**Russell's Fact No. 208:** The "Engineering Notes" of Test Order 1506 state that: "THE G.E. GENERAL PURPOSE SILICONE RUBBER HAD NO FAILURES." (Exh. 48 at 104:1-105:1; Exh. 50 at LIFE18339)

**Response to No. 208:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that the document reads as indicated.

**Russell's Fact No. 209:** According to Nordgran, there was no failure of the adhesive in sample B of Test Order 1506, meaning there was no failure of the adhesive adhering to the frame and there was no failure of the adhesive adhering to the acrylic. (Exh. 48 at 108:2-22)

**Response to No. 209:** Lifetime disputes this putative "fact" as unsupported and contrary to the evidence cited, which shows Nordgran stated the adhesive did not properly adhere to the frame because the acrylic cracked during testing.[142]  Lifetime also disputes this putative "fact" as contrary to other evidence Russell does not cite, in which Nordgran repeatedly states he could not find a suitable adhesive.[143]

---

[142] Appx. Ex. 12, Nordgran depo. at 108:2–23.

[143] *See* Appx. Ex. 4, Nordgran decl. ¶ 7; Appx. Ex. 12, Nordgran depo. at 158:24–159:5.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 210:** In the First Stevens Reexam Declaration, Stevens said the

following about Nordgran's testing in Test Order 1506:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed
> by Lifetime for over three (3) years. I have read and understood and/or have personal
> knowledge of each of the Test Orders presented in APPENDIX A. … Each of the Test
> Orders describes testing of a different adhesive sandwiched between and in direct
> contact with an acrylic backboard and a metal frame. The exemplary Test Orders range
> from October 24, 1995 to December 7, 1998, demonstrating the extensive research and
> testing performed at Lifetime in finding an alternative to the double-sided tape. In
> particular, Test Order no[]. 1506 … describe[s] testing of … adhesives to attach the
> acrylic backboard to the metal frame. In each case, the adhesive failed. For example,
> the adhesives described in Test Order no[]. 1506 … failed to properly adhere to either
> the backboard or the frame …

(Exh. 4 at ¶11)

**Response to No. 210:** Lifetime disputes this putative "fact" as unsupported by and

contrary to the evidence cited, which indicates that the first Stevens declaration did not make the

statements indicated about Test Order 1506, specifically or in isolation. For the purposes of this

Motion only, Lifetime does not dispute that paragraph 11 of the first Stevens declaration actually

states:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed
> by Lifetime for over three (3) years. I have read and understood and/or have personal
> knowledge of each of the Test Orders in APPENDIX A. It was standard practice at
> Lifetime to record test parameters, data and results in such Test Orders.
>
> In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967,
> 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to
> attach the acrylic backboard to the metal frame. In each case, the adhesive failed. For
> example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008,
> 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame; the
> adhesives described in Test Order nos. 1870, 1919A and 1919B did not provide proper
> cushioning between the backboard and frame, causing the backboard to crack or
> shatter. The adhesive described in Test Order nos. 1967, 2027 and 2053 failed
> temperature testing because it did not accommodate the differences in coefficients of
> thermal expansion between the backboard and frame resulting in warping and

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.

**Russell's Fact No. 211:** Test Order 1967, dated October 1997, documents ball impact testing of a backboard prototype assembled by Nordgran and Vaughan using "Devcon Composite Welder Adhesive." (Exh. 48 at 123:6-124:16; Exh. 51).

**Response to No. 211:** Lifetime disputes that Test Order 1967 is dated October 1997 as unsupported by and contrary to the evidence cited, which establishes that Test Order 1967 is dated August (not October) 1997.[144] Lifetime disputes that Nordgran and Vaughan assembled any of the three basketball backboard assemblies referenced in Test Order 1967 as unsupported by the evidence cited, which indicates only that Nordgran (not Vaughan) recalls putting together one of the three assemblies referenced in Test Order 1967.[145] For purposes of this Motion only, Lifetime does not dispute that Test Order 1967 documents ball impact testing of a basketball backboard assembly assembled by Nordgran using Devcon Composite Welder adhesive.

**Russell's Fact No. 212:** The adhesive tested in all three samples tested in Test Order 1967 properly adhered to the backboard and to the frame throughout the test with no failures. (Exh. 48 at 123:15-130:25)

**Response to No. 212:** Lifetime disputes that the adhesive *properly* adhered with no failures as unsupported by and contrary to the evidence cited, which indicates that the results of the testing documented in Test Order 1967 could be characterized as a failure because the temperatures of the tested basketball backboard assemblies were not brought low enough.[146]

---

[144] Appx. Ex. 52, Test Order 1967 at LIFE00018374.

[145] Appx. Ex. 12, Nordgran depo. at 116:9–10.

[146] Appx. Ex. 12, Nordgran depo. at 128:25–129:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 213:** The "Test Results" for the three tested sample backboards state "NONE" in the "Failure" column nine times (three times for each board). (Exh. 48 at 26:7-128:20; Exh. 51 at LIFE18375)

**Response to No. 213:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 214:** The "Engineering Notes" of Test Order 1967 state that: "ALL THREE SAMPLES COMPLETED THE BALL IMPACT TEST WITHOUT A FAILURE." (Exh. 48 at 128:21-24; Exh. 51 at LIFE18375)

**Response to No. 214:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that the document reads as indicated.

**Russell's Fact No. 215:** According to Nordgran, there was no failure of the adhesive in the prototype backboards tested in Test Order 1967. (Exh. 48 at 130:3-25)

**Response to No. 215:** Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which establishes that Nordgran was not satisfied with the basketball backboard assemblies identified in Test Order 1967 or, more generally, with any of the adhesives he tested.[147]

**Russell's Fact No. 216:** In the First Stevens Reexam Declaration, Stevens said the following about Nordgran's and Vaughan's testing in Test Order 1967:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed by Lifetime for over three (3) years. I have read and understood and/or have personal knowledge of each of the Test Orders presented in APPENDIX A. … Each of the Test Orders describes testing of a different adhesive sandwiched between and in direct contact with an acrylic backboard and a metal frame. The exemplary Test Orders range

---

[147] Appx. Ex. 12, Nordgran depo. at 158:20–159:5; Appx. Ex. 4, Nordgran decl. ¶ 7.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

> from October 24, 1995 to December 7, 1998, demonstrating the extensive research and testing performed at Lifetime in finding an alternative to the double-sided tape. In particular, Test Order no[]. 1967 … describe[s] testing of … adhesives to attach the acrylic backboard to the metal frame. In each case the adhesive failed. …

(Exh. 4 at ¶11)

> The adhesive described in Test Order no[]. 1967 … failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about 106°F.

(Exh. 4 at ¶11)

> Through my investigation of adhesives, I became aware of some rigid, nonelastomeric adhesives, such as urethanes and methacrylates, known to bond to polymers such as acrylic. … As shown in Test Order no[]. 1967 of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.

(Exh. 4 at ¶ 13)

**Response to No. 216:** Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates that the first Stevens declaration did not make the statements indicated about Test Order 1967, specifically or in isolation. For the purposes of this Motion only, Lifetime does not dispute that paragraph 11 of the first Stevens declaration actually states:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed by Lifetime for over three (3) years. I have read and understood and/or have personal knowledge of each of the Test Orders in APPENDIX A. It was standard practice at Lifetime to record test parameters, data and results in such Test Orders.
>
> In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967, 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to attach the acrylic backboard to the metal frame. In each case, the adhesive failed. For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame; the adhesives described in Test Order nos. 1870, 1919A and 1919B did not provide proper cushioning between the backboard and frame, causing the backboard to crack or

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

shatter. The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.

For the purposes of this Motion only, Lifetime does not dispute that paragraph 13 of the first Stevens declaration actually states:

> Through my investigation of adhesives, I became aware of some rigid, non-elastomeric adhesives, such as urethanes and methacrylates, known to bond to polymers such as acrylic. As shown in Test Order nos. 1870, 1919A and 1919B of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric acrylic adhesive would cause the backboard to break because the rigid, non-elastomeric adhesive did not provide the required cushioning and impact resistance. As shown in Test Order nos. 1967, 2027, and 2053 of  APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.

**Russell's Fact No. 217:** Stevens acknowledged in his deposition testimony that Test Order 1967 shows no adhesive failures and no cracking of the acrylic in any of the tested backboards. (Exh. 44 at 29:4-30:13)

**Response to No. 217:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 218:** Stevens acknowledged in his deposition:

**Response to No. 218:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 218.a:** That there is nothing in Test Order 1967 about the warping or deformation of the backboards being tested; (Exh. 44 at 40:11-24)

**Response to No. 218.a:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 218.b:** That there is nothing in Test Order 1967 about testing the backboard at temperatures greater than about 106 degrees Fahrenheit; and (Exh. 44 at 40:11-24)

**Response to No. 218.b:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 218.c:** That there is nothing in Test Order 1967 about the backboard warping and cracking during thermal testing. (Exh. 44 at 40:11-24)

**Response to No. 218.c:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 219:** Lifetime Test Order 2053 is dated January 1998 and on its face to [sic.] documents ball impact testing requested by "Coplan V." of backboard prototypes "assembled with Devcon Composite Weld adhesive." (Exh. 44 at 41:6-12; Exhibit 52: Test Order 2053 (LIFE1839018391))

**Response to No. 219:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 220:** Test Order 2053 show that the adhesive tested in all six samples tested passed the ball impact test at both ambient and cold temperatures with no failures. (Exh. 52 at LIFE18391)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 220:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 221:** The "Test Results" for the [sic.] all six tested sample backboards Test Order 2053 state "PASS" in the "RESULT" columns for both ambient and cold testing. (Exh. 52 at LIFE18391)

**Response to No. 221:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that the document reads as indicated.

**Russell's Fact No. 222:** The "Engineering Notes" of Test Order 2053 state that: "All boards tested passed the ball impact test at ambient and cold temperatures." (Exh. 52 at LIFE18391)

**Response to No. 222:** For the purposes of this Motion only, Lifetime does not dispute the "engineering notes" of Test Order 2053 read in part as indicated.

**Russell's Fact No. 223:** In the First Stevens Reexam Declaration Stevens said the following about the testing and results in Test Order 2053:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed by Lifetime for over three (3) years. I have read and understood and/or have personal knowledge of each of the Test Orders presented in APPENDIX A. … Each of the Test Orders describes testing of a different adhesive sandwiched between and in direct contact with an acrylic backboard and a metal frame. The exemplary Test Orders range from October 24, 1995 to December 7, 1998, demonstrating the extensive research and testing performed at Lifetime in finding an alternative to the double-sided tape. In particular, Test Order no[]. 2053 … describe[s] testing of … adhesives to attach the acrylic backboard to the metal frame. In each case the adhesive failed. For example, the adhesives described in Test Order no[]. 2053 … failed to properly adhere to either the backboard or the frame … .

(Exh. 4 at ¶11)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 223:** Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates that the first Stevens declaration did not make the statements indicated about Test Order 2053, specifically or in isolation. For the purposes of this Motion only, Lifetime does not dispute that paragraph 11 of the first Stevens declaration actually states:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed by Lifetime for over three (3) years. I have read and understood and/or have personal knowledge of each of the Test Orders in APPENDIX A. It was standard practice at Lifetime to record test parameters, data and results in such Test Orders.
>
> In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967, 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to attach the acrylic backboard to the metal frame. In each case, the adhesive failed. For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame; the adhesives described in Test Order nos. 1870, 1919A and 1919B did not provide proper cushioning between the backboard and frame, causing the backboard to crack or shatter. The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.

**Russell's Fact No. 224:** Stevens acknowledged in his deposition testimony that there is no failure of the adhesive being tested in Test Order 2053 to adhere to either the backboard or the frame, and Stevens acknowledged in his deposition that the adhesive tested in Test Order 2053 properly adhered to the board and the frame. (Exh. 44 at 42:1-43:2)

**Response to No. 224:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that the adhesive being tested in Test Order 2053 adhered to the board and the frame. Lifetime

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

disputes that Stevens acknowledged the adhesive adhered properly as contrary to the evidence cited, which indicates Stevens stated the backboard warped and buckled.[148]

**Russell's Fact No. 225:** Stevens acknowledged in his deposition that all tested samples in Test Order 2053 passed the ball impact test with no separation of the adhesive from either the frame o[r] the backboard, and he agreed that the statement in Paragraph 11 of First Stevens Reexam Declaration that the adhesive described in Test Order 2053 failed to properly adhere to either the backboard or the frame is not a correct statement. (Exh. 44 at 42:1-43:14)

**Response to No. 225:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that all tested samples in Test order 2053 passed the ball impact test with no separation of the adhesive from either the frame or the backboard. Lifetime disputes that Stevens agreed that the statement in paragraph 11 of his first declaration is not correct as unsupported by and contrary to the evidence cited, which reveals that Stevens was asked about a misleading elision of paragraph 11 rather than paragraph 11 itself.[149]

**Russell's Fact No. 226:** The Second Stevens Reexam Declaration contains the following statement:

---

[148] Appx. Ex. 16, Stevens depo. vol. II at 42:4, 23–24.

[149] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 11 ("For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame.") *with* Appx. Ex. 16, Stevens depo. vol. II at 43:9–14 ("Q. Let me ask it this way: You would agree with me that the statement on Page 5 of the declaration that the adhesive described in test order 2053 failed to properly adhere to either the backboard or the frame is not a correct statement? A. Correct.").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

13. I was skeptical as to likelihood of success in using an adhesive to bond an acrylic backboard to a frame for the following reasons: A. The experienced adhesives representatives I consulted with could not come up with a suitable adhesive that, upon curing, would both adhere to an acrylic material and provide sufficient strength and flexibility to allow the basketball backboard assembly to be used in the game of basketball. Page 29 of the ACP states that "a person of ordinary skill as defined by the Patent Owner would recognize that when wanting to reevaluate the adhesive of known basketball systems, the best solution would be to contact one of ordinary skill in the adhesive art (as defined in the Declaration of Maureen Reitman) for alternative solutions." However, I worked with several adhesive vendors and was told that there were no adhesives that would bond to acrylic material and provide a suitable amount of flexibility. In fact, one of the adhesive vendors I worked with told me I would never find an adhesive that could replace VHB© tape in the construction of basketball backboard assemblies.

(Exh. 9 at ¶ 13.A)

**Response to No. 226:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 227:** When asked about this subject in his deposition, Stevens testified that he only had conversations with two adhesives representatives about his adhesive-for-tape backboard project: Martin Cole, Lifetime's 3M Company tape representative (Paras. 185-89 above) and Rick Bradford. (Exh. 2 at 166:23-167:21)

**Response to No. 227:** For purposes of this Motion only, Lifetime does not dispute that Stevens testified that he had conversations with two adhesives representatives about his adhesive-for-tape backboard project: Martin Cole, Lifetime's 3M Company tape representative and Rick Bradford. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[150]

---

[150] Appx. Ex. 5, Stevens depo. at 175:11–22.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 228:** Bradford provided Stevens with the Dow Corning Q3-6093 adhesive that Stevens identified in the specification of the Patents as a "[s]uitable silicone adhesive." (Exh. 2 at 260:20-262:4)

**Response to No. 228:** For the purposes of this Motion only, Lifetime does not dispute Bradford suggested the Dow Corning Q3-6093 adhesive based on its similarity to the GE D1-SEA 210 adhesive that Stevens had already identified. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[151]

**Russell's Fact No. 229:** While Stevens did call several adhesives manufacturers to order glue samples, not one told him on any of these calls that the sample he was ordering wouldn't work in backboards. (Exh. 2 at 176:4-176:25)

**Response to No. 229:** For the purposes of this Motion only, Lifetime does not dispute (1) Stevens called several adhesives manufacturers to order glue samples, and (2) during those calls Stevens did not ask about the flexibility of the adhesive. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[152]

**Russell's Fact No. 230:** Stevens also testified that he wasn't discouraged by his interactions with Bradford. (Exh. 2 at 167:2-5)

**Response to No. 230:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion: Russell's theory is that Stevens misrepresented discouragement *by Cole* not

---

[151] Appx. Ex. 5, Stevens depo. at 260:20–262:4.

[152] Appx. Ex. 5, Stevens depo. at 176:4–25.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

*by Bradford*. For the purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 231:** Schade was present for and was aware of the Stevens' deposition testimony as it occurred on June 25, 2014. (Exh. 40 at 85:14-86:15).

**Response to No. 231:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that Schade was present for most of Stevens' deposition testimony on June 25, 2014. Lifetime disputes that Schade was aware of Stevens' deposition testimony as unsupported by the evidence cited.[153]

**Russell's Fact No. 232:** Following the Stevens deposition, Schade did not disclose, or cause the disclosure, to the USPTO of his knowledge of Mr. Stevens' testimony regarding Stevens' interactions with Bradford, the fact that Bradford brought the Dow Corning Q3-6093 adhesive to Stevens, that Stevens was not discouraged by his conversation with Cole, or any explanation that Stevens testimony contradicted the representations made to the examiner in the interview. (Exh. 60 at ¶ VI.D.40 (pg. 70))

**Response to No. 232:** Lifetime disputes the relevance of this asserted "fact" to the issues presented for the Court's decision by Russell's Motion Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (see evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). For purposes of this Motion only, Lifetime does not dispute that Schade did not

---

[153] Appx. Ex. 14, Schade depo. vol. II at 85:14–86:20.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

disclose Stevens' deposition testimony to the PTO. Lifetime otherwise disputes this putative

"fact" as unsupported by the evidence cited.

**Russell's Fact No. 233:** In Paragraph 8 of the First Stevens Reexam Declaration, Stevens

states:

> I tested mechanical fasteners, such as clips, screws and retainers, in attaching brittle
> materials, such as acrylic, to other materials. The mechanical fasteners didn't work
> because they caused the acrylic to crack. I performed testing to determine if the
> backboards attached to the frame with the mechanical fasteners could withstand impact
> from a basketball. Upon impact with the basketball, the acrylic would crack and/or
> break. When I examined the backboards, I saw that the breaks and cracks radiated from
> the mechanical fastener which indicated that the mechanical fastener created a shear
> point or stress concentration in the backboard which caused the backboard to crack and
> break upon impact or application of force. The mechanical fasteners were, thus,
> unsuitable for use in the basketball backboard assemblies.

(Exh. 4 at ¶ 8).

**Response to No. 233:** Lifetime disputes the relevance of this asserted "fact" to Russell's

pleaded inequitable conduct claims. For purposes of this Motion only, and to the extent it is an

accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 234:** Stevens did no ball impact testing of backboard assemblies

constructed using mechanical fasteners. Lifetime has no documents that evidence Stevens testing

mechanical fasteners such as clips, screws and retainers in basketball backboards. (Exhibit 53:

Depo. of E. van Nimwegen, Vol. II, at 16:12-24)

**Response to No. 234:** Lifetime disputes the relevance of this asserted "fact" to Russell's

pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute

that Lifetime has not located documents evidencing Stevens' testing of mechanical fasteners in

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

basketball backboard assemblies. Lifetime disputes that Stevens never did any such testing as unsupported by the evidence cited.[154]

**Russell's Fact No. 235:** Stevens' testing with "mechanical fasteners" while he was at Lifetime consisted of using a sheet metal screw and washer for attaching 3-inch by 6-inch acrylic coupons to 6-inch pieces of metal frame. (Exh. 53 at 16:25-18:23; 20:2-8)

**Response to No. 235:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that Stevens' testing with "mechanical fasteners" while he was at Lifetime included using a sheet metal screw and washer for attaching 3-inch by 6-inch acrylic coupons to 6-inch pieces of metal frame.[155]

**Russell's Fact No. 236:** Ste[v]ens pre-drilled the acrylic coupon and the frame piece before he attached the coupon to the frame with the screw, and he then performed his coupon pre-test as he had with adhesive coupons. (Exh. 53 at 16:25-17:17)

**Response to No. 236:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 237:** The coupon testing Stephens did with mechanical fasters is the same coupon testing Stephens did with adhesives using 3 x 6 pieces of acrylic and a section of frame material that is described in the shared specifications for this family of patents. (Exh. 53 at 18:15-23, 20:2-22:18).

---

[154] Appx. Ex. 15, Van Nimwegen depo. vol. II at 16:12–24.

[155] Appx. Ex. 15, Van Nimwegen depo. vol. II at 16:25–18:23; 20:2–8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 237:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Lifetime disputes that the specification of the patents in suit describes testing of mechanical fasteners as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[156] For purposes of this Motion only, Lifetime does not dispute that Stevens tested mechanical fasteners using procedures described in the specification of the patents in suit.

**Russell's Fact No. 238:** Lifetime has never used mechanical fasteners for its acrylic boards. (Exh. 53 at 22:6-18)

**Response to No. 238:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 239:** In Paragraph 18 of the First Stevens Reexam Declaration, Stevens states:

> I recall one of Lifetime's manufacturers in China having an issue with adhesion because the adhesive was not properly bonding to the powder-coated frame. Lifetime performed testing and found the Chinese manufacturer had made a minor adjustment to the powder-coat formulation. Because making even slight adjustments in the manufacturing process would cause the adhesive to fail, identifying a suitable adhesive was incredibly challenging.

(Exh. 4 at ¶ 18)

**Response to No. 239:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

---

[156] *See* Appx. Ex. 1, '111 patent at 4:37–67.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 240:** Lifetime's only issues with backboards from its Chinese supplier involved an issue with separation of glass backboards from the frame. (Exh. 53 at 9:13-10:25)

**Response to No. 240:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that Lifetime had issues with backboards from a Chinese supplier involving separation of glass backboards from frames. Lifetime disputes that this was the only issue Lifetime ever encountered with a Chinese supplier as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[157]

**Russell's Fact No. 241:** The incident that is described in paragraph 18 of the First Stevens reexam Declaration is the only incident with Lifetime's Chinese manufacture of this nature that Lifetime has ever experienced. (Exh. 53 at 13:23–14:2)

**Response to No. 241:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Because the phrase "this nature" has no clear meaning or discernible antecedent, this contention is too vague to permit Lifetime to frame a complete response. Subject to that qualification, Lifetime disputes that the incident described in paragraph 18 of the first Stevens declaration is the only incident with a Chinese supplier as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[158]

---

[157] Appx. Ex. 15, Van Nimwegen depo. vol. II at 9:13–10:25; 35:23–36:6; Appx. Ex. 5, Stevens depo. at 317:7–318:11.

[158] Appx. Ex. 15, Van Nimwegen depo. vol. II at 9:13–10:25; 13:23–14:2; 35:23–36:6; Appx. Ex. 5, Stevens depo. at 317:7–318:11.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 242:** Lifetime first produced and sold glass backboards as a part of its Mammoth line of products some time during or after 2004. (Exh. 11 at 85:1-86:2; Exhibit 54: LIFE 26550; Exhibit 59: Depo. of K. Romer at 34:9-35:9)

**Response to No. 242:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that it sold glass backboards as a part of its Mammoth line of products some time during or after 2004. Lifetime disputes that the "Mammoth line of products some time during or after 2004" was the first time it used glass backboards as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[159]

**Russell's Fact No. 243:** Stevens' employment with Lifetime ended in 2001. (Exh. 2 at 9:24-10:1)

**Response to No. 243:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 244:** In Paragraph 19 of the First Stevens Reexam Declaration, Stevens states:

> During my extensive testing of adhesives, I learned that elastomeric adhesives provided other desirable properties. For example, I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. See APPENDIX A, Test Order nos. 2155, 2335 and 2365.

(Exh. 4 at ¶ 19)

---

[159] See e.g. Appx. Ex. 5, Stevens depo. at 292:8–293:5; 316:6–318:11.

**Response to No. 244:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 245:** Lifetime Test Order nos. 2335 and 2365 both involve ball impact testing of basketball backboard assemblies constructed using an adhesive. (Paras 52-64 above)

**Response to No. 245:** Russell's Fact No. 245 is substantively duplicative of Russell's Fact No. 52. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 52. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 246:** Lifetime's "ball impact test" involves repeatedly hitting a sample backboard with a basketball at a controlled speed. (Exh. 4 at ¶ 20; Exh. 6 at ¶¶ 4-7)

**Response to No. 246:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 247:** The ball impact test was the test Stevens used to evaluate the adhesive strength of the adhesives in his sample backboards. (Exh. 2 at 279:10-280:7)

**Response to No. 247:** Russell's Fact No. 247 is substantively identical to Russell's Fact No. 34. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 34. For purposes of this Motion only, Lifetime does not dispute that Stevens used Lifetime's ball impact test to evaluate the adhesive strength of the adhesives in his sample backboards. Lifetime disputes that Stevens used only Lifetime's ball impact test to evaluate the adhesive strength of the adhesives in his sample backboards as unsupported by the evidence cited and contrary to additional evidence Russell does not cite.[160]  Lifetime disputes that Stevens required adhesive

---

[160] Appx. Ex. 17, 1st Stevens decl. ¶ 12; Appx. Ex. 1, '111 patent at 2:46–50, 4:36–37.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[161]  Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[162]

**Russell's Fact No. 248:** According to Stevens, the failure of a backboard in the ball impact test indicates that an adhesive is not of suitable strength for use in a basketball backboard assembly that could be used to play the game of basketball. (Exh. 2 at 146:5-148:10, 249:12-251:16, 279:18-280:4 & 334:24-335:5)

**Response to No. 248:** Russell's Fact No. 248 is substantively identical to Russell's Fact No. 36. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 36. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[163]  Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[164]

**Russell's Fact No. 249:** According to Stevens, an adhesive fails when an adhesive-assembled backboard is tested using the ball impact test if it experiences either adhesive separation (separation of the adhesive from either the backboard or the frame) or fracturing of the backboard substrate. (Exh. 2 at 247:11-250:19; Exh. 4 at at ¶ 11; Exh. 9 at ¶ 13.B)

---

[161] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[162] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

[163] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[164] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 249:** Russell's Fact No. 249 is identical to Russell's Fact No. 35. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 35. For purposes of this Motion only, Lifetime does not dispute that adhesive separation and fracturing of the backboard substrate are types of failure associated with Lifetime's ball impact test. Lifetime disputes that there are no other types of failure as unsupported by the evidence cited and contrary to additional evidence Russell does not cite.[165] Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[166] Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[167]

**Russell's Fact No. 250:** Both of Test Order nos. 2335 and 2365 show failure of the tested adhesive:

**Response to No. 250:** Russell's Fact No. 250 is substantively duplicative of Russell's Fact No. 58. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 58. For purposes of this Motion only, Lifetime does not dispute that Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 show failure in somewhere between half and all of the backboards tested. Lifetime disputes that any of the cited test orders show failure of the adhesive used. Each of the

---

[165] *See e.g.* Appx. Ex. 56, Test Order 2053, Appx. Ex. 5, Stevens depo. at 280:22–281:17.

[166] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[167] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

test orders show that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[168]

>    **Russell's Fact No. 250.a:** For Test Order 2335, all three tested backboards experienced adhesive failure due to adhesive separation from the acrylic. (Exh. 14)
>
>    **Response to No. 250.a:** Russell's Fact No. 250.a is substantively duplicative of Russell's Fact No. 58.a. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 58.a. For purposes of this Motion only, Lifetime does not dispute that Test Order 2335 reports that three tested basketball backboard assemblies experienced testing failure due to adhesive separation. Lifetime disputes that Test Order 2335 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[169]
>
>    **Russell's Fact No. 250.b:** For Test Order 2365, four of seven tested backboards had adhesive failure due to separation of the adhesive from the acrylic, and the adhesive failed because the acrylic shattered in one of the three other tested backboards. (Exh. 19)
>
>    **Response to No. 250.b:** Russell's Fact No. 250.b is substantively duplicative of Russell's Fact No. 58.f. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 58.f. For purposes of this Motion only, Lifetime does

---

[168] *See* Appx. Exs. 66–71, Test Orders 2335, 2337, 2348, 2351, 2359 and 2365; see also Appx. Ex. 29, '550 Third Party Comments at 17.

[169] *See* Appx. Ex. 66, Test Order 2335; see also Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

not dispute that Test Order 2365 reports that four of seven tested basketball backboard assemblies experienced separation of the adhesive from the acrylic, and the acrylic shattered during Gardner Impact Testing in one of the three other tested backboards. Lifetime disputes that Test Order 2365 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[170]

**Russell's Fact No. 251:** The basketball backboard assemblies tested in Test Order nos. 2335 and 2365 were all constructed using General Electric D1-SEA 210 adhesive, (Exh. 2 at 65:1-66:10, 69:4-10), a catalyzed, silicone, elastomeric, two-part adhesive. (Exh. 2 at 282:20-283:3 & 284:2-4; Exh. 58)

**Response to No. 251:** Russell's Fact No. 251 is substantively duplicative of Russell's Fact Nos. 55–56. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 55–56. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 252:** Stevens acknowledges in his deposition testimony in this litigation that his statement in Paragraph 19--that his tested elastomeric adhesive prevented the backboard from shattering and cracking--is not a correct statement for Test Order 2365. (Exh. 44 at 33:3-18)

**Response to No. 252:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion.

---

[170] *See* Appx. Ex. 71, Test Order 2365; see also Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Lifetime disputes that Stevens agreed that the statement in paragraph 19 of his first declaration is not correct as unsupported by and contrary to the evidence cited, which reveals that Stevens was asked about a misleading paraphrase of paragraph 19 rather than paragraph 19 itself.[171]

**Russell's Fact No. 253:** In Paragraph 10 of the Second Stevens Reexam Declaration, Stevens states:

> Lifetime could not sell backboard assemblies to consumers if there was a risk that the acrylic backboard would crack or break during use in the game of basketball because this could result in injuries to users.

(Exh. 9 at ¶ 10)

**Response to No. 253:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 254:** Stevens was aware that some the pre-1999 taped backboards that Lifetime sold delaminated and cracked. (Exh. 2 at 85:7-87:25)

**Response to No. 254:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[171] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 19 ("For example, I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboards from shattering or cracking. See APPENDIX A, Test order nos. 2155, 2335, and 2365.") *with* Appx. Ex. 16, Stevens depo. vol. II at 33:3–18 ("Q. Okay. So this statement in Paragraph 19 that the testing showed that the glue prevented the backboard from shattering and cracking, at least in test order 2365, is not correct? A. Yes.").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 255:** The cause that prompted the testing of adhesives in backboards at Lifetime was customer and store returns of taped boards that were failing as early as 1995 due to the breaking of the acrylic backboard and the separation of the acrylic backboard from the frame. (Exh. 11 at 44:23-47:14)

**Response to No. 255:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that (1) customer and store returns of taped boards as early as 1995 were one cause prompting the testing of adhesives in backboards at Lifetime and (2) some of the returns were due to the breaking of the acrylic backboard and the separation of the acrylic backboard from the frame. Lifetime disputes that returns prompted by the breaking of the acrylic backboard and the separation of the acrylic backboard from the frame were the only causes of the testing of adhesives in basketball backboard assemblies as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[172]

**Russell's Fact No. 256:** Even at present, Lifetime's biggest issue with its acrylic backboards is the cracking of the backboard induced by basketballs striking the backboard, yet Lifetime continues to sell acrylic basketball backboard systems. (Exh. 46 at 126:14-127:21 and 203:9-204:3)

**Response to No. 256:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

---

[172] *See* Appx. Ex. 17, 1st Stevens decl. ¶¶ 8–9; Appx. Ex. 7, Van Nimwegen depo. at 45:5–46:23.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute that (1) Lifetime's biggest issue with its acrylic backboards is the cracking of the backboard and (2) Lifetime continues to sell acrylic basketball backboard systems. Lifetime disputes that such cracking is only caused by basketballs striking the backboard as unsupported by and contrary to the evidence cited, which indicates rocks also cause the basketball backboards to crack.[173]

**Russell's Fact No. 257:** In Paragraph 21 of the Second Stevens Reexam Declaration, Stevens states:

> Furthermore, the McGinniss Patent discloses methacrylate and urethane adhesives which, as shown in the table above, failed to bond an acrylic backboard to a basketball backboard frame with sufficient strength and flexibility to allow the basketball backboard assembly to be used in the game of basketball.

(Exh. 9 at ¶ 21)

**Response to No. 257:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 258:** In the table in Paragraph 13.B that Stevens references in Paragraph 21 of the Second Stevens Reexam Declaration, Stevens describes the "Devcon Composite Welder" adhesive of Test Order 1967 as a "methyl methacrylate" adhesive. (Exh. 9 at ¶ 13.B)

**Response to No. 258:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

---

[173] Appx. Ex. 9, Winter depo. at 127:7–21.

by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Element b).B.1.b: The Notice of Correction[s]**

Russell's Element b).B.1.b alleges statements made in the Notice of Corrections are false. Lifetime disputes that Russell has carried its burden to show that any statements made in the Notice of Corrections are false as required by its element b).B.1.b, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

Russell's Element b).B.1.b.[i]: Test Orders 1966 and 1967

Russell's Element b).B.1.b.[i] "Test Orders 1966 and 1967" alleges statements made in the Notice of Corrections regarding Test Orders 1966 and 1967 are false. Lifetime disputes that Russell has carried its burden to show that any statements made in the Notice of Corrections are false as required by its element b).B.1.b.[i] "Test Orders 1966 and 1967," and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 259:** Paragraph 3 of the Notice of Correction states, in part: "References to test order no. 1967 in paragraph nos. 11 and 13 of the [FSRD] should have been to test order no. 1966," and a copy of Test Order 1966 is provided with the Notice of Correction in its Appendix A. (Exh. 43; Exh. 44 at 6:25-7:5; Exhibit 55: Test Order 1966 (LIFE18372-18373))

**Response to No. 259:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 260:** With regard to Test Order 1967, Paragraphs 11 of the First Stevens Reexam Declaration states:

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

> The adhesive described in Test Order no []. 1967 … failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about 106°F.

(Exh. 4 at ¶11)

**Response to No. 260:** Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates that the first Stevens declaration did not make the statements indicated about Test Order 1967, specifically or in isolation. For the purposes of this Motion only, Lifetime does not dispute that paragraph 11 of the first Stevens declaration actually states:

> The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F.

**Russell's Fact No. 261:** In his deposition taken in the litigation, Stevens testified that:

**Response to No. 261:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 261.a:** There is nothing in Test Order 1966 that indicates that the testing of the backboards was conducted at a temperature greater than 106 degrees;

**Response to No. 261.a:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 261.b:** There is nothing in Test Order 1966 that discusses the warping of the tested backboards;

**Response to No. 261.b:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 261.c:** There is nothing in Test Order 1966 that discusses the deformation of the tested backboards; and

**Response to No. 261.c:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 261.d:** There is nothing in Test Order 1966 that indicates that the backboard cracked during thermal testing. (Exh. 44 at 9:16–10:9; Exh. 55)

**Response to No. 261.d:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 262:** Stevens agreed in his deposition that this sentence in Paragraph 11 from the First Stevens Reexam Declaration does not describe the testing that went on in Test Order 1966. (Exh. 44 at 17:16-20; Exh. 55)

**Response to No. 262:** Because the phrase "this sentence in Paragraph 11" has no discernible antecedent, this contention is too vague to permit Lifetime to frame a response.

**Russell's Fact No. 263:** With regard to Test Order 1967, Paragraph 13 of the First Stevens Reexam Declaration states:

> Through my investigation of adhesives, I became aware of some rigid, non-elastomeric adhesives, such as urethanes and methacrylates, known to bond to polymers such as acrylic. … As shown in Test Order no []. 1967 of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.

(Exh. 4 at ¶ 13)

**Response to No. 263:** Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates that the first Stevens declaration did not make the statements indicated about Test Order 1967, specifically or in isolation. For the purposes of this

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Motion only, Lifetime does not dispute that paragraph 13 of the first Stevens declaration actually

states:

> Through my investigation of adhesives, I became aware of some rigid, non-elastomeric adhesives, such as urethanes and methacrylates, known to bond to polymers such as acrylic. As shown in Test Order nos. 1870, 1919A and 1919B of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric acrylic adhesive would cause the backboard to break because the rigid, non-elastomeric adhesive did not provide the required cushioning and impact resistance. As shown in Test Order nos. 1967, 2027, and 2053 of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.

**Russell's Fact No. 264:** Stevens acknowledges in his deposition that there is nothing in

Test Order 1967 about the warping or deformation of the backboards being tested; there is

nothing in Test Order 1967 about testing the backboard at temperatures greater than about 106

degrees Fahrenheit; and there is nothing in Test Order 1967 about the backboard warping and

cracking during thermal testing. (Exh. 44 at 40:7-24; Exh. 51)

**Response to No. 264:** Lifetime disputes the relevance of Stevens' state of mind, at the time

his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For

purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not

dispute this asserted fact.

Russell's Element b).B.1.b.[ii]: Test Order 2053

Russell's Element b).B.1.b.[ii] "Test Order 2053" alleges statements made in the Notice of

Corrections regarding Test Order 2053 is false. Lifetime disputes that Russell has carried its

burden to show that any statements made in the Notice of Corrections are false as required by its

element b).B.1.b.[ii] "Test Order 2053," and more particularly responds to Russell's putative

"facts" asserted in support of the element as follows:

**Russell's Fact No. 265:** Paragraph 3 of the Notice of Correction states, in part: "Reference to test order no. 2053 on page 5, line 4 of the [FSRD] was inadvertent and should be stricken." (Exh. 43)

**Response to No. 265:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 266:** Test Order 2053 shows that the adhesive tested in all six samples tested passed the ball impact test at both ambient and cold temperatures with no failures. (Exh. 52)

**Response to No. 266:** Russell's Fact No. 266 is substantively identical to Russell's Fact No. 220. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 220. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 267:** The "Test Results" in Test order 2053 for the all six tested sample backboards state "PASS" in the "RESULT" columns for both ambient and cold testing. (Exh. 52)

**Response to No. 267:** Russell's Fact No. 267 is substantively identical to Russell's Fact No. 221. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 221. For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that the document reads as indicated.

**Russell's Fact No. 268:** The "Engineering Notes" of Test Order 2053 state that: "All boards tested passed the ball impact test at ambient and cold temperatures." (Exh. 52)

**Response to No. 268:** Russell's Fact No. 268 is identical to Russell's Fact No. 222. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 222. For the

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

purposes of this Motion only, Lifetime does not dispute the "engineering notes" of Test Order

2053 read in part as indicated.

**Russell's Fact No. 269:** With regard to Test Order 2053, Paragraph 11 of the First Stevens

Reexam Declaration states:

> As a Manufacturing Engineer at Lifetime, I was involved with and responsible for
> cutting costs associated with production and for improving manufacturing quality and
> speed of the basketball backboard assemblies. APPENDIX A includes exemplary Test
> Orders describing adhesive testing performed by Lifetime for over three (3) years. I
> have read and understood and/or have personal knowledge of each of the Test Orders
> presented in APPENDIX A. … Each of the Test Orders describes testing of a different
> adhesive sandwiched between and in direct contact with an acrylic backboard and a
> metal frame. The exemplary Test Orders range from October 24, 1995 to December 7,
> 1998, demonstrating the extensive research and testing performed at Lifetime in finding
> an alternative to the double-sided tape. In particular, Test Order no[]. … 2053
> …describe[s] testing of different adhesives to attach the acrylic backboard to the metal
> frame. ln each case, the adhesive failed. For example, the adhesives described in Test
> Order no[]. … *2053 ... failed to properly adhere to either the backboard or the frame.*

(Exh. 4 at ¶11) The highlighted portion of this excerpt is the "[r]eference to test order no. 2053"

that appears on line 4 of page 5 of the First Stevens Reexam Declaration.

**Response to No. 269:** Russell's Fact No. 269 is substantively identical to Russell's Fact

No. 223. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence

cited, which indicates that the first Stevens declaration did not make the statements indicated

about Test Order 2053, specifically or in isolation. For the purposes of this Motion only,

Lifetime does not dispute that paragraph 11 of the first Stevens declaration actually states:

> APPENDIX A includes exemplary Test Orders describing adhesive testing performed
> by Lifetime for over three (3) years. I have read and understood and/or have personal
> knowledge of each of the Test Orders in APPENDIX A. It was standard practice at
> Lifetime to record test parameters, data and results in such Test Orders.
>
> In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967,
> 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to
> attach the acrylic backboard to the metal frame. In each case, the adhesive failed. For

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame; the adhesives described in Test Order nos. 1870, 1919A and 1919B did not provide proper cushioning between the backboard and frame, causing the backboard to crack or shatter. The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.

**Russell's Fact No. 270:** Stevens acknowledges in his deposition that there is no failure in Test Order 2053 of the tested adhesive to adhere to either the board or the frame in the tested backboard assemblies. (Exh. 44 at 42:1-7; Exh. 52)

**Response to No. 270:** Russell's Fact No. 270 is substantively duplicative of Russell's Fact No. 224. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 224. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that the adhesive being tested in Test Order 2053 adhered to the board and the frame. Lifetime disputes that Stevens acknowledged the adhesive adhered properly as contrary to the evidence cited, which indicates Stevens stated the backboard warped and buckled.[174]

**Russell's Fact No. 271:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Stevens acknowledges in his deposition that the adhesive in Test Order 2053 properly adhered to the board and the frame. (Exh. 44 at 41:13-42:7; Exh. 52)

---

[174] Appx. Ex. 5, Stevens depo. vol. II at 42:4, 23–24.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 271:** Russell's Fact No. 271 is substantively duplicative of Russell's Fact No. 224. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 224. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that the adhesive being tested in Test Order 2053 adhered to the board and the frame. Lifetime disputes that Stevens acknowledged the adhesive adhered properly as contrary to the evidence cited, which indicates Stevens stated the backboard warped and buckled.[175]

**Russell's Fact No. 272:** Stevens agrees in his deposition that the "Engineering Notes" in Test Order 2053 say "All boards tested passed the ball impact test at ambient and cold temperatures." (Exh. 44 at 42:1-14; Exh. 52)

**Response to No. 272:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 273:** Stevens acknowledges in his deposition that all tested backboard samples in 2053 passed Lifetime's ball impact test with no separation of the adhesive from either the frame or the backboard, and he also acknowledges that one of the objects of the ball impact test is to see if the tested adhesive is strong enough to adhere to the frame and the backboard. (Exh. 44 at 42:1-43:3; exh. 52)

**Response to No. 273:** Russell's Fact No. 273 is partially duplicative of Russell's Fact No. 224. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 224.

---

[175] Appx. Ex. 16, Stevens depo. vol. II at 42:4, 23–24.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that the adhesive being tested in Test Order 2053 adhered to the board and the frame. Lifetime disputes that Stevens acknowledged the adhesive adhered properly as contrary to the evidence cited, which indicates Stevens stated the backboard warped and buckled.[176]  Lifetime does not dispute Stevens acknowledged in deposition that one of the objects of Lifetime's ball impact test is to see if the tested adhesive is strong enough to adhere to the frame and backboard. Lifetime disputes that Stevens required adhesive candidates to always pass every test. Stevens stated that there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[177]  Additionally, Stevens noted that because there are too many variables, one failed test does not indicate the adhesive is unsuitable.[178]

**Russell's Fact No. 274:** Stevens agreed in his deposition that the statement in Paragraph 11 of the First Stevens Reexam Declaration that the adhesive described in Test Order 2053 failed to properly adhere to either the backboard or the frame is not a correct statement. (Exh. 44 at 43:9-14; Exh. 52)

**Response to No. 274:** Russell's Fact No. 274 is substantively duplicative of Russell's Fact No. 225. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 225. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was

---

[176] Appx. Ex. 16, Stevens depo. vol. II at 42:4, 23–24.

[177] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

[178] Appx. Ex. 5, Stevens depo. at 237:3–238:8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that all tested samples in Test order 2053 passed the ball impact test with no separation of the adhesive from either the frame or the backboard. Lifetime disputes that Stevens agreed that the statement in paragraph 11 of his first declaration is not correct as unsupported by and contrary to the evidence cited, which reveals that Stevens was asked about a misleading elision of paragraph 11 rather than paragraph 11 itself.[179]

**Russell's Fact No. 275:** Stevens acknowledged in his deposition that he has never informed the USPTO, in the Notice of Correction or otherwise, that the "Devcon Composite Weld" adhesive tested in Test Order 2053 as requested by "Coplan V." in January 1998 didn't fail. (Exh. 44 at 43:15-19)

**Response to No. 275:** For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in his deposition that he has never told the PTO that the "Devcon Composite Weld" adhesive tested in Test Order 2053 as requested by "Coplan V." in January 1998 didn't fail. Lifetime disputes that the "Devcon Composite Weld" adhesive tested in Test Order 2053 as requested by "Coplan V." in January 1998 didn't fail as contrary to other evidence Russell does not cite.[180]

---

[179] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 11 ("For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame.") *with* Appx. Ex. 16, Stevens depo. vol. II at 43:9–14 ("Q. Let me ask it this way: You would agree with me that the statement on Page 5 of the declaration that the adhesive described in test order 2053 failed to properly adhere to either the backboard or the frame is not a correct statement? A. Correct.").

[180] *See* Appx. Ex. 16, Stevens depo. vol. II at 42:4, 23–24; Appx. Ex. 17, 1st Stevens decl. ¶11; Appx. Ex. 56, Test Order 2053; and Appx. Ex. 10, Vaughan depo. at 51:8–9.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Russell's Element b).B.1.b.[iii]: Test Orders 2027 and 2010

Russell's Element b).B.1.b.[iii] "Test Orders 2027 and 2010" alleges statements made in

the Notice of Corrections regarding Test Orders 2027 and 2010 are false. Lifetime disputes that

Russell has carried its burden to show that any statements made in the Notice of Corrections are

false as required by its element b).B.1.b.[iii] "Test Orders 2027 and 2010," and more particularly

responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 276:** With regard to Test Order 2027, Paragraphs 11 and 13 of the First

Stevens Reexam Declaration state:

> As a Manufacturing Engineer at Lifetime, I was involved with and responsible for
> cutting costs associated with production and for improving manufacturing quality and
> speed of the basketball backboard assemblies. APPENDIX A includes exemplary Test
> Orders describing adhesive testing performed by Lifetime for over three (3) years. I
> have read and understood and/or have personal knowledge of each of the Test Orders
> presented in APPENDIX A. … Each of the Test Orders describes testing of a different
> adhesive sandwiched between and in direct contact with an acrylic backboard and a
> metal frame. The exemplary Test Orders range from October 24, 1995 to December 7,
> 1998, demonstrating the extensive research and testing performed at Lifetime in finding
> an alternative to the double-sided tape. In particular, Test Order no[]. … 2027
> …describe[s] testing of different adhesives to attach the acrylic backboard to the metal
> frame. ln each case, the adhesive failed. … The adhesive described in Test Order no[].
> 2027 …failed temperature testing because it did not accommodate the differences in
> coefficients of thermal expansion between the backboard and frame resulting in
> warping and deformation of the acrylic backboard at temperatures greater than about
> 106°F.

(Exh. 4 at ¶11)

> Through my investigation of adhesives, I became aware of some rigid, non-elastomeric
> adhesives, such as urethanes and methacrylates, known to bond to polymers such as
> acrylic. … As shown in Test Order no []. 2027 of APPENDIX A, directly bonding the
> backboard to the frame with a non-elastomeric methacrylate adhesive did not
> accommodate thermal expansion between the backboard and frame such that the
> backboard warped and cracked during thermal testing.

(Exh. 4 at ¶ 13)

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 276:** Lifetime disputes this putative "fact" as unsupported by and

contrary to the evidence cited, which indicates that the first Stevens declaration did not make the

statements indicated about Test Order 2027, specifically or in isolation. For the purposes of this

Motion only, Lifetime does not dispute that paragraph 11 of the first Stevens declaration actually

states:

> As a Manufacturing Engineer at Lifetime, I was involved with and responsible for cutting costs associated with production and for improving manufacturing quality and speed of the basketball assemblies. APPENDIX A includes exemplary Test Orders describing adhesive testing performed by Lifetime for over three (3) years. I have read and understood and/or have personal knowledge of each of the Test Orders in APPENDIX A. It was standard practice at Lifetime to record test parameters, data and results in such Test Orders.

> In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967, 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to attach the acrylic backboard to the metal frame. In each case, the adhesive failed. For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame; the adhesives described in Test Order nos. 1870, 1919A and 1919B did not provide proper cushioning between the backboard and frame, causing the backboard to crack or shatter. The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.

For the purposes of this Motion only, Lifetime does not dispute that paragraph 13 of the first

Stevens declaration actually states:

> Through my investigation of adhesives, I became aware of some rigid, non-elastomeric adhesives, such as urethanes and methacrylates, known to bond to polymers such as acrylic. As shown in Test Order nos. 1870, 1919A and 1919B of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric acrylic adhesive would cause the backboard to break because the rigid, non-elastomeric adhesive did not provide the required cushioning and impact resistance. As shown in Test Order nos. 1967, 2027, and 2053 of  APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.

**Russell's Fact No. 277:** The "Objective" stated in Lifetime Test Order 2027 is to "compare impact resistance of acrylic backboards with tape to acrylic backboards with Devcon Composite Weld adhesive." (Exh. 4 at App. A; Exhibit 56: Test Order 2027 (LIFE18386-18387))

**Response to No. 277:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 278:** "Devcon Composite Weld adhesive" from test order 2027 is the same adhesive that is the subject of Lifetime Test Order 2053. (Exh. 52; Exh. 56)

**Response to No. 278:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 279:** The test being conducted in Test Order 2027 is the "Gardner Impact Test," which is a "surface test" used to test the strength of sheet material such as acrylic or polycarbonate. (Exh. 7 at 28:20-29:9 & 51:10-19)

**Response to No. 279:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For purposes of this Motion only, Lifetime does not dispute that (1) the test being conducted in Test Order 2027 is the "Gardner Impact Test," and (2) Lifetime's current Gardner Impact Test is a surface test used to test the strength of sheet material such as acrylic or polycarbonate.  Lifetime disputes that the Gardner Impact Test used prior to 2001 is the same as its current test as unsupported by and contrary to the evidence cited, which indicates that the current test is different.[181]  Lifetime disputes that the Gardner Impact

---

[181] Appx. Ex. 6, Bosgieter depo. at 28:20–29:11, 51:10–19.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Test cannot be used to test attributes of an adhesive in a basketball backboard assembly as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[182]

**Russell's Fact No. 280:** Lifetime runs the Gardner Impact Test to qualify sheets of polycarbonate and acrylic because the results of the test inform a tester about the impact resistance of the sheet alone. (Exh. 7 at 53:10-17)

**Response to No. 280:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. For the purposes of this Motion only, Lifetime does not dispute that one of its current uses of the current version of the Gardner Impact Test is to qualify sheets of polycarbonate and acrylic because the results of the test inform a tester about the impact resistance of the sheet. Lifetime disputes that the Gardner Impact Test used prior to 2001 is the same as its current test as unsupported by and contrary to the evidence cited, which indicates that the current test is different.[183] Lifetime disputes that the Gardner Impact Test has no other uses as unsupported by the evidence cited and contrary to other evidence Russell does not cite.[184]

**Russell's Fact No. 281:** There is no relationship between the results of the Gardner Impact Test and the performance of a basketball backboard system. (Exh. 7 at 55:6-9)

**Response to No. 281:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. Lifetime disputes this putative "fact" as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which indicates that the

---

[182] Appx. Ex. 55, Test Order 2027; cf. Appx. Ex. 71, Test Order 2365.

[183] Appx. Ex. 6, Bosgieter depo. at 28:20–29:11, 51:10–19.

[184] Appx. Ex. 55, Test Order 2027; cf. Appx. Ex. 71, Test Order 2365.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

results of the Gardner Impact Test are influenced by factors that also affect the performance of a basketball backboard assembly, including the backboard material and the adhesive.[185]

**Russell's Fact No. 282:** There is nothing on the face of Test Order 2027 that indicates failure of an adhesive in any of the tested backboards in any way. (Exh. 56)

**Response to No. 282:** Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates all four tested basketball backboard assemblies, including two that were constructed using "Devcon Composite Weld" adhesive, experienced acrylic failure.[186]

**Russell's Fact No. 283:** Gilmore drafted Paragraphs 11 and 13 of the First Stevens Reexam Declaration with Test Order 2027 in hand. (Exh. 39 at 110:15-19 & 111:14-18)

**Response to No. 283:** For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was written by Gilmore and Harrick, with Test Order 2027 in hand, and signed by Stevens on February 1, 2013. Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[187]

**Russell's Fact No. 284:** Gilmore agreed in his deposition that there is no discussion about temperature testing or "warping and deformation" of the backboard in Test Order 2027. (Exh. 39 at 126:16-127:13).

**Response to No. 284:** Lifetime disputes the relevance of Gilmore's state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its

---

[185] Appx. Ex. 6, Bosgieter depo. at 55:2–5, 56:14–57:8.

[186] Appx. Ex. 55, Test Order 2027.

[187] Appx. Ex. 11, Gilmore depo. at 109:10–18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Motion. For purposes of this Motion only, Lifetime does not dispute that Gilmore agreed in deposition that he did not see the words "warping" and "deformation" in Test Order 2027. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[188]

**Russell's Fact No. 285:** Gilmore agreed in his deposition that there is no discussion about temperature testing or "warping and deformation" of the backboard in Test Order 2027. (Exh. 39 at 126:16-127:13).

**Response to No. 285:** Russell's Fact No. 285 is identical to Russell's Fact No. 284. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 284. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Gilmore agreed in deposition that he did not see the words "warping" and "deformation" in Test Order 2027. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[189]

**Russell's Fact No. 286:** In his deposition, Gilmore agreed that the statements in Paragraph 11 of the First Stevens Reexam Declaration regarding Test Order 2027 and failed temperature testing does not accurately reflect the information in Test Order 2027. (Exh. 39 at 127:14-24)

**Response to No. 286:** Lifetime disputes the relevance of Gilmore's state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Lifetime disputes that Gilmore agreed that the statement in paragraph 11 of the first Stevens declaration is not correct as unsupported by and contrary to the evidence cited, which

---

[188] Appx. Ex. 11, Gilmore depo. at 127:8–9.

[189] Appx. Ex. 11, Gilmore depo. at 127:8–9.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

reveals that Gilmore was asked about a misleading paraphrase of paragraph 11 rather than paragraph 11 itself.[190]

**Russell's Fact No. 287:** Paragraph 3 of the Notice of Correction states, in part: "References to test order no. 2027 in paragraph nos. 11 and 13 of the [First Stevens Reexam Declaration] should have been to test order no. 2010." (Exh. 43)

**Response to No. 287:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 288:** Lifetime Test Order 2010 was completed in November 1997 and documents ball impact testing of a single backboard prototype "made with Devcon Composite Weld adhesive" after some type of temperature cycling testing requested by "Coplan V." (whom Stevens understands to be Coplan Vaughan). (Exh. 44 at 10:14-25 & 12:11-19; Exhibit 57: Test Order 2010 (LIFE18384-85))

**Response to No. 288:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

---

[190] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 11 ("The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.") *with* Appx. Ex. 11, Gilmore depo. at 127:14–29 ("Q. Looking back at paragraph 11, the statement that the adhesive described in Test Order 2027 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about 106 degrees Fahrenheit does not accurately reflect the information in Test Order 2027, does it? A. Based upon me looking at it right now, I would agree. But I don't know.").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 289:** Test Order 2010 shows that the adhesive in the tested backboard sample passed the ball impact test with no failures. (Exh. 57)

**Response to No. 289:** For the purposes of this Motion only, Lifetime does not dispute the tested basketball backboard assembly passed Lifetime's ball impact test with no failures. Lifetime disputes that Test Order 2010 shows the adhesive passed as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which indicates there are too many variables involved to make a determination based on any one test if an adhesive was suitable.[191]

**Russell's Fact No. 290:** The "Test Results" for the tested sample in Test Order 2010 backboard states "NO SEPARATION OR ACRYLIC BREAKAGE" in the "RESULT" column. (Exh. 57)

**Response to No. 290:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute that the document reads as indicated.

**Russell's Fact No. 291:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims. In his deposition taken in the litigation, Stevens testified that there is nothing in Test Order 2010 that indicates that the testing of the backboards was conducted at a temperature greater at or greater than 100 degrees, and there is nothing in Test Order 2010 about the tested backboards cracking. (Exh. 44 at 14:12-22 & 22:17-23:10)

**Response to No. 291:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For

---

[191] Appx. Ex. 5, Stevens depo. at 250:20–251:2.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 292:** Stevens also acknowledges in his deposition Test Order 2010 actually says on its face "no separation or acrylic breakage." (Exh. 44 at 14:20-15:1)

**Response to No. 292:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 293:** Stevens did not come up with the idea that the reference to Test Order 2027 should have been to Test Order 2010. As part of preparing the Notice of Correction, Lifetime litigation counsel Kirk Harris suggested to Stevens that the reference to Test Order 2027 in the FSRD should have been to 2010. (Exh. 44 at 47:20-48:2)

**Response to No. 293:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates Stevens does not recall who first realized or suggested that the reference to Test Order 2027 should have been to Test Order 2010.[192] Lifetime specifically disputes that Harris suggested to Stevens that the reference to Test Order 2027 in the first Stevens declaration should have been to Test Order 2010.

---

[192] Appx. Ex. 16, Stevens depo. vol. II at 47:20–48:2.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 294:** Test Order 2010 was provided to Stevens by Harris as a part of their discussion about the Notice of Correction. (Exh. 40 at 103:6-104:13; Exh. 44 at 48:3-14)

**Response to No. 294:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited and other evidence Russell does not cite, which indicates Stevens was provided a copy of Test Orders 2010 before he signed the first Stevens declaration.[193]

Russell's Element b).B.1.b.[iv]: Test Orders 2335 and 2365

Russell's Element b).B.1.b.[iv] "Test Orders 2335 and 2365" alleges statements made in the Notice of Corrections regarding Test Orders 2335 and 2365 are false. Lifetime disputes that Russell has carried its burden to show that any statements made in the Notice of Corrections are false as required by its element b).B.1.b.[iv] "Test Orders 2335 and 2365," and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 295:** Paragraph 3 of the Notice of Correction states, in part: "Reference to test order nos. 2335 and 2365 in paragraph no. 19 of the Declaration was inadvertent and should be stricken."

**Response to No. 295:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 296:** Paragraph 19 of the First Stevens Reexam Declaration provides:

During my extensive testing of adhesives, I learned that elastomeric adhesives provided other desirable properties. For example, I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the

---

[193] Appx. Ex. 16, Stevens depo. vol. II at 24:1–25:25.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. See APPENDIX A, Test Order nos. 2155, 2335 and 2365.

(Exh. 4 at ¶ 19)

**Response to No. 296:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 297:** Neither Test Order 2335 nor 2365 were included in Appendix A of the First Stevens Reexam Declaration as it was filed in the Reexams and prosecutions of the '034 and '463 Patents. (Exh. 4 at App. A; Exh. 39 at 101:23-102:12 & 103:2-7)

**Response to No. 297:** Russell's Fact No. 297 is substantively duplicative of Russell's Fact No. 132. For the convenience of the Court, Lifetime restates the relevant portion of its response to Russell's Fact No. 132. For purposes of this Motion only, Lifetime does not dispute that copies of Test Orders 2335 and 2365 were provided to the PTO through Exhibit B to the '550 Third Party Comments and not Appendix A of the first Stevens declaration.[194]

**Russell's Fact No. 298:** Lifetime Test Order nos. 2335 and 2365 both involve ball impact testing of basketball backboard assemblies constructed by Stevens using an adhesive. (Exhs. 14 & 19)

**Response to No. 298:** Russell's Fact No. 298 is substantively duplicative of Russell's Fact Nos. 52 and 245. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 52 and 245. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[194] *See* Appx. Ex. 28, '550 Third Party Comments Exhibit; Appx. Ex. 38, '111 IDS (Sept. 18, 2013); Appx. Ex. 40, '935 IDS (Sept. 18, 2013); Appx. Ex. 42, '463 IDS (Sept. 18, 2013); Appx. Ex. 43, '034 IDS (Sept. 18, 2013).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 299:** Both of Test Order nos. 2335 and 2365 show failure of the tested adhesive in the ball impct [sic.] test. In Test Order 2335, all three tested backboards experienced adhesive failure due to adhesive separation from the acrylic. (Exh. 14) In Test Order 2365, four of seven tested backboards had adhesive failure due to separation of the adhesive from the acrylic, and the acrylic shattered in one of the three other tested backboards. (Exh. 19)

**Response to No. 299:** Russell's Fact No. 299 is substantively identical to Russell's Fact Nos. 58.a, 58.f and 250.a–b. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 58.a, 58.b and 250.a–b. For purposes of this Motion only, Lifetime does not dispute that Test Order 2335 reports that three tested basketball backboard assemblies experienced testing failure due to adhesive separation. Lifetime disputes that Test Order 2335 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[195]  For purposes of this Motion only, Lifetime does not dispute that Test Order 2365 reports that four of seven tested basketball backboard assemblies experienced separation of the adhesive from the acrylic, and the acrylic shattered during Gardner Impact Testing in one of the three other tested backboards. Lifetime disputes that Test Order 2365 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[196]

---

[195] *See* Appx. Ex. 66, Test Order 2335; see also Appx. Ex. 29, '550 Third Party Comments at 17.

[196] *See* Appx. Ex. 71, Test Order 2365; see also Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 300:** The basketball backboard assemblies tested in Test Order nos. 2335 and 2365 were all constructed using General Electric D1-SEA 210 adhesive. (Exh. 2 at 65:1-69:10).

**Response to No. 300:** Russell's Fact No. 300 is substantively duplicative of Russell's Fact Nos. 56–57 and 251. For the convenience of the Court, Lifetime restates its responses to Russell's Fact Nos. 56–57, 251. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 301:** The General Electric D1-SEA 210 adhesive is an elastomeric adhesive. (Exh. 2 at 282:20-283:3 & 284:2-4)

**Response to No. 301:** Russell's Fact No. 301 is substantively duplicative of Russell's Fact No. 56. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 56. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 302:** Stevens acknowledges in his deposition testimony in this litigation that his statement in Paragraph 19, that his tested elastomeric adhesive prevented the backboard from shattering and cracking, is not a correct statement for Test Order 2365. (Exh. 44 at 33:14-18)

**Response to No. 302:** Russell's Fact No. 302 is substantively identical to Russell's Fact No. 252. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 252. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Lifetime disputes that Stevens agreed that the statement in paragraph 19 of his first declaration is not correct as

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

unsupported by and contrary to the evidence cited, which reveals that Stevens was asked about a misleading paraphrase of paragraph 19 rather than paragraph 19 itself.[197]

Russell's Element b).B.2: The Materiality of the Affirmative Misrepresentations

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Russell's Element b).B.2 asserts that the allegedly false statements made in various declarations are but-for material. Lifetime disputes that Russell has carried its burden to show but-for materiality as required by its element b).B.2, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 303:** Russell adopts and restates the facts set forth above at Paragraphs 182-302 as its statement of undisputed facts in support of the materiality requirement of inequitable conduct for the misrepresentations of fact made to the USPTO.

**Response to No. 303:** Lifetime adopts and restates its responses to Russell's Fact Nos. 182–302.

**Russell's Fact No. 304:** When he signed the Notice of Correction, Stevens understood that it was going to be filed with the USPTO. (Exh. 44 at 19:24-20:3)

**Response to No. 304:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[197] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 19 ("For example, I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboards from shattering or cracking. See APPENDIX A, Test order nos. 2155, 2335, and 2365.") *with* Appx. Ex. 16, Stevens depo. vol. II at 33:3–18 ("Q. Okay. So this statement in Paragraph 19 that the testing showed that the glue prevented the backboard from shattering and cracking, at least in test order 2365, is not correct? A. Yes.").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 305:** Stevens understood that the purpose of filing the Notice of Correction was to correct "clerical errors" from his First Stevens Reexam Declaration. (Exh. 44 at 20:8-11; 21:9-18)

**Response to No. 305:** For purposes of this Motion only, and to the extent it is an accurate quotation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 306:** Other than the Notice of Correction, no one associated with Lifetime has filed any document with the USPTO that has attempted to correct or cure any incorrect or false statements contained in any of Stevens declaration testimony that has been filed with the USPTO in association with the prosecution and reexamination of the Lifetime Patents. (Exh. 60 at ¶ VI.E.38 (pg. 92))

**Response to No. 306:** Lifetime disputes this putative "fact" under FRCP 56(c)(2) because the exclusion of the expert on whose declaration it is based (see evidentiary objection below) will leave it without the evidentiary support required by FRCP 56(c)(1)(A). Lifetime's position is that there have been no intentional misrepresentations made or inequitable conduct committed, and thus there is nothing to cure—not that such conduct has been cured. Thus Lifetime disputes that the Notice of Corrections was submitted to effect cure under *Rohm & Haas*,[198] and that there are any incorrect or false statements in the Stevens declarations that require cure under *Rohm & Haas* or the filing with the PTO of any document that was not filed.

**Russell's Fact No. 307:** Stevens acknowledged in his deposition that there is no adhesive failure reflected in Test Order 1967, and he also acknowledges that he didn't inform the USPTO

---

[198] I.e., *Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556 (Fed. Cir. 1983).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

in the Notice of Correction that the adhesive tested in Test Order 1967 didn't fail. (Exh. 44 at 28:3-22, 30:2-9)

**Response to No. 307:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Lifetime's position is that there have been no intentional misrepresentations made or inequitable conduct committed, and thus there is nothing to cure—not that such conduct has been cured. Thus Lifetime disputes that the Notice of Corrections was submitted to effect cure under *Rohm & Haas*, and that there are any incorrect or false statements in the Stevens declarations that require cure under *Rohm & Haas* or the filing with the PTO of any document that was not filed. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute that Stevens acknowledged in his deposition that there is no adhesive failure reflected in Test Order 1967. Lifetime disputes that Stevens did not inform the PTO that there was no failure reflected in Test Order 1967 as contrary to other evidence Russell does not cite.[199]

**Russell's Fact No. 308:** Stevens acknowledges in his deposition that he has never informed the USPTO that there were no adhesive failures in the backboards tested in Test Order 1967. (Exh. 44 at 30:10-13)

**Response to No. 308:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that he never informed the PTO that there were no adhesive failures in the backboards tested in

---

[199] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Test Order 1967. Lifetime disputes that Stevens did not inform the PTO that there was no failure reflected in Test Order 1967 as contrary to other evidence Russell does not cite.[200]

**Russell's Fact No. 309:** Stevens doesn't know why, when he was correcting errors with the USPTO in the Notice of Correction, he didn't tell the USPTO there were no adhesive failures reflected in Test Order 1967. (Exh. 44 at 28:19-29:3)

**Response to No. 309:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in his deposition that he did not know why he did not tell the PTO there were no adhesive failures reflected in Test Order 1967. Lifetime disputes that Stevens did not inform the PTO that there was no failure reflected in Test Order 1967 as contrary to other evidence Russell does not cite.[201]

**Russell's Fact No. 310:** Stevens has never informed USPTO that none of the backboards tested in Test Order 1967 warped or cracked. (Exh. 44 at 40:25-41:5)

**Response to No. 310:** Lifetime disputes this putative "fact" as contrary to other evidence Russell does not cite, which indicates Stevens described the results of Test Order 1967 as "no failures."[202]

**Russell's Fact No. 311:** Stevens acknowledged in his deposition that he has never informed the USPTO that there was no cracking of the acrylic in in [sic.] Test Order 2010. (Exh. 44 at 30:14-17)

---

[200] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

[201] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

[202] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 311:** For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in deposition that he has never informed the PTO that there was no cracking of the acrylic in Test Order 2010. Lifetime disputes that Stevens never informed the PTO that there was no cracking of the acrylic in Test Order 2010 as contrary to other evidence not cited by Russell, which indicates Test Order 2010 was disclosed with the Notice of Corrections.[203]

**Russell's Fact No. 312:** Stevens acknowledged in his deposition that he has never informed the USPTO that his Test Order 2365 showed shattering and cracking of a tested backboard using an elastomeric adhesive. (Exh. 44 at 34:22-35:3)

**Response to No. 312:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 313:** Stevens acknowledged in his deposition that he has never informed the USPTO that the adhesives tested in Test Order 2053 did properly adhere to the backboard and the frame. (Exh. 44 at 43:15-19)

**Response to No. 313:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute Stevens acknowledged in deposition that he has never informed the PTO that the adhesives tested in Test Order 2053 did properly adhere

---

[203] Appx. Ex. 19, Corrections Notice.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

to the backboard and the frame. Lifetime disputes that Stevens never informed the PTO that the adhesives tested in Test Order 2053 did properly adhere to the backboard and the frame as contrary to other evidence Russell does not cite, which indicates Test Order 2053 was disclosed with the first Stevens declaration.[204]

**Russell's Fact No. 314:** Stevens acknowledged in his deposition that he has never informed the USPTO, in the Notice of Correction or otherwise, that the "Devcon Composite Weld" adhesive tested in Test Order 2053, as requested by "Coplan V." in January 1998, didn't fail. (Exh. 44 at 43:15-19)

**Response to No. 314:** Russell's Fact No. 314 is substantively identical to Russell's Fact No. 275. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 275. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in his deposition that he has never told the PTO that the "Devcon Composite Weld" adhesive tested in Test Order 2053 as requested by "Coplan V." in January 1998 didn't fail. Lifetime disputes that the "Devcon Composite Weld" adhesive tested in Test Order 2053 as requested by "Coplan V." in January 1998 didn't fail as contrary to other evidence Russell does not cite.[205]

Russell's Element b).B.3: The Intent to Deceive the USPTO with Affirmative Misrepresentations

Lifetime has previously responded to Russell's asserted legal elements of inequitable conduct. Russell's Element b).B.3 asserts Stevens acted with specific intent to mislead the PTO. Lifetime disputes that Russell has carried its burden to show such intent is the single most

---

[204] Appx. Ex. 17, 1st Stevens decl. Appx. A.

[205] *See* Appx. Ex. 16, Stevens depo. vol. II at 42:4, 23–24; Appx. Ex. 17, 1st Stevens decl. ¶11; Appx. Ex. 56, Test Order 2053; and Appx. Ex. 10, Vaughan depo. at 51:8–9.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

reasonable inference as required under its element b).B.3, and more particularly responds to Russell's putative "facts" asserted in support of the element as follows:

**Russell's Fact No. 315:** The First Stevens Reexam Declaration was written by Gilmore, along with another attorney in his law firm, Tracy Harrick. (Exh. 39 at 110:6-10; Exh. 40 at 60:3-19).

**Response to No. 315:** Russell's Fact No. 315 is identical to Russell's Fact No. 154. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 154. For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was written by Gilmore and Harrick, and signed by Stevens on February 1, 2013. Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[206]

**Russell's Fact No. 316:** Appendix A of the FSRD contains 14 Lifetime Test Orders—Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919, 1919B, 1967, 2008, 2027, 2053, 2054, 2079, 2084. (Exh.4 at App. A)

**Response to No. 316:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 317:** Stevens was not the source of the test orders that are in Appendix A to the declaration. (Exh. 39 at 81:18-82:1)

**Response to No. 317:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Because what Russell means by "source" is unclear, this contention is too

---

[206] Appx. Ex. 11, Gilmore depo. at 109:10–18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

vague to permit Lifetime to frame a complete response. Subject to that qualification, for purposes of this Motion only, Lifetime does not dispute that Stevens was not the person from whom Gilmore first obtained copies of the test orders that are in Appendix A to the first Stevens declaration.

**Russell's Fact No. 318:** At the time Gilmore had the conversations with Stevens about the first Stevens reexam declaration, Stevens didn't have any records of his testing of adhesives at Lifetime. (Exh. 39 at 84:17-85:2)

**Response to No. 318:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes that at no time throughout the period during which the first Stevens declaration was being prepared, did Stevens have access to or possession of records of his testing of adhesives at Lifetime as contrary to other evidence Russell does not cite, which shows that Stevens consulted such records in connection with the preparation of his declaration.[207]

**Russell's Fact No. 319:** At time of preparation of First Stevens Reexam Declaration, Stevens didn't have in his possession any documents related to the invention. (Exh. 40 at 118-19)

**Response to No. 319:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes that at no time throughout the period during which the first Stevens declaration was being prepared, did Stevens have access to or possession of records

---

[207] Appx. Ex. 11, Gilmore depo. at 115:25–117:3.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

of his testing of adhesives at Lifetime as contrary to other evidence Russell does not cite, which shows that Stevens consulted such records in connection with the preparation of his declaration.[208]

**Russell's Fact No. 320:** All of the records that are in Appendix A to the First Stevens Reexam Declaration came from Lifetime. (Exh. 39 at 85:3-5)

**Response to No. 320:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 321:** Someone at Lifetime provided the test orders to Gilmore that are in Appendix A to the First Stevens Reexam Declaration. (Exh. 39 at 81:18-82:6)

**Response to No. 321:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 322:** Lifetime gave Gilmore all documents at the time the First Stevens Reexam Declaration was prepared that Lifetime was aware of at that time that were of involved in developing Stevens' invention. (Exh. 39 at 86:2-88:1)

**Response to No. 322:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

---

[208] Appx. Ex. 11, Gilmore depo. at 115:25–117:3.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by the evidence cited, because it relies on Gilmore's testimony to establish Lifetime's awareness.[209]

**Russell's Fact No. 323:** The Test Orders in Appendix A of the First Stevens Reexam Declaration were all of the test orders of which Gilmore was aware when Gilmore drafted the First Stevens Reexam Declaration and when Stevens signed the declaration on February 1, 2013. (Exh. 39 at 85:19-23, 144:1-13)

**Response to No. 323:** Lifetime disputes this putative "fact" as contrary to other evidence Russell does not cite, which indicates Gilmore and Stevens were both aware of Test Orders 1541, 1880, 1896, 1897, 1907, 1913, 2155, 2335, and 2365 , but such test orders were not included in Appendix A.[210]

**Russell's Fact No. 324:** Gilmore and Harrick prepared the First Stevens Reexam Declaration with the referenced test orders in hand. (Exh. 39 at 110:6-14).

**Response to No. 324:** For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was written by Gilmore and Harrick, with unspecified test orders in hand, and signed by Stevens on February 1, 2013. Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[211]

**Russell's Fact No. 325:** Gilmore drafted Paragraphs 11 and 13 of the First Stevens Reexam Declaration with Test Order 1967 in hand. (Exh. 39 at 110:15-19, 111:14-18)

---

[209] Appx. Ex. 11, Gilmore depo. 86:2–88:1.

[210] Appx. Ex. 17, 1st Stevens decl. ¶19; Appx. Ex. 19, Corrections Notice ¶ 3.

[211] Appx. Ex. 11, Gilmore depo. at 109:10–18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 325:** For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was co-written by Gilmore, with unspecified test orders in hand, and presented to Stevens. Lifetime disputes that Gilmore had Test Order 1967 in hand as unsupported by the evidence cited, which indicates only that Gilmore had unspecified test orders in hand.[212]  Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[213]

**Russell's Fact No. 326:** Test Order 1966 is not in Appendix A for the First Stevens Reexam Declaration. (Exh. 2 at 133:5-16; Exh. 4; Exh. 39 at 144:14-17)

**Response to No. 326:** For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 327:** Gilmore doesn't know if he ever reviewed Test Order 1966 with Larry Stevens as a part of preparing the First Stevens Reexam Declaration. (Exh. 39 at 144:14-20)

**Response to No. 327:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 328:** While Stevens is sure he had Test Order 1967 when he signed the First Stevens Reexam Declaration, he's not sure he had Test Order 1966 at the time when he signed the First Stevens Reexam Declaration. (Exh. 44 at 21:3-8)

---

[212] Appx. Ex. 11, Gilmore depo. at 110:15–19, 111:14–18.

[213] Appx. Ex. 11, Gilmore depo. at 109:10–18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 328:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 329:** Lifetime attempted to determine if Test Order 1966 was provided to Gilmore or to Stevens in connection with the preparation of the First Stevens Reexam Declaration, but it was unable to do so. (Exh. 40 at 40:8-41:10 & 46:20-47:11)

**Response to No. 329:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 330:** Stevens did not perform or request the testing performed in Test Order 1966. (Exh. 44 at 6:25–7:14)

**Response to No. 330:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 331:** Stevens acknowledged in his deposition that he doesn't know anything about the testing or the results of the testing in Test Order 1966 other than what is reflected on the face of the document. (Exh. 44 at 12:6-10)

**Response to No. 331:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision

by Russell's Motion. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 332:** Other than lawyers in the case, Stevens hasn't discussed Test Order 1966 with anyone else. (Exh. 44 at 11:2-25)

**Response to No. 332:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 333:** Stevens did not come up with the idea stated in the Notice of Correction that the reference to Test Order 1967 in the First Stevens Reexam Declaration should have been to Test Order 1966 – as part of preparing the Notice of Correction, Lifetime litigation counsel Kirk Harris suggested to Stevens that the reference to Test Order 1967 in the First Stevens Reexam Declaration should have been to 1966. (Exh. 44 at 46:10-20)

**Response to No. 333:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates Stevens does not recall who first realized or suggested that the reference to Test Order 1967 should have been to Test Order 1966.[214] Lifetime specifically

---

[214] Appx. Ex. 16, Stevens depo. vol. II at 46:10–14.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

disputes that Harris suggested to Stevens that the reference to Test Order 1967 in the first Stevens declaration should have been to Test Order 1966.

**Russell's Fact No. 334:** Test Order 1966 was provided to Stevens by Harris as a part of their discussion about the Notice of Correction. (Exh. 40 at 103:6-104:13; Exh. 44 at 46:21-47:8)

**Response to No. 334:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute Test Order 1966 was provided to Stevens in connection with a discussion about the Notice of Corrections. Lifetime disputes that Stevens was not provided a copy of Test Order 1966 prior to discussions about the Notice of Corrections as unsupported by the evidence cited.[215]

**Russell's Fact No. 335:** Stevens agreed in his deposition that Paragraph 13 of the First Stevens Reexam Declaration does not describe the testing that went on in Test Order 1966 or the results of that testing. (Exh. 44 at 19:10-17)

**Response to No. 335:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Lifetime disputes this putative "fact" as unsupported by the evidence cited, which indicates that Stevens was asked about a sentence, not paragraph 13.[216]

**Russell's Fact No. 336:** Gilmore, who drafted Paragraphs 11 and 13 of the FSRD with Test Order 1967 in hand (Exh. 39 at 110:15-19, 111:14-18), agreed in his deposition that there is

---

[215] Appx. Ex. 8, Schade depo. at 103:6–104:13; Appx. Ex. 16, Stevens depo. vol. II at 46:21–25.

[216] Appx. Ex. 16, Stevens depo. vol. II at 19:10–17.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

no discussion [of] "warping and deformation" of the backboard at temperatures greater than 106 degrees in Test Order 1966. (Exh. 39 at 146:1-18; 148:15-24)

**Response to No. 336:** Lifetime disputes the relevance of Gilmore's state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Gilmore agreed in deposition that warping and deformation of the backboard at temperatures greater than 106 degrees are not discussed in Test Order 1966, and that the *initial draft* of the first Stevens declaration was co-written by Gilmore, with unspecified test orders in hand, and presented to Stevens. Lifetime disputes that Gilmore had Test Order 1967 in hand as unsupported by the evidence cited, which indicates only that Gilmore had unspecified test orders in hand.[217] Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[218]

**Russell's Fact No. 337:** Stevens can't explain why he says in Notice of Correction that the reference to Test Order 1967 should be a reference to Test Order 1966. (Exh. 44 at 17:1-10)

**Response to No. 337:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens did not explain during deposition why the reference to Test Order 1967 should have been to Test Order 1966. Lifetime disputes that Stevens can't explain why the reference to Test Order 1967 should have been to Test Order 1966 as unsupported by the evidence cited.[219]

---

[217] Appx. Ex. 11, Gilmore depo. at 110:15–19, 111:14–18.

[218] Appx. Ex. 11, Gilmore depo. at 109:10–18.

[219] Appx. Ex. 16, Stevens depo. vol. II at 17:1–10.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 338:** Stevens can't explain why he signed Notice of Correction in July 2014 that says the reference to Test Order 1967 in Paragraph 11 of First Stevens Reexam Declaration should be to Test Order 1966. (Exh. 44 at 17:11-15)

**Response to No. 338:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens did not explain in deposition why he signed the Notice of Corrections. Lifetime disputes that Stevens cannot explain why he signed the Notice of Corrections as unsupported by the evidence cited.[220]

**Russell's Fact No. 339:** Stevens can't explain why he signed Notice of Correction in July 2014 that says the reference to Test Order 1967 in Paragraph 13 of First Stevens Reexam Declaration should be to Test Order 1966. (Exh. 44 at 19:18-23)

**Response to No. 339:** For purposes of this Motion only, Lifetime does not dispute that Stevens did not explain in deposition why he signed the Notice of Corrections. Lifetime disputes that Stevens cannot explain why he signed the Notice of Corrections as unsupported by the evidence cited.[221]

**Russell's Fact No. 340:** Stevens acknowledged in his deposition that there is no adhesive failure reflected in Test Order 1967, and he also acknowledges that he didn't inform the USPTO in the Notice of Correction that the adhesive tested in Test Order 1967 didn't fail. (Exh. 44 at 28:3-22, 30:2-9)

---

[220] Appx. Ex. 16, Stevens depo. vol. II at 17:11–15.

[221] Appx. Ex. 16, Stevens depo. vol. II at 17:11–15.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 340:** Russell's Fact No. 340 is identical to Russell's Fact No. 307. For the

convenience of the Court, Lifetime restates its response to Russell's Fact No. 307. Lifetime

disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of

the issues presented by Russell's pleadings or its Motion. Lifetime's position is that there have

been no intentional misrepresentations made or inequitable conduct committed, and thus there is

nothing to cure—not that such conduct has been cured. Thus Lifetime disputes that the Notice of

Corrections was submitted to effect cure under *Rohm & Haas*, and that there are any incorrect or

false statements in the Stevens declarations that require cure under *Rohm & Haas* or the filing

with the PTO of any document that was not filed. For purposes of this Motion only, and to the

extent it is an accurate recitation, Lifetime does not dispute that Stevens acknowledged in his

deposition that there is no adhesive failure reflected in Test Order 1967. Lifetime disputes that

Stevens did not inform the PTO that there was no failure reflected in Test Order 1967 as contrary

to other evidence Russell does not cite.[222]

**Russell's Fact No. 341:** Stevens acknowledges in his deposition that he has never

informed the USPTO that there were no adhesive failures in the backboards tested in Test Order

1967. (Exh. 44 at 30:10-13)

**Response to No. 341:** Russell's Fact No. 341 is identical to Russell's Fact No. 308. For the

convenience of the Court, Lifetime restates its response to Russell's Fact No. 308. Lifetime

disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of

the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only,

---

[222] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Lifetime does not dispute that Stevens acknowledged in deposition that he never informed the PTO that there were no adhesive failures in the backboards tested in Test Order 1967. Lifetime disputes that Stevens did not inform the PTO that there was no failure reflected in Test Order 1967 as contrary to other evidence Russell does not cite.[223]

**Russell's Fact No. 342:** Stevens doesn't know why, when he was correcting errors with the USPTO in the Notice of Correction, he didn't tell the USPTO there were no adhesive failures reflected in Test Order 1967. (Exh. 44 at 28:19-29:3)

**Response to No. 342:** Russell's Fact No. 342 is identical to Russell's Fact No. 309. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 309. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens acknowledged in his deposition that he did not know why he did not tell the PTO there were no adhesive failures reflected in Test Order 1967. Lifetime disputes that Stevens did not inform the PTO that there was no failure reflected in Test Order 1967 as contrary to other evidence Russell does not cite.[224]

**Russell's Fact No. 343:** Stevens has never informed USPTO that none of the backboards tested in Test Order 1967 warped or cracked. (Exh. 44 at 40:25-41:5)

**Response to No. 343:** Russell's Fact No. 343 is identical to Russell's Fact No. 310. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 310. Lifetime

---

[223] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

[224] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

disputes this putative "fact" as contrary to other evidence Russell does not cite, which indicates Stevens described the results of Test Order 1967 as "no failures."[225]

**Russell's Fact No. 344:** Gilmore drafted Paragraphs 11 and 13 of the First Stevens Reexam Declaration with Test Order 2027 in hand. (Exh. 39 at 110:15-19 & 111:14-18)

**Response to No. 344:** Russell's Fact No. 344 is identical to Russell's Fact No. 283. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 283. For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was written by Gilmore and Harrick, with Test Order 2027 in hand, and signed by Stevens on February 1, 2013. Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[226]

**Russell's Fact No. 345:** Gilmore agreed in his deposition that there is no discussion about temperature testing or "warping and deformation" of the backboard in Test Order 2027. (Exh. 39 at 126:16-127:13).

**Response to No. 345:** Russell's Fact No. 345 is identical to Russell's Fact No. 284–285. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 284–285. Lifetime disputes the relevance of Gilmore's state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Gilmore agreed in deposition that he did not see the words

---

[225] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

[226] Appx. Ex. 11, Gilmore depo. at 109:10–18.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

"warping" and "deformation" in Test Order 2027. Lifetime otherwise disputes this putative "fact" as unsupported by the evidence cited.[227]

**Russell's Fact No. 346:** In his deposition, Gilmore agreed that the statements in Paragraph 11 of the First Stevens Reexam Declaration regarding Test Order 2027 and failed temperature testing does not accurately reflect the information in Test Order 2027. (Exh. 39 at 127:14-24)

**Response to No. 346:** Russell's Fact No. 346 is identical to Russell's Fact No. 286. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 286. Lifetime disputes the relevance of Gilmore's state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Lifetime disputes that Gilmore agreed that the statement in paragraph 11 of the first Stevens declaration is not correct as unsupported by and contrary to the evidence cited, which reveals that Gilmore was asked about a misleading paraphrase of paragraph 11 rather than paragraph 11 itself.[228]

**Russell's Fact No. 347:** Stevens did not perform or request the testing performed in Test Order 2010. (Exh. 44 at 13:9-15)

---

[227] Appx. Ex. 11, Gilmore depo. at 127:8–9.

[228] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 11 ("The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F. The adhesive described in Test Order no. 2079 failed to cure properly.") *with* Appx. Ex. 11, Gilmore depo. at 127:14–29 ("Q. Looking back at paragraph 11, the statement that the adhesive described in Test Order 2027 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about 106 degrees Fahrenheit does not accurately reflect the information in Test Order 2027, does it? A. Based upon me looking at it right now, I would agree. But I don't know.").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 347:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 348:** Other than lawyers in the case, Stevens hasn't discussed Test Order 2010 with anyone else. (Exh. 44 at 12:20-13:8)

**Response to No. 348:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 349:** Stevens acknowledged in his deposition that he doesn't know anything about the testing or the results of the testing in Test Order 2010 other than what is reflected on the face of the document. (Exh. 44 at 14:6-11)

**Response to No. 349:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 350:** Stevens agreed in his deposition that, if he had Test Order 2010 in hand when he signed the First Stevens Reexam Declaration, he wouldn't have said that the backboards tested in Test Order 2010 cracked during thermal testing. (Exh. 44 at 24:15-25:22)

**Response to No. 350:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Lifetime objects to Russell's reliance on the deposition testimony cited on the ground specified in the deposition transcript, viz., the question that elicited the testimony mischaracterized Stevens' declaration; if that objection is sustained then this "fact" will not be supported as required by FRCP 56(c)(1)(A). Subject to that objection, for purposes of this Motion only, Lifetime does not dispute that Stevens agreed in his deposition that he would not have said the basketball backboard assemblies described in Test Order 2010 cracked during thermal testing if he had Test Order 2010 in hand. Lifetime disputes both that (1) Stevens agreed in deposition that he would not have made that statement if he had Test Order 2010 in hand while signing his first declaration and (2) he said that those assemblies cracked during thermal testing as unsupported by the evidence cited and contrary to other evidence Russell does not cite, which indicates that Stevens had Test Order 2010 in hand while signing his first declaration and that the adhesive used in the basketball backboard assemblies described in Test Order 2010 was also used in other basketball backboard assemblies that cracked during thermal testing.[229]

**Russell's Fact No. 351:** Test Order 2010 is not in Appendix A for the First Stevens Reexam Declaration. (Exh. 2 at 133:5-16; Exh. 4 at App. A; Exh. 39 at 145:4-12;)

**Response to No. 351:** For purposes of this Motion only, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 352:** Test order 2010 is not attached to the First Stevens Reexam Declaration, and Gilmore doesn't know if he ever reviewed test order 2010 with Larry Stevens as a part of that declaration. (Exh. 39 at 144:25-145:8)

---

[229] Appx. Ex. 16, Stevens depo. vol. II at 24:4–25:25; Appx. Ex. 17, 1st Stevens decl. ¶ 11.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Response to No. 352:** Lifetime disputes the relevance of Gilmore's state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, and to the extent it is an accurate recitation, Lifetime does not dispute this asserted fact.

**Russell's Fact No. 353:** While Stevens is sure he had Test Order 2027 when he signed the First Stevens Reexam Declaration, he's not sure he had Test Order 2010 at the time when he signed the First Stevens Reexam Declaration. (Exh. 44 at 24:1-8)

**Response to No. 353:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited and other evidence Russell does not cite, which indicates Stevens believes he had both Test Orders 2010 and 2027 in hand when he signed the first Stevens declaration.[230]

**Russell's Fact No. 354:** Lifetime attempted to determine if Test Order 2010 was provided to Gilmore or to Stevens in connection with preparation of the First Stevens Reexam Declaration, but it was unable to do so. (Exh. 40 at 42:10-46:19)

**Response to No. 354:** Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. For purposes of this Motion only, Lifetime does not dispute this asserted fact.

---

[230] Appx. Ex. 16, Stevens depo. vol. II at 24:1–25:25.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 355:** As part of preparing the Notice of Correction, Lifetime litigation counsel Kirk Harris suggested to Stevens that the reference to Test Order 2027 in the First Stevens Reexam Declaration should have been to 2010. (Exh. 44 at 47:20-48:2)

**Response to No. 355:** Russell's Fact No. 355 is substantively identical to Russell's Fact No. 293. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 293. Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited, which indicates Stevens does not recall who first realized or suggested that the reference to Test Order 2027 should have been to Test Order 2010.[231] Lifetime specifically disputes that Harris suggested to Stevens that the reference to Test Order 2027 in the first Stevens declaration should have been to Test Order 2010.

**Russell's Fact No. 356:** Test Order 2010 was provided to Stevens by Harris as a part of their discussion about the Notice of Correction. (Exh. 40 at 103:6-104:13; Exh. 44 at 48:3-14)

**Response to No. 356:** Russell's Fact No. 356 is identical to Russell's Fact No. 294. For the convenience of the Court, Lifetime restates its response to Russell's Fact No. 294. Lifetime disputes the relevance of this asserted "fact" to Russell's pleaded inequitable conduct claims generally and to the issues presented for the Court's decision by Russell's Motion. Lifetime disputes this putative "fact" as unsupported by and contrary to the evidence cited and other

---

[231] Appx. Ex. 16, Stevens depo. vol. II at 47:20–48:2.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

evidence Russell does not cite, which indicates Stevens was provided a copy of Test Orders 2010 before he signed the first Stevens declaration.[232]

**Russell's Fact No. 357:** Paragraph 19 of the First Stevens Reexam Declaration was prepared by Gilmore and Harrick with test orders in hand. (Exh. 39 at 114:8-13)

**Response to No. 357:** For the purposes of this Motion only, Lifetime does not dispute that the *initial draft* of the first Stevens declaration was written by Gilmore and Harrick, with unspecified test orders in hand, and signed by Stevens on February 1, 2013. Lifetime disputes that the first Stevens declaration was written without Stevens' involvement.[233]

**Russell's Fact No. 358:** In Test Order 2335, all three tested backboards experienced adhesive failure due to adhesive separation from the acrylic. (Exh. 14)

**Response to No. 358:** Russell's Fact No. 358 is substantively identical to Russell's Fact Nos. 58.a, 250.a, and 299. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 58.a, 250.a, and 299. For purposes of this Motion only, Lifetime does not dispute that Test Order 2335 reports that three tested basketball backboard assemblies experienced testing failure due to adhesive separation. Lifetime disputes that Test Order 2335 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[234]

---

[232] Appx. Ex. 16, Stevens depo. vol. II at 24:1–25:25.

[233] Appx. Ex. 11, Gilmore depo. at 109:10–18.

[234] *See* Appx. Ex. 66, Test Order 2335; see also Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**Russell's Fact No. 359:** In Test Order 2365, four of seven tested backboards had adhesive failure due to separation of the adhesive from the acrylic, and the acrylic shattered in one of the three other tested backboards. (Exh. 19)

**Response to No. 359:** Russell's Fact No. 359 is substantively identical to Russell's Fact Nos. 58.f, 250.b, and 299. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 58.f, 250.b, and 299. For purposes of this Motion only, Lifetime does not dispute that Test Order 2365 reports that four of seven tested basketball backboard assemblies experienced separation of the adhesive from the acrylic, and the acrylic shattered during Gardner Impact Testing in one of the three other tested backboards. Lifetime disputes that Test Order 2365 shows failure of the adhesive used as unsupported and contrary to the evidence cited, which indicates that the objective of the testing was to test a robotic process for applying the adhesive, not the adhesive itself.[235]

**Russell's Fact No. 360:** Stevens acknowledges in his deposition testimony in this litigation that his statement in Paragraph 19--that his tested elastomeric adhesive prevented the backboard from shattering and cracking--is not a correct statement for Test Order 2365. (Exh. 44 at 33:3-18)

**Response to No. 360:** Russell's Fact No. 360 is substantively identical to Russell's Fact Nos. 252 and 302. For the convenience of the Court, Lifetime restates its response to Russell's Fact Nos. 252 and 302 herein. Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its

---

[235] *See* Appx. Ex. 71, Test Order 2365; see also Appx. Ex. 29, '550 Third Party Comments at 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Motion. Lifetime disputes that Stevens agreed that the statement in paragraph 19 of his first declaration is not correct as unsupported by and contrary to the evidence cited, which reveals that Stevens was asked about a misleading paraphrase of paragraph 19 rather than paragraph 19 itself.[236]

**Russell's Fact No. 361:** Stevens doesn't know why he signed off on Paragraph 19 of the First Stevens Reexam Declaration in February 2013 when Test Order 2365 shows that a backboard cracked and shattered during ball impact testing. (Exh. 44 at 34:5-9).

**Response to No. 361:** Lifetime disputes the relevance of Stevens' state of mind, at the time his deposition was taken, to any of the issues presented by Russell's pleadings or its Motion. For purposes of this Motion only, Lifetime does not dispute that Stevens did not explain in deposition why he signed the Notice of Corrections. Lifetime disputes that Stevens cannot explain why he signed the Notice of Corrections as unsupported by the evidence cited.[237] Lifetime disputes that Test Order 2365 shows that a backboard cracked and shattered during ball impact testing as contrary to other evidence Russell does not cite, which indicates that the single basketball backboard assembly that cracked during testing did so during the Gardner Impact Test, not Lifetime's ball impact test.[238]

---

[236] *Compare* Appx. Ex. 17, 1st Stevens decl. ¶ 19 ("For example, I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboards from shattering or cracking. See APPENDIX A, Test order nos. 2155, 2335, and 2365.") *with* Appx. Ex. 16, Stevens depo. vol. II at 33:3–18 ("Q. Okay. So this statement in Paragraph 19 that the testing showed that the glue prevented the backboard from shattering and cracking, at least in test order 2365, is not correct? A. Yes.").

[237] Appx. Ex. 16, Stevens depo. vol. II at 17:11–15.

[238] Appx. Ex. 71, Test Order 2365.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

**C.    Objections to Russell's Evidence (DUCivR 7-1(b)(1)(B))**

Russell relies on the "Declaration of John J. Love" submitted as Exhibit 60 to its Motion as the evidence required by FRCP 56(c)(2) for 17 of its allegedly factual contentions (53, if subparts are counted); for all but two of those, the Love declaration is the *only* "evidence" cited. But the Love declaration is, necessarily,[239] almost entirely cumulative of "The Expert Report of John J. Love, Esq."; and Lifetime has moved to exclude Love and all opinions expressed by him in his report.[240] Accordingly, Lifetime objects to the Love declaration, and pursuant to FRCP 56(c)(2), objects to and disputes all facts supported in whole or in part by the Love declaration, on the grounds set forth by Lifetime in support of its motion to exclude Love.

Lifetime objects to Russell's use of the Love declaration, and objects to and disputes facts relying thereon, on the further ground that Russell relies on Love exclusively to show either (1) the content of specific documents or (2) events alleged to have occurred (or not occurred) in connection with the prosecution and reexamination of the patents-in-suit. Because neither calls for the application of any specialized knowledge, Russell's reliance on Love is improper and Lifetime's objection should be sustained, in keeping with the principle that "trial courts can"— and *should*—"screen out experts who would act as mere conduits for hearsay by strictly enforcing the requirement that experts display some genuine 'scientific, technical, or other

---

[239] If the Love declaration included material not already disclosed in the Love report then that material would be subject to exclusion under FRCP 37(c)(1).

[240] *See* "Lifetime's Motion to Exclude Russell's Inequitable Conduct Expert, John J. Love, Esq.," Docket No. 426.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue.'"[241]

## D.   Additional Material Facts (DUCivR 56-1(c)(2)(C))

Russell's Motion fails (and Lifetime's counterpart Motion should be granted) because, as set forth above and shown below, the supposed "facts" on which Russell bases its Motion are either false, disputed, or unproven by clear and convincing evidence. Below are additional facts on which Russell's Motion founders.

### 1.   Facts Negating Motive

Russell's claims are based on circumstantial evidence. To be clear and convincing, circumstantial evidence of deceptive intent should include motive. But Stevens had no motive because:

Additional Fact No. 1:   Stevens began working for Lifetime in February 1996.[242]

Additional Fact No. 2:   By August 1997, Stevens was working on the inventions of the patents in suit.[243]

Additional Fact No. 3:   On January 5, 1999, Stevens assigned to Lifetime his entire right, title, and interest in the inventions covered by the patents in suit and in the patents themselves.[244]

---

[241] *Williams v. Illinois*, 567 U.S. __, 132 S. Ct. 2221, 2241, 183 L. Ed. 2d 89 (2012).

[242] Appx. Ex. 5, Stevens depo. at 9:20–23.

[243] *See* Appx. Ex. 5, Stevens depo. at 139:2–18.

[244] Appx. Ex. 20, Assignment.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

2.   **Additional Facts Refuting Russell's Unpleaded Test-Order Concealment Claims against the '935 and '550 Patents**

Russell's Motion is in part premised on Stevens' alleged concealment of test orders during the original prosecution of the '935 and '550 patents. No such claims were pleaded—and even if they had been, Stevens could not have committed inequitable conduct in connection with the '935 and '550 patents because:

Additional Fact No. 4:   The '111 patent was applied for on January 11, 1999 and issued on July 6, 2010.[245]

Additional Fact No. 5:   Stevens stopped working for Lifetime in February 2001.[246]

Additional Fact No. 6:   The '935 patent was applied for on July 1, 2010 and issued on October 11, 2011.[247]

Additional Fact No. 7:   The '550 patent was applied for on July 1, 2010 and issued on October 18, 2011.[248]

Additional Fact No. 8:   Stevens had no contact with Lifetime's patent prosecution counsel between the filing of the '111 patent application, which preceded the filing of the '935 and '550 patent applications, and sometime in 2012, after the '935 and '550 patents issued.[249]

---

[245] Appx. Ex. 1, '111 patent.

[246] Appx. Ex. 5, Stevens depo. at 9:24–10:1.

[247] Appx. Ex. 2, '935 patent.

[248] Appx. Ex. 3, '550 patent.

[249] Appx. Ex. 5, Stevens depo. at 57:2–60:8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

3.      **Facts Negating Materiality of Allegedly Concealed Test Orders**

To prevail on its concealment claims, Russell must show there is no genuine issue of material fact as to the materiality of the allegedly concealed test orders. This Russell cannot do because (1) the Dow Corning Q3-6093 and GE D1-SEA 210 test orders do not show what Russell alleges, (2) the other orders are cumulative of information already disclosed in the specification, and (3) the enablement argument by which Russell tries to establish materiality is not only legally untenable but contradicted by facts of record. More specifically:

Additional Fact No. 9:   In testing not reflected in Test Order 2138, Dow Corning Q3-6093 passed Lifetime's ball-impact test and all other tests Stevens used to qualify adhesives as suitable for his invention.[250]

Additional Fact No. 10: Test Orders 2335, 2337, 2348, 2351, 2359 and 2365 document qualifying runs with an adhesive robot, not testing of an adhesive.[251]

Additional Fact No. 11: The specification of the patents in suit discloses that not all adhesives work in the invention.

Additional Fact No. 12: The specification of the patents in suit discloses that not all elastomeric adhesives work in the invention.

Additional Fact No. 13: The specification of the patents in suit discloses that not all silicone adhesives work in the invention.[252]

---

[250] Appx. Ex. 5, Stevens depo. at 259:15–260:19.

[251] *See* Appx. Ex. 29, '550 3rd Party Comments at 17 (italics added); Appx. Exs. 66–71, Test Orders 2335, 2337, 2348, 2351, 2359 and 2365.

[252] Appx. Ex. 1, '111 patent at 2:46–47, 55–57, 59–60; 4:62–65.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

<u>Additional Fact No. 14:</u> The examiner of the '111 patent allowed claims reciting an elastomeric adhesive.[253]

<u>Additional Fact No. 15:</u> During reexamination of the '550 patent, Russell made the nonenablement argument on which it now relies to show materiality of allegedly concealed test orders.[254]

<u>Additional Fact No. 16:</u> The reexamination examiner fully considered Russell's nonenablement argument but found it unpersuasive.[255]

### 4.   Facts Negating Materiality of Allegedly False Declarations

To prevail on its lying-declaration claims, Russell must establish either but-for materiality or that Stevens' declarations are *unmistakably* false.

### a.   Facts Negating But-for Materiality

Russell cannot establish but-for materiality because:

<u>Additional Fact No. 17:</u> Obviousness rejections were overcome in the '111, '935, and '550 patent reexaminations and in the original prosecution of the '463 and '034 patents by showing that the art relied on to reject the claims is not analogous, rather than by secondary considerations of nonobviousness set forth in the first and second Stevens declarations, as

---

[253] Appx. Ex. 1, '111 patent at 5:24; 6:37, 48.

[254] *See* Appx. Ex. 29, '550 3rd Party Comments at 8–9.

[255] *See* Appx. Ex. 31, '550 Action Closing Prosecution at 2.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

amended by Stevens' notice of corrections to the first declaration; thus those declarations and notice are not the but-for cause of allowance of any of the patents in suit.[256]

### b.    Facts Negating Per Se Materiality

Because Stevens' declarations are not but-for material, Russell must demonstrate that they are unmistakably false (and even that might not be enough to establish per se materiality). But none of the declaration statements accused by Russell is unmistakably false:

Additional Fact No. 18: In the order made by Stevens rather than the order presented in Russell's Motion, the first declaration that Russell accuses is: "I performed testing to determine if the backboards attached to the frame with the mechanical fasteners could withstand impact from a basketball."[257] This statement cannot be unmistakably false because Stevens conducted coupon testing of mechanical fasteners.[258] The coupon test measures adhesion and flexibility of the attachment mechanism,[259] which are determinants of whether a basketball backboard assembly can withstand impact from a basketball.[260]

Additional Fact No. 19: Accused statement 2 is: "I spoke with other engineers at Lifetime about fasteners and adhesives they had tried and learned that they had experimented with different methods and adhesives and had failed to obtain any favorable results."[261] This cannot be

---

[256] *See* Appx. Ex. 24, '111 Reexam Allowance at 2–4; Appx. Ex. 33, '550 RAN at 8–9; Appx. Ex. 27, '935 RAN 10–11; Appx. Ex. 36, '034 Allowance at 2–3; Appx. Ex. 35, '463 Allowance at 2–3.

[257] *See* Motion (Docket No. 406) at 20; Appx. Ex. 17, 1st Stevens decl. ¶ 8.

[258] Appx. Ex. 7, Van Nimwegen depo. at 16:25–22:3.

[259] Appx. Ex. 1, '111 patent at 4:37–38.

[260] *See* Appx. Ex. 1, '111 patent at 1:55–56, 2:4–6, 4:7–8, 5:4–5.

[261] *See* Motion (Docket No. 406) at 20; Appx. Ex. 17, 1st Stevens decl. ¶ 9.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

unmistakably false because Stevens did speak with at least two other Lifetime engineers, Coplan Vaughan and Roy Zettle, about prior failures.[262]

Additional Fact No. 20: Accused statement 3 is: "I recall Lifetime's representative from 3M telling me that I would never be able to replace the VHB® tape. Because adhesives were the representative's area of expertise, I was discouraged . . ."[263] There is no clear and convincing evidence of unmistakable falsity because Stevens testified in deposition both that he was[264] and that he was not[265] discouraged by the 3M representative.

Additional Fact No. 21: Accused statement 4 is:

The exemplary Test Orders range from October 24, 1995 to December 7, 1998, demonstrating the extensive research and testing performed at Lifetime in finding an alternative to the double-sided tape. In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967, 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to attach the acrylic backboard to the metal frame. ln each case, the adhesive failed. For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame . . .[266]

---

[262] Appx. Ex. 5, Stevens depo. at 129:5–130:8.

[263] *See* Motion (Docket No. 406) at 20; Appx. Ex. 17, 1st Stevens decl. ¶ 10.

[264] Appx. Ex. 5, Stevens depo. at 156:9–14:

    Q.  Okay.  Did you ever have any manufacturer's reps who discouraged you from using glues in your backboard project?
    A.  Yes.
    Q.  Tell me about that.
    A.  Martin Cole is a rep for 3M.

[265] Appx. Ex. 5, Stevens depo. at 158:3–5:

    Q.  It didn't -- it didn't discourage you?
    A.  No.

[266] Appx. Ex. 17, 1st Stevens decl. ¶ 11.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

This statement is not unmistakably false because as a group, the 14 orders cited do indeed "demonstrat[e] the extensive research and testing performed at Lifetime in finding an alternative to the double-sided tape,"[267] including numerous instances of adhesives "fail[ing] to properly adhere to either the backboard or the frame."[268]

Additional Fact No. 22: Accused statement 5 is:

> The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about l06°F.[269]

This statement is not unmistakably false because (1) Test Orders 1967, 2027, and 2053 all tested the same adhesive—Devcon Composite Welder;[270] (2) of the three, only Test Order 2053 reports testing "at hot temperatures";[271] and (3) Test Order 2053 reports exactly the failures Stevens described.[272] So "[t]he adhesive described" in the three orders "failed temperature testing."

Additional Fact No. 23: Accused statement 6 is:

> As shown in Test Order nos. 1967, 2027 and 2053 of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not

---

[267] *See* Appx. Ex. 44, Test Order 1506; Appx. Ex. 45, Test Order 1523; Appx. Ex. 46, Test Order 1534; Appx. Ex. 47, Test Order 1870; Appx. Ex. 48, Test Order 1872; Appx. Ex. 49, Test Order 1919A; Appx. Ex. 50, Test Order 1919B; Appx. Ex. 52, Test Order 1967; Appx. Ex. 53, Test Order 2008; Appx. Ex. 55, Test Order 2027; Appx. Ex. 56, Test Order 2053; Appx. Ex. 57, Test Order 2054; Appx. Ex. 58, Test Order 2079; Appx. Ex. 60, Test Order 2084.

[268] *See* Appx. Ex. 44, Test Order 1506; Appx. Ex. 45, Test Order 1523; Appx. Ex. 46, Test Order 1534; Appx. Ex. 48, Test Order 1872; Appx. Ex. 53, Test Order 2008; Appx. Ex. 55, Test Order 2027; Appx. Ex. 57, Test Order 2054; Appx. Ex. 60, Test Order 2084.

[269] Appx. Ex. 17, 1st Stevens decl. ¶ 11.

[270] Appx. Ex. 52, Test Order 1967 at LIFE00018374; Appx. Ex. 55, Test Order 2027 at LIFE00018386; Appx. Ex. 56, Test Order 2053 at LIFE00018390.

[271] Appx. Ex. 56, Test Order 2053 at LIFE00018390.

[272] Appx. Ex. 56, Test Order 2053 at LIFE00018391.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.[273]

This statement is not unmistakably false for reasons similar to those given in connection with accused statement 5: (1) the Devcon Composite Welder used for Test Orders 1967, 2027, and 2053 is a non-elastomeric methacrylate;[274] (2) of the three, only Test Order 2053 reports high-temperature testing;[275] and (3) Test Order 2053 reveals that the bond "did not accommodate thermal expansion."[276]

    Additional Fact No. 24: Accused statement 7 is: "I recall one of Lifetime's manufacturers in China having an issue with adhesion because the adhesive was not properly bonding to the powder-coated frame."[277] That statement cannot be unmistakably false because it was confirmed in deposition both by Stevens[278] and by Edward Van Nimwegen, testifying as Lifetime's designee.[279]

    Additional Fact No. 25: Accused statement 8 is:

I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the

---

[273] Appx. Ex. 17, 1st Stevens decl. ¶ 13.

[274] Appx. Ex. 5, Stevens depo. at 254:18–255:24.

[275] *See* Appx. Ex. 52, Test Order 1967; Appx. Ex. 55, Test Order 2027; Appx. Ex. 56, Test Order 2053.

[276] *See* Appx. Ex. 56, Test Order 2053 at LIFE00018391.

[277] Appx. Ex. 17, 1st Stevens decl. ¶ 18.

[278] Appx. Ex. 5, Stevens depo. at 317:15–19, 318:9–10.

[279] Appx. Ex. 7, Van Nimwegen depo. at 35:23–36:6 (█████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ ).

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. *See* APPENDIX A, Test Order nos. 2155, 2335 and 2365.

That statement is not unmistakably false because Test Orders 2336 and 2365 document "qualifying runs with the adhesive *robot* to perfect a *manufacturing process*"[280]—they do not report testing of the adhesive *at all*—and Test Order 2155 reflects impact testing as described.[281]

Additional Fact No. 26: Accused statement 9 is: "I worked with several adhesive vendors and was told that there were no adhesives that would bond to acrylic material and provide a suitable amount of flexibility."[282] There is no evidence contradicting this statement. Russell points out that Rick Bradford, a Dow Corning representative, suggested Dow Corning Q3-6093 to Stevens.[283] But as Stevens explained during deposition, when he was first casting about trying to find a suitable adhesive, Dow Corning representative Rick Bradford furnished several samples, none of which worked out.[284] Only later, after Stevens had already found the GE D1-

---

[280] *See* Appx. Ex. 29, '550 3rd Party Comments at 17 (italics added).

[281] Appx. Ex. 65, Test Order 2155.

[282] Appx. Ex. 18, 2d Stevens decl. ¶ 13A.

[283] Motion (Docket No. 406) at 21.

[284] Appx. Ex. 5, Stevens depo. at 161:8–162:2:

> Q. You go to Rick and say, "I need some adhesives to try. Have you got any suggestions?" Was it that kind of conversation?
> A. Precisely.
> Q. And in response to that, he gave you glue samples that you attempted to recall what they were?
> A. Correct.
> . . .
> Q. Did any of the samples Rick Bradford gave you give you satisfactory results in the coupon testing?
> A. No.
> Q. You mentioned the Dow Corning sample. Even the Dow Corning didn't satisfactorily pass the coupon testing?

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

SEA 210 adhesive, did Bradford direct Stevens to the Q3-6093 adhesive; and he did so based

solely on its similarity with the GE adhesive Stevens had already identified, not based on any

recognition or recommendation of its suitability for use in a basketball backboard assembly.[285]

### 5.    Other Facts Negating Deceptive Intent

Russell's claims fail not only because Russell cannot meet its burden to establish deceptive

intent but also because the facts affirmatively disprove deceptive intent. First, motive to commit

*any* inequitable conduct is disproven by Stevens' lack of interest in the patents, as set forth

above.

### a.    Facts Negating Deceptive Intent to Deceive by Concealing Test Orders

Second, Russell tries to show deceptive intent in connection with its test-order concealment

claims in part by arguing that Stevens selectively disclosed some but not other test orders; but:

---

A. The Dow Corning sample that he gave me wasn't the Dow Corning sample that we
did later.

[285] Appx. Ex. 5, Stevens depo. at 260:25–262:4:

Q. Did somebody tell you you ought to try Dow Corning 6093?
A. No.
Q. How did -- how did it come to be a candidate for testing?
A. Well, it was -- would have been Rick Bradford, I think, was -- suggestion to use
this because this was the adhesive that was a -- similar to GE product. I think most
companies when they sell product, they sell their product and then ABC company
will have something that's similar to that. This was their "similar" product. So, yes,
it was recommended by --
Q. Rick Bradford?
A. -- Rick Bradford.
Q. Let me make sure I understand that. You had successfully tested the GE SEA 210?
A. Correct.
          . . .
Q. Did you identify it by GE SEA 210 to Rick?
A. Yes.
Q. And he said, "Well, why don't you try Dow Corning 60" --
A. "Our product that's real close to it."

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

Additional Fact No. 27: No test orders were disclosed during original prosecution of the '111, '935, and '550 patents.[286]

### b.   Facts Negating Intent to Deceive by Mischaracterizing Test Orders

Third, Stevens cannot have intended to deceive the PTO regarding the content of Test Orders 1506 and 1967 both because he submitted the orders themselves to the PTO, as set forth in Russell's own statement of facts, and because:

Additional Fact No. 28: The second Stevens declaration includes a table faithfully and accurately summarizing 19 test orders—including Test Orders 1506 and 1967, which are summarized as follows[287]:

| Test Order No. | Completion Date | Adhesive | Type | Result |
|---|---|---|---|---|
| 1506 | 10/20/1995 | G.E. RTV 6808 | Silicone sealant | Adhesive separated from acrylic |
| 1506 | 10/20/1995 | G.E. General Purpose Silicone Rubber | Silicone | Acrylic cracked |
| 1967 | 8/27/1997 | Devcon Composite Welder | Methyl methacrylate | No failure |

---

[286] *See* Appx. Ex. 37, '111 IDS (Apr. 28, 1999); Appx. Ex. 39, '935 IDS (Nov. 1, 2010); Appx. Ex. 41, '550 IDS (Nov. 1, 2010).

[287] Appx. Ex. 18, 2d Stevens decl. ¶ 13.B.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

## IV.  ARGUMENT

**A.   The Court Should Deny Russell's Motion (and Grant Lifetime's) because Russell's Claims against Stevens Fail for Lack of Motive**

"In order to prove inequitable conduct, Russell must show by clear and convincing evidence that Stevens misrepresented or omitted information material to patentability with specific intent to mislead or deceive the PTO."[288] Russell cannot meet its burden with a merely negative showing—i.e., by arguing that Stevens has no innocent explanation for his conduct:

> The patentee need not offer any good faith explanation unless the accused infringer first carried his burden to prove a threshold level of intent to deceive by clear and convincing evidence. Only when the accused infringer has met this burden is it incumbent upon the patentee to rebut the evidence of deceptive intent with a good faith explanation for the alleged misconduct.[289]

"[D]irect evidence of intent, such as an admission of deceptive purpose, is seldom available,"[290] and Russell does not claim to have such evidence here. Instead, Russell argues that intent should be "inferred from indirect and circumstantial evidence."[291] An inference of deceptive intent drawn from circumstantial evidence "must . . . be based on sufficient evidence and be reasonable in light of that evidence."[292]

---

[288] Motion (Docket No. 406) at xxxiii.

[289] *Star Scientific*, 537 F.3d at 1368 (citations omitted).

[290] *Therasense*, 649 F.3d at 1304 n. 1 (Bryson, J., dissenting); *see also Star Scientific*, 537 F.3d at 1366 (Fed. Cir. 2008) ("because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence").

[291] Russell does not come right out and say it is arguing circumstantial evidence. But it signals its strategy by repeatedly observing, "[t]he 'specific intent' requirement of proving inequitable conduct may be inferred from indirect and circumstantial evidence." *See* Motion (Docket No. 406) at xxxiii, lxxiv, 13.

[292] *Star Scientific*, 537 F.3d at 1366.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Here, deceptive intent is not reasonably inferred because Russell's circumstantial evidence has a gaping hole: motive.[293] Russell has no proof that Stevens had any incentive to deceive the PTO. That makes this case entirely unlike the *Intellect Wireless* case on which Russell relies. In that case, "the asserted patents [were held] unenforceable due to inequitable conduct by the sole inventor, Mr. Daniel Henderson."[294] Critically, Mr. Henderson was also "the owner of the assignee of the patents, IW"[295]—so Mr. Henderson had a personal stake in the outcome and, thus, a reason to lie. Stevens has no such interest, here, because when the first patent application was filed, Stevens assigned that application and its descendants to Lifetime,[296] which Stevens *does not* own; hence Stevens had no reason to lie to or conceal anything from the PTO.

It is Russell's burden "to prove its allegation regarding the reason" for Steven's conduct.[297] Because Russell has no evidence that Stevens had any reason to deceive the PTO, it has failed to meet that burden and its Motion should be denied (and Lifetime's counterpart motion granted).

**B.   The Court Should Deny Summary Judgment to Russell (and Grant it to Lifetime) on Russell's Test-Order-Concealment Claims**

According to Russell, "Stevens failed to disclose to the USPTO during original prosecution of '111, '935 and '550 Patents" certain documents and information.[298] As a species of fraud,

---

[293] *Cf., e.g., People v. Unger*, 749 N.W.2d 272, 286 (Mich. Ct. App. 2008) ("In cases in which the proofs are circumstantial, evidence of motive is particularly relevant," even if "motive is not an essential element of the crime"); *State v. Powell*, 893 P.2d 615, 625 (Wash. 1995) ("establishing motive is often necessary when only circumstantial proof of guilt exists").

[294] *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1341 (Fed. Cir. 2013).

[295] *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056, 1057 (N.D. Ill. 2012).

[296] Appx. Ex. 20, Assignment; *see supra*, Add'l Fact No. 3.

[297] *See Star Scientific*, 537 F.3d at 1368.

[298] Motion (Docket No. 406) at 3.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

inequitable conduct must be pleaded with particularity.[299] According to Russell, the concealment claims are pleaded as Counts 10, 12, 17, and 23 of its Third Amended Counterclaims.[300] In point of fact, the concealment claims are pleaded only against the '111 patent, in Counts 10 and 12; Counts 17 and 23 do not allege concealment but instead allege infectious unenforceability (or "tainting") of the '935 and '550 patents—which Russell has not addressed in its Motion and should not be allowed to raise for the first time on reply. The pleading deficiency aside, Stevens stopped working for Lifetime in February 2001,[301] nearly a decade before the applications for the '935 and '550 patents were filed (in 2010); after leaving Lifetime, he did not communicate with Lifetime's patent prosecution counsel until well after the '935 and '550 patents had issued, in 2011.[302] Because there is no evidence that Stevens was even aware that the '935 and '550 patents were being prosecuted, there can be no evidence that he intentionally withheld anything during those prosecutions.[303] Thus Russell's concealment claims must be limited to the '111 patent.

The concealment claims fail because Russell cannot prove materiality or deceptive intent.

**1.    Russell Cannot Show Materiality**

Stevens is accused of concealing:

(1) Test Order nos. 2079, 2096, 2116, 2122[,] 2138, 2335, 2337, 2348, 2351, 2359 and 2365; (2) the information these tests contained about failed adhesive testing of preferred embodiment adhesives; (3) the results of failed silicone coupon testing; (4) Stevens['] own belief at the time of application that not all silicone adhesives would

---

[299] *Exergen*, 575 F.3d at 1327 ("Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO").

[300] *See* Motion (Docket No. 406) at 16, 25.

[301] *See* Appx. Ex. 5, Stevens depo. at 9:24–10:1; *supra*, Add'l Fact No. 8.

[302] *See* Appx. Ex. 5, Stevens depo. at 57:7–60:8.

[303] Presumably that is why Russell's operative pleading does not even try to allege that Stevens concealed test orders (or anything else) during original prosecution of the '935 and '550 patents.

work in his invention; [and] (5) his belief that not all elastomeric adhesives would work in his invention.[304]

According to Russell: the four lower-numbered test orders (Test Order 2079, 2095, 2116, and 2122) document testing failures of various silicone adhesives; Test Order 2138 documents testing failures of Dow Corning Q3-6093 adhesive; and the six higher-numbered test orders (Test Orders 2335, 2337, 2348, 2351, 2359 and 2365) document testing failures of GE D1-SEA 210 adhesive. Russell is telling this Court a different (and less accurate) story than it told the PTO: during reexamination of the '550 patent, Russell (1) argued that Test Order 2096 reflects *successful* testing of an adhesive and (2) pointed out that the six higher-numbered test orders reflect "qualifying runs with the adhesive *robot* to perfect a *manufacturing process*"[305] rather than testing of an adhesive. By Russell's own admission, then, seven of the 11 test orders it now touts as undisclosed evidence of adhesive testing failures are not that at all. But the allegedly concealed information does show this much: (1) not all elastomeric or silicone adhesives work in Stevens' inventions, (2) Stevens knew that not all of them work, and (3) Dow Corning Q3-6093, a silicone adhesive that the specification describes as "[s]uitable," failed some testing.

"[T]he materiality required to establish inequitable conduct" based on nondisclosure "is but-for materiality," meaning "the PTO would not have allowed a claim had it been aware of" the undisclosed information.[306] According to Russell, the information Stevens is accused of withholding is but-for material because it establishes nonenablement of certain claims. As a fallback, Russell also argues that the information Stevens allegedly concealed would have shown

---

[304] Motion (Docket No. 406) at 3.

[305] *See* Appx. Ex. 29, '550 3rd Party Comments at 17 (italics added); *supra*, Add'l Fact No. 10.

[306] *Therasense*, 649 F.3d at 1291.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

the claims are broader than what Stevens subjectively "regard[ed] as his invention."[307] Russell's fallback materiality theory should not be considered because it was never pleaded. And as shown below, *neither* materiality theory works.

### a.   Russell's Nonenablement Theory Fails

"[T]o be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'"[308] Where there is evidence of "inoperative as well as . . . operative examples," enablement turns on whether "persons of ordinary skill . . . must engage in ***undue* experimentation**"—where "[t]he key word is 'undue,' not 'experimentation.'"[309] "In [*In re*] *Wands*, the Federal Circuit set forth eight factors to consider when determining whether a disclosure requires undue experimentation."[310] Russell has failed to meet its burden of proof because it has not even *tried* to apply the *Wands* factors.

Moreover, "information is not material if it is cumulative of other information already disclosed to the PTO."[311] Russell accuses Stevens of hiding information establishing that not all elastomeric or silicone adhesives would work or were believed (by Stevens) to work in Stevens' invention. But such information would be cumulative of disclosures made in the specification. The specification reveals that "[v]arious elastomeric adhesives were tested from . . . Ashland,

---

[307] *See* Motion (Docket No. 406) at 12 (quoting 35 U.S.C. § 112, ¶ 2 as it read during prosecution of the '111 patent).

[308] *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993).

[309] *In re Angstadt*,  537 F.2d 498, 504 (C.C.P.A. 1976).

[310] "Russell's Motion for Partial Summary Judgment of Invalidity of the Patents in Suit Under 35 USC 112," Docket No. 436 at 18.

[311] *Star Scientific*, 537 F.3d at 1367.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Ciba-Giga, Dapp, Devcon, Dow Corning, Elsworth, General Electric, Goop, Hysol, H.B. Fuller, and Resin Tech Group."[312] But "[a]fter testing a large number of different elastomeric adhesives from different suppliers," Stevens determined that "[a]lthough other elastomeric adhesives can be made suitable for use in the present invention, silicone adhesive is currently preferred;" and even among the preferred silicone adhesives, only two—"General Electric (D1-SEA 210) and . . . Dow Corning (Q3-6093)"—were found "[s]uitable."[313] Thus the specification discloses at least that some elastomeric adhesives had failed testing and were not considered suitable.[314]

Recognition of those specification disclosures undercuts Russell's nonenablement argument in another and broader way. Of the seven independent claims of the '111 patent as originally issued, four (claims 12, 17, 23, and 25) recite a silicone or silicone-based adhesive but three (claims 1, 19, and 21) more generally recite an elastomeric adhesive. The examiner allowed the elastomeric-adhesive claims *despite* the specification's disclosures about unsuitable elastomeric adhesives—which implies that the examiner would have allowed the silicone-adhesive claims over comparable silicone-adhesive disclosures.[315]

Finally, during reexamination of the '550 patent, Russell made to the PTO the same nonenablement argument that it now makes to show materiality of the test orders.[316] Russell's comments were "fully considered" but the examiner did not adopt Russell's nonenablement

---

[312] Appx. Ex. 1, '111 patent at 4:62–65.

[313] Appx. Ex. 1, '111 patent at 2:46–47, 2:55–57, 2:59–60.

[314] *See supra*, Add'l Fact No. 12.

[315] *See* Appx. Ex. 21, '111 Allowance; *supra*, Add'l Fact No. 14.

[316] *See* Appx. Ex. 29, '550 3rd Party Comments at 8–9; *supra*, Add'l Fact No. 15.

contention.[317] Perhaps most telling of all, Russell did not even make its nonenablement argument when it appealed the examiner's final decision to allow Lifetime's claims.[318]

Russell's nonenablement theory stands twice rejected by the PTO, implicitly during prosecution of the '111 patent (when elastomeric-adhesive claims were allowed over cumulative elastomeric-adhesive disclosures) and then during reexamination of the '550 patent. Moreover, it rests on cumulative information and is not supported by any application of the *Wands* factors. Thus it cannot satisfy Russell's burden to show, by clear and convincing evidence, that failure to disclose was the but-for cause of the '111 patent's issuance.

### b. Russell's Unpleaded Argument about Stevens' Subjective Understanding of the Scope of His Invention Fails

Russell's fallback argument that the allegedly withheld information is but-for material because it shows that Stevens took a subjectively narrower view of his invention than is reflected in the patent claims rests on legal error. "[C]ommonly the claims are drafted by the inventor's patent solicitor," and thus "it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO."[319] Therefore, even though "'which the applicant regards as his invention' is subjective language, once the patent issues, the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art."[320] Stevens' subjective understanding is irrelevant.

---

[317] *See* Appx. Ex. 31, '550 Action Closing Prosecution at 2; *supra*, Add'l Fact No. 16.

[318] *See generally* Appx. Ex. 34, '550 Appeal Brief.

[319] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995).

[320] *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000).

Russell comes to a contrary conclusion by misreading two cases that actually support Lifetime's position, not Russell's. First, according to *In re Zietz*, "if the claims do not 'particularly point[] out and distinctly claim[]', in the words of section 112, that which *examination shows* the applicant is entitled to claim as his invention, the appropriate PTO action is to reject the claims for that reason."[321] Thus *Zeitz* is consistent with *Markman* and *Solomon* in its insistence that it is examination, not the inventor's subjective understanding, which shows what "the applicant is entitled to claim as his invention." Second, the *full* sentence from *In re Prater* that Russell quotes only in part is:

> However, this court has consistently taken the tack that claims yet unpatented are to be given the broadest reasonable interpretation **consistent with the specification** *during the examination of a patent application* since the applicant may then *amend* his claims, the thought being to reduce the possibility that, after the patent is granted, the claims may be interpreted as giving broader coverage than is justified.[322]

Thus, *Prater* recognizes the objective specification rather than the inventor's subjective understanding as the outer limit of claim scope.

Russell's Motion should be denied (and Lifetime's granted) as to the concealment claims because Russell has no clear and convincing evidence of but-for materiality.

### 2.     Russell Cannot Show Intent to Deceive

Russell argues that deceptive intent may be inferred from (1) "[e]vidence that [Stevens] made assertions in [the '111] patent that are misleadingly incomplete, if not plainly inaccurate, and contrary to the true information" that he allegedly withheld[323] and (2) what Russell calls

---

[321] *In re Zeitz*, 893 F.2d 319 (Fed. Cir. 1990) (italics added).

[322] *In re Prater*, 415 F.2d 1393, 1404–05 (C.C.P.A. 1969) (boldface underlining added).

[323] *See* Motion (Docket No. 406) at 14.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Stevens' "intentional selective disclosure[s]."[324] But as shown below: (1) there was no contradiction between what the patent says, on the one hand, and information that Stevens allegedly withheld, on the other; and (2) there was no selectivity in Stevens' disclosures.

### a.    There Is No Contradiction between Allegedly Withheld Information and the Patent Disclosure

According to Russell, Stevens "made assertions in [the '111] patent that are misleadingly incomplete, if not plainly inaccurate, and contrary to the true information" that he allegedly withheld.[325] Specifically, Russell alleges that (1) the patent's description of Dow Corning Q3-6093 as a "[s]uitable silicone adhesive"[326] is falsified by Test Order 2138[327] and (2) Stevens knew and had evidence "that not all elastomeric or silicone adhesives worked in his invention" but made a contrary representation in the patent.[328] Both theories fail.

### i.    Test Order 2138 Does Not Contradict the Specification's Characterization of Dow Corning Q3-6093

The patent's description of Dow Corning Q3-6093 as suitable is accurate, notwithstanding the failures reported in Test Order 2138. As the patent teaches, backboard assemblies can fail for a variety of reasons unrelated to the suitability of the adhesive, such as a bond gap that is too large or too small.[329] Thus the failures reported in Test Order 2138 are not conclusive as to the suitability of the adhesive; and as Stevens testified in deposition that he "was able to get the 6093

---

[324] *See* Motion (Docket No. 406) at 15–16.

[325] *See* Motion (Docket No. 406) at 14.

[326] *See* Appx. Ex. 1,'111 patent at 2:59–60.

[327] *See* Motion (Docket No. 406) at 13–14.

[328] Motion (Docket No. 406) at 14–15.

[329] *See, e.g.*, Appx. Ex. 1, '111 patent at 2:67–3:6.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

to completely pass all tests" on another occasion, which was not documented in the test orders he was shown in his deposition.[330] Given those circumstances, Russell's proposed inference of deceptive intent must be rejected because there are numerous competing inferences that are at least as reasonable, including: (1) no test order was created to document the successful testing of the Dow Corning adhesive; and (2) a test order was created, but was lost or misplaced in the 14 or 15 years that passed between Stevens' testing, in 1998, and the preparation of his declarations and subsequent deposition, in 2013 and 2014. Indeed even if the Dow Corning adhesive did not *actually* pass testing, Stevens apparently *believed* it had (or at least Russell has no evidence that he did not believe it had), and that alone defeats any inference of deceptive intent.

Thus Russell's first attempt to find a contradiction between the patent and allegedly withheld information reads something into Test Order 2138 that simply is not there—viz., that the Dow Corning Q3-6093 adhesive is not suitable.

### ii. The Patent Makes No Representation that All Elastomeric or Silicone Adhesives Work

Conversely, Russell's second attempt reads something into the patent that simply is not there—viz., a declaration that *all* elastomeric or silicone adhesives work. Russell tries to read such a declaration into one specification passage and into the claims. The specification passage is: "After testing a large number of different elastomeric adhesives from different suppliers, silicone adhesive was preferred because it provides a bond of sufficient strength and flexibility."[331] According to Russell, that is a "stat[ement] that all silicones were a preferred

---

[330] *See* Appx. Ex. 5, Stevens depo. at 260:5–6, 267:18–268:6; *supra*, Add'l Fact No. 9.

[331] *See* Appx. Ex. 1,'111 patent at 2:46–49; *see* Motion (Docket No. 406) at 15.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

embodiment."[332] That might be one way to read the passage. But another and more natural reading is that certain elastomeric adhesives found to provide "a bond of sufficient strength and flexibility" were silicone adhesives. Thus, e.g., the patent calls out two silicone adhesives Dow Corning Q3-6093 and GE D1-SEA 210 as "[s]uitable".[333] Stevens' deposition testimony supports this interpretation; specifically, Stevens responded affirmatively when asked whether "the 6093 adhesive . . . is one of the two preferred embodiments that's in your patent" and "the other preferred embodiment listed in the specification is the SEA 210."[334] Russell, by contrast, has *no* evidence, let alone clear and convincing evidence, that Stevens meant to convey that *all* silicone adhesives provide sufficient strength and flexibility and are thus preferred—rather than that the *preferred* elastomeric adhesives were more specifically *silicone* adhesives. Thus Russell's specification-based contradiction theory fails.[335]

Russell's claims-based theory is that by reciting either "a catalyzed elastomeric adhesive" or "a catalyzed silicone adhesive," the claims affirmatively represent that *all* elastomeric or silicone adhesives will work in the invention. Russell's theory misconceives both what claims do and how they do it. Starting with what claims do, Russell confuses their function with that of the

---

[332] Motion (Docket No. 406) at 15.

[333] *See* Appx. Ex. 1,'111 patent at 2:59–60.

[334] *See* Appx. Ex. 5, Stevens depo. at 259:11–14, 273:8–10.

[335] *Cf. Star Scientific*, 537 F.3d at 1368 (*reversing* a bench trial judgment of inequitable conduct because, inter alia, "RJR's evidence had a major gap—RJR failed to elicit any testimony or submit any other evidence indicating that Star knew what the Burton letter said"). So too here, Russell could have asked Stevens whether he meant to convey that *all* silicone adhesives were preferred, or provided sufficient strength and flexibility—but Russell carefully avoided such questioning, knowing that the answer would not support its strained reading.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

specification. "Specifications teach. Claims claim."[336] Whatever the '111 patent teaches about which adhesives do or do not work it teaches in the specification, not the claims. The claims have a different function: defining the outer "metes and bounds" of the patentee's right to exclude; and they do that "by a series of *limiting* words or phrases."[337] Thus qualifiers such as "elastomeric" and "silicone" are limiting disclaimers, not guarantees; instead of guaranteeing that every elastomeric or silicone adhesive will work, they exclude non-elastomeric and non-silicone adhesives from the literal scope of the claims in which they appear. Were it otherwise, the patent examiner would not have allowed claims to elastomeric adhesives in the face of specification disclosures that not all elastomeric adhesives were found to be suitable. Russell's claims-based theory also fails for lack of evidence that *Stevens* meant by the claims to convey that all elastomeric or silicone adhesives would work.

Russell's first deceptive intent theory fails because (1) the contradictions it requires simply do not exist and (2) Russell has no evidence that Stevens perceived any such contradictions.

**b.   Stevens Did Not Engage in "Intentional Selective Disclosure"**

Russell's other deceptive intent theory is that Stevens "twice engaged in intentional selective disclosure. First, Stevens only partially disclosed the results of his coupon testing of silicone and elastomeric adhesives in the specification."[338] Here is what the specification says about "coupon testing of silicone and elastomeric adhesives":

Various elastomeric adhesives were tested from the following manufacturers: Ashland, Ciba-Giga, Dapp, Devcon, Dow Corning, Elsworth, General Electric, Goop, Hysol,

---

[336] *Sri Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985).

[337] *Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 868 F.2d 1251, 1257, 1258 (Fed. Cir. 1989) (italics added).

[338] Motion (Docket No. 406) at 15 (citation omitted).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

> H.B. Fuller, and Resin Tech Group. It was found that the catalyzed silicone adhesive having the desired bond gap obtained from 25° to 45° deflection at 160 inch-pounds torque.[339]

According to Russell, that is intentionally selective because "Stevens omitted any mention that the Dow Corning silicone adhesives provided by Rick Bradford failed his coupon test."[340] But Russell has no evidence that any "Dow Corning silicone adhesives provided by Rick Bradford [that] failed his coupon test" was a "*catalyzed* silicone adhesive"; and without that, Russell cannot even make a credible argument that there was anything selective or misleading about Stevens' coupon-testing disclosure.

Second, Russell claims that Stevens "hid 11 of his total 15 documented pre-application adhesive test orders."[341] That statement itself is misleading: *no* test orders were disclosed during original prosecution of the '111 patent, so Stevens did not selectively disclose four while "hiding" 11 others.[342] Russell later directs this allegation to declarations that Stevens made in connection with reexamination proceedings.[343] But those declarations were made in 2013. Conduct occurring more than a decade after the fact is far too remote to serve as circumstantial evidence of Stevens' state of mind when the patent application was prepared and filed, in 1999.

Moreover there are far more reasonable interpretations of Steven's conduct in 1999 and 2013 than Russell's far-fetched theory that Stevens, despite having no interest in the patents, was

---

[339] Appx. Ex. 1, '111 patent at 4:62–67.

[340] Motion (Docket No. 406) at 15 (citation omitted).

[341] Motion (Docket No. 406) at 15.

[342] *See* Appx. Ex. 37, '111 IDS (Apr. 28, 1999); Appx. Ex. 39, '935 IDS (Nov. 1, 2010); Appx. Ex. 41, '550 IDS (Nov. 1, 2010); *supra*, Add'l Fact No. 27.

[343] Motion (Docket No. 406) at 15–16.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

in 2013 continuing to execute a plan he had formed more than 14 years earlier to hide test orders from the PTO. According to Russell, Stevens failed to submit with his declarations "the test orders showing [Stevens'] own testing failures of the two 'suitable adhesives' identified in the specification—Dow Corning Q3 6093 and GE D1 S[E]A 210."[344] But on another occasion, Stevens "was able to get the 6093 to completely pass all tests"[345]—or at least believed that he had, which is enough to negate deceptive intent—so the fact that another set of assemblies using the same adhesive had failed would have been beside the point. As for the test orders allegedly showing "testing failures of . . . GE D1 S[E]A 210," Russell itself admitted during reexamination of the '550 patent that they were not failures of the adhesive at all but were instead "qualifying runs with the adhesive *robot* to perfect a *manufacturing process*."[346]

Thus Russell's attempt to prove deceptive intent through "intentional selective disclosure" fails, too. More generally, Russell's concealment claims fail because Russell has not shown either materiality or deceptive intent.

**C.  The Court Should Deny Summary Judgment to Russell (and Grant it to Lifetime) on Russell's Lying-Declaration Claims**

**1.  Russell's Lying-Declaration Claims Fail for Lack of Materiality**

**a.  Russell Has No Evidence of But-for Materiality**

According to Russell, Stevens told ten lies in two declarations and a notice of corrections that he submitted in connection with reexamination proceedings. Russell argues they are material because the statements were made to show "secondary considerations . . . to overcome the prima

---

[344] Motion (Docket No. 406) at 16.

[345] Appx. Ex. 5, Stevens depo. at 260:5–6.

[346] *See* Appx. Ex. 29, '550 3rd Party Comments at 17 (italics added).

facie case of obviousness that existed in the reexams at that time."[347] But the definition of materiality under the regulatory schema that Russell's argument evokes has been rejected by the Federal Circuit;[348] accordingly, statements made in "[o]pposing an argument of unpatentability relied on by the Office,"[349] is not enough to satisfy the Federal Circuit's but-for standard of materiality, which "requires proof that the patentee . . . misrepresented information that, in the absence of the . . . misrepresentation, would have prevented a patent claim from issuing."[350] Here, the but-for standard is not satisfied because the secondary-considerations argument was unsuccessful, and Russell never argues otherwise: allowance was secured not by overcoming the obviousness rejections with Stevens' evidence of secondary considerations[351] but by persuading the PTO that the art underlying the rejections was not analogous.[352]

---

[347] Motion (Docket No. 406) at 20.

[348] *See supra* § III.A.2, p. xv; *Therasense*, 649 F.3d at 1294 ("This court declines to adopt the current version of Rule 56 in defining inequitable conduct . . .").

[349] *See* 37 C.F.R. § 1.56(b) ("information is material to patentability when . . . (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office . . .").

[350] *Ohio Willow Wood*, 735 F.3d at 1345.

[351] *See* Appx. Ex. 23, '111 Final Office Action at 11–12, 19–21 (rejecting secondary-considerations arguments based on Stevens declarations); *see also* Appx. Ex. 25, '935 Rejection RAN at 24 (same); Appx. Ex. 30, '550 Rejection RAN at 29, 31–34 (same).

[352] *See* Appx. Ex. 24, '111 Reexam Allowance at 2–4; Appx. Ex. 33, '550 RAN at 8–9; Appx. Ex. 27, '935 RAN 10–11; Appx. Ex. 36, '034 Allowance at 2–3; Appx. Ex. 35, '463 Allowance at 2–3; *supra*, Add'l Fact No. 17.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

      **b.**    **Russell Cannot Invoke the Egregious-Misconduct Exception to the But-for Materiality Requirement because the Accused Statements Are Not Unmistakably False**

With no but-for materiality, Russell must rely on the egregious-misconduct exception; and to invoke that, Russell must show (1) not merely "uncured"[353] but "*unmistakabl[e]*" falsity of (2) an "affidavit."[354] This Russell cannot do: without but-for materiality, the notice of corrections drops out because it is not a sworn affidavit; and as shown below, Russell cannot establish even garden-variety falsity, let alone *unmistakable* falsity, of Stevens' declarations.

Using the same numbering as above,[355] accused statement 1 is: "I performed testing to determine if the backboards attached to the frame with the mechanical fasteners could withstand impact from a basketball."[356] Russell admits that Stevens tested small acrylic "coupons" attached to metal framing with screws;[357] but according to Russell, Stevens' statement was false because he had not "conducted actual ball impact testing on full-sized board prototypes constructed using mechanical fasteners."[358] Russell fails to establish unmistakable falsity for two reasons. One, Russell is putting words into Stevens' mouth: all Stevens said is that he "performed testing,"[359] without saying whether the testing was of coupons or of full-sized boards. Two, there is no

---

[353] *See* Motion (Docket No. 406) at 19.

[354] *See Therasense*, 649 F.3d at 1292 (italics added).

[355] *See supra* § II.C.

[356] *See* Motion (Docket No. 406) at 20; Appx. Ex. 17, 1st Stevens decl. ¶ 8.

[357] *See* Motion (Docket No. 406) at lix.

[358] Motion (Docket No. 406) at 21.

[359] Appx. Ex. 17, 1st Stevens decl. ¶ 8.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

evidence either that Stevens did or that he did not test "full-sized board prototypes"—primarily because although Russell deposed Stevens, twice, it never asked him whether he had.

Accused statement 2 is: "I spoke with other engineers at Lifetime about fasteners and adhesives they had tried and learned that they had experimented with different methods and adhesives and had failed to obtain any favorable results."[360] And indeed Stevens did speak with at least two other Lifetime engineers, Coplan Vaughan and Roy Zettle, about prior failures.[361]

Accused statement 3 is: "I recall Lifetime's representative from 3M telling me that I would never be able to replace the VHB® tape. Because adhesives were the representative's area of expertise, I was discouraged . . ."[362] According to Russell, that is contradicted by Stevens' deposition testimony.[363] Stevens testified that "Martin Cole . . . a rep for 3M" had "discouraged you [i.e., Stevens] from using glues in your backboard project"; but then, when asked, "it didn't discourage you?" responded, "[n]o."[364] Thus Cole discouraged Stevens but Stevens was not discouraged. Or maybe Stevens *was* discouraged: there is a double negative between the last question and the answer. That confused record is far too equivocal to serve as clear and convincing evidence of anything, let alone *unmistakable* falsity.[365]

Accused statement 4 is:

The exemplary Test Orders range from October 24, 1995 to December 7, 1998, demonstrating the extensive research and testing performed at Lifetime in finding an

---

[360] *See* Motion (Docket No. 406) at 20; Appx. Ex. 17, 1st Stevens decl. ¶ 9.

[361] Appx. Ex. 5, Stevens depo. at 129:5–130:8; *see supra*, Add'l Fact No. 19.

[362] *See* Motion (Docket No. 406) at 20; Appx. Ex. 17, 1st Stevens decl. ¶ 10.

[363] *See* Motion (Docket No. 406) at 20.

[364] Appx. Ex. 5, Stevens depo. at 156:9–14, 158:3–5.

[365] *See supra*, Add'l Fact No. 20.

**FILED UNDER SEAL – CONTAINS SEALED MATERIAL**

> alternative to the double-sided tape. In particular, Test Order nos. 1506, 1523, 1534, 1870, 1872, 1919A, 1919B, 1967, 2008, 2027, 2053, 2054, 2079 and 2084, each describe testing of different adhesives to attach the acrylic backboard to the metal frame. In each case, the adhesive failed. For example, the adhesives described in Test Order nos. 1506, 1523, 1534, 1872, 2008, 2053, 2054 and 2084 failed to properly adhere to either the backboard or the frame . . .[366]

But according to Russell, Test Orders 1506, 1967, and 2053 reflect "success."[367] Those three test orders, considered in isolation from the others, are a mixed bag: Test Order 1506 reports failure of one sample exactly as Stevens described ("acrylic separated from silicone") and cracked acrylic in the other sample;[368] Test Order 2053 reports a mix of ball impact successes and thermal testing failures.[369] The larger point is that the 14 test orders, as a group, "demonstrat[e] the extensive research and testing performed at Lifetime in finding an alternative to the double-sided tape," just as Stevens said. Getting one or two details wrong about three orders out of a group of 14 does not make Stevens' complete statement unmistakably false.[370]

> Accused statements 5 and 6 are similar:

> The adhesive described in Test Order nos. 1967, 2027 and 2053 failed temperature testing because it did not accommodate the differences in coefficients of thermal expansion between the backboard and frame resulting in warping and deformation of the acrylic backboard at temperatures greater than about 106°F.[371]

> As shown in Test Order nos. 1967, 2027 and 2053 of APPENDIX A, directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not

---

[366] Appx. Ex. 17, 1st Stevens decl. ¶ 11.

[367] Motion (Docket No. 406) at 20.

[368] Appx. Ex. 44, Test Order 1506 at LIFE00001314.

[369] Appx. Ex. 56, Test Order 2053 at LIFE00018391.

[370] *See supra*, Add'l Fact No. 21.

[371] Appx. Ex. 17, 1st Stevens decl. ¶ 11.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

accommodate thermal expansion between the backboard and frame such that the backboard warped and cracked during thermal testing.[372]

According to Russell, those were lies because Test Order 1967 does not show the thermal testing failures, as described.[373] Test Orders 1967, 2027, and 2053 all tested the same adhesive—Devcon Composite Welder, a non-elastomeric methacrylate.[374] Of the three, Test Order 2053 reports high-temperature testing; and it reports exactly the failures Stevens described.[375] So "[t]he adhesive described" in the three orders (i.e., Devcon Composite Welder) "failed temperature testing," and the three orders collectively show that "directly bonding the backboard to the frame with a non-elastomeric methacrylate adhesive did not accommodate thermal expansion." The statements could have been made more specific by listing only Test Order 2053, but they are not unmistakably false.[376]

Accused statement 7 is: "I recall one of Lifetime's manufacturers in China having an issue with adhesion because the adhesive was not properly bonding to the powder-coated frame."[377] In deposition, Stevens elaborated, explaining that the Chinese manufacturer had added wax to the coating "for the Elite line. . . . that they were *going to use* the glass backboard on."[378] Russell

---

[372] Appx. Ex. 17, 1st Stevens decl. ¶ 13.

[373] Motion (Docket No. 406) at lv.

[374] Appx. Ex. 5, Stevens depo. at 254:18–255:24.

[375] Appx. Ex. 56, Test Order 2053 at LIFE00018391.

[376] *See supra*, Add'l Fact Nos. 22–23. If the notice of corrections passage that Russell complains of were considered, its substitution of Test Orders 1966 and 2010 for 1967 and 2010, respectively, would not be unmistakably false for the same reasons as the original declaration statements it corrects (i.e., the fourth, fifth, and sixth accused statements).

[377] Appx. Ex. 17, 1st Stevens decl. ¶ 18.

[378] Appx. Ex. 5, Stevens depo. at 317:15–19, 318:9–10 (italics added); *see also* Appx. Ex. 7, Van Nimwegen depo. at 35:23–36:6. *See supra*, Add'l Fact No. 24.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

relies on other witnesses' testimony to argue that Stevens could not have "recalled" the Chinese-manufacturer problem because it did not happen until 2003 or 2004, after Stevens had left Lifetime.[379] Those other witnesses testified about *another* problem with a Chinese manufacturer, relating to the *Mammoth* line (in which a glass backboard *was* used).[380] That other witnesses remembered other problems that happened at other times does not falsify Stevens' declaration.

Accused statement 8, the last from Stevens' first declaration, is:

> I performed impact testing that showed the elastomeric adhesive was flexible and provided sufficient cushioning between the backboard and the frame to dissipate the impact energy from the backboard to the frame, thereby preventing the backboard from shattering or cracking. *See* APPENDIX A, Test Order nos. 2155, 2335 and 2365.

Russell now claims Test Orders 2335 and 2365 show "*failed* testing."[381] But in reexamination, Russell explained to the PTO that those two orders document "qualifying runs with the adhesive *robot* to perfect a *manufacturing process*;"[382] they do not report testing of the adhesive *at all*. It is not disputed that Test Order 2155 reflects impact testing as described in Stevens' declaration. The inclusion of additional orders—showing the results of qualifying runs for *the robot*, not the adhesive—does not render Stevens' report of successful impact testing unmistakably false.[383]

Accused statement 9, from Stevens' second declaration, is: "I worked with several adhesive vendors and was told that there were no adhesives that would bond to acrylic material and

---

[379] *See* Motion (Docket No. 406) at lx.

[380] *See* Motion (Docket No. 406) at lx.

[381] Motion (Docket No. 406) at 21, italics added.

[382] *See* Appx. Ex. 29, '550 3rd Party Comments at 17 (italics added).

[383] *See supra*, Add'l Fact No. 25.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

provide a suitable amount of flexibility."[384] According to Russell, that was a lie because "an adhesives representative-expert . . . introduced Stevens to Dow Corning Q3 6093."[385] But as Stevens explained during deposition, when he was first casting about trying to find a suitable adhesive, Dow Corning representative Rick Bradford furnished several samples, none of which worked out.[386] Only later, after Stevens had already found the GE D1-SEA 210 adhesive, did Bradford direct Stevens to Q3-6093; and he did so based solely on its similarity with the GE adhesive Stevens had already identified, not based on any independent insight.[387] Stevens' declaration is true because Bradford was no help until after Stevens had found his way.[388]

Russell cannot invoke the egregious-misconduct statement because it has no clear and convincing evidence that any of Stevens' sworn statements is false.

### 2. Russell's Lying-Declaration Claims Fail for Lack of Deceptive Intent

In the discussion of falsity by which it attempts to establish materiality, Russell stays focused on Stevens—as it must. Yet when the inquiry moves into intent, Russell expands the cast—first bringing in Richard Gilmore, the prosecuting attorney who according to Russell "drafted for Stevens . . . his declarations" and "submitted the declarations in support of arguments";[389] and then more generically attacking "Lifetime and Stevens" and "Stevens and

---

[384] Appx. Ex. 18, 2d Stevens decl. ¶ 13.A.

[385] Motion (Docket No. 406) at 21.

[386] Appx. Ex. 5, Stevens depo. at 161:8–162:2.

[387] Appx. Ex. 5, Stevens depo. at 260:25–262:4.

[388] See supra, Add'l Fact No. 26.

[389] See Motion (Docket No. 406) at 19.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Lifetime's representatives."[390] But it would not be enough to show that *Stevens* knew a statement was false and *Gilmore* (or some other "representative") tried to use that statement to get the patents allowed: the person who knows the statement is false must be the same as the person who tries to use the statement to get a patent.[391] Because *Stevens* is the one who allegedly knew his declarations were false, Russell must show that *Stevens* intended to deceive the PTO.

Russell cites *Intellect Wireless* for the proposition, "false declaration testimony *asserted in order to overcome an obviousness rejection* 'raises a strong inference of intent to deceive.'"[392] What the case *actually* says is, "an affidavit containing *fabricated examples of actual reduction to practice* in order to overcome a prior art reference raises a strong inference of intent to deceive."[393] Either way, the case is inapposite. As pointed out above, one general problem with trying to prove Stevens acted with deceptive intent is he has no reason to lie because he has no stake in the patents.[394] A related problem, specific to Russell's lying-declarations claims, is that Stevens is not a patent attorney and there is no evidence that he even knows what "secondary considerations" are or how they may be used to overcome an obviousness rejection. "[A] district court may not infer intent *solely* from materiality,"[395] ever; here, because Stevens neither knows nor has any reason to care about materiality, it cannot support an inference of intent *at all*.

---

[390] *See* Motion (Docket No. 406) at 25.

[391] *See Exergen*, 575 F.3d at 1329–31.

[392] Motion (Docket No. 406) at 19 (italics added).

[393] *Intellect Wireless*, 732 F.3d at 1345 (italics added).

[394] *See supra* § IV.A, p. 1.

[395] *Therasense*, 649 F.3d at 1290 (italics added).

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

That leaves Russell with this argument: "a showing of intent [is] established here based on the content of the misrepresentations in the two declarations . . . followed by a statement of correction 'that . . . ***dances around the truth***'"[396]—i.e., intent should be inferred from falsity. As set forth above,[397] Russell also argues that materiality should be inferred from merely uncured (as opposed to unmistakable) falsity.[398] To infer both materiality and intent from simple "uncured falsity," as Russell proposes, would radically expand the scope of inequitable conduct by holding Lifetime strictly liable for the accuracy of Stevens' declarations.

Russell claims its radical proposal is supported by *Intellect Wireless*. But that case involved *big* lies told by an individual (Daniel Henderson) who was both the inventor, so he knew he was lying, and the patentee's owner, so he had motive.[399] Henderson told the PTO "that 'the claimed invention,'" a wireless picturephone, "'was actually reduced to practice and was demonstrated at a meeting . . . in July of 1993.'"[400] But "Mr. Henderson did *not* actually reduce the claimed invention to practice—nor did he demonstrate a prototype in July of 1993."[401] Henderson followed up his first declaration with "a replacement declaration that . . . . continues to reference a 'prototype' (that was never built), a 'product brochure' (even though there was no product), and 'commercialization' (that never occurred)."[402]

---

[396] Motion (Docket No. 406) at 24 (quoting *Intellect Wireless*, 732 F.3d at 1345–46).

[397] *See supra* § IV.C.1.b, p. 16

[398] *See* Motion (Docket No. 406) at 19 ("no further showing of materiality is required outside of the uncured falsity of the statements filed with the PTO").

[399] *See Intellect Wireless*, 910 F. Supp. 2d at 1057.

[400] *See Intellect Wireless*, 732 F.3d at 1342.

[401] *Intellect Wireless*, 732 F.3d at 1342.

[402] *Intellect Wireless*, 732 F.3d at 1345.

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

Then to support related patent applications, Henderson submitted "a declaration stating that he had constructed a handheld device that 'displayed . . . message information transmitted via the wireless network,'" when in fact "no such transmission took place—the device only contained preloaded images for the purpose of demonstration"; and he submitted a press release describing "imitation smartphones made of wood and plastic" that were given to the Smithsonian as his "prototypes . . . for a pioneering picturephone technology developed in 1993."[403] In short, Henderson "fabricated examples of actual reduction to practice."[404]

Henderson's big lies have no counterpart, here. For example, fully half of the statements that Russell accuses involve Stevens' citation of superfluous or wrong test orders as evidence of indisputably true propositions that are fully supported by *other* test orders Stevens cites. Had Stevens instead fabricated test orders to show events that never happened, that might have been similar to Henderson's conduct; but citing the wrong test order to support a true proposition bespeaks at worst negligence, not deceptive intent. The other supposed "falsehoods" that Russell alleges are of a similarly niggling kind.

Russell's remaining criticisms simply underscore how *unreasonable* an inference of deceptive intent would be. According to Russell, "Stevens' deposition in June 2014 refuted these misrepresentations,"[405] the alleged falsehoods are "easily refuted by test order documents," and

---

[403] *Intellect Wireless*, 732 F.3d at 1344.

[404] *Intellect Wireless*, 732 F.3d at 1345.

[405] Motion (Docket No. 406) at 21. Russell generically faults "Lifetime" for not promptly or properly disclosing Stevens' deposition testimony to the PTO, but if Russell really thought the testimony was material then *Russell* violated *its* duty of candor toward the PTO by not disclosing it in the ongoing *inter partes* reexaminations of the '935 and '550 patents. *See Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1447 (10th Cir. 1992) ("the duty of candor and good faith in [a] reexamination proceeding applies to both the requester and the patent defender").

FILED UNDER SEAL – CONTAINS SEALED MATERIAL

"Stevens could not explain why he even signed . . . in the first place."[406] But a deceiver would not have given confounding deposition testimony, he would have doctored or destroyed (or at least suppressed) inconvenient test orders, and he would have a good cover story.[407]

Finally, Russell's attempt to evaluate Stevens' notice of corrections under the *Rohm & Haas* cure standard is misguided because Lifetime does not claim inequitable conduct was *cured*; rather, Lifetime's point is that no misrepresentation with deceptive intent was ever made.[408]

## V.   CONCLUSION

Russell's Motion should be denied and Lifetime's granted.

Dated: July 18, 2016.                    Respectfully submitted,

                                         MASCHOFF BRENNAN

                               By:   /s/ *Kirk R. Harris*
                                     David R. Wright
                                     Kirk R. Harris
                                     Jared J. Braithwaite

                                     Attorneys for Plaintiff
                                     LIFETIME PRODUCTS, INC.

---

[406] Motion (Docket No. 406) at 23, 24.

[407] Russell's absence-of-explanations argument is misdirected for the further reason that "[t]he absence of a good faith explanation . . . does not, by itself, prove intent to deceive." *See Therasense*, 649 F.3d at 1291.

[408] In a related vein, a table in the second Stevens declaration faithfully reports, e.g., Test Order 1967. *See* Appx. Ex. 18, 2d Stevens decl. ¶ 13.B. That negates deceptive intent—not because the second declaration *cured* the first but because, if Stevens had been trying to mislead the PTO, he would not have included those table entries in his second declaration (which Stevens signed *before* he was deposed). *See supra*, Add'l Fact No. 28.